**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The United States opposes Defendant Isac Schwarzbaum's motion for summary judgment. There are genuine disputes of material fact and Schwarzbaum is not entitled to judgment in his favor as a matter of law. As set forth below, there are two main issues to be decided by the Court: (1) whether there is evidence to show that Schwarzbaum willfully violated his reporting requirements under 31 U.S.C. § 5314 for 2006 to 2009; and (2) whether the IRS properly exercised its discretion in calculating the amount of the FBAR penalties assessed against Schwarzbaum pursuant to § 5321(a)(5)(C). Only the first of these is ripe for review.

**PRELIMINARY STATEMENT**

The United States filed this action to recover civil penalties assessed against Defendant for willfully failing to report his interest in foreign bank accounts for 2006 through 2009.[1] Schwarzbaum owned Swiss bank accounts before 2006. When he opened the accounts, he told the banks not to reveal his identity to the U.S., not to withhold taxes for the U.S., not to invest in U.S. based investments, and not to send statements or correspondence to the U.S. In other words, he told the banks not to take any action that might reveal the existence of the accounts. For 2006, 2007, and 2009, Schwarzbaum filed FBARs that reported one of his two Costa Rican bank accounts that held less than $200,000, but not his Swiss accounts that had a total balance ranging

---

[1] All U.S. citizens are required to report their interest in or authority over foreign bank accounts to the U.S. annually on a form commonly referred to as an FBAR. A U.S. citizen who willfully fails to report a foreign bank account with a balance in excess of $10,000 in a timely filed FBAR is liable for a civil penalty of the greater of $100,000 or 50% of the account balance.

between $2 million and $28 million. In 2009, Schwarzbaum learned that the Union Bank of Switzerland ("UBS") (where he had large accounts until 2008) and the Swiss Tax Authority were going to turn his account information over to the U.S. He sought to have the Swiss courts block the disclosure. It was only after the Swiss courts denied his request that he finally reported his Swiss accounts to the U.S. and that he held an interest in the Swiss accounts.

The IRS assessed FBAR penalties against Schwarzbaum, concluding that he willfully violated his reporting requirements. He tries to avoid liability by claiming ignorance of the "full extent" of the FBAR requirements, blaming his tax return preparers for not telling him that he had to report the Swiss accounts, and blaming the IRS Revenue Agent ("RA") who conducted the FBAR examination. These arguments are meritless. Schwarzbaum knew he had a reporting requirement; he filed FBARs but did not report all of his foreign accounts. Schwarzbaum's attempt to blame his return preparers is curious because he never told them about his Swiss accounts and he never asked them if he had to report the accounts in an FBAR. Moreover, the IRS RA's views on Schwarzbaum's willfulness is of no moment in this *de novo* proceeding.

The argument section of Schwarzbaum's motion is divided into four sections (I, II, III, and IV).[2] The U.S.'s response mirrors that organization. As detailed more fully below, argument I should be denied because there is, at a minimum, a genuine dispute of material fact regarding the issue of willfulness. The Court need not decide the arguments in sections II and III at this time because the issue of whether the penalty amount is appropriate should be decided after a trial on willfulness.[3] In any event, these arguments are without merit.

Schwarzbaum seeks review of the IRS's determination that Schwarzbaum willfully failed to file complete FBARs for 2006 to 2009 as well as review of the IRS's assessment of the FBAR penalties, claiming the IRS abused its discretion (argument II). Congress has not waived sovereign immunity to allow a stand-alone suit for review of an FBAR penalty under the APA. *Kentera v. U.S.*, No. 16-1020-JPS, 2017 WL 401228, at *3-*7 (E.D. Wis. Jan. 30, 2017)

---

[2] Section I addresses whether there is a genuine dispute of material fact regarding the issue of willfulness. Section II addresses whether the IRS abused its discretion in calculating the amount of the FBAR penalties. Section III addresses whether the FBAR penalties violate the Excessive Fines Clause in the Eighth Amendment. Section IV addresses whether the IRS timely assessed the FBAR penalties against Schwarzbaum.

[3] If the Court is inclined to address these administrative challenges to the penalty calculation now, the record shows the Secretary did not abuse his discretion in assessing the FBAR penalty against Schwarzbaum, and for that reason his motion should be denied.

(rejecting reliance on APA in FBAR context); *see also Hogan v. Kerry*, 208 F. Supp. 3d 1288, 1290 (S.D. Fla. 2019) ("APA only permits judicial review of an adverse agency decision where no other adequate remedy is available."). However, the same administrative law principles apply. Congress left the amount of the penalty to the Secretary's discretion so the Court reviews it only for an abuse of discretion. *U.S. v. Williams*, No. 09-437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014). As detailed below, the IRS's selection of the penalty was proper and reasonable.

Schwarzbaum also makes an Eighth Amendment challenge to the FBAR penalties (argument III), but an excessive fines inquiry is not ripe at this stage of the proceedings because controlling circuit law holds that an excessive fines challenge is not ripe until the impending imposition of the challenged fine. Even if the Court were to reach the merits of an excessive fines scrutiny, controlling circuit law holds that the willful FBAR penalties sought are not excessive because remedial civil penalties are never excessive under the Eighth Amendment.

Finally, Schwarzbaum argues incorrectly that the FBAR assessments were untimely (argument IV). Statutes of limitation may be extended by agreement so long as the statutory scheme does not prohibit tolling by agreement, and nothing in Title 31 precluded the IRS from extending the willful FBAR assessment period by agreement. Schwarzbaum was represented by counsel and entered into an agreement willingly with the IRS to extend the assessment period.

For all these reasons, Schwarzbaum's motion for summary judgment should be denied.

## BACKGROUND

Each year, U.S. citizens who have an interest in one or more foreign financial accounts where the aggregate balance exceeds $10,000 must file a Report of Foreign Bank and Financial Accounts ("FBAR") with the Department of the Treasury. This reporting requirement arises under the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311 *et seq.*, which was designed in part as a means to combat tax evasion. *See* H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397-98. During the years at issue, the FBAR was Form TD F 90-22.1 and it was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c).

An FBAR requires disclosure of, among other things, the maximum value of each foreign account during the calendar year reported, the type of account, the name of the financial institution in which the account is held, the account number, and the mailing address of the financial institution in which the account is held. *See* ECF No. 35-1 at 701-04, 733-40. Schedule

B of each year's Form 1040 alerts filers to the FBAR requirement through a query specific to the year at issue. For example, in 2007, Line 7a of the Schedule B to Form 1040 read:



ECF No. 35-1 at 401. Schedule B requires "Yes" to be checked on Line 7a if the filer had, among other things, an interest in a foreign financial account. *Id.* Schedule B further refers taxpayers to Form TD F 90-22.1 (the FBAR), which provides specific instructions for completing the form. *Id.*; *see also* ECF No. 35-1 at 701-04, 733-40.

