IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| ISAC SCHWARZBAUM, | ) |
| Defendant. | ) |

**PLAINTIFF UNITED STATES' MOTION TO REPATRIATE FOREIGN ASSETS**

The United States requests an order requiring Isac Schwarzbaum to repatriate assets held in Swiss banks for application to his unpaid civil penalties and the related amended judgment entered against him in excess of $15 million.

Because the United States seeks a collection remedy pursuant to the Federal Debt Collection Procedures Act ("FDCPA", Title 28 U.S.C. §§ 3001-3308), notice and an opportunity to be heard must be given to Isac Schwarzbaum in the form specified under 28 U.S.C. § 3202(b)-(d), which is included as <u>Exhibit A</u>. Such notice is required to be issued by the Clerk upon the commencement of an FDCPA collection action, and United States requests that the Court order the Clerk to issue the notice forthwith since it is required without regard to a defendant's opposition to the proposed collection action and regardless of whether the Court grants or denies the collection mechanism requested.[1]

---

[1] Once the Clerk issues the required notice, the United States will serve it on Schwarzbaum in Switzerland where he now resides, and upon his counsel, who will also receive service of this motion via the Court's CM/ECF system, as indicated by the NEF.

I. **Background.**

On August 27, 2018, the United States filed a four-count complaint against Schwarzbaum. The complaint alleged that he willfully failed to timely report his financial interest in foreign bank accounts for the calendar years 2006–2009 as required by 31 U.S.C. § 5314. ECF No. 1. The matter proceeded to a five-day bench trial. *See* ECF Nos. 77–81. On March 20, 2020, the Court issued *Findings of Fact and Conclusions of Law*, finding a willful failure to report for 2007, 2008, and 2009. ECF No. 92. On August 28, 2020, the Court issued an *Amended Final Judgment* for $12,555,813, plus further accruals of late payment penalties and interest. ECF No. 105. The United States recorded an abstract of judgment in Palm Beach County, FL, on May 3, 2021.

As of May 31, 2021, Schwarzbaum is indebted to the United States in the aggregate amount of $16,570,423.54, comprised of civil penalties pursuant to 31 U.S.C. § 5321(a)(5), late payment penalties pursuant to 31 U.S.C. § 3717(e)(2), and pre-judgment interest pursuant to 31 U.S.C. § 3717(a)–amounts he has not paid to date. Post-judgment interest pursuant to 28 U.S.C. § 1961 and late-payment penalties continue to accrue from and after May 19, 2020 and are included in the total set forth above. And as discussed below, because the United States must now take action to collect, and in accordance with 28 U.S.C. § 3011, the United States is also entitled to recover a surcharge of ten percent of the debt owed, which equals $1,657,042.35, as-of May 31, 2021.[2]

---

[2] The calculation method of the pre-judgment interest and late payment penalties are set forth in the United States post-judgment motion, ECF No. 102, ¶¶ 11 and 12. The late payment penalty and interest continue to accrue until the civil FBAR penalty is paid in full. *See United States v. Garrity*, No. 3:15-CV-243(MPS), 2019 WL 1004584, at *9 (D. Conn. Feb. 28, 2019), *appeal*

(continued...)

Schwarzbaum has not satisfied his judgment debt to the United States, nor has he even indicated whether he will begin the steps to make any payment. To the contrary, as set forth below, it appears that both before and after the trial Schwarzbaum took steps to render himself judgment proof by moving his assets outside the Court's jurisdiction or disposing of them. Schwarzbaum sold his home in Palm Beach County three months after the Court's ruling against him. And Schwarzbaum keeps tens of millions of dollars in assets overseas. For example, for the calendar year 2019, Schwarzbaum reported to the IRS that he had more than $49 million in three Swiss banks: $35,418,470 in five accounts at Privatbank Reichmuth & Co.; $13,981,378 in two accounts at Rahm & Bodmer; and $148,779 in two accounts at PostFinance AG; all as of December 31, 2019 (the filing deadline for reporting these interests for calendar year 2020 had not yet occurred when Schwarzbaum produced records to the United States). Under 28 U.S.C. § 3202(a), the United States is entitled to the entry of an order requiring Schwarzbaum to repatriate (return to the United States) all foreign assets up to the amount that he owes under the *Amended Final Judgment* so that these assets may be applied to that judgment debt.

