IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' REPLY TO
DEFENDANT'S RESPONSE TO MOTION TO REPATRIATE FOREIGN ASSETS**

Defendant Isac Schwarzbaum's response can be distilled to "I don't want to pay the judgment, and no one can make me." The United States has a more than $13 million judgment against him. (ECF No. 105). Even though Schwarzbaum has an appeal pending, the Government, as a matter of law, may collect the judgment. Schwarzbaum admits that the Federal Debt Collection Procedures Act ("FDCPA") is the means for the United States to collect its nontax debts but argues that it contains no repatriation provision. (ECF No. 121 at 6). The FDCPA allows courts to issue writs to enforce judgments (*See* 28 U.S.C. § 3202(a) referencing All Writs Act, 28 U.S.C. § 1651), and the Federal Rules of Civil Procedure authorize courts to enforce their judgments. *See* Fed. R. Civ. P. 69 and 70.[1] Yet Schwarzbaum asks the Court to create an illogical loophole simply because his assets are located overseas.

---

[1] Fed. R. Civ. P. 69(a)(2) allows collection remedies authorized under state law. The United States pointed out in its opening brief (ECF No. 115 at 11, n.11) that Florida law recognizes the validity of repatriation as a means for a Court to enforce its judgments. Schwarzbaum did not contradict or dispute that in his response.

1

**A. It is Schwarzbaum's choice to pay the judgment voluntarily, post a bond, or face forced collection.**

Schwarzbaum characterizes the Government's motion as a "thinly-veiled collateral attack to frustrate [his] appeal." (ECF No. 121 at 2-3). That is untrue. The parties have filed their briefs and the Court of Appeals will issue a decision in due course. If Schwarzbaum chooses to post a bond that complies with Fed. R. Civ. P. 62 and L.R. 62.1, the Court can stay collection of the judgment. If not, the Government may avail itself of any and all lawful collection methods. *Collar v. Abalux, Inc*, Case No. 16-20872, 2018 WL 7364570, at *1 (S.D. Fla. Mar. 12, 2018) (Lenard, J.) ("Although appealing a money judgment does not automatically create a stay of the judgment pending appeal, a judgment debtor may obtain a stay by posting a supersedeas bond with the Court pursuant to Rule 62(d)…"). The purpose of a supersedeas bond is preserve the status quo and protect the nonappealing party's rights during the appeal. *Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1141 (11th Cir. 2019).

In this district, "a bond is the norm for obtaining a stay" unless the defendant shows that their "ability to pay the judgment is so plain that the cost of the bond would be a waste of money, or (b) where the requirement would "put defendant's other creditors in undue jeopardy." *Suntrust Bank v. Ruiz*, Case No. 14-21107, 2015 WL 11216712, at *2 (S.D. Fla. Aug. 16, 2015) (Goodman, M.J.), *quoting Avirgan v. Hull*, 125 F.R.D. 185, 186 (S.D. Fla. 1989). Those exceptions are "rare." *Avirgan, supra*. And Schwarzbam has not shown them to exist. His actions are akin to the circumstances in *Procaps v. Patheon, Inc.*, Case No. 12-24356, 2017 WL 11558275, at *1 (S.D. Fla. Nov. 3, 2017) (Goodman, M.J.). There, the court held that a plain ability to pay was not shown where the judgment debtor's counsel "advised [the creditor's counsel] that [the debtor] had no assets in the United States and therefore 'good luck trying to collect.'"

Schwarzbaum, of course, has a right to appeal. If he prevails, the Government will return the money collected, to the extent required by the appellate decision. Unless and until that happens, he cannot evade lawful collection actions without posting the required bond.

**B. The Court has the authority to order Schwarzbaum to bring into the United States sufficient assets to pay the judgment.**

Schwarzbaum argues that the Court can only order a turnover of assets that had once been physically kept in the United States. He premises this assertion on the fact that the Merriam-Webster dictionary defines the word "repatriate" as "to restore or return to the country of origin, allegiance, or citizenship." Because the Government's motion does not entail a need to interpret the word "repatriate" as it is used in a statute, there is no need to bring in rules of statutory construction.[2] If it will appease Schwarzbaum, we can call our requested relief "bringing in" foreign assets instead of "repatriating" them.[3]

Besides being belied by common sense, Schwarzbaum's argument is refuted by *United States v. McNulty*, 446 F. Supp. 90, 92 (N.D. Cal. 1978). There, the Government secured a judgment against McNulty for unpaid taxes. McNulty won the Irish Hospital Sweepstakes and kept the funds outside the United States. Even so, the court determined that it had the authority to order McNulty to bring the money into the United States. In its motion, the Government provided an array of cases in which federal courts ordered judgment debtors to repatriate[4] assets

---

[2] The Government does not concede that the Merriam-Webster definition of "repatriate" does not apply to assets that have always been kept abroad.

