UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-81147-BLOOM/Reinhart

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISAC SCHWARZBAUM,

    Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiff United States of America's Motion to Repatriate Foreign Assets, ECF No. [115] ("Motion"). The Court previously referred the Motion to Magistrate Judge Bruce Reinhart for a Report and Recommendations ("R&R"). *See* ECF No. [116]. On June 30, 2021, Judge Reinhart issued a R&R, ECF No. [124], recommending that the Motion be granted. Defendant Isac Schwarzbaum timely filed his Objections to the R&R, ECF No. [125] ("Objections"), to which the Government filed a Response, ECF No. [126]. The Court has carefully reviewed the Motion, has conducted a *de novo* review of Judge Reinhart's R&R in light of the Objections, and is otherwise fully advised. For the reasons that follow, the Objections are overruled, and the Court adopts the R&R.

    **I.**    **BACKGROUND**

    **A. Factual Background**

On August 27, 2018, the Government initiated this case against Schwarzbaum for willfully failing to file Reports of Foreign Bank and Financial Accounts ("FBARs") as required by 31 U.S.C. § 5314 due to Schwarzbaum's interest in several foreign bank accounts. ECF No. [1]. The

Case 9:18-cv-81147-BB   Document 127   Entered on FLSD Docket 10/26/2021   Page 2 of 12

Case No. 18-cv-81147-BLOOM/Reinhart

case proceeded to a five-day bench trial after which the Court found in favor of the United States and issued a Final Judgment for $12,555,813, plus accrual of late payment penalties and interest. ECF No. [105] ("Judgment"). On October 23, 2021, Schwarzbaum filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit. *See* ECF No. [108]. The appeal is currently pending.

To date, Schwarzbaum has not satisfied the Judgment, nor has he requested a stay of the execution of the judgment pending appeal. In the Motion, the Government represents that post-judgment discovery has revealed that Schwarzbaum lacks sufficient assets within the United States to satisfy the Judgment, but he maintains sufficient assets in several Swiss bank accounts. As a result, the Government seeks an order from this Court, pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001, *et seq.* ("FDCPA"), directing Schwarzbaum to repatriate sufficient funds to the United States in order to satisfy the Judgment, by depositing such amounts "in the form of an appeal bond . . . , in the registry of the Court, or other satisfactory means of compliance with the approval of the United States and the Court." ECF No. [115] at 14.

**B. The R&R**

In the R&R, Judge Reinhart concluded that the Court has the authority, under the FDCPA and its express incorporation of the All Writs Act, 28 U.S.C. § 1651, to order Schwarzbaum to repatriate his foreign assets by virtue of its personal jurisdiction over him and that Schwarzbaum has no legal basis to resist a court order requiring him to repatriate his foreign assets. Specifically, Judge Reinhart noted that the FDCPA provides the "exclusive civil procedures of the United States to recover a judgment on a debt." ECF No. [124] at 2 (quoting 28. U.S.C. § 3001(a)(1)). The FDCPA provides for the issuance of various writs, including writs of execution (§ 3203) and writs of garnishment (§ 3205). As such, Judge Reinhart recommends that the Court order Schwarzbaum

to repatriate $18,227,465.89,[1] in addition to any additional post-judgment interest accrued since May 31, 2021.

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

## III. ANALYSIS

### A. Objections

Defendant raises two principal objections to the R&R: (1) granting the Government's Motion would be an improper application of the All Writs Act and would render the FDCPA's post-judgment remedies obsolete; and (2) Schwarzbaum need not post an involuntary *supersedeas* bond to pursue his appeal. The Court considers each in turn.

---

[1] The Court notes, as did Judge Reinhart in his R&R, that Schwarzbaum has not disputed the Government's calculation of the amount owed, which includes the Judgment, interest, late penalties, and surcharges.

### B. The FDCPA and All Writs Act

Schwarzbaum argues that the Government's reliance on the All Writs Act is misplaced because the FDCPA provides the "exclusive civil procedures" for the Government to collect a money judgment, and that the All Writs Act does not provide an independent collection remedy. The Government responds that the FDCPA does not remove the Court's inherent authority to enforce its judgments, and district courts therefore enjoy a separate grant of plenary authority to extend or modify the use of any of the debt collection mechanisms available to the United States when enforcing the FDCPA. *See* 28 U.S.C. § 3013 ("The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter.").

