**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| ISAC SCHWARZBAUM, | ) |
| Defendant. | ) |

**OPPOSITION TO DEFENDANT'S MOTION TO STAY REPATRIATION ORDER**

The United States of America opposes Defendant Isac Schwarzbaum's Motion to Stay the Order to Repatriate Foreign Assets Pending Appeal (ECF No. 130).

**I.   PRELIMINARY STATEMENT**

On August 28, 2020, the Court entered an amended final judgment for the United States and against Schwarzbaum in the amount of $12,555,813, plus further accruals of late payment penalties and interest. ECF No. 105. Despite repeated demands, Schwarzbaum has made no payments to the United States. When the demand letters were ignored, the United States conferred with Schwarzbaum's counsel about his intent to pay the judgment. When informed that Schwarzbaum would not pay the judgment, the United States served collection discovery on Schwarzbaum to further investigate his assets. On June 3, 2021, the United States filed a Motion to Repatriate Foreign Assets, which this Court granted over Schwarzbaum's objection. *See* ECF No. 127. As of November 4, 2021, Schwarzbaum was indebted to the United States in the total amount of $18,559,609.01. ECF No. 129.

On November 5, 2021, the Court ordered that Schwarzbaum repatriate assets held overseas into a United States bank account in his name over which the Court has jurisdiction in an amount sufficient to satisfy the outstanding judgment within thirty days, *i.e.*, on or before December 6, 2021. Schwarzbaum ignored that deadline and instead filed a Motion to Stay the Order to Repatriate Foreign Assets Pending Appeal. ECF No. 130.

Schwarzbaum's motion to stay should be denied. If Schwarzbaum wants to stay collection of the judgment, he must post an appeal bond. *See* Fed. R. Civ. P. 62; *see also* L.R. 62.1; *Collar v. Abalux, Inc.*, No. 16-20872, 2018 WL 7364570, at *1 (S.D. Fla. Mar. 12, 2018) (Lenard, J.) ("Although appealing a money judgment does not automatically create a stay of the judgment pending appeal, a judgment debtor may obtain a stay by posting a supersedeas bond with the Court pursuant to Rule 62(d)[.]"). The purpose of the supersedeas bond is to preserve the status quo and protect the nonappealing party's rights during the appeal. *Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1141 (11th Cir. 2019).

Rather than posting a supersedeas bond, Schwarzbaum asks the Court to give him special treatment by staying the repatriation order without requiring a bond. Schwarzbaum finds it significant that compliance with the repatriation order would require him to "liquidate his foreign investment accounts before his appeal is concluded[.]" ECF No. 130 at 1. That Schwarzbaum's assets are in investment accounts does not exempt him from the requirement to pay a bond if he wants to stay collection. Indeed, if his assets were in a U.S.-based investment account there would be no limitation on the United States filing a writ of garnishment to obtain those assets, and the same tax consequences would result. Schwarzbaum is no different than any other judgment debtor who must liquidate assets to pay a judgment and then face the tax consequences. This is not an abnormal "hardship." Simply because Schwarzbaum maintains his

assets in Switzerland does not entitle him to greater rights than those judgment debtors who maintain their assets in the United States.

Schwarzbaum, like other judgment debtors, is not entitled to a stay of the repatriation order unless he posts a bond. "A stay pending appeal is an extraordinary remedy for which the moving party bears a heavy burden." *Rubinstein v. Keshet InterVivos Trust*, No. 17-61019, 2021 WL 3141944, at *1 (S.D. Fla. Jan. 29, 2021) (Williams, J.) (quoting authority omitted); *see also United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1328 (M.D. Fla. 2011) ("A district court's discretion to stay a judgment without a bond typically requires that the judgment creditor enjoy alternative and complete security."). To obtain a stay, Schwarzbaum bears the burden of showing that (1) he "has a substantial likelihood of success on the merits;" (2) he "will suffer irreparable injury unless the stay issues;" (3) "the stay would not substantially harm" the United States; and (4) "if issued, the stay would not be adverse to the public interest." *Id.* The first two factors are most critical, and the third and fourth factors "merge when the government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 434-35 (2009). As detailed below, Schwarzbaum makes no showing under the applicable test, and he fails to meet his heavy burden of proving that the factors warrant a stay without a bond.

