# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 21, 2022

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY ___AP___ D.C.

*Mar 21, 2022*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number:  22-10021-JJ
Case Style: USA v. Isac Schwarzbaum
District Court Docket No: 9:18-cv-81147-BB

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 20-12061

————————————

UNITED STATES OF AMERICA,

Defendant-Appellee,

*versus*

ISAC SCHWARZBAUM,

Plaintiff-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-81147-BB

————————————

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: January 25, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12061

_____

UNITED STATES OF AMERICA,

Defendant-Appellee,

*versus*

ISAC SCHWARZBAUM,

Plaintiff-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-81147-BB

_____

2                    Opinion of the Court                    20-12061

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

BRANCH, Circuit Judge:

Every year, U.S. citizens with over $10,000 in foreign bank accounts must disclose information about those accounts to the IRS on a Report of Foreign Bank and Financial Accounts or "FBAR" form.  For several years in the early 2000s, Isac Schwarzbaum did not.  After the IRS discovered Schwarzbaum's omissions, and determined that he had acted willfully, it imposed several million dollars in civil penalties, and the government sued to collect.

In response, Schwarzbaum conceded that he failed to report his foreign bank accounts to the IRS, but contested the IRS's determination that his violations were willful and argued for vacatur of his civil penalties.  After a bench trial, the district court held that Schwarzbaum's violations were reckless, and therefore willful, in most of the tax years at issue.  But the district court also held that the IRS had miscalculated Schwarzbaum's civil penalties and set them aside under the Administrative Procedure Act (APA), Pub. L. No. 79–404, 60 Stat. 237, 5 U.S.C. § 551 *et seq.*  The district court then *sua sponte* calculated and imposed a fresh set of penalties.  On appeal, Schwarzbaum argues that the district court applied the wrong legal standard in evaluating whether he willfully violated

20-12061                Opinion of the Court                        3

the FBAR reporting requirements, and that the new penalties the district court imposed were unlawful under the APA.[1]

Starting with Schwarzbaum's first argument, we conclude that the district court applied the correct legal standard in analyzing whether Schwarzbaum willfully violated the FBAR reporting requirements. Willful conduct in the FBAR context includes knowing and reckless conduct. Reckless conduct is action that objectively entails a high risk of harm, which is the standard the district court applied.

However, turning to Schwarzbaum's second argument, we nevertheless conclude that the civil penalties assessed by the IRS were unlawful under the APA and must be recalculated. As the district court found, the IRS erred by using the wrong foreign bank account balances to calculate Schwarzbaum's penalties, contravening the relevant statute and regulations. At trial, the district court further erred by calculating and imposing new penalties instead of remanding to the agency, as required by the APA. Even though the district court ultimately arrived at the same total penalty amount the IRS did originally, the IRS's original errors were not harmless, and, therefore, a remand for recalculation is necessary.

---

[1] Schwarzbaum also argues that his civil penalties were excessive fines under the Eighth Amendment. Because we direct a remand for recalculation of Schwarzbaum's penalties, we need not reach this issue.

4                    Opinion of the Court                20-12061

    After careful review and with the benefit of oral argument,
we vacate the district court's decision and remand with instructions
to remand Schwarzbaum's case to the IRS.

## I.    Background

### A.  The FBAR's Statutory and Regulatory Framework

    In the Bank Secrecy Act of 1970, Pub. L. No. 91–508, 84 Stat.
1114, Congress directed the Secretary of the Treasury to promul-
gate regulations requiring U.S. citizens and others to report their
"transaction[s]" and "relationship[s]" with "foreign financial
agenc[ies]" to the IRS.  Bank Secrecy Act §§ 241–42, 84 Stat. at 1124
(codified as amended at 31 U.S.C. § 5314).  In response, the Secre-
tary of the Treasury created the Report of Foreign Bank and Finan-
cial Accounts form, known as the FBAR.  *See* 31 C.F.R.
§ 1010.350(a).  Treasury regulations provide that each U.S. citizen
with interests in or authority over foreign bank accounts with bal-
ances exceeding $10,000 must file an annual FBAR identifying and
describing those accounts.  *See id.* §§ 1010.306(c), 1010.350(a).

