IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MOTION FOR RECONSIDERATION
OF THE ORDER RETAINING JURISDICTION**

Isac Schwarzbaum, pursuant to Federal Rule of Civil Procedure 60, through undersigned counsel, hereby moves this Court to reconsider its Order on Motion to Retain Jurisdiction. ECF No. 146.

**I.   Introduction**

Ordinary individuals like Mr. Schwarzbaum are easy marks for the government. By targeting Mr. Schwarzbaum and those like him, the United States has grossly deviated from the intent of the Bank Secrecy Act (BSA). Congress enacted the BSA to curb certain types of nefarious and deplorable conduct—namely terrorism financing, concealing proceeds of black market currency transactions, money laundering, and concealing theft from U.S. defense and foreign aid funds.[1]  Rather than target those persons engaged in such reprehensible activities and truly

---

[1] 75 Fed. Reg. 8844, n.1 (Feb. 26, 2010) (citing H.R. Rep. No. 975, 91st Cong. 2d Sess. 12 (1970)).

deserving of the draconian penalties associated with concealing illicit funds, the United States instead chose to pick the low-hanging fruit and penalize unwitting individuals like Mr. Schwarzbaum.

The government's actions, fortunately, are constrained by federal law. Those harmed by the government have a statutory recourse. Congress enacted the Administrative Procedure Act (APA) to negate agency action deemed arbitrary, capricious, or unlawful. The APA is clear about the consequences of flawed agency action. The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). This Court properly vacated the FBAR penalty assessments after concluding the IRS acted unlawfully by adopting a penalty calculation methodology that failed to conform to statutory requirements. The Eleventh Circuit ensured the matter would be remanded to the agency. At that moment, judicial intervention should have ceased. APA case law is clear—once the court determines an agency committed legal error, the court's role has ended. The court is not to act on behalf of the agency. The case proceedings dictate that the Court close this case. After all, not a single valid penalty assessment against Mr. Schwarzbaum exists and the government is time-barred from issuing any new assessments. Nothing remains over which this Court should retain jurisdiction. Instead, this Court misapprehended precedent and ignored bedrock principles of administrative law. The order to retain jurisdiction ignores the APA and constitutes legal error that warrants reconsideration.

Retaining jurisdiction in this case improperly treats this case (where the penalty assessments were duly vacated because of IRS misfeasance) like the narrow class of cases in which vacatur was not employed because of the agency's likelihood of providing better support for its action on remand. There is no such additional support in this case. The IRS cannot explain its

faulty assessments nor can it calculate new penalties using a legally permissible methodology. By retaining jurisdiction, the Court has treated this case as if the underlying assessments were not vacated—a result that fails to comport with the Eleventh Circuit's mandate. In light of these errors, Mr. Schwarzbaum respectfully requests this Court grant this motion to reconsider the order to retain jurisdiction.

## II. Legal Standard

Judicial errors of law are mistakes for purposes of relief under Rule 60(b)(1). *Kemp v. United States*, 596 U.S. __ (2022). Reconsideration is appropriate in this case after the Court exceeded its function and retained jurisdiction over a matter lacking an open issue. Reconsideration is justified because of (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *See Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366 (S.D. Fla. 2022). Motions for reconsideration are "appropriate where … the Court has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Havana Docks Corp. v. MSC Cruises SA Co.*, 455 F.Supp.3d 1355, 1363 (S.D. Fla. 2020) (Bloom, J.). This Court's attempt to relieve the IRS from the consequences of its APA violation is clear error that must be remedied by reconsideration of the order to retain jurisdiction.

## III. Analysis

The APA is designed to respect governmental separation of powers and limit judicial intervention into agency province. Congress, in enacting the APA, recognized "the significant and inherent differences between the tasks of courts and those of administrative agencies…." Va. L. Rev. 219, 230. In fact, the APA provides only two judicial options after a successful APA challenge. The reviewing court, in certain, limited circumstances, can compel agency action. *See* 5 U.S.C. § 706(1). Or, similar to Mr. Schwarzbaum's case, the court can set aside agency action

that violates the law. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law."). Under the APA, once the court vacates agency action, its lone remaining function is to remand to the agency—its role is complete. The IRS violated the APA in its calculation of each penalty at issue. Accordingly, the penalty assessments were correctly set aside. The Court's decision to retain jurisdiction over the case undermines the language and intent of the APA and ignores the Eleventh Circuit's mandate.

