IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## UNITED STATES' RENEWED MOTION
## FOR ORDER TO REPATRIATE FOREIGN ASSETS

The United States requests an order requiring Defendant Isac Schwarzbaum to repatriate assets held in Swiss banks in order to pay the final judgment of more than $17 million entered against him on November 1, 2022. ECF No. 162. This Court already determined that it has the authority to order Schwarzbaum to repatriate assets held overseas and did so by order entered on November 5, 2021. ECF Nos. 127, 129. After the Court of Appeals vacated the previous judgment against Schwarzbaum, this Court vacated the repatriation order (with no objection from the United States). ECF No. 143. The Court issued a new judgment against Schwarzbaum and entry of a new repatriation order is appropriate.

Because the United States seeks a collection remedy pursuant to the Federal Debt Collection Procedures Act ("FDCPA", Title 28 U.S.C. §§ 3001-3308), notice and an opportunity to be heard must be given to Isac Schwarzbaum in the form specified under 28 U.S.C. § 3202(b)-(d). The notice must be issued by the Clerk upon the commencement of an FDCPA collection

action. The United States attaches the form as Exhibit A and the requests that the Court order the Clerk to issue the notice right away.[1]

## I. Background

On August 27, 2018, the United States filed a four-count complaint against Schwarzbaum. The complaint alleged that he willfully failed to timely report his financial interest in foreign bank accounts for the calendar years 2006–2009 as required by 31 U.S.C. § 5314. ECF No. 1. On March 20, 2020, the Court issued *Findings of Fact and Conclusions of Law*, finding a willful failure to report for 2007, 2008, and 2009. ECF No. 92. On August 28, 2020, the Court issued an *Amended Final Judgment* for $12,555,813, plus further accruals of late payment penalties and interest. ECF No. 105. Schwarzbaum appealed the Court's judgment to the Eleventh Circuit. ECF Nos. 100, 106.

While his appeal was pending, Schwarzbaum failed to post a supersedeas bond or make any payments to the United States. The United States, as a result, moved for an order requiring Schwarzbaum to repatriate his assets. ECF No. 115. On November 5, 2021, the Court granted the motion and ordered Schwarzbaum "to repatriate assets held overseas into a United States bank account in his name over which this Court has jurisdiction" in an amount sufficient to satisfy his debt. ECF Nos. 127, 129. Schwarzbaum obtained a stay of the repatriation order pending the outcome of his appeal. ECF No. 133.

The Eleventh Circuit upheld this Court's willfulness finding, but vacated the judgment and remanded the case, directing this Court to further remand the penalties to the IRS to be recalculated. *United States v. Schwarzbaum*, 24 F.4th 1355, 1363 (11th Cir. 2022). Upon remand

---

[1] Once the Clerk issues the required notice, the United States will serve it on Schwarzbaum in Switzerland where he now resides, and upon his counsel, who will also receive service of this motion via the Court's CM/ECF system, as shown by the NEF.

from this Court, the IRS recalculated the penalties and the United States moved for entry of a second amended judgment. ECF No. 152.[2]

On November 1, 2022, the Court issued a *Final Judgment After Remand* providing that Schwarzbaum is indebted to the United States in the aggregate amount of $17,929,717.88. ECF No. 162. Post-judgment interest pursuant to 28 U.S.C. § 1961 and late-payment penalties continue to accrue from and after November 1, 2022. Schwarzbaum has again appealed and posted no bond. ECF No. 164.

As detailed in the United States' first repatriation motion, Schwarzbaum has no intention to pay the judgment. ECF Nos. 115 at 4. In June 2020, less than three months after the Court issued its findings of fact and conclusions of law, Schwarzbaum sold his home in Jupiter, Florida. In a phone call between counsel on December 8, 2020, Schwarzbaum's counsel again relayed Schwarzbaum's belief that he did not think the judgment was enforceable because the bulk of his assets were held in Switzerland. ECF No. 115-2 at ¶ 7. In that call, his counsel said that Schwarzbaum had in essence "given up on the United States," and moved to Switzerland with no intent to return. *Id.* Since fleeing the country, Schwarzbaum has kept no assets in this country. Yet, for calendar year 2021, Schwarzbaum reported to the IRS that he had more than $37 million in three Swiss banks: $23,762,610 in five accounts at Privatbank Reichmuth & Co.; $13,990,332 in two accounts at Rahn & Bodmer; and $156,759 in two accounts at PostFinance AG. *See* Exhibit B (Declaration of DOJ Trial Attorney Jeffrey N. Nuñez; Exhibit C (Schwarzbaum's 2021 FBAR).

