IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| ISAC SCHWARZBAUM, | ) |
| Defendant. | ) |

**UNITED STATES' REPLY IN SUPPORT OF RENEWED
MOTION FOR ORDER TO REPATRIATE FOREIGN ASSETS**

The United States obtained a judgment against Schwarzbaum totaling over $17 million. ECF No. 162. Schwarzbaum has failed to satisfy the judgment, post a bond, or otherwise obtain a stay of enforcement. The United States filed a renewed repatriation motion to enforce the judgment because Schwarzbaum has virtually no assets in the United States, but he has over $37 million in Switzerland. Schwarzbaum filed a notice of appeal and claims that such notice divests the Court of jurisdiction to enter a repatriation order. Schwarzbaum is wrong. As the Court already determined, even with an appeal pending, the Government may collect the judgment and the Court may issue orders to enforce the judgment, including a repatriation order. *See* ECF No. 127 at 11 ("The Government has obtained a Judgment in this case, which remains valid and enforceable unless and until the Eleventh Circuit determines otherwise in the pending appeal. Should Schwarzbaum wish to stay the execution of the Judgment, he is free to do so under Rule 62 of the Federal Rules of Civil Procedure.") (citing authority omitted).

# ARGUMENT

### A. The Court has jurisdiction to issue the repatriation order despite the pending appeal.

Schwarzbaum cannot divest the Court of jurisdiction to issue an order to enforce the judgment against him simply by filing a notice of appeal. It is true that "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 378-79 (1985). But "[a]bsent entry of a stay, a district court retains jurisdiction to enforce its judgment—via contempt or other means—during the pendency of an appeal." *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020); *see also City of San Antonio, Texas v. Hotels.com, L.P.*, 141 S. Ct. 1628, 1632 (2021) (noting that because the Federal Rules of Civil Procedure only stay enforcement of a district court judgment for 30 days after its entry, "[u]nless a further stay is granted, the prevailing party can attempt to execute on that judgment while an appeal is pending"); *Sergeeva v. Tripleton Int'l, Ltd.*, 834 F.3d 1194, 1202 (11th Cir. 2016) (rejecting defendant's "frivolous jurisdictional argument" that an appeal divested the district court of jurisdiction to enforce its orders); *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*, 895 F.2d 711, 713 (11th Cir. 1990) (noting that during an appeal the district court retains "the authority to act in aid of the appeal, to correct clerical mistakes or to aid in the execution of a judgment that has not been superseded").

Schwarzbaum has not posted a bond or otherwise demonstrated that he is entitled to a stay while his current appeal is pending.[1] Instead, Schwarzbaum, citing Fed. R. App. P. 4(a)(4), argues that certain motions result in jurisdiction "temporarily return[ing]" to the district court and that the repatriation motion "is not in the class of motions that return jurisdiction to this Court." ECF No. 170 at 3-4. Rule 4(a)(4) of the Federal Rules of Appellate Procedure is irrelevant to whether the Court has jurisdiction to enter a repatriation order. Rule 4(a)(4) identifies the types of post-judgment motions that, if timely filed in the district court, will toll the appeal clock until the district court decides the motion. Rule 4(a)(4) does not apply to motions to enforce a judgment.

Schwarzbaum also cites to *Garrick v. Weaver*, 888 F.2d 687 (10th Cir. 1987) in his attempt to convince the Court that it lacks jurisdiction to enforce its judgment. Schwarzbaum's reliance on *Garrick* is misplaced. In *Garrick*, the district court declined to enter an order, during an appeal, disbursing settlement funds deposited with registry of the court because the issue on appeal concerned the proper distribution and apportionment of funds. 888 F.2d at 695. In contrast, Schwarzbaum's appeal concerns the validity of the FBAR assessments. Moreover, he has deposited no funds with the Court. But he is certainly free to do so if he wants to obtain a stay of enforcement.

---

[1] After the Court entered the first order to repatriate, Schwarzbaum moved to stay the order pending his first appeal. ECF No. 130. The Court granted that motion over the United States' objection. ECF No. 133. The procedural posture of this case is different than it was when the Court decided to stay enforcement of the first repatriation order. For example, the Court reasoned that a stay was warranted during the first appeal because at that time the appeal had been fully briefed and argued and the parties were expecting a decision from the Eleventh Circuit any day. In contrast, the parties are still waiting on a briefing schedule for the current appeal.