The Secretary of the Treasury is authorized to impose a civil penalty on any person who does not comply with the requirement to report a foreign bank account. 31 U.S.C. § 5321(a)(5). Where the failure is "willful," the amount of this penalty cannot exceed the greater of $100,000 or 50% of the balance of the account at the time of the violation. *Id.* at §§ 5321(a)(5)(C)(i), (a)(5)(D). There is no reasonable cause exception for willful violations. *Id.* at § 5321(a)(5)(C)(ii).

A person is subject to the willful FBAR penalty under § 5321(a)(5) if the following four elements are met: (1) the person is a U.S. citizen; (2) the person had an interest in or authority over a foreign financial account; (3) the financial account had a balance that exceeded $10,000 at some point during the reporting period; and (4) the person willfully failed to disclose the account and file an FBAR for the account. *See, e.g.*, *U.S. v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2010); *U.S. v. Pomerantz*, No. 16-689, 2017 WL 4418572, at *2-3 (W.D. Wash. Oct. 5, 2017); *U.S. v. Toth*, No. 15-13367, 2017 WL 1703936, at *4 (D. Mass. May 2, 2017).

## ARGUMENT

I.    **There are genuine disputes of material fact as to whether Schwarzbaum willfully violated his FBAR reporting requirements for 2006 through 2009.**

A.    **The Legal Standard for Willfulness**

The BSA does not define "willful" or "willfully." 31 U.S.C. § 5321(a)(5). But, in the

FBAR context, willfulness may be shown through conduct that is knowing,[4] reckless, or exhibits willful blindness to the reporting requirements. *See McBride*, 908 F. Supp. 2d at 1209-10; *U.S. v. Williams*, 489 Fed. Appx. 655, 658 (4th Cir. 2012); *U.S. v. Bohanec*, 263 F. Supp. 3d 881, 890 (C.D. Cal. 2016); *U.S. v. Brandt*, No. 17-80671, 2018 WL 1121466, at *4 (S.D. Fla. Jan. 24, 2018) (Middlebrooks, J.). "'Recklessness' is an objective standard that looks to whether conduct entails 'an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Bohanec*, 263 F. Supp. 3d at 889 (quoting authority omitted); *Bedrosian v. U.S.*, 912 F.3d 144, 153 (3d Cir. 2018). "'[W]illful blindness' may be inferred where a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point[ing] to such liability." *Williams*, 489 Fed. Appx. at 658.

"[W]illfulness has been defined as conduct which is voluntary, rather than accidental or unconscious." *McBride*, 908 F. Supp. 2d at 1205 (collecting cases). "An improper motive or bad purpose is not necessary to establish willfulness in the civil context." *Id.* "[W]illfulness in the context of violations of § 5321 'may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information, and it can be inferred from a conscious effort to avoid learning about reporting requirements." *Norman v. U.S.*, 138 Fed. Cl. 189, 192 (2018), *appeal docketed*, No. 18-2408 (Fed. Cir. Sept. 21, 2018) (quoting *Williams*, 489 Fed. Appx. at 658); *see also McBride*, 908 F. Supp. 2d at 1205 ("[W]illful intent may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available.").

### B.    Schwarzbaum knowingly violated his FBAR reporting requirements.

Schwarzbaum presents virtually no argument to support his claim that he is entitled to judgment as a matter of law on the issue of whether he knowingly violated his FBAR reporting requirements. ECF No. 33 at 9. Instead, he makes the conclusory allegation that he did not know the "full extent" of his FBAR requirements, and he tries to distinguish himself from taxpayers in other willful FBAR cases. Schwarzbaum's failure to develop this argument is telling. In any event, there are genuine disputes of material fact as to whether he knowingly violated § 5314.

---

[4] Courts have held that actual knowledge of the FBAR requirement is not required to prove a knowing violation of § 5314. A taxpayer who signs a federal tax return that includes a Schedule B may be charged with constructive knowledge of the FBAR reporting requirement. *See McBride*, 908 F. Supp. 2d at 1206; *see also Williams*, 489 Fed. Appx. at 659.

Schwarzbaum knew he had a reporting requirement because he timely filed FBARs (which omitted most of his foreign accounts) for 2006, 2007, and 2009. ECF No. 34 at ¶ 40. He admits he knew he had a requirement to file the 2008 FBAR before the deadline, but claims that he failed to do so because he was recovering from a medical issue. *Id.* at ¶ 41. Faced with the undisputed facts that he knew he had to file FBARs and the FBARs he filed were materially false, Schwarzbaum admits he "assum[ed] that anything that does not have a U.S. connection does not have to be reported." ECF No. 35-1 at 146:3-7.[5]

Schwarzbaum also admits that he never told his U.S. tax return preparers (Brian Gordon, Doris Shaw, and Steven Weitz) about his Swiss accounts. *Id.* at 129:3-5; 143:22-25; 161:21-25; 162:6-10. According to Weitz, Schwarzbaum never disclosed information that would suggest he had a potential foreign tax issue. Ex. A at 81:19 to 82:1. Weitz also denies ever having discussed FBARs with Schwarzbaum. *Id.* at 33:6 to 34:7. According to Schwarzbaum, Gordon and Shaw told him that he did not have to pay U.S. income tax on monetary gifts received from a foreign source, yet Schwarzbaum admits he never asked if had to pay taxes on foreign income earned from those gifts (*e.g.*, interest earned on the funds in his Swiss accounts). ECF No. 35-1 at 125:2-6, 129:18-24. Schwarzbaum further admits that he only told Shaw about one of his Costa Rican accounts (he transferred money to that account from a U.S. account). *Id.* at 143:2-25. Even though Shaw told him he needed to file the 2006 FBAR (which he claims is the first time he heard of that requirement), Schwarzbaum never asked her if he had to report his other (much larger) foreign accounts. ECF No. 35-1 at 145:14 to 146:7. Such facts demonstrate his knowledge of the "extent" of his FBAR requirements.

Moreover, the plain language of the Schedule B to Schwarzbaum's 2006-2009 returns and the FBAR form does not mention anything about a "U.S. connection." Instead, the Schedule B asks the taxpayer to disclose if he had an interest in any foreign financial accounts that had a balance that exceeded $10,000 during the tax year and, if so, to list the countries in which the taxpayer had such accounts. Similarly, the FBAR form requires the accountholder to identify the

---

[5] Schwarzbaum's "U.S. connection" explanation further establishes willfulness in this case. He reported only those foreign accounts that involved money transfers to or from a U.S. bank; *i.e.*, the "U.S. connection." He reported those foreign accounts because he knew the U.S. bank would disclose any transfers that exceeded $10,000 to the IRS. Indeed, the BSA requires U.S. financial institutions to report to the IRS any cash transactions exceeding $10,000. 31 U.S.C. § 5313(a); *see also* 31 C.F.R. § 103.22(b)(1) (2006-2010).