It is unreasonable to expect that Schwarzbaum will voluntarily pay the judgment. On several occasions Schwarzbaum, through counsel, informed the United States that he had sought the advice of Swiss legal counsel regarding his financial holdings in Switzerland. His understanding of the advice purportedly led him to believe that his Swiss assets could not be forcibly reached by the United States to satisfy any judgment entered against him in this case,

---

*withdrawn*, No. 19-1145, 2019 WL 3384830 (2d Cir. July 23, 2019); *United States v. Lee*, No. 2:19-CV-00769-LA, 2020 WL 4573259, at *1 (E.D. Wis. July 22, 2020).

and as a result Schwarzbaum would not voluntarily pay a prospective judgment since he believed his assets were beyond the reach of the United States' collection efforts.

As to his domestic assets, in a phone call between counsel on December 8, 2020, counsel again relayed Schwarzbaum's belief that he did not think the judgment was enforceable because the bulk of his assets were held in Switzerland. In that call, his counsel said that Schwarzbaum had sold his personal residence in Jupiter, FL, and that he had in essence "given up on the United States," and had moved to Switzerland with no intent to return to the United States or to satisfy the judgment. We confirmed the June 16, 2020 sale of the Jupiter residence.[3] Schwarzbaum's sale of his residence in Florida just as the stay on execution of judgment was set to expire, and Schwarzbaum's abrupt move to Switzerland, shows that he will not pay the judgment voluntarily. *See also* Exhibit B, declaration of counsel for the United States. The totality of Schwarzbaum's actions before and after trial to render himself judgment-proof, and his refusal to pay, places collection of the judgment in jeopardy because, as discussed below, the United States cannot use traditional enforcement mechanisms to execute, garnish, or levy upon assets located in the United States because Schwarzbaum has secreted them away in Switzerland.

The United States has, therefore, begun to take additional steps to enforce the judgment. Pursuant to Fed. R. Civ. P. 62(a), execution on the *Final Judgment* was stayed for 30 days. This means that on or after June 17, 2020, the United States was free to take steps to collect on the judgment, including execution under 28 U.S.C. § 3203. On August 12, 2020, the United States

---

[3] In his post-judgment discovery responses, Schwarzbaum avers that he resided at 250 Edenberry Ave., Jupiter, FL, "until June 16, 2020," but that he now resides in Heiligkreuz, Switzerland. Exhibit E, p.1. As set forth in the warranty deed recorded with the Palm Beach County Recorder at Book 31513, Page 1855, Schwarzbaum (via his trust) transferred his residence on June 17, 2020. We request the Court take judicial notice of Schwarzbaum's transfer of his primary residence since the deed is a publicly recorded document.

sent a letter to Schwarzbaum demanding full payment and providing instructions for sending the payment. On August 28, 2020, the United States sent a revised letter to reflect the amount of the *Amended Final Judgment*, and notified Schwarzbaum that the deadline for him to voluntarily pay the judgment debt was September 11, 2020, after which the United States would pursue forced collection. *See* Exhibits C & D. Schwarzbaum has neither paid anything nor responded to the demand letters. Schwarzbaum's debts to the United States are still due and owing, along with post-judgment interest under 28 U.S.C. § 1961, and late-payment penalties under 31 U.S.C § 3717(e)(2). The United States is also entitled to recover a surcharge of ten percent of the amounts owed, and in its August 28th demand letter, the United States notified Schwarzbaum of that surcharge.[4]

On November 17, 2020, the United States served Schwarzbaum with post-judgment discovery pursuant to 28 U.S.C. § 3015(a) and Fed. R. Civ. P. 69(a)(2). On January 27, 2021, Schwarzbaum served his discovery responses, and confirmed that he has no collection potential from assets in the United States because he moved them all offshore.[5] *See* Exhibits E & F (post-judgment discovery responses). He confirmed he has over $49 million in assets held in

---

[4] The surcharge, authorized by 28 U.S.C. § 3011(a), applies once a judgment debtor fails to pay the amount due under a judgment pursuant to a demand for payment, and the United States must resort to post-judgment remedies under the Federal Debt Collection Procedures Act to enforce the claim for the judgment debt. *See Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1476 (S.D. Fla. 1997) (ordering payment of the ten-percent surcharge to cover litigation costs of collecting a federal debt).