[3] As the United States' motion makes clear, repatriation is a common law remedy grounded in the All Writs Act that courts avail themselves of to enforce their judgments, so there is no statutory language to construe.

[4] "Bring over," if Schwarzbaum prefers.

3

located in foreign countries. (ECF No. 115 at 10-12). None of them distinguishes between assets at one time housed in the United States and ones always housed abroad. There would be no reason to do so. Any such distinction would only encourage gamesmanship by recalcitrant debtors like Schwarzbaum who wish to frustrate a prevailing party's attempts to collect on a judgment and thumb their noses at a district court's inherent power to enforce judgments.[5]

Schwarzbaum next claims that repatriation orders are "reserved" for tax liabilities and disgorgement. He is correct that the cases cited by the Government involve those matters.[6] However, none of those courts relied on the fact that the cases were tax or disgorgement cases to order repatriation. And the fact that repatriation orders are used in those kinds of cases does not preclude using them elsewhere. Schwarzbaum's reasoning is akin to asserting that because there are beaches in Florida, there cannot be beaches in other states.

In his attempt to distinguish tax collection cases, Schwarzbaum refers to the Internal Revenue Manual and asserts that "an agency is compelled to follow its own guidelines and procedures." The "agency" with responsibility to collect this judgment is the Department of Justice. 28 U.S.C. §§ 515-519; *see also* 31 U.S.C. § 3711(g)(4) (authorizing the Secretary of the

---

[5] Schwarzbaum also admits what the United States demonstrated at trial, that in 2009 he moved millions of dollars from his U.S. bank accounts to his Swiss accounts. ECF No. 121 at 3. He claims he moved his assets in connection with moving his family to Switzerland, but the reason he moved the funds is immaterial. This explanation does not withstand minimal scrutiny, because the fact remains that Schwarzbaum "expatriated" millions of dollars when he allegedly moved to Switzerland.

[6] The cases cited in the United States' brief also contradict Schwarzbaum's assertion that repatriation is "only" ordered in tax or disgorgement cases. *See, e.g.*, *United States v. Bradley*, 644 F.3d 1213, 1308-11 (11th Cir. 2011) (criminal restitution); *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1298 (11th Cir. 2002) (bankruptcy). There are numerous cases in a wide array of contexts when one expands the search beyond the Eleventh Circuit. *See e.g. In re Allen*, 768 F.3d 274, 280-81 (3d Cir. 2014) (repatriation orders are valid exercises of a court's *in personam* jurisdiction over a judgment debtor). Also, there is no requirement to show fraud or ill-gotten gains.

Treasury to refer nontax debts to the Department of Justice for litigation and collection). That of course renders the manual irrelevant. Further, Schwarzbaum's citation is to I.R.M. § 5.21.3.6(2), which is a subpart of I.R.M. Section 5.[7] The target audience for Section 5 is revenue officers. I.R.M. § 5.1.1.1(2). Revenue officers are authorized to collect taxes imposed under the Internal Revenue Code. The administrative collection tools that Congress authorized to collect taxes cannot be used to collect FBAR penalties. *See*, 26 U.S.C. § 6301 ("The Secretary shall collect taxes imposed by the internal revenue laws."); I.R.M. § 5.21.6.4 (authority is *not delegated to the IRS to collect FBAR penalties*). While the Commissioner of Internal Revenue has been delegated the authority to determine a liability for and to assess an FBAR penalty, the penalty is collected by the Department of Justice and the Bureau of the Fiscal Service[8] once a judgment has been obtained. *See* 31 C.F.R. § 1010.810(g); I.R.M. §§ 4.26.5.12(8), 4.26.17.4.4, 5.21.6.7.[9] Finally, while courts have referred to the Internal Revenue Manual as "persuasive authority" (when cited appropriately), it "does not have the force of law." *United States v. Rum*, 995 F.3d 882, 893 (11th Cir. 2021), *quoting Romano-Murphy v. Comm'r*, 816 F.3d 707, 719 (11th Cir. 2016).