Although the R&R notes that the Government has sought a writ of garnishment, *see* ECF No. [124] at 2, the Government has not actually done so. Rather, the Government asserts that it "cannot use traditional enforcement mechanisms to execute, garnish, or levy upon assets located in the United States . . . ." ECF No. [115] at 4.[2] Recognizing that seeking a remedy under the FDCPA such as garnishment or execution would be fruitless in this case, the Government requests that the Court enter an order requiring Schwarzbaum to repatriate funds from his Swiss accounts

---

[2] In the Motion, the Government asserts that Schwarzbaum has taken steps to render himself judgment proof by selling his home in Palm Beach County, and moving to Switzerland, where he keeps over $49 million in three Swiss banks. *Id.* at 3-4. In addition, the Government details the efforts that it has undertaken to attempt to collect the Judgment. *See id.* at 3-6. Specifically, the Government sent Schwarzbaum demand letters, to which Schwarzbaum did not respond. *Id.* at 5. The Government also served Schwarzbaum with post-judgment discovery, through which it confirmed that he has no collection potential from assets in the United States, but $49 million in assets held in Switzerland that can be used to satisfy the Judgment. *Id.* at 5. The Government asserts that Schwarzbaum has taken steps to render himself judgment proof and "secreted" assets to Switzerland, but other than recently selling his house in Jupiter and moving back to Switzerland, the Government recognizes that "Schwarzbaum transferred the bulk of his liquid assets from the United States to . . . Switzerland" in October and November, 2009—years before the Complaint in this case was filed. *Id.* at 5 n.5.

to satisfy the amounts due under the Judgment, with pre-judgment interest, penalty accruals, a 10% surcharge under 28 U.S.C. § 3011, and post-judgment interest. Entry of such order would then permit the Government to proceed with a remedy specifically provided for under the FDCPA.

The FDCPA expressly provides for the issuance of various writs, including writs of execution and writs of garnishment. In pertinent part, the statute provides that "[a]ll property in which the judgment debtor has a substantial nonexempt interest shall be subject to levy pursuant to a writ of execution." 28 U.S.C. § 3202(a). The statute also provides that "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205. However, the FDCPA does not provide for orders of repatriation. Nevertheless, the Government urges the Court to rely on the FDCPA's incorporation of the All Writs Act, and its inherent authority, to support the issuance of a repatriation order in this case.

Indeed, the FDCPA incorporates the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Specifically, the FDCPA provides that "[a] judgment may be enforced by any of the remedies set forth in this subchapter. A court may issue other writs pursuant to section 1651 of title 28, United States Code, as necessary to support such remedies . . . ." 28 U.S.C. § 3202(a). The legislative history of the FDCPA shows that Congress incorporated the All Writs Act in Section 3202(a) to "allow broad flexibility in enforcing judgments." *Federal Debt Collection Procedures Act, Subcomm. on Economic and Commercial Law of the Comm. on the Judiciary* (June 14, 1990). By incorporating the All Writs Act into the FDCPA, Congress granted courts the authority to take the necessary steps to aid their jurisdiction

or to protect their judgments. *See Federal Debt Collection Procedures Act, Hearing before the Subcomm. On Economic and Commercial Law of the Comm. on the Judiciary, H.R.*, 101st Cong. at 65 (1990). In addition, the FDCPA expressly provides that "[t]he court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013. As previously noted, the FDCPA provides for the issuance of various writs, including writs of execution (§ 3203) and writs of garnishment (§ 3205).

Schwarzbaum relies upon *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34 (1985) and argues that a court may not use the All Writs Act to supplant statutory procedure as the primary means of judgment recovery here. In *Pennsylvania Bureau of Correction*, the district court ordered the U.S. Marshals to transport state prisoners, relying only on the authority of the All Writs Act without an underlying statutory framework. *Id.* at 40. The Supreme Court held that the All Writs Act does not authorize a district court to issue baseless, "ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.* at 43. The Court defined the All Writs Act as a "residual source of authority" meant to supplement existing statutory procedure. *Id.* Moreover, the Supreme Court "consistently has construed the All Writs Act to authorize a federal court 'to issue such command as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Id.* (quoting *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977)).

But, Schwarzbaum's reliance on *Pennsylvania Bureau of Correction* is not persuasive in this case because the Court's reliance upon the All Writs Act does not supplant the statutory

6

procedure. Here, the Court is not issuing an ad hoc writ independent of applicable statutory authority. Rather, ordering Schwarzbaum to repatriate sufficient funds from his bank accounts in Switzerland conforms with the FDCPA, relying upon the express incorporation of the All Writs Act to support and supplement the expressly enumerated post-judgment remedies of garnishment and execution.