**II.     ARGUMENT**

    **A.     Schwarzbaum fails to satisfy his heavy burden of proving that a stay is warranted.**

        **1.     Schwarzbaum fails to show a likelihood of success on appeal.**

In deciding whether to grant the motion to stay, "[t]he likelihood of success is typically the most important factor." *O'Callaghan*, 805 F. Supp. 2d at 1327; *see also Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) ("A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial

court below was clearly erroneous.").[1] Schwarzbaum bases his likelihood of success argument on a misrepresentation of government counsel's statements to the Eleventh Circuit.

According to Schwarzbaum, government counsel "acknowledged during oral argument that this case should have been remanded to the IRS for further consideration of penalty assessments." ECF No. 130 at 4 (citing Oral Argument at 26:33, *United States v. Schwarzbaum*, No. 20-12061, https://www.ca11.uscourts.gov/oral-argument-recordings). That is an incomplete characterization of counsel's response. Government counsel did not assert that the Court of Appeals should reverse the judgment and direct a remand to the IRS. Rather, counsel said that if the incorrect balance dates were used to calculate the maximum statutory penalties, the error was harmless.[2] The government has consistently maintained that remand is unnecessary because any error by the IRS in calculating the penalties was harmless.

---

[1] The Eleventh Circuit has recognized that a movant may prevail "upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay." *Garcia-Mir*, 781 F.2d at 1453 (quoting authority omitted). As detailed herein, none of the factors weigh in favor of granting a stay.

[2] Specifically, when asked why the right result was not remand to the IRS, government counsel replied:

> [Remand] would have been the right result after the court's initial determination when the court decided that the IRS had made this error and said that it was setting aside the assessments. **If that had been the end of it then remand would have been the right result.** We are not arguing that the district court had the authority to do what it sort of purported to do after that by making these different assessments. **But what ultimately happened**, and the district court raised all of that sort of *sua sponte* and hadn't had any briefing or anything from the parties, it sort of created an issue where there hadn't been one previously. And the court ultimately had to walk it back and say, **"Well this error that I found if it was an error . . . ultimately was harmless." And it looked at the calculations—it had asked the parties to submit calculations and the government had done that— but had said these calculations show that the error is harmless because even if you did it the way the district court said they were supposed to the penalties the IRS actually assessed were below that.**

(continued...)

Indeed, Schwarzbaum would not benefit from a remand of this case to the IRS, or a recalculation of the penalties based on the June 30 balance.³ A remand or recalculation of the penalties is unnecessary because the penalties assessed against Schwarzbaum were *less* than the penalties that would have been assessed if the IRS had used the June 30 balance. ECF No. 93. Schwarzbaum understands this, which is why he has not asked the Eleventh Circuit to remand this case to the IRS. Instead, Schwarzbaum wants the Eleventh Circuit to order this Court to enter judgment in his favor because, he claims, the statute of limitations has passed, and the IRS cannot assess any new penalties. *United States v. Schwarzbaum*, No. 20-12061, Appellant's Opening Brief, at 17, 33 (11th Cir. Nov. 9, 2020).

Schwarzbaum fails to meet his burden of showing a likelihood of success on appeal. At most, he has an unfounded belief that he might prevail before the Eleventh Circuit. *See* ECF No. 130 at 3 ("Mr. Schwarzbaum argued multiple issues on appeal, any one of which is likely to result in a reversal.") Such a belief—standing alone—is not enough to satisfy his burden of proving the extraordinary remedy of a stay is warranted here. *See United States Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, No. 12-81311, 2013 WL

---

Oral Argument at 26:33 to 27:41, *United States v. Schwarzbaum*, No. 20-12061, https://www.ca11.uscourts.gov/oral-argument-recordings (emphasis added).