    The IRS may impose civil penalties on persons who fail to
report their foreign bank accounts as provided by the FBAR statute
and its implementing regulations.  *See* 31 U.S.C. § 5321(a)(5)(A)
(providing that "[t]he Secretary of the Treasury may impose a civil
money penalty on any person who violates . . . any provision of
section 5314"); 31 C.F.R. § 1010.810(g) (delegating to the Commis-
sioner of Internal Revenue "the authority to: assess and collect civil
penalties under 31 U.S.C. [§] 5321").  The IRS "may assess a civil

[FBAR] penalty . . . at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. § 5321(b)(1).  The maximum civil penalty for a non-willful violation of the FBAR reporting requirements is $10,000.  *Id.* § 5321(a)(5)(B)(i).  The maximum civil penalty for a willful violation is

> the greater of . . . $100,000, or . . . in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, [50% of] the balance in the account at the time of the violation.

*Id.* § 5321(a)(5)(C)(i), (D)(ii).[2]  For each tax year, covered individuals must file their FBAR forms by June 30 of the following year.  *See* 31 C.F.R. § 1010.306(c).

## B.  Facts and Procedural History

Isac Schwarzbaum is a wealthy, naturalized U.S. citizen who was born in Germany and has lived intermittently in the United States since the 1990s.  Beginning in the early 2000s, Schwarzbaum held interests in foreign bank accounts in Switzerland and Costa Rica.  Between 2006 and 2009, Schwarzbaum held interests in eleven Swiss accounts and two Costa Rican accounts.  As a U.S. citizen, Schwarzbaum was, and is, subject to the FBAR reporting requirements for foreign bank accounts.  *See* 31 U.S.C. § 5314(a).

---

[2] The IRS may also impose criminal penalties for violations of the FBAR statute and its implementing regulations.  *See* 31 U.S.C. § 5322.

Schwarzbaum uses certified public accountants (CPAs) to prepare his U.S. tax returns.  In the past, some of Schwarzbaum's CPAs advised him that he did not need to report his foreign assets to the IRS unless those assets had a "U.S. connection."  This was bad advice.  The FBAR regulations require U.S. citizens to report their foreign accounts with balances exceeding $10,000 to the IRS every year, whether or not the accounts have any connection to the United States.  *See* 31 C.F.R. §§ 1010.306(c), 1010.350.  Nonetheless, in 2006, Schwarzbaum's CPA prepared and filed an FBAR on his behalf listing only a single Costa Rican bank account.

In 2007, Schwarzbaum self-prepared and filed his own FBAR, which again listed only a single Costa Rican bank account. When self-preparing his 2007 FBAR, Schwarzbaum reviewed the instructions that accompany the FBAR form, which stated:

> Each United States person, who has a financial interest in or signature authority, or other authority over any financial accounts, including bank, securities, or other types of financial accounts in a foreign country, if the aggregate value of these financial accounts exceeds $10,000 at any time during the calendar year, must report that relationship each calendar year by filing [an FBAR] with the Department of the Treasury on or before June 30, of the succeeding year.

In 2008, Schwarzbaum did not file an FBAR, and in 2009, he again self-prepared and filed his own FBAR, listing only one of his Swiss accounts and his two Costa Rican accounts.

Some time after, Schwarzbaum consulted with U.S. tax counsel, who advised him that he had violated the FBAR reporting requirements in previous tax years by failing to report many of his foreign accounts.  In 2011, Schwarzbaum then voluntarily disclosed to the IRS the existence and balances of the foreign accounts he had previously failed to report.  In 2013 and 2014, the IRS investigated and proposed civil penalties totaling $13,729,591 against Schwarzbaum for willful violations of the FBAR reporting requirements for the 2006–2009 tax years.