### a. Retaining Jurisdiction is No Different Than Remand Without Vacatur

By retaining jurisdiction over this case during remand, this Court has ignored the vacatur of the assessments and simply effectuated a remand without vacatur by another name. The words "shall hold unlawful and set aside" must be respected and enforced for the APA to provide the relief it was designed to give aggrieved persons. "Shall" connotes mandatory action. "Set aside" means "to annul or vacate." *Set Aside*, Black's Law Dictionary (11th ed. 2019). "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dept. of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. __ , 140 S.Ct. 1891, 1905 (2020) (internal quotes omitted). Once a reviewing court concludes agency action violates the APA, that court "shall—not may—hold unlawful and set aside the agency action." *Checkosky v. S.E.C.*, 23 F.3d 452, 491 (D.C. Cir. 1994) (internal quotes omitted). Only in a discrete subclass of cases—easily distinguishable from the present case—is it appropriate for a court to remand a case to the agency without setting aside the unlawful agency action.

Remand without vacatur is an exception to the long-standing principle that, under the APA, unsupported agency action is set aside by a reviewing court and the agency is left to try again on remand. It is typically ordered in rulemaking cases where an agency failed to provide satisfactory evidence of reasoned decision-making and the agency is likely to rehabilitate its earlier action

4

using proper evidence of a rational decision. The Court's remand of this case to the IRS while retaining jurisdiction operates no differently than remand without vacatur—an impermissible circumvention of already vacated FBAR penalty assessments. Vacatur, unquestionably, is the ordinary APA remedy and is mandated in this case. *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271 (11th Cir. 2015). The Court should resist the government's invitation to deviate from that standard.

Remand without vacatur is appropriate only in limited circumstances—namely, the seriousness of the order's deficiencies and the disruptive consequences of an *interim* change. *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir 1993) (emphasis added). The circumstances in *Allied-Signal* demonstrate why vacatur could prove too disruptive and evince a need to except a narrow set of deficient agency actions from its consequences—none of which apply to this case.

One can clearly understand why remand without vacatur is the preferred approach when the agency's lone flaw was inadequate explanation. In *Allied-Signal*, the court concluded that the Nuclear Regulatory Commission failed to justify why similarly situated licensees were treated differently with respect to certain user fees. The court reasoned that setting aside the inadequately supported action during remand makes little sense if the agency can likely provide a proper foundation for its action. *Allied-Signal*, 988 F.2d at 151 ("[i]t is conceivable that the Commission … may develop a reasoned explanation based on an alternative justification" for its action); *see also*, *United Mine Workers, Int'l Union v. Mine Safety & Health Admin.*, 928 F.2d 1200, 1203 (concluding that the agency's lack of reasoned decision-making did not require vacatur because the "deficiencies in the Assistant Secretary's order appear to go to the adequacy of his stated explanation, rather than the merits of the decision itself."). That situation simply is not present in

5

this case. Here, the IRS's penalty assessments were based on an illegal methodology and no further explanation can save them. The agency patently violated the statute in calculating the penalties and rehabilitating its unlawful action is impossible.

A court's ability to remand matters to an agency without first setting aside the improper agency action has been debated. In fact, some courts refuse to acknowledge remand without vacatur and denounce its use as a violation of the law. Reviewing courts lack authority to remand to the agency without vacating the action—"[n]o statute governing judicial review of agency action permits such a disposition and the controlling statute—5 U.S.C. § 706(2)—flatly prohibits it." *Checkosky*, 23 F.3d at 491 (Randolph, J.). Whether its use is permissible in extraordinary circumstances or forbidden outright by statute, remand without vacatur is not appropriate in this case and the order to retain jurisdiction should be reconsidered to avoid consequences that fundamentally treat this case as if the assessments had not been vacated and the IRS is capable of rehabilitating its legally unsound action.

### b. The Statute of Limitations on FBAR Penalty Assessments Has Expired

The government is relying on this Court to craft a special set of circumstances to rescue it from an expired statute of limitations on assessment. The United States, despite early claims to the contrary, fears the long-ago expired statute of limitations and now makes no secret of its desperate need for the Court to retain jurisdiction during remand. An examination of the applicable rules and United States Supreme Court precedent clearly explains why.