---

[2] Although the IRS recalculated the penalties at higher amounts than originally assessed, the United States requested entry of judgment in the amounts originally assessed, plus further accruals of interest and late-payment penalties. *Id.*

Shortly after the Court entered the *Final Judgment After Remand*, undersigned counsel sent Schwarzbaum a demand letter, seeking payment of the judgment or, alternatively, requesting that he post a bond or other security approved by the Court pursuant to Fed. R. Civ. P. 62(b). Exhibit B at ¶ 3; Exhibit D (Letter from DOJ dated Nov. 4, 2022). If Schwarzbaum failed to pay the *Final Judgment After Remand* by December 5, 2022, undersigned counsel requested that he supplement his January 27, 2021 responses to the United States' Requests for Production of Documents and Interrogatories. *Id.* In particular, the United States requested updated bank statements, as well as Schwarzbaum's 2020 and 2021 income tax returns and FBARs that he filed subsequent to his prior discovery responses. *Id.*

Schwarzbaum's counsel responded on November 7, 2022, advising that they would forward the demand letter to him. Exhibit B at ¶ 4; Exhibit E (Letter from Schwarzbaum's counsel). In addition, they said that the United States' request for supplemental responses was "premature" and that the "government already possess much of the requested information." *Id.* As of the date of this motion, Schwarzbaum has not paid anything towards the judgment, supplemented his discovery responses, or produced any updated financial information.

Under 28 U.S.C. § 3202(a), the United States is entitled to the entry of an order requiring Schwarzbaum to repatriate all foreign assets up to the amount that he owes under the Final Judgment After Remand. The totality of Schwarzbaum's actions before and after trial to render himself judgment-proof, and his refusal to pay, places collection of the judgment in jeopardy. Schwarzbaum's refusal to satisfy the judgment appears deliberate and subverts this Court's authority. As noted by the Court, the civil FBAR penalty is remedial in nature, and is meant to reimburse the United States for the costs incurred by the IRS for its lengthy investigation and enforcement efforts regarding Schwarzbaum's failure to comply with the Bank Secrecy Act and

to uphold the enforcement of federal law in general. *See generally* ECF No. 98 at 10-15. Schwarzbaum should not be allowed to avoid paying his judgment debt any longer by keeping funds in foreign bank accounts. A new order that Schwarzbaum repatriate the funds in his Swiss accounts is appropriate, up to the amount he owes to the United States pursuant to the *Final Judgment After Remand* plus the 10% surcharge under 28 U.S.C. § 3011(a) and accrued late-payment penalties and post-judgment interest.[3]

    II.    <u>Argument</u>

        A.    **The FDCPA authorizes execution against a U.S.-based bank account to satisfy a federal debt**

The remedies listed in the FDCPA are the "exclusive civil procedures" for the United States to recover on the amount owed to the United States. *See* 28 U.S.C. § 3001(a); *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1252 (11th Cir. 2020); *United States v. Bedi*, 318 F. Supp. 3d 561, 565 (N.D.N.Y. 2018); *Mahler v. United States*, No. 01-14152, 2001 WL 1572070, at *1 (S.D. Fla. Oct. 5, 2001). Under the FDCPA, property "includes any present or future interest … wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts)[.]" 28 U.S.C. § 3002(12).[4] Under Section 3202, the United States may enforce a judgment by the enumerated

---

[3] The surcharge, authorized by 28 U.S.C. § 3011(a), applies once a judgment debtor fails to pay the amount due under a judgment pursuant to a demand for payment, and the United States must resort to post-judgment remedies under the FDCPA to enforce the claim for the judgment debt. *See Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1476 (S.D. Fla. 1997) (ordering payment of the ten-percent surcharge to cover litigation costs of collecting a federal debt).