> **B.  Schwarzbaum may pay the judgment voluntarily, post a bond, or face forced collection.**

Schwarzbaum is correct that he "is not required to post an appeals bond." ECF No. 170 at 4. The decision is up to him. If he chooses to post a bond that complies with Fed. R. Civ. P. 62 and L.R. 62.1, the Court can stay collection of the judgment. If not, the Government may avail itself of all lawful collection methods. *Collar v. Abalux, Inc*, No. 16-20872, 2018 WL 7364570, at *1 (S.D. Fla. Mar. 12, 2018) (Lenard, J.) ("Although appealing a money judgment does not automatically create a stay of the judgment pending appeal, a judgment debtor may obtain a stay by posting a supersedeas bond with the Court pursuant to Rule 62(d)…."). The purpose of a supersedeas bond is to preserve the status quo and protect the nonappealing party's rights during the appeal. *Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1141 (11th Cir. 2019).

In this district, "a bond is the norm for obtaining a stay" unless the defendant shows that their "ability to pay the judgment is so plain that the cost of the bond would be a waste of money," or "where the requirement would 'put defendant's other creditors in undue jeopardy.'" *SunTrust Bank v. Ruiz*, No. 14-21107, 2015 WL 11216712, at *2 (S.D. Fla. Aug. 16, 2015) (Goodman, M.J.) (quoting *Avirgan v. Hull*, 125 F.R.D. 185, 186 (S.D. Fla. 1989)). Those exceptions are "rare." *Avirgan, supra*. And Schwarzbaum has not shown them to exist. His actions are akin to the circumstances in *Procaps S.A. v. Patheon, Inc.*, No. 12-24356, 2017 WL 11558275 (S.D. Fla. Nov. 3, 2017) (Goodman, M.J.). There, the court held that a plain ability to pay was not shown where the judgment debtor's counsel "advised [the creditor's counsel] that [the debtor] had no assets in the United States and therefore 'good luck trying to collect.'" *Procaps S.A.*, 2017 WL 11558275, at *1.

4

Schwarzbaum, of course, has a right to appeal. If he prevails, the Government will return the money collected to the extent required by the appellate decision. Unless that happens, he cannot evade lawful collection actions without posting the required bond.

### C. The Court has the authority to order Schwarzbaum to repatriate assets sufficient to pay the judgment.

The Federal Debt Collection Procedures Act ("FDCPA")[2] incorporates the All Writs Act, 28 U.S.C. § 1651, which empowers federal courts to "'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" ECF No. 127 at 5 (quoting 28 U.S.C. § 1651); *see also* 28 U.S.C. § 3202(a) (providing that "[a] judgment may be enforced by any of the remedies set forth in this subchapter" and that "[a] court may issue other writs pursuant to section 1651 of title 28, United States Code, as necessary to support such remedies"). As recognized by this Court, "ordering Schwarzbaum to repatriate sufficient funds from his bank accounts in Switzerland conforms with the FDCPA, relying upon the express incorporation of the All Writs Act to support and supplement the expressly enumerated post-judgment remedies of garnishment and execution." ECF No. 127 at 7.

Although Schwarzbaum argues that the Court can only order a turnover of assets that had once been physically kept in the United States (ECF No. 170 at 5), the Court already rejected that argument. *See* ECF No. 127 at 7 ("Nor is the Court persuaded that because the funds in question were never in the United States, they are removed from the reach of the FDCPA.

---

[2] Section 3202(b) of the FDCPA provides that when the United States commences an action under that subsection, the United States is required to prepare, and the clerk is required to issue, a notice to the judgment debtor in the form set forth in the statute. *Id.* In granting the United States' first repatriation motion, the Court concluded that the issuance of a notice of a post-judgment repatriation order is not required by § 3202(b). ECF No. 127 at 11. The Court noted that once Schwarzbaum complied with the repatriation order, "the Government may thereafter seek a remedy of garnishment or execution under the FDCPA with respect to [the repatriated] funds, and request that the Clerk of Court issue the appropriate notice." *Id.* at 12.