"number of foreign financial accounts in which a financial interest is held." ECF No. 35-1 at 701. The instructions to the FBAR form provide in plain language that "[e]ach United States person, who has a financial interest in or signature authority, or other authority over any financial accounts, including bank, securities, or other types of financial accounts in a foreign country, if the aggregate value of those financial accounts exceeds $10,000 at any time during the calendar year, must report that relationship each calendar year by filing TD F 90-22.1 with the Department of the Treasury on or before June 30, of the succeeding year." *Id.* at 703. The form also defines what is meant by "financial account" and "account in a foreign country." *Id.* at 704.[6]

The above evidence alone supports a finding that Schwarzbaum had knowledge of the "full extent" of his FBAR reporting requirements, but there is more.[7] For example:

- ▪ <u>UMB account documents</u>: In March 2004, Schwarzbaum signed a document for one of his Swiss accounts at United Mizrahi Bank that discussed U.S. withholding tax and the consequences of investing in U.S. securities (*i.e.*, if he invested in U.S. securities, the IRS would be made aware of his account). ECF No. 35-1 at 1129-30. He instructed UMB <u>not</u> to invest in U.S. securities and advised that he did "not authorize the Bank to disclose [his] identity." *Id.* at 1130.

- ▪ <u>UBS and Clariden Leu account documents</u>: In June 2008, Schwarzbaum signed documents for two Swiss accounts (an account at UBS and an account at Clariden Leu), again waiving his right to invest in U.S. securities. For the UBS account, he waived his right to invest in U.S. securities and admitted that he was "aware of the tax regulations." ECF No. 35-1 at 882. Similarly, for the Clariden Leu account, he agreed that the bank would no longer process purchase orders for US securities "that could produce reportable amounts" under the bank's Qualified Intermediary Agreement with the U.S. *Id.* at 953.

---

[6] Schwarzbaum's self-serving testimony that he did not read carefully either the Schedule B to his returns (that falsely reported either he had no foreign accounts or that he had accounts in Costa Rica only), or the FBAR forms, and that he was not actually aware of the "full extent" of his reporting requirements does not negate willfulness. To hold otherwise would encourage taxpayers to sign tax returns and FBARs without reading them in the hope of avoiding any negative consequences from inaccurate reporting. *Novitsky v. Am. Consulting Eng'rs, LLC*, 196 F.3d 699, 702 (7th Cir. 1999). Taxpayers could then fabricate stories that they did not read or understand the documents that they signed and such stories would be almost impossible to refute. *Id.* As explained in *McBride*, a taxpayer cannot escape liability by claiming he did not read what he was signing and therefore his violation of the law was not willful. 908 F. Supp. 2d at 1207. The First Circuit succinctly described this issue when stating that "innocence cannot out-distance ignorance." *Katz v. U.S*, 321 F.2d 7, 10 (1st Cir. 1963) (noting that a return is not less inaccurate because the taxpayer chose to be uninformed as to the extent that the return is inaccurate).

[7] In light of the page limits and the fact that the United States is only opposing a summary judgment motion, our response does not include all of the evidence that will be presented at trial.

- <u>UBS Letter in 2009</u>: In October 2009, Schwarzbaum received a letter from UBS advising him that the IRS sent a treaty request for UBS records and that his account records were responsive to that request. ECF No. 35-12 at 2. UBS cautioned Schwarzbaum to retain a U.S. tax professional to advise him of his obligations under U.S. law, but Schwarzbaum opted to hire Swiss counsel to try and prevent the disclosure of his records to the U.S. ECF No. 35-1 at 203:18 to 205:13; Ex. D at 14-25. After receiving the letter, he retained Weitz to prepare his 2010 tax return, but he never mentioned the UBS letter to Weitz. *Id.* at 204:21-24, 208:11-13, 217:1-10. It was only when the Swiss courts rejected Schwarzbaum's argument and he knew that his UBS records would be turned over to the IRS that he entered into the IRS' voluntary disclosure program and disclosed his foreign accounts to the IRS. Ex. D at 14-25 (Swiss decision dated February 4, 2011); ECF No. 34 at ¶ 49 (Schwarzbaum's voluntary disclosure letter dated March 18, 2011).

- <u>Banca Arner account documents in 2009</u>: After receiving the UBS Letter, Schwarzbaum opened another Swiss account (account ending in 5228 at Banca Arner), again waiving his right to invest in U.S. securities. ECF No. 35-1 at 988-90.

- <u>Instructions to the foreign banks</u>: Schwarzbaum's additional steps to conceal his foreign bank accounts from the U.S. include the fact that some of the accounts were numbered accounts or had pseudonyms (ECF No. 35-1 at 257:15 to 258:12, 282:9 to 283:18),[8] he instructed some of the banks to hold his correspondence for a fee (ECF No. 35-1 at 893), and he authorized UBS to destroy certain documents after he viewed them. *Id.* at 193:8-11, 251:2-15, 744, 746, 749, 754.[9]

The evidence of Schwarzbaum's efforts to conceal his foreign accounts (and income from the accounts) combined with the fact that he failed to disclose material information to his U.S. tax return preparers establishes at a minimum that there is a genuine dispute as to whether he had knowledge of the extent of his FBAR reporting requirements.[10]

---

[8] Schwarzbaum testified that the sole reason he had numbered foreign bank accounts or used pseudonyms for those accounts was to protect himself from "nosy" bank employees. ECF No. 35-1 at 283:3-18. But, he does not use pseudonyms for his U.S. bank accounts "because it's not customary." *Id.* at 283:19-23.

[9] Courts have found that that such conduct supports a finding of willfulness. *See Norman*, 138 Fed. Cl. at 193-94 (noting that defendant's decision to open a numbered bank account "by definition, concealed her income and financial information" and that waiving the right to invest in U.S. securities is evidence of an intent to conceal financial information from the IRS); *Brandt*, 2018 WL 1121466, at *8 (concluding that the taxpayer "took steps to hide his ownership of the UBS account by executing written waivers of his right to invest in U.S. Securities to ensure UBS would not disclose the existence of his accounts to the IRS" and noting that "Brandt took steps to hide his ownership of the UBS account by telling UBS to retain his correspondence.").