[5] At trial, Joint Exhibit 9 and Schwarzbaum's testimony demonstrated that in October and November 2009, Schwarzbaum transferred the bulk of his liquid assets from the United States to his Societe Generale account in Switzerland after he received the letter from UBS AG informing him that his accounts at UBS were within the scope of the United States' treaty request. *See Transcript of Trial Day 3*, ECF No. 79, at 40:7-44:15 (evidencing liquidations and transfers from Schwarzbaum's accounts at Bank of America, and Scottrade, Inc., as well as from his bank account in Costa Rica into his Societe Generale account in Switzerland).

Switzerland that can be used to satisfy the *Amended Final Judgment*. See <u>Exhibit G</u> (2019 FBAR provided by Schwarzbaum as part of his discovery responses). The United States also recorded an abstract of judgment in Palm Beach County, Florida.[6] The United States is not otherwise able to enforce the *Amended Final Judgement* because Schwarzbaum does not hold sufficient assets in the United States to satisfy the amount he owes.

While he appears to lack assets in the United States, Schwarzbaum's discovery responses and most recent FBAR filings show that he can readily pay the *Amended Final Judgment*. Schwarzbaum reported to the IRS that he maintains bank and securities accounts at Privatbank Reichmuth & Co., and at Rahm & Bodmer, both located in Zurich, Switzerland, and at PostFinance AG, located in Muenchenstein, Switzerland, with balances totaling $49,548,627. Exhibit G.

Schwarzbaum's refusal to satisfy the judgment appears deliberate and directly subverts this Court's authority. As noted by the Court, the civil FBAR penalty is remedial in nature, and is meant to reimburse the United States for the costs incurred by the IRS for its lengthy investigation and enforcement efforts regarding Schwarzbaum's failure to comply with the Bank Secrecy Act, and to uphold the enforcement of federal law in general. *See generally* ECF No. 98, pp.10-15. Schwarzbaum should not be allowed to avoid paying his judgment debt any longer by keeping funds in foreign bank accounts when it was the maintenance of similar, unreported, foreign accounts that he was found liable for in the first place. An order that Schwarzbaum repatriate the funds in his Swiss accounts is appropriate, up to the amount he owes to the United States pursuant to the *Amended Final Judgment*. That total equals the amount of the judgment

---

[6] The United States' abstract of judgment is recorded with the Palm Beach County Recorder at Book 32446, Page 1844.

against Schwarzbaum, plus the 10% surcharge under 28 U.S.C. § 3011(a), and accrued late-payment penalties and post-judgment interest. As of May 31, 2021, the total Schwarzbaum owes the United States is $18,227,465.89, with penalties and interest continuing to accrue.

## II. **Argument.**

### A. The Federal Debt Collection Procedures Act authorizes execution against a U.S.-based bank account to satisfy a federal debt

Under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001–3308, the remedies listed are the "exclusive civil procedures" for the United States to recover on the amount owed to the United States. *See* 28 U.S.C. § 3001(a); *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1252 (11th Cir. 2020); *United States v. Bedi*, 318 F. Supp. 3d 561, 565 (N.D.N.Y. 2018); *Mahler v. United States*, No. 01-14152, 2001 WL 1572070, at *1 (S.D. Fla. Oct. 5, 2001). Under the FDCPA, property "includes any present or future interest … wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))[.]" 28 U.S.C. § 3002(12).[7] Under Section 3202, the United States may enforce a judgment by the enumerated remedies listed in Subchapter C (§§ 3201–3206). In support of these remedies the United States may also avail itself of any writ that a district court may issue under the All Writs Act, 28 U.S.C. § 1651. *See* 28 U.S.C. § 3202(a). All property of the judgment debtor where there is a substantial nonexempt interest is subject to levy pursuant to a writ of execution. 28 U.S.C. § 3203(a) and (c); *see also* Fed. R.