---

[7] Schwarzbaum misquotes I.R.M. § 5.21.3.6(2). He claims that it "provides that repatriation orders are used when a taxpayer 'transferred assets to a foreign country.'" (ECF No. 121 at 4). In fact, that section reads "[a] Repatriation Order is an order issued by a federal judge, after a hearing, requiring a taxpayer who has either transferred assets from the U.S. to a foreign country *or acquired assets in a foreign country* to transfer them back into the United States." (Emphasis added). Obviously, Schwarzbaum truncated his quotation because it ran counter to his argument that a court can only order a return of assets that had once been in the United States.

[8] The Bureau of the Fiscal Service is an arm of the Treasury Department. One of its many responsibilities is to collect debts owed to the federal Government. https://www.fiscal.treasury.gov/about.html (visited June 23, 2021).

[9] The Department of Justice may request the assistance of the Internal Revenue Service to investigate the judgment-debtor's assets. I.R.M. § 4.26.17.4.4.

Also spurious is Schwarzbaum's attempt to liken our repatriation motion to jeopardy assessments authorized by the Internal Revenue Code. The jeopardy assessment statutes affect the steps that ordinarily must be taken before the IRS assesses or collects a tax under the Internal Revenue Code. If the IRS determines that collection of a tax is in jeopardy, it may assess a tax before (a) issuing a notice of deficiency, if applicable, (b) the date that a return is to be filed or (c) the tax is to be paid. 26 U.S.C. §§ 6861, 6862. In addition, the IRS may collect the tax even if the collection due process prerequisites have not yet been completed. *See* 26 U.S.C. § § 6330(f)(1), 6331(a).[10] The jeopardy provisions have nothing to do with collecting a judgment after a trial. And the jeopardy levy code sections and case law are even more far afield when collection of non-tax debts is at issue such as they are here.

Schwarzbaum offers another illogicality by arguing that the use of repatriation orders in disgorgement cases means they cannot be used to collect other types of judgments. Nothing in the disgorgement cases cited by the Government supports that reasoning. *See Sec. Exch. Comm'n v. Aragon Cap. Advisors, LLC*, No. 07 Civ. 919, 2011 WL 3278907, at *9 (S.D.N.Y. Jul. 26, 2011); *Fed. Trade Comm'n v. Affordable Media*, 179 F.3d 1228, (9th Cir. 1999). Schwarzbaum's reliance on *Branch Banking and Tr. Co. v. Hamilton Greens, LLC*, No. 11-80S07-CIV, 2014 WL 1603759 (S.D. Fla. Feb. 26, 2014), is misplaced. There, the plaintiff moved to hold one of the defendants in civil contempt for not using assets in a foreign trust to pay the judgment against him. It does not appear that the plaintiff filed a repatriation motion before seeking a contempt citation. The court, in its discretion, declined to hold the defendant in contempt. In doing so, the court pointed to three facts: (1) there was no evidence that the

---

[10] Section 7429 of the Internal Revenue Code provides a mechanism for judicial review of jeopardy assessments and levies.

6

defendant's motive for establishing the trusts was to evade taxes; (2) the offshore funds were not ill-gotten and (3) the defendant had proven that he could not access the funds.[11] The court did not hold that it lacked the authority to order repatriation or that it could only do so if the assets were tainted. Further, *Branch Banking and Trust* is readily distinguished. There, the defendant proved that he could not repatriate the assets held abroad. Schwarzbaum makes no assertion, let alone offers any evidence, that he cannot access the money in his Swiss accounts. He simply does not want to pay.

### C. Conclusion

Schwarzbaum tries to impose a limit to the Federal Debt Collection Procedures Act that neither exists nor makes sense. He offers no cogent reason why he gets a free pass on paying his judgment simply because he keeps his assets offshore. He is snubbing the judicial process and this Court's authority. The Court can and should order him to repatriate assets sufficient to pay the judgment.[12]

---

[11] A different court might have reached a different conclusion.

[12] Given that Schwarzbaum reported that he holds about $49 million in Swiss assets, paying the judgment should not affect his lifestyle.

Dated: June 24, 2021            Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

**Michael N. Wilcove**
MICHAEL N. WILCOVE
JEFFREY N. NUÑEZ
MARY ELIZABETH SMITH
JOHN P. NASTA, JR. (Fla. Bar. No. 1004432)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
202-353-1988 (v)
202-514-9868 (f)
Mary.E.Smith@usdoj.gov
John.Nasta@usdoj.gov
Michael.N.Wilcove@uswdoj.gov
Jeffrey.N.Nunez@usdoj.gov

*Of counsel:*

JUAN ANTONIO GONZALEZ
Acting United States Attorney
Southern District of Florida