Nor is the Court persuaded that because the funds in question were never in the United States, they are removed from the reach of the FDCPA. Notwithstanding the dearth of case law regarding the interplay between the FDCPA and the All Writs Act, the cases supporting the Court's interpretation rely upon the Court's personal jurisdiction over the Defendant to reach assets overseas, when the Defendant has an outstanding judgment or tax liability to the Government. *See, e.g., United States v. Ross*, 302 F.2d 831, 834 (2d Cir. 1962); *United States v. McNulty,* 446 F. Supp. 90, 90 (N.D. Cal. 1978). The Government and the R&R rely on *McNulty*, *Ross*, and *United States v. Grant*, No. 00-8986, 2005 WL 2671479 (S.D. Fla. Sept. 2, 2005), *report and recommendations adopted by* 2005 WL 3747779, at *1 (S.D. Fla. Dec. 22, 2005), which in turn rely on *United States v. First National City Bank*, 379 U.S. 378 (1965), to support the principle that this Court has the authority to order a party to repatriate foreign assets pursuant to its personal jurisdiction over the judgment debtor. Notably, Schwarzbaum has not disputed the Court's personal jurisdiction over him in this case.

In *United States v. Ross*, the defendant taxpayer was subject to jeopardy assessments with respect to income tax liabilities, and the court ordered him to transfer stock certificates from the Bahamas to the court-appointed receiver. 196 F. Supp. 243, 245-46 (S.D.N.Y. 1961). The court held that "[o]nly the most compelling reasons should a court refuse relief to the Government where a citizen of the United States keeps most of his assets in a foreign country and claims that they are

7

immune from application to his income tax liability because of their situs in a foreign country." *Id.* The Second Circuit held that "[p]ersonal jurisdiction gave the court power to order Ross to transfer property whether that property was within or without the limits of the court's territorial jurisdiction." *Ross*, 302 F.2d at 834. The Eleventh Circuit adopted this language from *Ross* when considering a receiver's power to reach a judgment debtor's foreign assets. *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1187 (11th Cir. 1991) ("The case law establishing that a federal receiver may reach foreign assets is relatively clear . . . .").

Indeed, in *Citronelle*, the Eleventh Circuit observed that, although the language of Rule 66 of the Federal Rules of Civil Procedure does not expressly establish or prohibit a receiver's power in foreign situations,

> [t]he rule that emerges . . . appears to be this: when a district court has *in personam* jurisdiction over the defendant, (1) the court may appoint a receiver to enforce a judgment upon a showing that such an appointment is necessary . . . and (2) such a duly appointed receiver may exercise authority over any assets located in foreign countries provided that his actions are taken in accord with or otherwise do not violate the law of that foreign nation.

*Id*. Logically, if a court may appoint a receiver to reach assets in a foreign country by virtue of the court's personal jurisdiction over the defendant, then there is no reason to conclude that a court would not itself have the power to do the same.

In *McNulty*, the court ordered the defendant to bring lottery winnings to the United States from the Irish sweepstakes that were deposited in a secret bank account on the Island of Jersey, because the United States prevailed in a civil action for the collection of taxes. 446 F. Supp. at 90. The court noted that it "found no case specifically invoking [the specific] section of the Internal Revenue Code for the type of order sought," but it relied on *Ross* to hold that repatriation is a sufficient remedy for collecting income tax liabilities. *Id.* at 91. Just as in *Ross*, in *McNulty*, the

8

"court, by virtue of its jurisdiction over the defendant, ha[d] the power to order him to repatriate the assets located in the foreign bank." *Id.* at 92.

In *Grant*, the court ordered repatriation from two offshore trusts in Bermuda and the Island of Jersey because a tax lien had attached to the trusts. 2005 WL 2671479, at *1. There, the court held that "[o]nce the power of the person who is either the owner or the beneficiary of the asset to repatriate is established, the court can require that person to repatriate the funds." *Id.* at *3.

Finally, in *First National City Bank*, the Supreme Court upheld a temporary restraining order against a debtor to freeze bank accounts in Uruguay because "[o]nce personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States." 379 U.S. at 384. The Court noted, "[i]f such relief were beyond the authority of the District Court, foreign taxpayers facing jeopardy assessments might either transfer assets abroad or dissipate those in foreign accounts under control of American institutions before personal service on the foreign taxpayer could be made." *Id.* at 385. While dissipation of assets is not of concern in this case, interpreting the FDCPA in the manner urged by Schwarzbaum would incentivize judgment debtors to retain assets overseas to avoid collection of a valid judgment obtained by the Government. *See id.*

The courts in *McNulty*, *Ross*, and *Grant* derive their authority from 26 U.S.C. §§ 7402 and 7403 of the Internal Revenue Code ("IRC"). *See Grant*, 2005 WL 2671479, at *3 ("District courts have broad authority to issue orders necessary for the government to collect unpaid federal tax liabilities."). In those cases, "that authority extends to orders of repatriation of funds held in foreign countries, and district courts have repeatedly ordered that assets such as those held in foreign bank accounts be repatriated to pay down tax owed to the federal government." *Id.*

9

The language of the IRC relied upon in the cases supporting the Court's authority to order repatriation, and the FDCPA is similar. Under the tax code, district courts have jurisdiction to issue writs and other orders "necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Similarly, under the FDCPA, "a court may issue other writs pursuant to [the All Writs Act] as necessary to support such remedies" set forth by the subchapter of the FDCPA that authorizes garnishment and execution. 28 U.S.C. § 3202(a). This statutory language, paired with the All Writs Act's authorization of "all writs necessary or appropriate in aid of . . . jurisdiction," is comparable to the statutory authority from which the courts in *McNulty*, *Ross*, and *Grant* derived the ability to reach assets overseas.