³ Schwarzbaum makes the unfounded claim that if his appeal on the remand issue succeeds there will be no need for the repatriation order. ECF No. 130 at 5 (citing *United States v. Genges*, 531 F. Supp. 3d 731 (S.D.N.Y. 2021)). A remand to the IRS would not benefit Schwarzbaum. Although the *Genges* Court determined that the IRS's calculation of the FBAR penalties for one of two foreign accounts was arbitrary and capricious because the IRS did not have evidence of the June 30 account balance, the United States ultimately received a judgment in its favor based on 50% of the June 30 account balance. The court did not remand the case to the IRS and instead suspended the case while the IRS obtained the June 30 balance and assessed a 50% penalty based on that balance. *Genges*, No. 18-7910, ECF No. 50 (S.D.N.Y. Sept. 8, 2021); *see also id.* at ECF No. 51 (S.D.N.Y. Oct. 14, 2021). Here, unlike in *Genges*, if the IRS had to calculate the penalties based on the June 30 balances, the assessments would be higher than the original assessments.

5

12335762, at *2 (S.D. Fla. Aug. 9, 2013) (Middlebrooks, J.) ("Defendants have asserted their belief that they will prevail; however, merely stating an expectation of success does not comport to actual likelihood of success."). Thus, the first and most important factor in deciding whether to grant a stay supports the United States.

### 2. Schwarzbaum fails to show he would suffer irreparable harm absent a stay.

The second factor—whether Schwarzbaum would suffer irreparable harm absent a stay—also supports the United States. Schwarzbaum's alleged "harm" is a monetary one. According to Schwarzbaum, if he withdraws assets from his foreign investment accounts, he will have to pay taxes on his earnings. That is not the type of "irreparable harm" recognized by the Courts in deciding whether to grant a stay. *See Lustig v. Stone*, No. 15-20150, 2016 WL 8983414, at *2 (S.D. Fla. Mar. 7, 2016) (Lenard, J.) ("Courts have recognized that potential monetary loss is insufficient to establish irreparable harm.") (quoting authority omitted) (collecting cases).

Schwarzbaum makes the baseless claim that he would suffer a "hardship" by having to pay the tax liability "associated with liquidating a portfolio of securities sufficient to raise over $18 million to satisfy the Repatriation Order." ECF No. 130 at 4. He will suffer no financial hardship as he has assets far greater than the judgment amount and any associated taxes. As detailed in the United States' motion for repatriation order, as of 2019, Schwarzbaum had over $49 million in Swiss bank accounts.[4] Moreover, Schwarzbaum does not provide any evidence about what his tax liability would be and merely speculates that he "could" face additional taxes

---

[4] Schwarzbaum also fails to acknowledge that his net worth likely gives him access to a surety company that would put up the entire supersedeas bond on his behalf and without him having to liquidate any assets, since an indemnity bond between Schwarzbaum and the surety will secure future payment of the bond if judgment is affirmed, and the bond is paid to the United States. Schwarzbaum could then sell his securities at that point to cover his obligation to the surety.

in the United States and Switzerland if he liquidates a portion of his account portfolio. ECF No. 130 at 4, n.2. In any event, Schwarzbaum would have to pay taxes on his investment earnings eventually. He will not suffer any recognizable harm by paying such taxes now.

      **3.    Schwarzbaum fails to show that a stay would result in no prejudice to the United States and that the stay is in the public interest.**

Unlike the lack of harm to Schwarzbaum should repatriation not be stayed, "[a] stay without a bond leaves the United States exposed to a complete and irreparable loss." *Callaghan*, 805 F. Supp. 2d at 1328. Schwarzbaum has ample assets to pay a bond or satisfy the judgment, although that could change. The United States has no security or protection to ensure that Schwarzbaum will have sufficient assets in the future. Schwarzbaum has paid nothing to the United States, and he rid himself of his only remaining U.S. asset—his Florida home—right after the Court entered judgment against him. Schwarzbaum is keeping the bulk of his assets in Swiss accounts to avoid payment to the United States. The repatriation order ensures the United States' interest in payment is protected and that Schwarzbaum's assets are not lost, sold, or otherwise spent. The United States has been forced to spend significant resources (both by the IRS and the DOJ) to obtain a judgment against Schwarzbaum and the United States is entitled to payment now unless Schwarzbaum posts a bond. There is no benefit to the public for the United States to continue to spend time and assets trying to get Schwarzbaum to pay the outstanding judgment.