In calculating Schwarzbaum's FBAR penalties, the IRS started with the highest annual balances for the foreign accounts Schwarzbaum had failed to report to the IRS during the relevant tax years.[3]  For accounts with balances exceeding $1 million, the IRS then divided the balances in half, arriving at the statutory maximum penalties.  *See* 31 U.S.C. § 5321(a)(5)(C)(i), (D)(ii) (providing that the maximum penalty for willful FBAR violations is the greater of $100,000 or 50% of "the balance in the account at the time of the violation").  For accounts with balances of $1 million or less, the IRS calculated a mitigated set of penalties using a computational formula set out in the IRS's internal guidelines, the Internal Revenue Manual (IRM).  The IRS then added up the statutory maximum penalties for the $1 million-plus accounts and the mitigated penalties for the $1 million-or-less accounts, for a total potential penalty

---

[3] Schwarzbaum had previously provided these balances when he voluntarily disclosed his foreign accounts to the IRS in 2011.

of $35,416,667.  Deciding that a $35 million-plus penalty would be excessive, the IRS then further mitigated Schwarzbaum's penalties by dropping his 2006, 2007, and 2009 penalties to $0 and dividing his 2008 penalties—which totaled $13,729,591—across all four tax years, assigning $1,173,778 to tax year 2006 and $4,185,271 each to tax years 2007, 2008, and 2009.  Schwarzbaum appealed the IRS's proposed penalties to the IRS Appeals Office, which sustained the penalties in September 2016.[4]

Schwarzbaum did not pay his FBAR penalties, and in August 2018, the government filed suit to collect them.  In March 2020, after conducting a five-day bench trial, the district court issued an opinion in which it held that Schwarzbaum willfully violated the FBAR reporting requirements in 2007, 2008, and 2009, but not in 2006.[5]  The district court stated that, in the FBAR civil penalty context, "willful" conduct includes both knowing and reckless violations of the reporting requirements, and defined recklessness as "conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it

_____

[4] By statute, the IRS's assessment of Schwarzbaum's FBAR penalties was subject to a six-year statute of limitations.  *See* 31 U.S.C. § 5321(b)(1).  In 2015, however, the parties executed a tolling agreement that extended the time period for the IRS to assess Schwarzbaum's penalties through December 2016.

[5] At trial, Schwarzbaum did not contest that he violated the FBAR reporting requirements for each tax year from 2006 to 2009.  He argued only that his violations for those years were non-willful and should be subject to the FBAR civil penalty statute's $10,000 maximum penalty for non-willful violations.  *See* 31 U.S.C. § 5321(a)(5)(B)(i).

should be known." The district court found that Schwarzbaum did not knowingly violate the FBAR requirements in any year. However, it found that Schwarzbaum recklessly violated the FBAR requirements in 2007, 2008, and 2009, because, after he read the FBAR instructions and self-prepared his own FBAR in 2007, Schwarzbaum "was aware, or should have been aware, of a high probability of tax liability with respect to his unreported accounts."

The district court also concluded that the IRS miscalculated Schwarzbaum's FBAR penalties under the relevant statute and regulations, and that the penalties were therefore unlawful under the APA. The district court noted that the IRS calculated Schwarzbaum's penalties using the highest annual balances in his foreign accounts for each tax year; that the statutory maximum penalty for willful FBAR violations is the greater of $100,000 or 50% of "the balance in the account at the time of the violation," 31 U.S.C. § 5321(a)(5)(C)(i), (D)(ii); and that the annual deadline to file an FBAR—*i.e.*, the "time of" an FBAR violation—is June 30. Because the IRS did not calculate Schwarzbaum's FBAR penalties using June 30 balances, the district court held that it had "used the incorrect base amounts to calculate [Schwarzbaum's] FBAR penalties" and that the penalties must therefore be set aside under the APA. *See* 5 U.S.C. § 706(2) (requiring courts to "hold unlawful and set aside agency action found to be . . . not in accordance with law").