Congress provided the IRS with six years to assess FBAR penalties. 31 U.S.C. § 5321(b)(1). Under the statute, a civil FBAR penalty can be assessed at any time before the end of the six-year period beginning on the FBAR due date (e.g., any civil FBAR penalty for the 2007 reporting year must be assessed by June 30, 2014, which is six years after the June 30, 2008 due

date). The six-year period for assessment is absolute and there is no statutory authority to extend the deadline.[2] The statute is clear and leaves no room for interpretation. In contrast, one need look no further than the IRS's own rule book—the Internal Revenue Code[3]—to understand the meaning of the term "assessment" and to recognize that Congress understands how to toll assessment limitations periods when it intends to do so. *See, e.g.,* I.R.C. § 6213(a) (tolling assessment of tax deficiency until time to petition the United States Tax Court has expired or Tax Court proceedings have concluded). In other words, had Congress wished to give the IRS more time to assess FBAR penalties, it would have done so.

A careful examination of the statutory language is crucial to give effect to the words used by Congress. First, and most important, the decision to impose a penalty is not an assessment and those concepts must not be used interchangeably. Section 5321(a)(5) grants the IRS the discretion to *impose* a civil money penalty for an FBAR violation. Next, Section 5321(b) mandates that any such penalty must be *assessed* within the six-year limitations period. United States Supreme Court precedent is instructive to understand precisely what the IRS must accomplish to make an assessment. The IRS, to make a valid, enforceable FBAR assessment, must calculate and formally record an individual's liability before the statute of limitations expires. "Assessment … refers to the official recording of a taxpayer's liability," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 9 (2015),

---

[2] Mr. Schwarzbaum, in the interest of cooperating during his IRS examination, consented to extend the statute of limitations on assessment until December 31, 2016. Each of the three years at issue: 2007, 2008, and 2009 had assessment expiration dates of June 30, 2014, June 30, 2015, and June 30, 2016, respectively.

[3] Statutory interpretation principles dictate that it is appropriate to look to the Internal Revenue Code to discern the meaning of terms left undefined in the statute at issue, particularly where the same language in two statutes serves a similar purpose. *See United States v. Bittner*, 19 F.4th 734, 741 (5th Cir. 2022) (FBAR case using the Internal Revenue Code to define reasonable cause for FBAR purposes and concluding "under the presumption of consistent usage, a term generally means the same thing each time it is used" and applies "when different sections of an act or code are at issue") (internal quotes omitted).

and is "understood more broadly to *encompass the process by which that amount is calculated*." *Id.* (Emphasis added). Also important for purposes of understanding the limitations imposed on the IRS, the assessment refers to the *amount* of the liability, not the person on whom it is imposed. *See United States v. Galletti*, 541 U.S. 114, 115 (2004) (Supreme Court declaring "it is *the tax* that is assessed, not the taxpayer.") (Emphasis in original).

Following the Eleventh Circuit's decision to vacate this Court's amended final judgment, no valid assessment exists in connection with Mr. Schwarzbaum's FBAR reporting errors. Because the assessment includes the calculation of the FBAR penalty, there can be no assessment absent a calculation. Accordingly, the consequence of vacating the unlawful assessments based on an illegal computation methodology is clear—the government cannot simply calculate and record a new penalty against Mr. Schwarzbaum. To the contrary, any attempt to do so results in a new assessment, which is time-barred.

At least one district court considered the impact of vacated FBAR assessments on Section 5321(b)(1). Although it did not reach a final decision on the issue, the court implied that any new assessment issued to replace a vacated assessment would be void under the applicable six-year statute of limitations.[4] *United States v. Horowitz*, 361 F.Supp.3d 511 (D. Md. 2019). In *Horowitz*, the IRS assessed FBAR penalties against the taxpayers, who then filed an administrative appeal with the Office of IRS Appeals. The Appeals Officer determined that the penalties should not have been assessed prior to the administrative appeal and instructed the Penalty Coordinator to reverse the penalties during the pendency of the appeal. After the penalties were sustained by IRS

---

[4] The *Horowitz* court did not reach a final decision on the limitations issue only because the case was at the summary judgment stage and the court ruled that because of inconsistent testimony from IRS personnel, it was not an undisputed fact that the assessments were actually vacated. That issue does not exist in this case—there is no dispute that the assessments were vacated.