[4] The definition in the FDCPA tracks the definition of "property" under the bankruptcy code, which defines property of the estate to include "property, wherever located and by whomever held." 11 U.S.C. § 541(a). Bankruptcy courts have held that property held abroad by a debtor is subject to a repatriation order and must be brought back into the United States. *See, e.g.*, *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, No. 03-00299, 2011 WL 3585827, at *2-*4 (Bankr. M.D. Fla. Jul. 28, 2011).

remedies listed in Subchapter C (§§ 3201–3206). In support of these remedies the United States may also avail itself of any writ that a district court may issue under the All Writs Act, 28 U.S.C. § 1651. *See* 28 U.S.C. § 3202(a); *see also* ECF No. 127 at 6. All property of the judgment debtor where there is a substantial nonexempt interest is subject to levy pursuant to a writ of execution. 28 U.S.C. §§ 3203(a) and (c); *see also* Fed. R. Civ. P. 69(a); *United States v. Toll*, No. 16-60922, 2016 WL 4549689, at *4 n.2 (S.D. Fla. Sep. 1, 2016) (Bloom, J.).

Property in which the judgment debtor has a substantial non-exempt interest that is in the custody of another person is subject to a writ of garnishment. When served with a writ of garnishment, the holder of the property generally must turn it over to the United States for satisfaction of the judgment debt. 28 U.S.C. § 3205(a)-(b); *United States v. McArthur*, 7 F. Supp. 3d 1220, 1221-22 (S.D. Ala. 2014) (bank accounts); *United States v. Fussell*, No. 11-60175, 2013 WL 12080161, *1, *3-*4 (S.D. Fla. Oct. 31, 2013) (Lenard, J.) (IRA accounts). District courts, however, lack subject matter jurisdiction to issue writs of garnishment to a judgment debtor's bank account in another state or in a foreign country. *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1340-42 (M.D. Fla. 2015) (holding that accounts in New York could not be garnished by a district court in Florida);[5] *Inversiones Y Procesadora Tropical Inprosta, S.A. v. Del Monte Int'l GMBH*, No. 16-24275, 2020 WL

---

[5] The district court in *Stansell* noted that garnishment proceedings are *quasi in rem* by nature, and so the rules for determining whether there is jurisdiction over the *res* held by an innocent third party alleged to be owned by the judgment debtor counsels strict construction of the Florida garnishments statutes. *Stansell*, 149 F. Supp. 3d at 1339-40. The district court then noted that where the party in control of the *res* was a rival claimant to the property of the judgment debtor, or where the *res* was held by a party to the suit who had consented to the personal jurisdiction and was not a disinterested stakeholder, then under Eleventh Circuit law it might be possible to reach assets outside the jurisdiction to satisfy a judgment, at least in an admiralty case. *Id.* at 1341 (citing *United States v. One Lear Jet Aircraft*, 836 F.2d 1571 (11th Cir. 1988); *Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148 (5th Cir. 1977); *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978)).

6384878, at *4 (S.D. Fla. Aug. 5, 2020) (Louis, M. J.) (holding that accounts in Costa Rica could not be garnished by a district court in Florida but that as a general proposition the Court had personal jurisdiction over a party and could order that party to turn over property located outside of a court's jurisdiction).[6]

Thus, any assets that Schwarzbaum owns in the United States and/or the State of Florida would be subject to execution or garnishment were the United States to apply to this Court (or a district court in another state) for the appropriate writ or order under the FDCPA. But it appears from the post judgment discovery responses and his most recent filings that Schwarzbaum sold his personal residence in Jupiter, Florida, two days after the United States moved for the first amended judgment (ECF No. 102), and the stay of execution on the Court's original judgment (ECF No. 99) was set to expire. Schwarzbaum further disclosed that, save a *de minimis* amount on deposit at Bank of America, all his bank accounts are located outside the United States. He has not supplemented or revised those responses. At best, Schwarzbaum appears to have actively attempted to render himself judgment proof, and to frustrate the United States' ability to use standard FDCPA remedies. Yet as it recognized in its prior order, the Court is not powerless to act.