Notwithstanding the dearth of case law regarding the interplay between the FDCPA and the All Writs Act, the cases supporting the Court's interpretation rely upon the Court's personal jurisdiction over the Defendant to reach assets overseas, when the Defendant has an outstanding judgment or tax liability to the government."); *see also id.* at 10 ("[I]nterpreting the FDCPA in the manner Schwarzbaum urges would strip the FDCPA of any meaning or power where the United States obtains a valid judgment against an individual otherwise subject to the Court's jurisdiction, but who holds the majority of his assets overseas. Such a result would be inconsistent with the broad flexibility afforded by the FDCPA in enforcement of judgments.").

Moreover, as pointed out by the United States in its reply in support of its first repatriation motion (ECF No. 122), Schwarzbaum's argument that the Court can only order a turnover of assets that had once been physically kept in the United States is premised on the fact that the Merriam-Webster dictionary defines the word "repatriate" as "to restore or return to the country of origin, allegiance, or citizenship." ECF No. 170 at 5-6.[3] Because the Government's motion does not entail a need to interpret the word "repatriate" as it is used in a statute, there is

---

[3] Schwarzbaum also misquotes I.R.M. § 5.21.3.6(2) to support his interpretation of "repatriate." He claims that the IRM "provides that repatriation orders are used when a taxpayer 'transferred assets to a foreign country.'" ECF No. 170 at 6. In fact, that section reads "[a] Repatriation Order is an order issued by a federal judge, after a hearing, requiring a taxpayer who has either transferred assets from the U.S. to a foreign country *or acquired assets in a foreign country* to transfer them back into the United States." I.R.M. § 5.21.3.6(2) (emphasis added). Obviously, Schwarzbaum truncated his quotation because it ran counter to his argument that a court can only order a return of assets that had once been in the United States.

no need to bring in rules of statutory construction.[4] But if it makes a difference, we can call our requested relief "bringing in" foreign assets instead of "repatriating" them.[5]

In addition, besides being belied by common sense, Schwarzbaum's argument is refuted by *United States v. McNulty*, 446 F. Supp. 90, 92 (N.D. Cal. 1978). There, the Government secured a judgment against McNulty for unpaid taxes. McNulty won the Irish Hospital Sweepstakes and kept the funds outside the United States. Even so, the court determined that because it had jurisdiction over McNulty it could order McNulty to bring the money—repatriate it—into the United States. In its motion, the Government provided an array of cases in which federal courts ordered judgment debtors to repatriate assets located in foreign countries. ECF No. 169 at 8-10. None of them distinguishes between assets at one time housed in the United States and ones always housed abroad. There would be no reason to do so. Any such distinction would only encourage gamesmanship by recalcitrant debtors like Schwarzbaum who wish to frustrate a prevailing party's attempts to collect on a judgment and thumb their noses at a district court's inherent power to enforce judgments.[6]

---

[4] The Government does not concede that the Merriam-Webster definition of "repatriate" is inapplicable to assets that have always been kept abroad.

[5] Repatriation is a common law remedy grounded in the All Writs Act that courts avail themselves of to enforce their judgments; there is no statutory language to construe.

[6] Schwarzbaum also admits what the United States demonstrated at trial, that in 2009 he moved millions of dollars from his U.S. bank accounts to his Swiss accounts. ECF No. 121 at 3. He claims he moved his assets in connection with moving his family to Switzerland, but the reason he moved the funds is immaterial. This explanation does not withstand minimal scrutiny because the fact remains that Schwarzbaum "expatriated" millions of dollars when he allegedly moved to Switzerland.

Schwarzbaum next claims that repatriation orders are reserved for tax liabilities and disgorgement. He is correct that the cases cited by the Government involve those matters.[7] But none of those courts relied on the fact that the cases were tax or disgorgement cases to order repatriation. And the fact that repatriation orders are used in those kinds of cases does not preclude using them elsewhere. Indeed, the Court previously noted that "Schwarzbaum has not pointed to a convincing basis for why the reasoning in [*McNulty* and other tax cases involving repatriation] should not apply in the context of this case." ECF No. 127 at 10.