[10] Schwarzbaum ignores this evidence and instead makes the conclusory argument that he was not willful because his "conduct is not comparable to other taxpayers determine to be willful

**C.**     **Schwarzbaum acted recklessly or with willful blindness.**

The evidence cited above is more than enough to withstand summary judgment on the issue of whether Schwarzbaum recklessly disregarded or was willfully blind to his FBAR reporting requirements. Schwarzbaum, however, attempts to avoid liability by pointing the finger at his U.S. tax return preparers. According to Schwarzbaum, his return preparers failed to ask the right questions that would require him to disclose that he had Swiss accounts.[11] Schwarzbaum's argument is without merit.

There is a genuine dispute as to whether Schwarzbaum even told his return preparers about the gifts he received from his father. Schwarzbaum claims that he went to three different U.S. tax return preparers and told them about the gifts he received from his father. Weitz disputes that claim. Ex. A at 81:15-18. But even if they knew about the non-taxable gifts, Schwarzbaum never told them about the Swiss accounts. ECF No. 35-1 at 116:1 to 117:18, 120:6-10, 126:11-14, 127:4-7, 129:3-5, 143:22-25, 161:21-25, 162:6-10. "[A] defendant's failure to inform his accountant about the existence of a foreign account is a strong indicator of a conscious intent to violate the law." *Flume*, 2019 WL 2807386, at *3 (collecting cases).

He also failed to ask his return preparers whether his foreign income in Switzerland was subject to U.S. tax, whether he had to report his foreign income to the U.S., and whether he had to report his Swiss accounts in an FBAR. *Id.* at 145:14 to 146:7. His foreign accounts had aggregate balances ranging from $2 million to over $28 million (ECF No. 35-1 at 459), yet he did not retain a U.S. tax professional to advise him as to his tax and reporting obligations for those accounts. Instead, he met with the return preparer annually to prepare his U.S. tax return

---

for FBAR violations." ECF No. 33 at 15. This attempt to distinguish his conduct fails. For example, he stresses how he employed "only CPAs to advise him on his U.S. tax filings" (*id.*), but he ignores the facts that he failed to disclose to any of the CPAs the existence of his Swiss accounts, he never told Weitz he had to file an FBAR, and he received the UBS letter.

[11] As this Court recently recognized, reliance on a tax return preparer is not a defense to a willful FBAR penalty. *See U.S. v. Dadurian*, No. 18-81276-RLR, 2019 WL 2577921, at *4-*5 (S.D. Fla. June 24, 2019) ("[W]hile reliance on professional tax advice may demonstrate reasonable cause for underpayment of a tax liability, reasonable cause is not a defense to a willful FBAR reporting violation.") (internal quotations omitted). Even if it were, his return preparers never told Schwarzbaum that he was not required to report the Swiss accounts in an FBAR, because he never even told them about his Swiss accounts. *See U.S. v. Flume*, No. 16-72-DS, 2019 WL 2807386, at *3 (S.D. Tex. June 11, 2019) (rejecting defendant's attempt to blame tax preparers for FBAR violations because he failed to disclose the foreign accounts "meaning they could not have known [the defendant] had an obligation to file an FBAR for the account").

without disclosing the full extent of his assets. *Id.* at 138:5-14; 161:5-13.

Schwarzbaum's conduct is significantly more egregious than other FBAR cases in which courts have held that the taxpayers' conduct constituted willfulness as a matter of law. For example, in *U.S. v. Horowitz*, No. 16-1997-PWG, 2019 WL 265107 (D. Md. Jan. 18, 2019), *appeal docketed*, No. 19-1280 (4th Cir. Mar. 15, 2019), the court concluded that the taxpayers recklessly disregarded their FBAR filing requirement because they signed their 2007 return under penalties of perjury, their 2007 return included a question of whether they had foreign accounts, followed by a cross-reference to "exceptions and filing requirements for Form TD-F 90-22.1," and they discussed their potential tax liabilities with their friends regarding their foreign accounts but not their tax return preparers. *Id.* at *15-*16.

In *Kimble v. U.S.*, 141 Fed. Cl. 373 (2018), *appeal docketed*, No. 19-1590 (Fed. Cir. Feb. 26, 2019), the court concluded that the taxpayer recklessly disregarded her FBAR requirements because she did not review her tax returns for accuracy for tax years 2003 through 2008 and she falsely answered "No" to Line 7a on the Schedule B to her 2007 Form 1040. *Id.* at 385-86.

In *Williams*, the Fourth Circuit reversed the district court's decision and held that the taxpayer's conduct constitutes willful blindness to the FBAR requirement because: (1) the taxpayer signed his 2000 return under penalties of perjury, which constituted "prima facie evidence that he knew the contents of the return"; (2) Line 7a's directions on the Schedule B to "[s]ee instructions for exceptions and filing requirements for Form TD F 90-22.1" put the taxpayer on inquiry notice of the FBAR requirement; (3) the taxpayer did not consult Form TD F 90-22.1 or its instructions; (4) the taxpayer did not disclose his foreign account in response to questions in a tax organizer; and (5) the taxpayer falsely reported that he had no foreign accounts in his Schedule B to his 2000 return. 489 Fed. Appx. at 659. Such conduct, the court concluded, "constitutes willful blindness to the FBAR requirement." *Id.* (citing authority omitted).

Like the taxpayers in *Horowitz*, *Kimble*, and *Williams*, Schwarzbaum signed his returns under penalties of perjury and his returns included a Schedule B that contained false information (*e.g.*, either denying that he had an interest in a foreign account or omitting reference to his Swiss accounts). But Schwarzbaum's conduct goes much farther: He completed an FBAR for 2006, 2007, and 2009, yet ignored the plain language of the document and reported only certain foreign accounts. He did not tell his return preparers about his Swiss accounts. And he ignored the notice from UBS in October 2009 that specifically instructed him to go to a U.S. tax return professional

10

to seek advice about his reporting requirements. He only heeded the advice in 2011, after he learned that his efforts to keep UBS from disclosing his account records to the IRS had failed.

In addition, Schwarzbaum signed documents with foreign banks instructing them not to send him correspondence to the U.S., not to invest in U.S. securities, and not to disclose his identity to the IRS. Again, it was only once Schwarzbaum realized that his efforts to prevent UBS from turning over account records to the IRS had failed and that he could become subject to criminal prosecution and other penalties that he decided to make a voluntary disclosure. Accordingly, in light of the overwhelming evidence of recklessness and willful blindness, the Court should deny Schwarzbaum's motion for summary judgment and determine at trial whether there is sufficient evidence of willfulness in this case.

## II.    The Court should not review the IRS penalty calculation until after a trial on willfulness, and the IRS determination should not be set aside.