---

[7] The definition in the FDCPA tracks the definition of "property" under the bankruptcy code, which defines property of the estate to include "property, wherever located and by whomever held." 11 U.S.C. § 541(a). Bankruptcy courts have held that property held abroad by a debtor is subject to a repatriation order and must be brought back into the United States. *See, e.g.*, *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, No. 6:03-BK-00299-KSJ, 2011 WL 3585827, at *2-*4 (Bankr. M.D. Fla. Jul. 28, 2011).

Civ. P. 69(a); *United States v. Toll*, Case No. 16-cv-60922, 2016 WL 4549689, at *4 n.2 (S.D. Fla. Sep. 1, 2016) (Bloom, J.).

Property in which the judgment debtor has a substantial non-exempt interest that is in the custody of another person is subject to a writ of garnishment. When served with a writ of garnishment, the holder of the property generally must turn it over to the United States for satisfaction of the judgment debt. 28 U.S.C. § 3205(a)-(b); *United States v. McArthur*, 7 F. Supp. 3d 1220, 1221-22 (S.D. Ala. 2014) (bank accounts); *United States v. Fussell*, Case No. 11-60175, 2013 WL 12080161, *1, *3-*4 (S.D. Fla. Oct. 31, 2013) (Lenard, J.) (IRA accounts). District courts, however, lack subject matter jurisdiction to issue writs of garnishment to a judgment debtor's bank account in another state or in a foreign country. *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1340-42 (M.D. Fla. 2015) (holding that accounts in New York could not be garnished by a district court in Florida); [8] *Inversiones Y Procesadora Tropical Inprosta, S.A. v. Del Monte Int'l GMBH*, Case No. 16024275, 2020 WL 6384878, at*4 (S.D. Fla. Aug. 5, 2020) (Louis, M. J.) (holding that accounts in Costa Rica could not be garnished by a district court in Florida but that as a general proposition the Court had personal jurisdiction over a party and could order that party to turn

---

[8] The district court in *Stansell* noted that garnishment proceedings are *quasi in rem* by nature, and so the rules for determining whether there is jurisdiction over the *res* held by an innocent third party alleged to be owned by the judgment debtor counsels strict construction of the Florida garnishments statutes. *Stansell*, 149 F. Supp. 3d at 1339-40. The district court went on to note that where the party in control of the *res* was a rival claimant to the property of the judgment debtor, or where the *res* was held by a party to the suit who had consented to the personal jurisdiction and was not a disinterested stakeholder, then under Eleventh Circuit law it might be possible to reach assets outside the jurisdiction to satisfy a judgment, at least in an admiralty case. *Id.* at 1341 (citing *United States v. One Lear Jet Aircraft*, 836 F.2d 1571 (11th Cir. 1988); *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148 (5th Cir. 1977); *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978)).

over property located outside of a court's jurisdiction).[9]

Thus, any assets that Schwarzbaum owns in the United States and/or the State of Florida would be subject to execution or garnishment were the United States to apply to this Court (or a district court in another state) for the appropriate writ or order under the FDCPA. But, it appears from the post judgement discovery responses that Schwarzbaum sold his personal residence in Jupiter, Florida, two days after the United States moved for an amended judgment (ECF No. 102), and the stay of execution on the Court's original judgment (ECF No. 99) was set to expire. Schwarzbaum further disclosed that, save a *de minimis* amount on deposit at Bank of America, all his bank accounts are located outside of the United States. At best, Schwarzbaum appears to have actively attempted to render himself judgment proof, and to frustrate the United States' ability to use standard FDCPA remedies. The Court, however, is not powerless to act.