Schwarzbaum has not pointed to a convincing basis for why the reasoning in these cases should not apply in the context of this case. The incorporation of the All Writs Act into the FDCPA is clear, and the Court's authority to issue a repatriation order has a foundation in the line of cases referenced above. Indeed, rather than render the remedies in the FDCPA "obsolete," as Schwarzbaum argues, the All Writs Act is needed to support the post-judgment remedies provided by the FDCPA, and does not supplant any statutory procedure. *See Penn. Bureau of Corr.*, 474 U.S. at 43. A writ of garnishment or execution is "not inconvenient or less appropriate;"—it would simply be fruitless in this case without first requiring the transfer of funds. *Id*. Indeed, interpreting the FDCPA in the manner Schwarzbaum urges would strip the FDCPA of any meaning or power where the United States obtains a valid judgment against an individual otherwise subject to the Court's jurisdiction, but who holds the majority of his assets overseas. Such a result would be inconsistent with the broad flexibility afforded by the FDCPA in enforcement of judgments. Therefore, after determining that the available post-judgment remedies under the FDCPA alone are not sufficient to allow the Government to collect on the Judgment in this case, the

Government's request that the Court issue an order directing Schwarzbaum to bring sufficient funds to the United States to satisfy the Judgment is not misplaced.

### C. *Supersedeas* Bond

Schwarzbaum's second objection does not specifically identify a portion of the R&R to which objection is made. Instead, Schwarzbaum argues that the Government's request is a thinly-veiled effort to compel him to fund a bond that he is not legally required to post. Schwarzbaum's second objection is improper and lacks merit. The Government has obtained a Judgment in this case, which remains valid and enforceable unless and until the Eleventh Circuit determines otherwise in the pending appeal. Should Schwarzbaum wish to stay the execution of the Judgment, he is free to do so under Rule 62 of the Federal Rules of Civil Procedure. *See SunTrust Bank v. Ruiz*, Case No. 14-21107, 2015 WL 11216712, at *2 (S.D. Fla. Aug. 16, 2015) ("[A] bond is the norm for obtaining a stay.").[3]

### D. Issuance of Statutory Notice

Though not specifically addressed in the R&R, the Government attaches to its Motion and requests the issuance of a notice of post-judgment repatriation order, *see* ECF No. [115-1], pursuant to 28 U.S.C. § 3202(b). The request, however, is not necessary with respect to the order of repatriation.

The statute provides, in pertinent part, that "[o]n the commencement by the United States of an action or proceeding under this subchapter to obtain a remedy, the counsel for the United States shall prepare, and clerk of the court shall issue, a notice . . . ." 28 U.S.C. § 3202(b). The statute provides further that "[a] copy of the notice and a copy of the application for granting a

---

[3] Nevertheless, to the extent that the Government is requesting that the repatriated funds be deposited in the form of an appeal bond or in the Court's registry, the Court finds no basis to do so in the statute or case law. The Court will therefore permit Schwarzbaum to repatriate the funds into a United States bank account.

remedy under this subchapter shall be served by counsel for the United States on the judgment debtor against whom such remedy is sought . . . ." 28 U.S.C. § 3202(c).

Here, the Government has not sought the remedy of either garnishment or execution, as specifically enumerated in the FDCPA. Rather, the Government has requested an order in support of such remedies, directing Schwarzbaum to repatriate sufficient assets to satisfy the Judgment from his foreign bank accounts to the United States. Once Schwarzbaum has complied with this order and sufficient funds are present in the United States, the Government may thereafter seek a remedy of garnishment or execution under the FDCPA with respect to those funds, and request that the Clerk of Court issue the appropriate notice.

## IV. CONCLUSION

The Court finds Judge Reinhart's R&R to be well-reasoned and correct. As a result, Defendant's Objections are overruled. Accordingly, the Court **ADOPTS** the R&R, **ECF No. [124]**, and the Motion, **ECF No. [115]**, is **GRANTED**. The Government is directed to submit a proposed order effectuating the Court's grant of repatriation as set forth in this Order, which includes the updated amount owed pursuant to the Judgment, **no later than November 4, 2021**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 25, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record