    **B.    There is no concern of inconsistent rulings.**

If Schwarzbaum achieves a complete victory in the Eleventh Circuit resulting in a judgment in his favor, the United States—contrary to Schwarzbaum's assertion—will return any money paid by Schwarzbaum to satisfy the judgment. Thus, there is no concern of an inconsistent ruling between the Eleventh Circuit's decision on the appeal and this Court's repatriation order. Further, Schwarzbaum's argument that his appeal represents a "separate case"

that may impact this case misses the mark. The appeal before the Eleventh Circuit is the direct appeal *of his case*, and not a separate case. Simply because there is a new docket number assigned does not make his direct appeal a separate case. Schwarzbaum confuses the analysis on this factor, which focuses on whether there is another party in a totally separate case where a ruling on appeal would be controlling on Schwarzbaum's case. That is not the situation here, and his argument on this point is frivolous.

### C. The Eleventh Circuit will decide whether the amount of prejudgment interest awarded to the United States is appropriate.

In his motion to stay, Schwarzbaum challenges the award of prejudgment interest to the United States. This Court determined previously that the United States is entitled to prejudgment interest (ECF No. 105) and Schwarzbaum challenged that determination in his pending appeal. *United States v. Schwarzbaum*, No. 20-12061, Appellant's Opening Brief, at 45 (11th Cir. Nov. 9, 2020). Whether this Court erred in awarding the United States prejudgment interest is an issue to be decided by the Eleventh Circuit. Schwarzbaum may not relitigate that issue in his motion to stay the repatriation order.

Additionally, as both the Magistrate Judge and the District Judge recognized in granting the United States' repatriation request, Schwarzbaum did not dispute the calculation of the judgment, interest, late payment penalties, or the surcharge in his papers. *See* ECF No.124, p.5 n.3; ECF No. 127, p.3 n.1. As a result, within the context of this case and the calculation of the penalties and the amounts to be repatriated, Schwarzbaum has waived any challenge to them to the extent they are a basis for a stay or other relief from the district court. *See Dorsey v. Apac Group, Inc.*, No. 05-22783, 2007 WL 9701759, at *2 n.1 (S.D. Fla. Mar. 14, 2007) (Lenard, J.) (noting that failure to challenge the hourly rate used to calculate an attorney's fee award waives any subsequent challenge); *cf. Cani v. United States*, 313 F.3d 1210, 1213-14 (11th Cir. 2003)

8

(collecting cases for the proposition that the calculation of the amount of criminal restitution ordered in a criminal case much be challenged at sentencing or else the issue is waived).

In any event, the United States is entitled to the award of prejudgment interest entered by this Court as such interest was calculated from the date the IRS notified Schwarzbaum of the assessments. The Court did not make a new "assessment" when it entered judgment for the United States; it simply upheld the original assessment.

### III.   CONCLUSION

Schwarzbaum made the personal decision to maintain all his assets offshore and beyond the reach of the United States' conventional collection tools. He cannot now claim that his choice puts him through some supposed hardship that removes his obligation, faced by every other civil judgment debtor, to promptly pay the judgment or post a supersedeas bond. For these reasons, the United States requests that the Court deny Schwarzbaum's motion to stay enforcement of the judgment unless he posts a supersedeas bond.

Dated: December 15, 2021                                    Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
JOHN P. NASTA, JR. (Fla. Bar. No. 1004432)
JEFFREY N. NUÑEZ
MICHAEL N. WILCOVE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
214-880-9779 (Smith)
202-307-6560 (Nasta)
202-353-1988 (Nuñez)
202-514-6474 (Wilcove)
202-514-4963 (fax)
Mary.E.Smith@usdoj.gov
John.Nasta@usdoj.gov
Jeffrey.N.Nunez@usdoj.gov
Michael.N.Wilcove@usdoj.gov

*Of counsel:*

JUAN ANTONIO GONZALEZ
United States Attorney
Southern District of Florida