At the end of its opinion, the district court directed the parties "to submit supplemental briefing with respect to the new proposed amount of penalties to be assessed against Schwarzbaum for

10                    Opinion of the Court                    20-12061

a non-willful FBAR violation in tax year 2006, and willful FBAR
penalties for tax years 2007, 2008, and 2009."[6]  After receiving the
parties' supplemental briefs, the district court then calculated and
imposed new FBAR penalties against Schwarzbaum of $4,498,486
for 2007; $4,212,871 for 2008; and $4,196,595 for 2009, for a total
penalty of $12,907,952.[7]  In preparing the new penalties, the district
court used the June 30 balances for Schwarzbaum's foreign ac-
counts from each tax year whenever possible and relied on the
IRM's mitigation guidelines for FBAR penalties.  The district court
entered judgment and Schwarzbaum filed a timely notice of ap-
peal.

         In a motion to alter or amend the judgment, the govern-
ment then requested that the district court reduce Schwarzbaum's
FBAR penalties to $12,555,813, equal to the penalty amount the
IRS had originally imposed against Schwarzbaum for tax years
2007–2009.  The government stated that "the Court's calculation
exceeded the amounts that the [IRS] assessed for those years" and
that it "d[id] not seek a judgment for more than the amount of the
[originally] assessed 2007–2009 FBAR penalties."

-------------------------------------------------------------------

[6] The government subsequently informed the district court that it would no
longer seek penalties against Schwarzbaum for tax year 2006, given the court's
determination that Schwarzbaum's FBAR violations for that year were non-
willful.

[7] In response to an argument Schwarzbaum had asserted at trial, the district
court also held that the new penalties it had imposed were not excessive fines
under the Eighth Amendment.

The district court granted the government's motion and re-
duced Schwarzbaum's penalties to $4,185,271 for each year from
2007 to 2009, for a total penalty of $12,555,813, before interest and
late-payment penalties.  The district court noted that it had mistak-
enly thought the new penalties it had calculated and imposed
against Schwarzbaum for the 2007–2009 tax years were lower than
the IRS's original penalties for those years.  In fact, once the IRS's
penalties for the 2006 tax year were subtracted from the original
set, the district court's penalties were higher.  The district court
stated that, by reducing Schwarzbaum's FBAR penalties, it was not
reinstating the IRS's original penalties, which it said would be a
"misinterpretation" of its order.  The district court explained that
it was reducing Schwarzbaum's penalties only because the govern-
ment had made clear that it was not seeking more than the amount
the IRS had originally assessed.

The district court entered an amended judgment and
Schwarzbaum again filed a timely amended notice of appeal.

## II.    Discussion

Schwarzbaum makes three arguments on appeal.  First, that
the district court applied an incorrect legal standard in determining
that his FBAR violations were willful.  Second, that his FBAR pen-
alties were miscalculated and, therefore, unlawful under the APA.
Third, that his FBAR penalties were excessive fines under the
Eighth Amendment.  Schwarzbaum is wrong on the first point but
right on the second, and, as a result, we do not reach the third.

12                    Opinion of the Court                    20-12061

## A.  Willful FBAR Violations

Schwarzbaum argues that the district court applied an incorrect legal standard in determining that his FBAR violations were willful.  We review this issue of law *de novo.  See U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 795 (11th Cir. 2015).

When the parties filed their briefs, we had not yet decided the legal standard for determining willful FBAR violations.  After the parties filed their briefs, we squarely addressed this issue in a different case, *United States v. Rum*, 995 F.3d 882 (11th Cir. 2021).  In *Rum*, we held that "willful" conduct, in the FBAR civil penalty context, includes knowing or reckless conduct.  *See id.* at 888–89.  Relying on the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), we defined "recklessness . . . 'as conduct violating an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Id.* at 889 (quoting *Safeco*, 551 U.S. at 68); *see also Safeco*, 551 U.S. at 57, 69 (explaining that civil liability statutes usually "cover not only knowing violations of a standard, but reckless ones as well," and that a "high risk of harm, objectively assessed," was "the essence of recklessness at common law").