8

Appeals and during the course of the district court litigation, the Penalty Coordinator offered contradictory testimony regarding the assessments—first claiming she did not effect a reversal of the assessments, but thereafter affirming she had, in fact, reversed the penalty assessments. *Id.* at 520. Due to the summary judgment posture of the case and the fact that the Penalty Coordinator provided contradictory statements, the district court held that the evidence was not undisputed as to whether the assessments had been reversed. But, importantly, for purposes of the statute of limitations, the court implied that had the assessments been vacated by the Penalty Coordinator, the reissued assessments would have been time-barred:

> Thus, Defendants have not demonstrated through evidence of undisputed facts that Beasley reversed the assessment, ***such that timely assessment was vacated and the statute of limitations for assessing penalties had run*** by the time the IRS assessed FBAR penalties in May 2016.[5]

*Id.* (Emphasis added). On appeal, the Fourth Circuit agreed. In affirming the district court's ruling, the appellate court acknowledged that had the 2014 assessments been reversed and then "reinstated in 2016, [the assessments] would then be untimely." *United States v. Horowitz*, 978 F.3d 80, 92 (4th Cir. 2020). The *Horowitz* assessments were never adjudicated as unlawful—it was merely a question of whether those assessments were reversed by IRS personnel and then reinstated. Yet, the district court and appellate court nevertheless conceded that reversed FBAR assessments, later reinstated *after* expiration of the six-year statute of limitations would be time-barred. Here, there is no dispute that Mr. Schwarzbaum's FBAR penalty assessments have been vacated rendering them null and void. Any attempt to resuscitate those original assessments by characterizing them

---

[5] The penalties against the Horowitzes were originally assessed in June 2014. In October 2014, the assessments were purportedly reversed upon orders from the Appeals Officer.

as a recalculation is futile because the United States Supreme Court has spoken clearly that "assessment" includes the calculation.

### c. Treating Remand as an Interlocutory Order Violates the Eleventh Circuit's Mandate

Much like using a remand without vacatur approach, treating remand to the IRS as an interlocutory order is similarly off base. This Court erred by applying a standard established for social security cases in which remand to the agency was treated as an interlocutory order. In doing so, the Court ignored the consequence of the vacated FBAR penalty assessments and disregarded the law of the case. Unambiguous mandates issued by appellate courts are not subject to interpretation and district courts are obligated to follow them. *See Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987). The law of the case prescribed an outcome that cannot be altered. "The consequences of ad hoc examinations … of the propriety of unambiguous mandates are too grave to be allowed." *Id.* at 1516. The Eleventh Circuit's mandate was clear and not open to interpretation. It was incumbent upon the United States to ask for modification if it desired something other than the Eleventh Circuit's order. *Id.* The government's failure to seek modification of the mandate binds this Court to follow the Eleventh Circuit's clear mandate. Unable to accept the consequences of the Eleventh Circuit's decision that assured all penalty assessments were invalidated, the United States asked this Court to, in substance, modify the appellate court's mandate to vacate the FBAR penalty assessments.

In its Order on Motion to Retain Jurisdiction, this Court relied on inapplicable case law to fashion an unjust result that ignores the reality of the Eleventh Circuit's ruling. *Taylor v. Heckler*, 778 F.2d 674 (11th Cir. 1985), and *Druid Hills Civic Ass'n, Inc. v. Fed. Hwy. Admin.*, 833 F.2d 1545 (11th Cir. 1987), fail to support this Court's decision to retain jurisdiction and reliance on them represents clear error for which reconsideration is warranted.

In *Taylor*, the Secretary of Health and Human Services' decision to deny social security disability benefits could not be supported by evidence in the administrative record. *Taylor*, 778 F.2d at 675. The district court then remanded the case back to the agency for further evidentiary proceedings. Importantly, the agency's action, although initially rejected by the court, was not vacated. Further, after remand, the agency was still compelled to act—i.e., provide better evidence to support its position to deny disability benefits or award the requested benefits. The agency could not remain silent and the court acknowledged as much. "[T]he 'district court's remand … does not end this litigation' because the Secretary may thereafter grant or deny benefits to the claimant … and, if the Secretary denies benefits, the claimant may obtain subsequent judicial review." *Id.* at 677 (citing *Howell v. Schweiker*, 699 F.2d 524, 526 (11th Cir. 1983)).

The issue in *Taylor* was whether the district court's decision to remand for further evidentiary proceedings was a final decision for purposes of awarding attorney's fees under the Equal Access to Justice Act. The United States Supreme Court has spoken on that question and the answer was clear. "A final decision generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Catlin v. United States*, 324 U.S. 229, 233 (1945) (internal quotes omitted). The Eleventh Circuit concluded that remands to the Department of Health and Human Services are interlocutory orders when the agency must reach a final, supportable ruling to grant or deny disability benefits. In contrast, this case was decided on the merits and the IRS action was ruled to be unlawful. This case cannot be shoehorned to fit *Taylor* as a matter of agency convenience and the Court should reconsider its strained application of *Taylor*, which is inapplicable with the posture of this case.