First, a district court has inherent authority to ensure that prevailing parties can enforce money judgments in their favor. *See, e.g.*, *Pfizer, Inc. v. Uprichard*, 422 F.3d 124, 131 (3d Cir. 2005). This inherent authority extends such that a district court may enter "appropriate orders" to

---

[6] *See also United States v. First Nat. City Bank*, 379 U.S. 378, 383–84 (1965), where it was noted that district courts have inherent authority to issue a temporary restraining order against a debtor to freeze foreign bank account because the court was empowered to order a debtor to do something once it had personal jurisdiction over the party.

ensure that its prior judgments and orders are properly enforced. *Id.; see also Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1167 (11th Cir. 2012) (noting that district courts have inherent authority to compel defendants to satisfy judgments against them). Second, even though a judgment debtor, like Schwarzbaum, has placed all their assets offshore to defeat collection, a district court still has personal jurisdiction over them. Under the All Writs Act (which the FDCPA incorporates) the Court can issue a writ or other order requiring Schwarzbaum to bring sufficient assets back onshore to satisfy the judgment. Indeed, the Court noted before that "ordering Schwarzbaum to repatriate sufficient funds from his bank accounts in Switzerland conforms with the FDCPA, relying upon the express incorporation of the All Writs Act to support and supplement the expressly enumerated post-judgment remedies of garnishment and execution." ECF No. 127 at 7.

**B.      Repatriation of foreign assets is authorized in aid of collection on a judgment owed to the United States.**

Under Section 3202(a) of the FDCPA, the Court "may issue other writs pursuant to section 1651 of title 28, United States Code [the "All Writs Act"], as necessary to support such remedies" available under the Federal Debt Collection Procedures Act. 28 U.S.C. § 3202(a). The All Writs Act provides that a court "may issue all writs necessary and appropriate in aid of their … jurisdiction[s]." 28 U.S.C. § 1651(a). That includes the power to order judgment debtors to repatriate foreign assets. *United States v. McNulty*, 446 F. Supp. 90, 92 (N.D. Cal. 1978).

Indeed, "there appears to be little hesitation on the part of courts to issue such orders." *Id.* A repatriation order is warranted where a judgment debtor maintains large amounts of money or assets abroad and insufficient money or assets within the United States to satisfy the judgment. "Only for the most compelling reasons should a court refuse relief to the Government where a citizen of the United States keeps most of his assets in a foreign country." *United States v. Ross*,

196 F. Supp. 243, 245-46 (S.D.N.Y. 1961), *aff'd*, 302 F.2d 831 (2d Cir. 1962); *see also Sec. Exch. Comm'n v. Aragon Cap. Advisors, LLC*, No. 07-919-FM, 2011 WL 3278907, at *9 (S.D.N.Y. July 26, 2011) (repatriation order "reasonable and appropriate to ensure that [the judgment debtor's] assets can be brought under the Court's control" absent "any showing that [judgment debtor's] liquid assets are sufficient to satisfy the Final Judgment.").

Though many cases citing repatriation orders appear to relate to income tax enforcement, repatriation orders are not limited to tax cases.[7] The United States Securities and Exchange Commission and the Federal Trade Commission, relying on both the contempt power and inherent authority of district courts, have obtained repatriation orders for non-income tax related debts owed to the United States (or one of its agencies). *See, e.g.*, *Aragon Cap. Advisors,* 2011 WL 3278907, at *8-*9 (SEC action); *Fed. Trade Comm'n v. Affordable Media*, 179 F.3d 1228, 1232 (9th Cir. 1999). Courts consistently grant motions for repatriation without significant discussion. Courts merely require that a substantial liability exists and the government's ability to collect is shown to be in jeopardy. There is no requirement that a fraudulent transfer has taken place. *See, e.g.*, *McNulty*, 446 F. Supp. at 90 (assets under repatriation order were winnings from Irish Hospitals sweepstakes). Nor does it matter if the assets are held in a trust. *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1298 (11th Cir. 2002) (affirming contempt order when debtor refused to repatriate funds from overseas trust); *United States v. Grant*, No. 00-8986, 2005 WL 2671479, at *3 (S.D. Fla. Sept. 2, 2005) (Klein, J.), *adopted by* No. 00-8986,

---

[7] The ability of the United States to seek, and a court to grant, a repatriation order for the collection of delinquent taxes is without question. *See, e.g.*, *United States v. L & L Int'l, Inc.*, No. 17-923, 2020 WL 168852, at *3 (S.D. Tex. Jan. 13, 2020) (citing *Ross* and *McNulty* in an income tax enforcement action).

9

2005 WL 3747779 (S.D. Fla. Dec. 22, 2005) (Jordan, J.) (tax case).[8] A court's discretion to deny a repatriation motion is limited. Instead, repatriation should be readily available except for the most compelling reasons. As one court stated:

> Only for the most compelling reasons should a court refuse relief to the Government where a citizen of the United States keeps most of his assets in a foreign country and claims that they are immune from application to his income tax liability because of their situs in a foreign country.