Also spurious is Schwarzbaum's attempt to liken the Government's repatriation motion to jeopardy assessments authorized by the Internal Revenue Code. The jeopardy assessment statutes affect the steps that ordinarily must be taken before the IRS assesses or collects a tax under the Internal Revenue Code. If the IRS determines that collection of a tax is in jeopardy, it may assess a tax before (a) issuing a notice of deficiency, if applicable, (b) the date that a return is to be filed, or (c) the tax is to be paid. 26 U.S.C. §§ 6861, 6862. In addition, the IRS may collect the tax even if the collection due process prerequisites have not yet been completed. *See* 26 U.S.C. § § 6330(f)(1), 6331(a).[8] The jeopardy provisions have nothing to do with collecting a

---

[7] The cases cited in the United States' brief also contradict Schwarzbaum's assertion that repatriation is only ordered in tax or disgorgement cases. *See, e.g.*, *United States v. Bradley*, 644 F.3d 1213, 1308-11 (11th Cir. 2011) (criminal restitution); *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1298 (11th Cir. 2002) (bankruptcy). There are several cases in a wide array of contexts when one expands the search beyond the Eleventh Circuit. *See e.g. In re Allen*, 768 F.3d 274, 280-81 (3d Cir. 2014) (repatriation orders are valid exercises of a court's *in personam* jurisdiction over a judgment debtor). Also, there is no requirement to show fraud or ill-gotten gains.

[8] Section 7429 of the Internal Revenue Code provides a mechanism for judicial review of jeopardy assessments and levies.

judgment after a trial. And the jeopardy levy code sections and case law are even more far afield when collection of non-tax debts is at issue such as they are here.

Schwarzbaum offers another illogicality by arguing that the use of repatriation orders in disgorgement cases means they cannot be used to collect other types of judgments. Nothing in the disgorgement cases cited by the Government supports that reasoning. *See Sec. & Exch. Comm'n v. Aragon Capital Advisors, LLC*, No. 07-919, 2011 WL 3278907, at *9 (S.D.N.Y. July 26, 2011); *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1232 (9th Cir. 1999). Schwarzbaum's reliance on *Branch Banking & Trust Co. v. Hamilton Greens, LLC*, No. 11-80507, 2014 WL 1603759 (S.D. Fla. Feb. 26, 2014), *report and recommendation adopted*, 2014 WL 1493086 (S.D. Fla. Mar. 24, 2014) is misplaced. There, the plaintiff moved to hold one of the defendants in civil contempt for not using assets in a foreign trust to pay the judgment against him. It does not appear that the plaintiff filed a repatriation motion before seeking a contempt citation. The court, in its discretion, declined to hold the defendant in contempt. In doing so, the court pointed to three facts: (1) there was no evidence that the defendant's motive for establishing the trusts was to evade taxes; (2) the offshore funds were not ill-gotten and (3) the defendant had proven that he could not access the funds.[9] The court did not hold that it lacked the authority to order repatriation or that it could only do so if the assets were tainted. Further, *Branch Banking & Trust* is readily distinguished: the defendant proved he could not repatriate the assets held abroad. Schwarzbaum makes no assertion, let alone offers any evidence, that he cannot access the money in his Swiss accounts. He simply does not want to pay.

---

[9] A different court might have reached a different conclusion.

## CONCLUSION

Schwarzbaum tries to impose a limit to the Federal Debt Collection Procedures Act that neither exists nor makes sense. He offers no cogent reason why he gets a free pass on paying the judgment simply because he keeps his assets offshore. He is snubbing the judicial process and the Court's authority. The Court can and should order him to repatriate assets sufficient to pay the judgment just as it did before.

Dated: January 27, 2023

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
JEFFREY N. NUÑEZ
MICHAEL N. WILCOVE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
214-880-9779 (v)
214-880-9741(f)
Mary.E.Smith@usdoj.gov
Michael.N.Wilcove@uswdoj.gov
Jeffrey.N.Nunez@usdoj.gov

*Of counsel:*

JUAN ANTONIO GONZALEZ
Acting United States Attorney
Southern District of Florida