### A.    The IRS made a reasoned decision and properly calculated a penalty for Schwarzbaum's willful failure to file accurate FBARs for 2006 to 2009.

The Court makes a *de novo* determination whether Schwarzbaum willfully failed to file accurate FBARs. *U.S. v. Williams*, No. 09-437, 2010 WL 3473311, at *1 (E.D. Va. Sep. 1, 2010), *rev'd on other grounds*, 489 Fed. Appx. 655 (4th Cir. 2012) (quoting *Eren v. Comm'r*, 180 F.3d 594, 597-598 (4th Cir. 1999)). The IRS's willfulness determination is not relevant to the Court's determination. Once the Court determines Schwarzbaum was willful, it only needs to review whether the IRS abused its discretion in calculating the penalty that was assessed.

The IRS's decision process began when a Revenue Agent ("RA") conducted an examination and made a recommendation. The RA's manager and a Technical Advisor reviewed the recommendation and approved the final decision. Then Schwarzbaum took advantage of an administrative appeal before the IRS assessed the penalty.

Schwarzbaum conflates the standard of review for the penalty calculation with the Court's *de novo* willfulness determination to argue that the elements of willfulness found by the IRS throw its penalty calculation into doubt. To the contrary, the facts Schwarzbaum mischaracterizes demonstrate the "rational connection between the facts found and the choice

made." *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1288 (11th Cir. 2019) (quoting *Motor Veh. Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Specifically:[12]

#1: Schwarzbaum benefitted by not reporting his Swiss income on his original tax returns. Doing so reduced his interest income for 2006 to 2009 by $2,351,131, resulting in a tax deficiency of $768,006, not merely the $20,475 he cites for 2006. ECF No. 34 at ¶ 80, ECF No. 35-21 at 2, ECF No. 35-25 at 2, ECF No. 35-26 at 2, ECF No. 35-27 at 2, 4.

#2: Schwarzbaum had an interest in 10 different Swiss accounts between 2006 and 2009 that had aggregate balances ranging from $2 million to over $28 million. ECF No. 35-1 at 459. Relying upon advice of others or choosing "conservative fixed income investments" does not mean that Schwarzbaum failed to actively manage his accounts.

#3: Schwarzbaum failed to report interest earned on foreign accounts on his original tax returns. That he "reported interest income from *certain* foreign accounts" does not excuse that he failed to report another $2,345,431 in income between 2006 and 2009 he had in his Swiss accounts. ECF No. 35-21 at 2, ECF No. 35-25 at 2, ECF No. 35-26 at 2, ECF No. 35-27 at 2, 4.

#4: Schwarzbaum testified that he did not tell his return preparers about his Swiss accounts. ECF No. 35-1 at 129:3-5; 143:22-25; 161:21-25; 162:6-10.

#5: Errors and omissions on Schwarzbaum's tax returns were not the fault of the preparer or the software the preparer used. Schwarzbaum is responsible for ensuring the accuracy of the returns he filed. *Williams*, 489 Fed. Appx. at 659. As detailed above, he never told his return preparers about his Swiss accounts.

#6: Schwarzbaum actively managed his money. Opening and closing Swiss accounts in 2008 to 2009, even if it were "because Swiss banks were failing," is evidence of active management. Schwarzbaum was attempting to diversify his investments to protect them.

#7: Schwarzbaum asked the Swiss banks not to send him mail to the U.S. and not to report his identity to the U.S. even though it meant he could not invest in U.S. securities. ECF No. 35-1 at 882, 893, 953, 988-90, 1129-30

#8: Schwarzbaum reported one of his Costa Rican bank accounts his is 2006, 2007, and 2009 FBARs and one Swiss account in the 2009 FBAR. ECF No. 35-1 at 639, 645-46. He likely reported those accounts because they involved transfers with a U.S. bank (which had an

---

[12] Each numbered paragraph responds to the same numbered paragraph in Schwarzbaum's motion. *See* ECF No. 33 at 11-12.

obligation to disclose transfers exceeding $10,000 to the IRS). At a minimum, he had reason to inquire whether his other Swiss accounts and foreign income should be reported.

At every turn, the IRS considered the information before it and made a reasoned determination regarding Schwarzbaum's culpability, which resulted in a properly calculated penalty. Now that his arguments failed to convince the IRS, Schwarzbaum tries to blame his tax return preparers for his failure to report his Swiss accounts and blame the IRS for viewing the facts in a different manner than he would like. That is not abuse of discretion by the IRS.

**B.      The IRS properly calculated the assessed willful penalties.**

Under 31 U.S.C. § 5321, the IRS had the authority to assess a penalty of the greater of $100,000 or 50% of the balance of the account for each omitted or inaccurately reported account for each year. The maximum penalty would have exceeded the balances in Schwarzbaum's accounts. Instead of assessing the maximum penalty, the IRS applied discretionary mitigation guidelines. At the time of the proposed assessment, the mitigation guidelines available to RAs were not yet in the Internal Revenue Manual. The IRS adopted formal mitigation guidelines in 2015. That the guidance was not yet finalized and added to the IRM does not make its use an abuse of discretion. The RA made a proposed assessment based on the guidance. It was then reviewed by his manager, a Technical Advisor, IRS counsel, and IRS appeals personnel before it was finally assessed. *See* ECF No. 35-18 at 5-14 (describing the FBAR examination process); *see also* Ex. B at IS_005146 to 64 (Schwarzbaum's letter appealing proposed IRS assessment).

**C.      The penalties that the IRS assessed against Schwarzbaum were well within the penalty limits afforded by the updated BSA.**

The IRS assessed FBAR penalties totaling $13,729,591 against Schwarzbaum for his willful failure to timely report most or all of his sizeable Swiss and Costa Rican bank accounts held in 2006, 2007, 2008 and 2009.

In 2004, through the American Jobs Creation Act ("the 2004 Act"), Congress updated the penalty provisions of the 1970 BSA. *See U.S. v. Schoenfeld*, No. 16-1248-MMH, 2019 WL 2603341, at *2 (M.D. Fla. June 25, 2019). Since 2004, Section 5321 of Title 31 authorizes the Secretary of the Treasury to impose a civil penalty on any person who does not comply with the requirement to report his foreign bank accounts. 31 U.S.C. § 5321(a)(5). As noted above, the penalty is divided into two categories depending on the violator's level of culpability, non-willful or willful. *Id.* For willful violators like Schwarzbaum, the maximum penalty "shall be the greater

of" of $100,000 or 50% of the balance in the account at the time of the violation. *Id.* at § 5321(a)(5)(C). The "time of the violation" was the deadline by which Schwarzbaum was required to file an FBAR, but did not. For instance, June 30, 2007 was the violation date for the foreign accounts he held during 2006, and June 30, 2008 was the violation date for the accounts he held during 2007. *See* 31 C.F.R. § 103.27.[13]

Schwarzbaum failed to report by June 30, 2009, about $27,612,445 he held in foreign accounts during 2008. *See* ECF No. 35-28. For that year alone, § 5321 thus authorized a penalty of up to $13,729,591 — the total amount that the IRS assessed against Schwarzbaum for 2006 through 2009. But each failure to file an FBAR is its own violation, and Schwarzbaum violated his reporting duties each year for at least four tax years in a row (2006 through 2009). Under § 5321(a)(5)(C), the IRS could have added millions of dollars more, for 2006, 2007 and 2009, to this $13.7 million dollar penalty.[14] Instead, the IRS spread the $13.7 million penalty across the four years that Schwarzbaum failed to report his interest in foreign accounts.