First, a district court has inherent authority to ensure that prevailing parties can enforce money judgments in their favor. *See, e.g.*, *Pfizer, Inc. v. Uprichard*, 422 F.3d 124, 131 (3d Cir. 2005). This inherent authority extends such that a district court may enter "appropriate orders" to ensure that its prior judgments and orders are properly enforced. *Id.; see also Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1167 (11th Cir. 2012) (noting that district courts have inherent authority to compel defendants to satisfy judgments against them). Second, even though a judgment debtor, like Schwarzbaum, has placed all their assets offshore to defeat collection, a district court still has personal jurisdiction over them. Under the All Writs Act (which the

---

[9] *See also United States v. First Nat. City Bank*, 379 U.S. 378, 383-84 (1965), where it was noted that district courts have inherent authority to issue a temporary restraining order against a debtor to freeze foreign bank accounts because the court was empowered to order a debtor to do something once it had personal jurisdiction over the party.

FDCPA incorporates) the Court can issue a writ or other order requiring Schwarzbaum to bring sufficient assets back onshore to satisfy the judgment.

### B. Repatriation of foreign assets is authorized in aid of collection on a judgment owed to the United States.

Under Section 3202(a) of the FDCPA, the Court "may issue other writs pursuant to section 1651 of title 28, United States Code [the "All Writs Act"], as necessary to support such remedies" available under the Federal Debt Collection Procedures Act.  28 U.S.C. § 3202(a). The All Writs Act provides that a court "may issue all writs necessary and appropriate in aid of their … jurisdiction[s]."  28 U.S.C. § 1651(a).

That includes the power to order judgment debtors to repatriate foreign assets. *United States v. McNulty*, 446 F. Supp. 90, 92 (N.D. Cal. 1978).  Indeed, "there appears to be little hesitation on the part of courts to issue such orders." *Id.*  A repatriation order is warranted where a judgment debtor maintains large amounts of money or assets abroad and insufficient money or assets within the United States to satisfy the judgment.  "Only for the most compelling reasons should a court refuse relief to the Government where a citizen of the United States keeps most of his assets in a foreign country." *United States v. Ross*, 196 F. Supp. 243, 245-46 (S.D.N.Y. 1961), *aff'd*, 302 F.2d 831 (2d Cir., 1962); *see also Sec. Exch. Comm'n v. Aragon Cap. Advisors, LLC*, No. 07-919-FM, 2011 WL 3278907, at *9 (S.D.N.Y. July 26, 2011) (repatriation order "reasonable and appropriate to ensure that [the judgment debtor's] assets can be brought under the Court's control" absent "any showing that [judgment debtor's] liquid assets are sufficient to satisfy the Final Judgment.").

Though many cases citing repatriation orders appear to be in connection with income tax

enforcement, repatriation orders are not limited to tax cases.[10] The United States Securities and Exchange Commission and the Federal Trade Commission, relying on both the contempt power and inherent authority of district courts, have obtained repatriation orders for non-income tax related debts owed to the United States (or one of its agencies). *See, e.g., Aragon Cap. Advisors,* 2011 WL 3278907 at *8-*9 (SEC action); *Fed. Trade Comm'n v. Affordable Media*, 179 F.3d 1228, 1232 (9th Cir. 1999). Courts consistently grant motions for repatriation without significant discussion. Courts merely require that a substantial liability exists and the government's ability to collect is shown to be in jeopardy. There is no requirement that a fraudulent transfer has taken place. *See, e.g., McNulty*, 446 F. Supp. at 90 (assets under repatriation order were winnings from Irish Hospitals sweepstakes). Nor does it matter if the assets are held in a trust. *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1298 (11th Cir. 2002) (affirming contempt order when debtor refused to repatriate funds from overseas trust); *United States v. Grant*, No. 00-8986, 2005 WL 2671479, at *3 (S.D. Fla. Sept. 2, 2005) (Klein, J.), *adopted by* No. 00-8986, 2005 WL 3747779 (S.D. Fla. Dec. 22, 2005) (Jordan, J.) (tax case).[11] A court's discretion to

---

[10] The ability of the United States to seek, and a court to grant, a repatriation order for the collection of delinquent taxes is without question. *See, e.g., United States v. L & L Int'l, Inc.*, No. 17-923, 2020 WL 168852, at *3 (S.D. Tex. Jan. 13, 2020) (citing *Ross* and *McNulty* in an income tax enforcement action).