At Schwarzbaum's trial, the district court applied the exact standard for willful conduct we later adopted in *Rum*.  It recognized that willful conduct in the FBAR context includes reckless conduct, and, quoting *Safeco*, used the recklessness standard we later adopted in *Rum*: "conduct violating an objective standard:

action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Applying this standard, the district court held that, although Schwarzbaum did not knowingly violate the FBAR reporting requirements, he acted recklessly when he reviewed the FBAR instructions in 2007 and then, for the next three years, failed to report the foreign assets those instructions directed him to report.[8] Accordingly, the district court found that Schwarzbaum "was aware, or should have been aware, of a high probability of tax liability with respect to his unreported accounts," and that, therefore, his "FBAR violations for tax years 2007, 2008, and 2009 were willful."

Schwarzbaum asserts that the district court applied a "*de facto* strict liability standard*"* for willful conduct. It did not. Instead, the district court found that Schwarzbaum violated the FBAR requirements *recklessly*, and as we held in *Rum*, recklessness

___

[8] Schwarzbaum argues that the district court's finding that he recklessly violated the FBAR reporting requirements, even though his CPAs had advised him in previous years that he need not report accounts lacking a U.S. connection, conflicts with *United States v. Boyle*, 469 U.S. 241 (1985), in which the Supreme Court said: "When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." *Id.* at 251 (emphasis omitted).

*Boyle* concerned a different tax statute and did not provide the legal standard for willfulness in the FBAR context. Moreover, the Supreme Court's statement in *Boyle* is readily distinguishable. While it may be generally reasonable for a taxpayer to rely on professional advice, it is no longer reasonable once the taxpayer has realized—as Schwarzbaum should have, once he read the FBAR instructions—that he has been receiving bad advice.

14                    Opinion of the Court                 20-12061

suffices for a willful FBAR violation.[9]  *See Rum*, 995 F.3d at 888–89.  Schwarzbaum's emphasis on the district court's finding that he lacked knowledge of his violations misses the point.  *See Safeco*, 551 U.S. at 59 (noting that, when "'willfully' covers both knowing and reckless disregard of the law, knowing violations are sensibly understood as a more serious subcategory of willful ones").  Thus, the district court applied the correct legal standard in determining that Schwarzbaum's FBAR violations were willful.

## B.  Unlawful FBAR Penalties

Schwarzbaum also argues that his FBAR penalties were unlawful under the APA.  When a party challenges agency action under the APA, we review the district court's decision *de novo* and the underlying agency action under the standards set out in the APA.  *See Cigar Assoc. of Am. v. U.S. Food & Drug Admin.*, 964 F.3d 56, 61 (D.C. Cir. 2020).  Under the APA, a "reviewing court

_____

[9] We note that, at argument, Schwarzbaum's counsel conceded that "the district court already applied the *Rum* standard" for willful FBAR violations. Schwarzbaum's counsel suggested that the district court may have erred in holding that Schwarzbaum's FBAR violations were willful under that standard.  But in his briefs, Schwarzbaum argued only that the district court used the wrong legal standard for willfulness, disclaiming any challenge to the district court's "factual findings."  Applying an *incorrect* standard and applying a standard *incorrectly* are distinct types of error.  Schwarzbaum briefed only the former issue, so we do not consider the latter.  *See APA Excelsior III L.P. v. Premier Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) ("[W]e do not consider claims not raised in a party's initial brief and made for the first time at oral argument.").

shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  In this case, Schwarzbaum has asserted that the IRS miscalculated his FBAR penalties under the relevant statute and regulations.  Accordingly, we review whether Schwarzbaum's FBAR penalties are "not in accordance with law." *Id.*

Before considering the legality of the FBAR penalties assessed by the IRS, due to the district court's intervening orders, we must answer a threshold question: what exactly did the district court do below?  The parties dispute the legal effect of the order and judgment in which the district court imposed FBAR penalties against Schwarzbaum amounting to $12,555,813.  Schwarzbaum asserts that the district court set aside the IRS's penalties and imposed its own.  The government asserts that the district court upheld the IRS's original penalties.  In one sense, the parties draw distinctions without a difference.  Either way, Schwarzbaum's penalties are $12,555,813.  But how the district court got there matters, so we walk through our understanding of what the district court did.