Reliance on *Druid Hills* fares no better. In relying on *Druid Hills*, this Court adopted an approach akin to remand without vacatur that is wholly at odds with general APA protocol and the

facts of this case. The Eleventh Circuit expressly acknowledged there was no material difference between *Druid Hills* and *Taylor*. *Druid Hills*, 833 F.2d at 1549 ("[t]he only difference between *Taylor* and this case is that the district court remanded the case to the Secretary of Transportation because the Eleventh Circuit ordered it to do so. This is a distinction without a difference."). Administrative law is not a "one-size-fits-all" regime—the proper remedy in one case may be impractical and wrong in another case, based on different facts. Such is the case here. In *Druid Hills*, much like *Taylor*, the initial agency action was not supported by the administrative record. The agency action ***was not vacated***, but the matter was remanded to the agency for additional findings that were adequate to support its determination that a proposed highway did not violate applicable environmental rules.

Reliance on case law where the agency action, although flawed, was not vacated misses the mark and should be rejected by this Court upon reconsideration. To support its decision to retain jurisdiction based on *Taylor* and *Druid Hills*, the Court has ignored the dramatically different facts of this case. In this case, unlike *Taylor* and *Druid Hills*, there was a final judicial decision vacating the agency action. Neither case supports treatment of the judgment in this case as anything other than a final order vacating the assessments. In stark contrast to the vacated assessments in this case, the flawed agency actions in *Taylor* and *Druid Hills* were left intact and remand was ordered for the agencies to make additional findings.

## IV.    Conclusion

The Eleventh Circuit's mandate was clear and this Court's decision to alter it is clear error and an injustice to Mr. Schwarzbaum. This Court is obligated to follow the mandate and should reconsider its decision to retain jurisdiction—all penalty assessments were vacated and there is no longer any open issue before this Court. Unlike the agencies in *Taylor* and *Druid Hills*, the IRS can elect not to act and forego any further action if, considering all facts, circumstances, and

hazards of proceeding in violation of the statute of limitations, it deems no action to be the most appropriate course of conduct. The IRS penalty assessments were vacated because they unequivocally violated the law—not because of some inartful explanation that could be easily rectified. Supreme Court precedent confirms that "assessment" includes the process by which a liability is calculated. The vacated assessments cannot simply be "recalculated" to avoid invalidation under the statute of limitations. The reason for this is simple: assessments cannot exist absent the underlying computation. In order to give the APA the actual effect for which it was created and to prevent an injustice against Mr. Schwarzbaum, this Court should reconsider its order to retain jurisdiction.

## CERTIFICATE OF CONFERRING WITH COUNSEL

Pursuant to Local Rule 7.1(a)(3), on July 13, 2022, the undersigned counsel certifies that he conferred with United States' counsel, who indicated that the United States opposes the relief sought.

Dated July 13, 2022

> HOLLAND & KNIGHT LLP
>
> /s/   *Jose A. Casal*
> JOSE A. CASAL
> Florida Bar No. 767522
> 701 Brickell Avenue, Suite 3300
> Miami, FL 33131
> Telephone (305) 789-7713
> Facsimile (305) 789-7799
> Jose.Casal@hklaw.com
>
> NICOLE M. ELLIOTT
> Admitted Pro Hac Vice
> 800 17th Street NW, Suite 1100
> Washington, DC 20006
> Telephone (202) 469-5144
> Facsimile (202) 955-5564
> Nicole.Elliott@hklaw.com

WILLIAM M. SHARP, SR.
Florida Bar No. 341452
ANDREA DARLING de CORTES
Admitted Pro Hac Vice
CHAD M. VANDERHOEF
Florida Bar No. 109595
100 North Tampa Street, Suite 4100
Tampa, FL 33602
Telephone (813) 227-6387
Facsimile (813) 229-0134
William.Sharp@hklaw.com
Andrea.Cortes@hklaw.com
Chad.Vanderhoef@hklaw.com

DANIEL I. SMALL
Florida Bar. No. 42579
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone (305) 789-7788
Facsimile (305) 789-7799
Dan.Small@hklaw.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 13th day of July, 2022, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

JEFFREY N. NUNEZ
MARY ELIZABETH SMITH
JOHN P. NASTA, JR.
MICHAEL N. WILCOVE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044

Telephone (202) 616-5218
Facsimile (202) 514-9868
jeffrey.n.nunez@usfdoj.gov
mary.e.smith@usdoj.gov
john.nasta@usdoj.gov
michael.n.wilcove@usdoj.gov

*/s/ Jose A. Casal*
Jose A. Casal