*Ross*, 196 F. Supp. at 245. While the repatriation here is to compensate the United States for a remedial civil penalty, and not for application towards federal tax liabilities, this is a distinction without a difference. *See* ECF No. 127 at 10. Schwarzbaum's blatant refusal to pay the judgment deprives the United States of funds to which it is legally entitled, and it also undermines the authority of the Court. Further, the United States continues to incur additional time and expense to seek enforced satisfaction of a judgment in its favor under a statute specifically designed by Congress to compensate the United States for the costs of investigating failures to comply with the Bank Secrecy Act. Schwarzbaum's actions may encourage others to simply refuse to pay—or move assets offshore—unless the United States pursues enforced collection efforts. That it appears Schwarzbaum was planning to not pay any judgment even before trial makes matters even worse, and he should not be rewarded for rendering himself judgment proof.

---

[8] *See also Travelers Cas. & Sur. Co. of Am. v. Dunmore*, No. 07-02493, 2017 WL 6343914, at *2 (E.D. Cal. Dec. 11, 2017) ("The Court's personal jurisdiction over Judgment Debtors creates the authority to order Judgment Debtors to repatriate assets held outside the United States."); *Taubert v. Off. of Atty. Gen*, 79 So.3d 77 (Fl. Dist. Ct. App. 2011) (affirming trial court's repatriation order under state law for a civil judgment for a violation of the Florida Deceptive and Unfair Trade Practices Act); *cf. United States v. Bradley*, 644 F.3d 1213, 1308-11 (11th Cir. 2011) (discussing the appropriate remedies under the FDCPA in a criminal context and noting that repatriation ordered by the district court to satisfy a debt owed to the United States was proper under the FDCPA and the All Writs Act).

Accordingly, this Court has jurisdiction to enter any such order necessary to aid in the enforcement, execution, and collection of Schwarzbaum's unpaid judgment debt. This includes jurisdiction to order Schwarzbaum to repatriate his assets held in foreign countries up to the amount he owes under the *Final Judgment After Remand*, together with all continuing interest and penalty accruals on account of Schwarzbaum's ongoing refusal to pay, as well as the ten percent surcharge under § 3011, and any other relief that the Court feels is appropriate in aid of enforcing its judgment.

### III. Relief Requested

As of November 1, 2022, the amount that should be repatriated is $17,929,717.88, with post-judgment interest and late payment penalties from and after this date, from the accounts Schwarzbaum maintains at in Switzerland, including the Privatbank Reichmuth & Co. account numbers ending with 1001, 1003, 1004, 1005, and 1006; as well as the Rahn & Bodmer account number ending in 7-701, which are the Swiss accounts Schwarzbaum disclosed on his most recent FBAR filing. In its initial order, the Court directed Schwarzbaum to "repatriate assets held overseas into a United States bank account in his name over which this Court has jurisdiction in an amount sufficient to satisfy the Outstanding Debt, inform counsel for the United States of the name and address of the bank and the complete bank account number, and notify the Court of his compliance with this Order within thirty (30) days." ECF No. 129. The Court further directed that Schwarzbaum "maintain the repatriated funds in the U.S. based bank account pending further order of the Court." *Id.* The Court should order the same relief now.[9]

---

[9] Instead of transferring assets to the United States, Schwarzbaum may post an appeal bond under L.R. 62.1.

As required by 28 U.S.C. § 3202(b), the United States has prepared the required notice included here as Exhibit A. The United States requests that the Court direct the Clerk to issue the notice by signing it and affixing the Court seal in the same manner as with a summons, and then the United States will serve it on both Schwarzbaum and his counsel.

### CERTIFICATE OF NO CONFERENCE

Motions to enforce a judgment are exempt from the conferral requirements of Local Rule 7.1(a)(3).

Dated: January 6, 2023

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
JEFFREY N. NUÑEZ
MICHAEL N. WILCOVE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
214-880-9779 (v)
214-880-9741(f)
Mary.E.Smith@usdoj.gov
Michael.N.Wilcove@uswdoj.gov
Jeffrey.N.Nunez@usdoj.gov

*Of counsel:*

JUAN ANTONIO GONZALEZ
Acting United States Attorney
Southern District of Florida