The penalties are thus well within the limits of the 2004 Act. Schwarzbaum appears to concede this. He instead argues that the 2004 Act vests the Secretary of the Treasury with the authority to impose the penalties up to the statutory limit, and that the IRS has used this delegated authority to *further* limit itself to penalties of $100,000 or less, by retaining a regulation on the books since 1987. That regulation, 31 C.F.R. § 1010.820(g), tracks the lower penalty limits set in the statute that preceded the 2004 Act. The regulation directs that a civil penalty for the failure to report a foreign account is "not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000." *Id.* Two earlier courts have accepted Schwarzbaum's argument binding the IRS to the regulation issued before the 2004 Act. *See U.S. v. Wahdan*, 325 F. Supp. 3d 1136 (D. Colo. 2018); *U.S. v. Colliot*, No. 16-1281-SS, 2018 WL 2271381 (W.D. Tex. May 16, 2018). But those courts are in a quickly diminishing minority.

The last *six* courts to consider this argument have rejected it. *See Schoenfeld*, 2019 WL 2603341 at *4 (collecting cases). As the *Schoenfeld* Court explains before joining them, each of

---

[13] This was the regulation in force at the time of Schwarzbaum's violation. In 2011, the FBAR reporting deadline regulation was relocated to 31. C.F.R. § 1010.306.

[14] The IRS could have also assessed (approximate) penalties of $1.173 million for 2006, $8.86 million for 2007 and $11.65 million for 2009. ECF No. 35-28.

these courts "has concluded that the [2004] statute and the regulation conflict, the statute controls, and, as such, the IRS is not bound by the limit in the regulation." *Id.* (internal citations omitted); *U.S. v. Park*, No. 16-10787, 2019 WL 2248544 at *9 (N.D. Ill. May 24, 2019) ("Congress specifically and intentionally raised the maximum penalty for FBAR violations, and no regulation promulgated by the Secretary can reduce it again. Administrative regulations exist to implement statutes, not alter them."); *U.S. v. Garrity*, No. 15-243-MPS, 2019 WL 1004584 at *3 (D. Conn. Feb. 28, 2019), *appeal docketed*, No. 19-1145 (2d Cir. Apr. 25, 2019) ("In the 2004 legislation, Congress specified that the higher penalties for willful FBAR violations would take effect immediately once the amendments were enacted . . . . The Secretary could not override Congress's clear directive to raise the maximum willful FBAR penalty by declining to act and relying on a regulation parroting an obsolete version of the statute."); *Horowitz*, 361 F. Supp. 3d at 515 ("Although, the [2004 Act] is inconsistent with 31 C.F.R. § 1010.820(g)(2), it is settled law that an agency's regulations 'must be consistent with the statute under which they are promulgated.' …[thus], the April 8, 1987 regulations are 'no longer valid.'") (citations omitted); *Kimble*, 141 Fed. Cl. at 389 ("[T]he [2004] Act replaced the prior penalty for willful violations of federal tax law … thereby nullifying any inconsistent regulations governing the pre-2004 statute."); *Norman*, 138 Fed. Cl. at 196 ("[B]ecause § 5321(a)(5)(C)(i) mandates that the maximum penalty be set to the greater of $100,000.00 or 50% of the balance of the account, the regulation is no longer consistent with the amended statute. Therefore, 31 C.F.R. 1010.820 is no longer valid.") (citation omitted).

Schwarzbaum tries to confront this growing wave of adverse case law by implying these decisions are called into question by the June 2019 Supreme Court decision in *Kisor v. Wilkie*, 588 U.S. ___, 139 S. Ct. 2400, 2408 (2019). ECF No. 33 at 13. But *Kisor* has nothing to do with this issue and no bearing on the decisions in *Schoenfeld*, *Park*, *Garrity*, *Horowitz*, *Kimble*, and *Norman*. *Kisor* addresses the deference due to an agency's "readings of genuinely ambiguous regulations." *Kisor*, 588 U.S. ___, 139 S. Ct. at 2408. It would come into play only when "interpreting the regulation involves a choice between (or among) more than one reasonable reading." *Id.* at 2410. None of the courts in *Schoenfeld*, *Park*, *Garrity*, *Horowitz*, *Kimble*, or *Norman* found an ambiguity in the regulation. None of the opinions even mentions the word "ambiguous." Instead, they concluded that the regulation from 1987, 31 C.F.R. § 1010.820(g)(2), is straightforward and unambiguous, but does not bind the IRS because it is inconsistent with the

2004 Act. In each of those cases, the court ruled that the 1987 regulation was overridden for conflicting with the 2004 Act, and thus the regulation did not bind the IRS. *Schoenfeld*, 2019 WL 2603341 at *4; *Park*, 2019 WL 2248544 at *9; *Garrity*, 2019 WL 1004584 at *3; *Horowitz*, 361 F. Supp. 3d at 515; *Kimble*, 141 Fed. Cl. at 389; *Norman*, 138 Fed. Cl. at 196.