[11] *See, also, Travelers Cas. & Sur. Co. of Am. v. Dunmore*, No. 07- 02493-TLN-DB, 2017 WL 6343914, at *2 (E.D. Cal. Dec. 11, 2017) ("The Court's personal jurisdiction over Judgment Debtors creates the authority to order Judgment Debtors to repatriate assets held outside the United States."); *Taubert v. Off. of Atty. Gen*, 79 So.3d 77 (Fl. Dist. Ct. App. 2011) (affirming trial court's repatriation order under state law for a civil judgment for a violation of the Florida Deceptive and Unfair Trade Practices Act); *Fed. Trade Comm'n v. On Point Global, LLC*, No. 19-25046, 2020 WL 3268266, at *6 (S.D. Fla. Jan. 14, 2020) (ordering repatriation as part of a preliminary injunction) ; *cf. United States v. Bradley*, 644 F.3d 1213, 1308-11 (11th Cir. 2011) (discussing the appropriate remedies under the FDCPA in a criminal context and noting that repatriation ordered by the district court to satisfy a debt owed to the United States was proper under the FDCPA and the All Writs Act).

deny a repatriation motion is limited. Instead, repatriation should be readily available except for the most compelling reasons. As one court stated:

> Only for the most compelling reasons should a court refuse relief to the Government where a citizen of the United States keeps most of his assets in a foreign country and claims that they are immune from application to his income tax liability because of their situs in a foreign country.

*Ross*, 196 F. Supp. at 245. While the repatriation here is to compensate the United States for a remedial civil penalty, and not for application towards federal tax liabilities, this is a distinction without a difference.[12] Schwarzbaum's blatant refusal to pay the judgment deprives the United States of funds to which it is legally entitled, and it also undermines the authority of the Court. Further, the United States continues to incur additional time and expense to seek enforced satisfaction of a judgment in its favor under a statute specifically designed by Congress to compensate the United States for the costs of investigating failures to comply with the Bank Secrecy Act. Schwarzbaum's actions may encourage others to simply refuse to pay unless the United States pursues enforced collection efforts. The fact that it appears that Schwarzbaum was planning to not pay any judgment even before trial makes matters even worse, and he should not be rewarded for rendering himself judgment proof.

Accordingly, this Court has jurisdiction to enter any such order necessary to aid in the enforcement, execution, and collection of Schwarzbaum's unpaid judgment debt. This includes jurisdiction to order Schwarzbaum to repatriate his assets held in foreign countries up to the amount he owes under the *Amended Final Judgment*, together with all continuing interest and penalty accruals on account of Schwarzbaum's ongoing refusal to pay (as the rates set forth in

---

[12] *See* Order Assessing Penalties, ECF No. 98, at 10-15.

the United States Rule 59(e) motion), as well as the ten percent surcharge under § 3011, together with any other relief that the Court feels is appropriate in aid of effectuating its judgment.

### III.     Conclusion.

A judgment debtor such as Schwarzbaum who fails to pay a civil judgment based on a Title 31 liability should not be allowed avoid paying that liability by keeping funds in a foreign jurisdiction.  This is especially so when it is clear that Schwarzbaum's lack of assets in the United States, and his decision to move from Florida to Switzerland immediately after the Court entered its *Amended Final Judgment*, are the results of a voluntary decision he began in advance of litigation to render himself judgment-proof.  This course of action is even more egregious since it was Schwarzbaum's willful concealment and failure to report his Swiss accounts that incurred liability under the Bank Secrecy Act in the first place.  He holds over $49 million worth of assets in Swiss banks.  Moreover, Schwarzbaum's post-judgment discovery responses aver that he lacks sufficient assets within the United States to pay his liabilities.  The government's ability to collect Schwarzbaum's significant civil liabilities will be jeopardized if it cannot collect the funds held in his Swiss accounts (as well as any other funds held in foreign jurisdictions), as Schwarzbaum will have unfettered access to invest, spend, or otherwise dissipate the accounts if he is not ordered to repatriate the necessary funds which are a viable source of collection.  Repatriation is thus warranted to enable the United States to satisfy Schwarzbaum's judgment debt.