Starting with the agency's action, the IRS originally sustained FBAR penalties against Schwarzbaum of $4,185,271 each for 2007, 2008, and 2009, plus a $1 million-plus penalty for 2006, for a total penalty of $13,729,591.  At trial, the district court found that Schwarzbaum's FBAR violations were willful in the 2007–2009 tax years, but also found that the IRS had not calculated

16                    Opinion of the Court                    20-12061

Schwarzbaum's penalties lawfully.  Consulting the record afresh, the district court calculated and imposed new FBAR penalties against Schwarzbaum totaling $12,907,952.  Then, on the government's motion, the district court reduced Schwarzbaum's penalties to $4,185,271 for each year from 2007 to 2009—identical to the penalties the IRS had originally imposed for those years—for a total penalty of $12,555,813.

The government argues that, when the district court reduced the new penalties it had imposed against Schwarzbaum, it thereby reimposed and upheld the IRS's original penalties.  But in its orders below, the district court described its own actions differently.  The district court explained that it was reducing the penalties *the district court* had imposed, and only "because the USA [was] seeking a smaller penalty than the Court assessed."  It expressly rejected the characterization that it was "reinstat[ing] the IRS's original penalty assessment," which it said was a "misinterpretation" of its actions.  We take the district court at its word.  And when it calculated and imposed new FBAR penalties against Schwarzbaum, the district court undoubtedly overstepped its role.

When a party challenges agency action under the APA, "the district court does not perform its normal role but instead sits as an appellate tribunal."  *Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (quotation omitted).  And when an agency action is unlawful, the APA directs a reviewing court to "hold [it] unlawful and set [it] aside."  5 U.S.C. § 706(2).  The APA does not, however, direct the court to do the agency's job for it.  The court "must judge

the propriety of [the agency's] action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp. (II)*, 332 U.S. 194, 196 (1947); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) ("The court is not empowered to substitute its judgment for that of the agency.").

The district court lacked the power to recalculate Schwarzbaum's FBAR penalties. Nonetheless, finding that the IRS had miscalculated, the district court prepared new penalties from scratch, substituting its judgment for the agency's. Courts do not have "original calculation" jurisdiction over FBAR penalties. That power belongs to the IRS. *See* 31 C.F.R. § 1010.810(g) (delegating to the Commissioner of Internal Revenue "the authority to: assess and collect civil penalties under 31 U.S.C. [§] 5321"); *see also Vidiksis v. EPA*, 612 F.3d 1150, 1154 (11th Cir. 2010) ("Regarding a penalty assessment, an agency's determination is considered to be particularly within the agency's competence."). By replacing the IRS's penalty calculations with its own, the district court invaded the agency's turf. *See SEC v. Chenery Corp. (I)*, 318 U.S. 80, 88 (1943) ("An appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.").

Given the agency's error, the district court should have remanded Schwarzbaum's FBAR penalties to the IRS for recalculation. "Remand is the appropriate remedy when an administrative

18                    Opinion of the Court                    20-12061

agency makes an error of law, for it affords the agency an oppor-
tunity to receive and examine the evidence in light of the correct
legal principle." *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303,
1315 (11th Cir. 2013) (quotation omitted). And, as the district court
correctly found, the IRS's original penalties were not in accordance
with law. The statutory maximum penalty for a willful FBAR vio-
lation is the greater of $100,000 or 50% of "the balance in the ac-
count at the time of the violation." 31 U.S.C. § 5321(a)(5)(C)(i),
(D)(ii). The "time of [an FBAR] violation" is June 30, the annual
FBAR filing deadline. *See* 31 C.F.R. § 1010.306(c). Indeed, the gov-
ernment concedes that the IRS mistakenly calculated Schwarz-
baum's statutory maximum penalties using his foreign accounts'
highest annual balances rather than their June 30 balances. Because
the IRS miscalculated Schwarzbaum's penalties, a remand is in or-
der to allow the IRS to fix the mistake.[10] *See Fla. Dep't of Lab. and*