On the way to this conclusion, some courts have addressed the argument — also aired by Schwarzbaum — of whether the agency retained or revived the lower penalty limit in the 1987 regulation even after Congress passed the 2004 Act. That argument has been repeatedly rejected.[15] In any case, it turns on an ambiguity not in the *regulation* but in the 2004 Act itself. *See, e.g., Schoenfeld*, 2019 WL 2603341 at *5 ("Notwithstanding this clear statutory language, Schwarzbaum maintains that 31 U.S.C. § 5321(a)(5) is permissive in nature[.]").[16] The argument that the 2004 Act is ambiguous has also been rejected by the last five courts to consider it. *See, e.g.*, *Norman*, 138 Fed. Cl. at 196 (the 2004 Act "mandates that the maximum penalty allowable for willful failure to report a foreign bank account be set at a specific point" . . . this text is

---

[15] The reasoning is straightforward, unlike Schwarzbaum's attempt to shoehorn *Kisor* into an inapposite legal and factual setting. The failure to repeal 31 C.F.R. § 1010.820(g)(2) is not a continuing endorsement of that regulation's vitality by the Department of the Treasury. The 2004 Act went into effect immediately upon enactment. *See* American Jobs Creation Act of 2004, § 821(b) ("The amendment made by this section shall apply to violations occurring after the date of the enactment of this Act."). Consequently, it "is a self-executing statute, requiring no regulatory implementation." *U.S. v. Paul*, 23 F.3d 365, 367 (11th Cir. 1994). What is more, the Supreme Court has recognized that "[t]he Treasury's relaxed approach to amending its regulations to track Code changes is well documented." *United Dominion Indus., Inc. v. U.S.*, 532 U.S. 822, 836 (2001). For that reason, the Court has refused to read "any affirmative intention" into the failure to amend a regulation. *Id.* at 836-37; *accord Umbach v. Comm'r*, 357 F.3d 1108, 1112 (10th Cir. 2003); *Knochelmann v. Comm'r*, 455 Fed. Appx. 536, 539 (6th Cir. 2011). Thus, when Congress amends a statute in ways that invalidate preexisting regulations, the failure to "formally withdraw[ ] regulations from the Code of Federal Regulations does not save them from invalidity." *Barseback Kraft AB v. U.S.*, 121 F.3d 1475, 1480 (Fed. Cir. 1997); *see also Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) ("[T]he existence of a parroting regulation does not change the fact that the question [involves] the meaning of the statute.").

[16] Accordingly, even the earlier two decisions that side with Schwarzbaum's position addressed the issue as one of whether a *straightforward* regulation conflicted, or not, with an arguably ambiguous statute. *Wahdan*, 325 F. Supp. 3d at 1139 ("For a statute to supersede a regulation, it has to be clearly inconsistent with the regulation . . . [but] the statute and the regulation are not inconsistent on their face."); *Colliot*, 2018 WL 2271381, at *2 ("considered in conjunction with [the statute], § 1010.820 is consistent with [the statute's] delegation of discretion to determine the amount of penalties to be assessed.") Thus, even those decisions most favorable to Schwarzbaum cut against his attempt to apply *Kisor* where it does not belong.

unambiguous. . . Congress clearly stated its intent to raise the maximum amount of FBAR penalties when it passed the [Act] in 2004."). But even if they had not, we are already far afield from *Kisor*, which deals with ambiguity in regulations.

*Kisor* is a *non sequitur*. It should not deter this Court from concluding, along with the courts in *Schoenfeld*, *Park*, *Garrity*, *Horowitz*, *Kimble*, and *Norman*, that the IRS was not constrained by the obsolete regulation and the $13.7 million dollar penalty assessed against Schwarzbaum was well within what the law allows.

**D.    The FBAR Penalties Do Not Violate Any Purported Duty of Consistency.**

Schwarzbaum argues that because the IRS did not assess civil fraud penalties under Title 26, then it should not have assessed willful FBAR penalties under Title 31. His citations do not support a duty of consistency that he implies, and he refers to entire titles of the United States Code as "nearly identical statutes." Narrowing the comparison to the appropriate statutes causes this argument to fall apart. The burden of proof for civil fraud penalties under I.R.C. § 6663 is clear and convincing evidence of fraud. *Cooley v. C.I.R.*, 87 T.C.M. 1025 (T.C. 2004); 2004 WL 406756, at *7. However, willful FBAR penalties under 31 U.S.C. § 5321 are proved by only a preponderance of the evidence without a showing of any improper motive or bad purpose. *McBride*, 908 F. Supp. 2d at 1204. For a civil tax fraud penalty, Congress required an underpayment of tax, *see* § 6663(a), while the FBAR statute only requires a willful failure to comply, *see* 31 U.S.C. § 5321(a)(5)(A). In other words, the IRS may impose a willful FBAR penalty even if there was no underpayment of tax.

**III.    The FBAR penalties are not unconstitutional under the Eighth Amendment.**

Schwarzbaum argues that the FBAR penalty assessed against him is unconstitutional under the Eighth Amendment because it violates the Excessive Fines Clause. ECF No. 33 at17-19. He bears the burden to show that the FBAR penalty is unconstitutionally excessive. *See U.S. v. Delgado*, 959 F. Supp. 1523, 1528 n.6, (S.D. Fla. 1997).

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. To establish that a civil penalty is unconstitutional under the Excessive Fines Clause, Schwarzbaum must show: (1) that the exaction at issue is a "fine" within the scope of the Eighth Amendment; and (2) that the fine is "excessive." *See U.S. v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016); *Dewees v. U.S.*, 272 F. Supp. 3d 96, 100 (D.D.C. 2017) ("In analyzing an excessive fines claim, the Court

must first decide whether a penalty is a fine before determining if it is unconstitutionally excessive.").

As a threshold matter, the three cases cited by Schwarzbaum in support of his excessive fines argument are inapplicable here, because they involved forfeiture actions incident to criminal conviction (as in *Bajakajian*), involved civil proceedings for *in rem* forfeitures and not *in personam* penalties (as in *Austin*), or adopted a *per se* rule that FBAR penalties, so long as they do not exceed the statutory maximum, are never excessive under Ninth Circuit precedent because civil assessments resulting from defrauding the government and reduce public revenues comport with the Eighth Amendment (*Bussell*).

Schwarzbaum's reliance on the district court opinion in *Bussell* is misplaced. While it is true that the district court found that the willful FBAR assessments against Ms. Bussell violated the excessive fines clause, the reduction of the FBAR assessment was relatively small, from $1,221,806 to $1,120,513. The district court reduced the penalty because the original assessment made by the IRS exceeded 50% of the account balance in the year at-issue. *See U.S. v. Bussell*, 2015 WL 9957826, at *8-9 (C.D. Cal. Dec. 8, 2015). Because the IRS assessed a penalty that exceeded the cap set by Congress in the 2004 Act, the penalty was reduced by $101,293, so that it exactly met the cap of 50% of the account balance. *Id.*; *see also U.S. v. Chaplin's, Inc.*, 646 F.3d 846, 851-52 (11th Cir. 2011) (giving "great weight" to the amount of penalties fixed by Congress and explaining that a defendant "would need to present a very compelling argument" to show that a penalty that falls within the Congressional limit is nevertheless excessive for Eighth Amendment purposes). Here, Schwarzbaum concedes that his penalties fall under the statutory maximum and, as a result, his Eighth Amendment argument fails.