### IV.     Relief Requested.

The Court has ordered significant relief and because Schwarzbaum has refused to comply with the Court's judgment, the United States has been forced to incur additional time and expense to seek forced collection.  The Court possesses the power to order Schwarzbaum to move his offshore funds within the Court's control because it has personal jurisdiction over him,

and repatriation is a valid remedy under both state of federal law.  Schwarzbaum should be ordered to repatriate funds from his Swiss accounts, in such amount as of a date certain set by the Court to satisfy the amounts due under the *Amended Final Judgment*, all pre-judgment interest, penalty accruals, the 10% surcharge under 28 U.S.C. § 3011, and post-judgment interest under 28 U.S.C § 1961.

As of May 31, 2021, the amount that should be repatriated is $18,227,465.89, with post-judgment interest from and after this date, from the accounts Schwarzbaum maintains at Privatbank Reichmuth & Co., and Rahm & Bodmer, Zurich, Switzerland, including the Privatbank Reichmuth & Co. account numbers ending with 1001, 1003, 1004, 1005, and 1006; as well as the Rahm & Bodmer account number ending in 7-701, which are the Swiss accounts Schwarzbaum disclosed on his most recent FBAR filings.  Within 30 days of the Court's granting of this motion, upon repatriation Schwarzbaum should deposit such amounts in the form of an appeal bond pursuant to L.R. 62.1, or with the registry of this Court, or other satisfactory means of compliance with the approval of the United States and the Court.[13]  Should the Court

---

[13] Because Schwarzbaum has appealed the Court's final judgment, the United States suggests that Schwarzbaum be ordered to repatriate the funds requested by way of an appeal bond under L.R. 62.1.  However, the United States is also open to other avenues of compliance, including Schwarzbaum certifying to the Court that he has repatriated the necessary funds and placed them in his attorney's trust account, or by Schwarzbaum depositing the necessary funds into the Court's registry under L.R. 67.1(c), or by Schwarzbaum certifying (under seal) that he has repatriated the necessary funds and placed them in an identified bank account within the Court's jurisdiction.  Should the motion be granted, the United States will provide an updated balance as-of the date-certain ordered by the Court to account for post-judgment interest and penalty accruals so that Schwarzbaum knows the correct amount to be repatriated, together with any additional amounts required by the Court's local rule regarding appeal bonds (which requires that an appellant deposit 110% of the amount of the judgment owed).

so order (and after consultation with Schwarzbaum if necessary), the United States will submit a proposed order that effectuates the Court's grant of the repatriation requested.

As required by 28 U.S.C. § 3202(b), the United States has prepared the required notice included here as <u>Exhibit A</u>.  The United States requests that the Court direct the Clerk to issue the notice by signing it and affixing the Court seal in the same manner as with a summons, and then the United States will serve it on both Schwarzbaum and his counsel.

### CERTIFICATE OF NO CONFERENCE

Motions to enforce a judgment are exempt from the conferral requirements of Local Rule 7.1(a)(3).

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

<u>*/s/ Jeffrey N. Nuñez*</u>
JEFFREY N. NUÑEZ
MARY ELIZABETH SMITH
JOHN P. NASTA, JR. (Fla. Bar. No. 1004432)
MICHAEL N. WILCOVE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
202-353-1988 (v)
202-514-9868 (f)
Mary.E.Smith@usdoj.gov
John.Nasta@usdoj.gov
Michael.N.Wilcove@uswdoj.gov
Jeffrey.N.Nunez@usdoj.gov

*Of counsel:*

JUAN ANTONIO GONZALEZ
Acting United States Attorney
Southern District of Florida