---

[10] The government asserts that Schwarzbaum did not timely argue for a re-
mand to the IRS in the district court and thereby forfeited the issue. It appears
Schwarzbaum first raised the agency remand issue quite late in the district
court proceedings, in a post-trial brief. The district court declined to consider
the issue "at th[at] late stage."

"It is well-settled that we will generally refuse to consider arguments raised
for the first time on appeal." *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d
1239, 1249 (11th Cir. 2012). But "[t]his principle is . . . merely a rule of prac-
tice," and the decision whether to consider an issue that was forfeited below
is "left primarily to [our] discretion." *Dean Witter Reynolds, Inc. v. Fernan-
dez*, 741 F.2d 355, 360 (11th Cir. 1984) (quotation omitted). We need not de-
cide whether Schwarzbaum forfeited the agency remand issue below. Even if
he did, we would exercise our ample discretion to consider the issue, because
remand to the IRS is obviously the right outcome. *See id.* at 361 ("[A] federal

20-12061               Opinion of the Court                    19

*Emp. Sec. v. U.S. Dep't of Lab.*, 893 F.2d 1319, 1322 (11th Cir. 1990)
("If the agency has misapplied the law, its order cannot stand . . . .
Instead, the case must be remanded to the agency to make a new
determination.").

      The government argues that remand is unnecessary because
the IRS's original calculation errors were harmless and the district
court ultimately imposed penalties identical to the agency's.  In re-
viewing agency action under the APA, we take "due account . . . of
the rule of prejudicial error." 5 U.S.C. § 706; *see also Nat'l Ass'n of
Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659–60 (2007) (de-
scribing this as an "administrative law . . . harmless error rule"
(quotation omitted)).  "An agency decision is harmless 'when a mis-
take of the administrative body is one that clearly had no bearing
on the procedure used or the substance of decision reached.'" *An-
imal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1224
n.13 (11th Cir. 2015) (quoting *U.S. Steel Corp. v. EPA*, 595 F.2d 207,
215 (5th Cir. 1979)).  "Absence of . . . prejudice [to the citizen] must

─────────────────

appellate court is justified in resolving an issue not passed on below where the
proper resolution is beyond any doubt." (quotation omitted and alteration
adopted)); *Blue Martini Kendall, LLC v. Miami Dade Cnty.*, 816 F.3d 1343,
1350 (11th Cir. 2016) (exercising discretion to consider an issue not raised in
the district court where "the proper resolution of th[e] matter [was] as clear as
a bell to us").

20                 Opinion of the Court                 20-12061

be clear for harmless error to be applicable." *U.S. Steel*, 595 F.2d at 215.[11]

To understand whether the IRS's error was harmless, we must understand precisely how the IRS erred.  The IRS calculated Schwarzbaum's FBAR penalties in three steps.  First, it collected the highest annual balances for the foreign accounts Schwarzbaum had failed to report.  Then, using a formula set out in the IRS's internal guidelines manual, it calculated the statutory maximum penalties for the accounts with balances greater than $1 million—by dividing the balances in half—and calculated a mitigated set of penalties for the lower-balance accounts.  Finally, it further mitigated Schwarzbaum's penalties by dropping his 2006, 2007, and 2009 penalties altogether and dividing his 2008 penalties across all years.

In calculating Schwarzbaum's FBAR penalties, the IRS took a wrong fork in the road by starting with the wrong numbers.  Recall that, for each tax year and for each account, the statutory maximum penalty for a willful FBAR violation is the greater of $100,000 or 50% of the account's June 30 balance.  *See* 31 U.S.C. § 5321(a)(5)(C)(i), (D)(ii); 31 C.F.R. § 1010.306(c).  By using the wrong account balances, the IRS calculated the wrong statutory maximums for Schwarzbaum's penalties, and from there,

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

mitigated the penalties across the board.  The IRS's error, it ap-
pears, flowed through its calculations from beginning to end.