Even if the Court were to indulge Schwarzbaum's argument to modify or extend the existing law, excessive fines scrutiny is not ripe at summary judgment.[17] These arguments are best suited for post-trial briefing if the Court is inclined to engage in an excessive fines analysis.

_____

[17] Schwarzbaum's Eighth Amendment challenge is not ripe at the summary judgment stage because the FBAR penalties he may be liable for are not fixed until the Court's willfulness determination, and any inquiry under *Bajakajian* or *Austin* is premature. *See, e.g.*, *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995) (holding that an excessive fines challenge is not ripe until the impending imposition of the challenged fine). Furthermore, as demonstrated by the post-trial briefing in *Garrity*, 2019 WL 1004584, at *6-9 (D. Conn. Feb. 28, 2019), any analysis under the *Bajakajian* four-factor framework would require the Court to apply specific findings of

At best, Schwarzbaum's argument and cited cases stand for the unremarkable proposition that a willful FBAR assessment that exceeds the statutory cap imposed by Congress (*i.e.*, 50% of the applicable account balance for each year) violates the excessive fines clause. But, as already discussed above, the IRS did not assess the statutory maximum willful FBAR penalties against Schwarzbaum for all of his unreported foreign accounts. Rather, it assessed far less than it could have under the applicable statute, and thus the penalties at-issue in this case are in accord with *Bussell*, and no analysis of the four-factor *Bajakajian* test is warranted.[18]

 Schwarzbaum's passing "excessive" argument relies on testimony from a former IRS RA that is inadmissible in this *de novo* proceeding. For all these reasons, the FBAR penalties assessed against Schwarzbaum do not implicate the Eighth Amendment and are not unconstitutionally excessive.

**IV.     The IRS timely assessed FBAR penalties against Schwarzbaum.**

Section 5321(a) sets a six year time limit for assessing an FBAR penalty, which starts to run "*on the date of the transaction* with respect to which the penalty is assessed." *Id.* (emphasis added). The 2006-2009 FBAR penalties at issue were required to be assessed by June 30, 2013; June 30, 2014; June 30, 2015; and June 30, 2016, respectively. But Schwarzbaum signed consents agreeing "to extend the time during which the penalties provided by 31 U.S.C. § 5321 may be assessed and collected." Exs. E, F, G. The new deadline for assessment became December 31, 2016, and the IRS assessed the penalties on September 6, 2016.

Schwarzbaum now argues the extension is void and the assessments were made out of time, since no provision in Title 31 grants the IRS the authority to enter into these extension agreements. The Internal Revenue Code (Title 26) at Section 6501(c)(4) expressly allows for extension agreements with respect to tax assessments, but Title 31 does not. And so, Schwarzbaum mistakenly posits, the IRS is improperly foisting these Title 26 creations onto

---

fact adduced at trial. Because this case is at the summary judgment stage, there are no findings of fact and an excessive fines analysis is premature and should be reserved until after trial. As the Eleventh Circuit has observed, the factors for an excessive fines analysis "vary from case to case," and *Bajakajian* does not contain an exhaustive list.  *Chaplin's, Inc.*, 646 F.3d at 851 n.16.

[18] Schwarzbaum did not address *Bajakajian* except by referring to *Bussell*– distinguishable on its facts–so any attempt by Schwarzbaum in his reply to analyze the penalties at-issue under the four-factor *Bajakajian* analysis is waived since it was not raised in his opening brief. *See, e.g.*, *Bruhl v. Price Waterhouse Coopers Int'l, Ltd.*, No. 03-23044, 2006 WL 8431886, at *3 n.7 (S.D. Fla. Apr. 3, 2006) (Marra, J.) (collecting cases).

taxpayers facing Title 31 penalties. ECF No. 33 at 20. The IRS does not need an express grant under Title 31 (or anywhere else) to obtain agreements to extend the FBAR assessment deadline.

Federal statutes of limitation can ordinarily be tolled by agreement, as long as Congress does not "override this general rule and prohibit tolling by agreement." *Nat'l Credit Union Admin. Bd. v. Barclays Capital Inc.*, 785 F.3d 387, 392 (10th Cir. 2015) (citing *Hemshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013)). Since Title 31 contains no such prohibition, the time limit for assessing FBAR penalties can be waived as long as the limitation is not "jurisdictional." *See Sec'y, U.S. Dept. of Labor v. Preston*, 873 F.3d 877, 881-83 (11th Cir. 2017). The language of § 5321(b)–whereby "[t]he Secretary may assess a civil penalty . . . at any time before the end of the 6 year period"–is plainly not a "jurisdictional limitation," given that deadlines "ordinarily are not jurisdictional," Congress must "clearly" imbue a time limit with "jurisdictional consequences," and the Eleventh Circuit has found a provision containing a much stronger demand ("No action may be commenced . . . after") to be non-jurisdictional. *Preston*, 873 F.3d at 881-82. Thus, the IRS can enter agreements to extend the assessment deadlines. It would be inequitable for Schwarzbaum, who was advised by counsel during the IRS Appeals process that he initiated, to induce the IRS to rely on the extension in order to finish the review he requested, only to escape assessment now by claiming that the extension is void.

Schwarzbaum knowingly agreed to an extension of the assessment deadline set by § 5321(b). After noting that a criminal defendant can waive Fourth, Fifth, Sixth and Seventh Amendment rights, the *Preston* Court notes "[i]t would be passing strange — bizarre, in fact — to conclude that while a litigant can renounce his most basic freedoms under the United States Constitution, he is powerless to waive the protection of … ERISA's [six-year] statute of repose. No way." *Preston*, 873 F.3d at 887. Here too, Schwarzbaum's claim that he could not waive the six-year limitation on assessment must fail.

## CONCLUSION

For the foregoing reasons, the U.S. requests that the Court deny Schwarzbaum's motion.

Dated: July 31, 2019               Respectfully submitted,

                                   RICHARD E. ZUCKERMAN
                                   Principal Deputy Assistant Attorney General

                              By: */s/ Mary Elizabeth Smith*
                                   MARY ELIZABETH SMITH
                                   JOHN P. NASTA, JR. (Fla. Bar No. 1004432)
                                   MICHAEL N. WILCOVE
                                   JEFFREY N. NUNEZ
                                   Trial Attorneys, Tax Division
                                   U.S. Department of Justice
                                   P.O. Box 14198
                                   Washington, D.C.  20044
                                   202-353-1988 (v)
                                   202-514-9868 (f)
                                   mary.e.smith@usdoj.gov
                                   john.nasta@usdoj.gov
                                   michael.n.wilcove@usdoj.gov
                                   jeffrey.n.nunez@usdoj.gov

                                   *Of Counsel*

                                   ARIANA FAJARDO ORSHAN
                                   UNITED STATES ATTORNEY