    Thus, we cannot say that the IRS's error was harmless.  On
remand, if the IRS calculates Schwarzbaum's penalties using his ac-
counts' June 30 balances rather than their highest annual balances,
the statutory maximum penalties could very well be lower.  If the
IRS chooses to mitigate Schwarzbaum's penalties, as it did origi-
nally, the mitigated penalties could be lower too.[12]  That is not to
say the penalties will be lower.  We do not presume to guess what
the IRS will do.  But the fact that the IRS *may* reach a different
result when it recalculates Schwarzbaum's penalties in accordance
with the FBAR civil penalty statute and regulations is enough to
justify remand.  *See U.S. Steel*, 595 F.2d at 215 (declining to find
that agency error was harmless where "the Agency's error plainly
affected the procedure used, and we [could not] assume that there
was no prejudice to petitioners").  Schwarzbaum has met his bur-
den to show that the IRS's error in calculating his civil penalties was
not harmless.

    Finally, Schwarzbaum argues that remand to the IRS is un-
necessary—and that we should instead direct a judgment in his fa-
vor—because the IRS would be time-barred on remand from recal-
culating his FBAR penalties.   Ordinarily, "[i]f [an] agency has

---

[12] Tellingly, the government's counsel conceded as much at argument, taking
the view that the IRS "could do anything [from] $0 to the statutory maximum
on a remand."

22                    Opinion of the Court                    20-12061

misapplied the law . . . the case must be remanded to the agency to make a new determination." *Fla. Dep't of Lab.*, 893 F.2d at 1322 (citing *Chenery I*, 318 U.S. at 94). But "the rule in *Chenery* does not require courts to remand in futility." *Ridgewood Health Care Ctr., Inc. v. NLRB*, 8 F.4th 1263, 1276 (11th Cir. 2021) (quotation omitted and alterations adopted). "Remand is futile when only one conclusion would be supportable." *Id.* (quotation omitted and alteration adopted).

Schwarzbaum has not established that remand for the IRS's recalculation of his penalties would be futile. He cites the FBAR civil penalty statute's six-year statute of limitations for assessing penalties. *See* 31 U.S.C. § 5321(b)(1) (providing that "[t]he Secretary of the Treasury may assess a civil [FBAR] penalty . . . at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed"). But he cites no authority standing for the proposition that, on remand from judicial review under the APA, an agency could be time-barred from re-evaluating its original actions. We are aware of none. There is no dispute that the IRS timely assessed Schwarzbaum's original FBAR penalties.[13] The remand we now direct is

---

[13] By contrast, in *Brafman v. United States*, 384 F.2d 863 (5th Cir. 1967)—the principal case Schwarzbaum relies on in support of his time-bar argument—the former Fifth Circuit held that a tax collection action must be dismissed because, in its initial assessment of an estate tax, the IRS failed to assess the tax within the statutory time period. *See id.* at 864–68. *Brafman* did not address when, if ever, an agency would be time-barred on remand from re-evaluating agency action that was timely in the first instance.

20-12061                Opinion of the Court                        23

not for the IRS to issue new penalties, but for it to recalculate the
penalties it has already assessed.

### III.    Conclusion

We **VACATE** the district court's amended judgment and
**REMAND** with instructions to remand to the IRS for recalculation
of Schwarzbaum's FBAR penalties.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 25, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-12061-HH
Case Style:  USA v. Isac Schwarzbaum
District Court Docket No:  9:18-cv-81147-BB

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF
system by registering for an account at www.pacer.gov. Information and training materials
related to electronic filing are available on the Court's website. Enclosed is a copy of the court's
decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36.
The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Christopher Bergquist, HH at 404-335-6169.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

                                                            OPIN-1A Issuance of Opinion