IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES OF AMERICA'S OPPOSED
MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT
ISAC SCHWARZBAUM SHOULD NOT BE HELD IN CIVIL CONTEMPT**

Defendant Isac Schwarzbaum failed to repatriate assets held overseas to satisfy this Court's $17 million judgment against him, in defiance of this Court's Repatriation Order. Accordingly, the United States of America moves the Court for an order requiring Schwarzbaum to personally appear before this Court for a hearing to show cause why he should not be held in civil contempt for violating the Court's Order on United States' Renewed Motion for Order to Repatriate Foreign Assets entered on March 29, 2023 (ECF No. 176). In support of this motion, the United States avers:

**I.   BACKGROUND**

On November 1, 2022, the Court entered an amended final judgment for the United States and against Schwarzbaum in the amount of $12,555,813, plus further accruals of late payment penalties and interest. ECF No. 162. As of the judgment date, Schwarzbaum was indebted to the United States in the total amount of $17,929,717.88. *Id.* The United States sent

Schwarzbaum a demand letter to try to have him voluntarily pay the judgment without judicial intervention. ECF No. 169 at 4. Schwarzbaum failed to pay the judgment. *See* ECF No. 169.

On January 6, 2023, the United States filed a Renewed Motion for Order to Repatriate Foreign Assets, which this Court granted over Schwarzbaum's objection ("Repatriation Order"). ECF No. 176. The Repatriation Order required Schwarzbaum to repatriate assets held overseas into a United States bank account in his name over which the Court has jurisdiction in an amount sufficient to satisfy the outstanding judgment, inform counsel for the United States of the name and address of the bank and the complete bank account number, and notify the Court of his compliance with the Order by April 28, 2023.[1] *Id.* Schwarzbaum ignored that deadline and instead moved to stay the Repatriation Order pending Schwarzbaum's appeal. ECF No. 178. On June 9, 2023, the Court denied Schwarzbaum's motion. ECF No. 186. Schwarzbaum has not asked the Eleventh Circuit to review the Order denying Schwarzbaum's motion to stay the Repatriation Order. He has not posted a *supersedeas* bond or sought further stay relief from the Court of Appeals.

On June 26, 2023, undersigned counsel sent a letter to Schwarzbaum's counsel, requesting that Schwarzbaum comply with the Repatriation Order by July 26, 2023. *See* Exhibit 1, Declaration of Mary Elizabeth Smith. Undersigned counsel advised that if Schwarzbaum did

---

[1] The United States requested that the Court order Schwarzbaum to "repatriate the funds in his Swiss accounts . . . up to the amount he owes to the United States pursuant to the final judgment after remand plus the 10% surcharge under 28 U.S.C. § 3011(a) and accrued late-payment penalties and post-judgment interest." ECF No. 169 at 5. The Order granting the renewed repatriation motion does not mention the 10% surcharge. The Court, however, has previously recognized that the United States is entitled to the 10% surcharge in this case. ECF No. 129. The surcharge, authorized by 28 U.S.C. § 3011(a), applies once a judgment debtor fails to pay the amount due under a judgment pursuant to a demand for payment, and the United States must resort to post-judgment remedies under the FDCPA to enforce the claim for the judgment debt and is applicable here.

not comply with the Repatriation Order by July 26, 2023, the United States would file a motion for order to show cause why Schwarzbaum should not be held in contempt. *Id.* Schwarzbaum did not respond to that letter or repatriate assets. *Id.*

## II.     LEGAL STANDARD

The power to find a party in civil contempt stems from the Court's inherent authority to enforce compliance with its lawful orders. *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."). If a party that obtained an order believes the opposing party is not following the court's mandate, it may file a motion for the court "to issue an order to show cause why the opposing party should not be adjusted in civil contempt and sanctioned." *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000).

The party seeking to prove contempt must do so by clear and convincing evidence—a standard that is greater than a preponderance but less than beyond all reasonable doubt. *Georgia Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* (emphasis omitted). If the party establishes these three elements, the alleged violator may assert his "present inability to comply" as a defense. *SEC v. Greenberg*, 105 F. Supp. 3d 1342, 1345 (S.D. Fla. 2015) (Hurley, J.) (quoting authority omitted); *see also United States v. Grant*, No. 00-08986, 2008 WL 2394826, at *1 (S.D. Fla. May 27, 2008) (declining to find a debtor in civil contempt of a repatriation order because the debtor "made significant efforts to repatriate the funds to the United States, either directly to her or to a U.S. trustee, to no avail"). "To assert this

defense, the defendant must prove that he has made in good faith all reasonable efforts to comply with the final judgment." *Id.* (quoting authority omitted). The burden then shifts back to the moving party to prove the alleged violator's ability to comply. *Id.*

Simply because one party has appealed the district court's judgment, it does not follow that compliance with the judgment is automatically stayed. *See* Wright & Miller, 16A Fed. Prac. & Proc. Juris. § 3954 (5th ed. 2019). As the treatises outline, a party must seek a stay under Fed. R. Civ. P. 62 and/or Fed. R. App. P. 8. *Id.* Where no stay is sought, or the judgment debtor's request for a stay is denied, the district court retains jurisdiction to enforce its judgment, via contempt or otherwise, during the pendency of the appeal. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1202 (11th Cir. 2016) (citing *Maness v. Myers*, 419 U.S. 4449, 458–60 (1975)).

The Court has "wide discretion" to craft a remedy for contempt. *United States v. City of Miami*, 195 F.3d 1291, 1298 (11th Cir. 1999); *see also Citronelle-Mobile Gathering*, 943 F.2d at 1304 (noting that the district court has "numerous options" in deciding what sanction to impose to ensure compliance with a court order, including "a coercive daily file, a compensatory fine, attorney's fees and expenses to the Receiver, and coercive incarceration") (collecting cases). The Court's "civil contempt power is measured solely by the requirements of full remedial relief." *Id.* (internal quotation marks omitted).

**III.   ARGUMENT**

The record establishes, by clear and convincing evidence, that Schwarzbaum is in civil contempt of the Repatriation Order. First, the Repatriation Order, entered by this Court, is a valid and lawful order. The Repatriation Order, together with the final judgment, have not been stayed and are in full force and effect.

Second, the Repatriation Order is clear and unambiguous. The Court ordered Schwarzbaum "to repatriate assets held oversees into a United States bank account in his name over which this Court has jurisdiction in an amount sufficient to satisfy the Outstanding Debt [(defined in the Repatriation Order to be $17,929,717.88)]." ECF No. 176 at 9. Further the Repatriation Order required Schwarzbaum to "inform counsel for the United States of the name and address of the bank and the complete bank account number" and to "notify the Court of his compliance with this Order **no later than April 28, 2023**." *Id.* (emphasis in original). Schwarzbaum failed to comply with any of these requirements. The actions that the Court has ordered Schwarzbaum to undertake are entirely within his control and are ones that he is presumably knowledgeable about since Schwarzbaum has previously moved millions of dollars out of the Court's jurisdiction and into his Swiss bank accounts. ECF No. 115 at 5. These offshore funds include the proceeds from Schwarzbaum's sale of his primary residence in Florida mere days before the Court's original judgment went into effect. *Id.* at 4. Schwarzbaum has moved funds from his U.S. bank accounts into his Swiss bank accounts; he can easily move funds in the opposite direction.

Third, Schwarzbaum has the ability to comply with the Repatriation Order. As set forth in the United States' Renewed Motion for Order to Repatriate Foreign Assets (ECF No. 169), Schwarzbaum reported to the IRS that for calendar year 2021, he had over $37 million in assets in Swiss bank accounts. *Id.* at 3. In his Response to the Renewed Motion for Order to Repatriate Foreign Assets, Schwarzbaum did not claim he would be unable to comply with a repatriation order. *See* ECF No. 170. Similarly, he never claimed he lacked the financial resources to comply with the Repatriation Order when he moved to stay the Repatriation Order (ECF No. 178) and he has not informed undersigned counsel that he is unable to comply with the Repatriation Order.

And Schwarzbaum has averred that he lives a highly mobile international lifestyle, and he has shuffled millions of dollars around the globe, so there appears to be no technical barrier to him repatriating the funds subject to the Repatriation Order. Thus, the record evidence establishes that Schwarzbaum can comply with the Repatriation Order and has simply chosen not to.

## IV.    CONCLUSION

The United States asks this Court to issue an Order to Show Cause to Schwarzbaum and require him to explain why the Court should not hold him in contempt for violating the Repatriation Order. Schwarzbaum has alleged that he has a high likelihood of success on the merits of his appeal, and while the Court has rejected that, Schwarzbaum no doubt still believes it and he feels that the rules should not apply to him in posting an appeal bond to stay collection of the judgment. Schwarzbaum should be treated like any other litigant and is subject to the penalties of contempt if he disobeys Court orders. Should the Court determine that Schwarzbaum is in contempt of the Repatriation Order, the United States requests that the Court impose such sanctions as the Court deems just and proper, including, but not limited to, a monetary fine for each day Schwarzbaum fails to comply with the Repatriation Order and incarceration.

## CERTIFICATE OF CONFERRAL

On September 28, 2023, in accordance with Local Rule 7.1(a)(3), undersigned counsel conferred with Defendant Isac Schwarzbaum's counsel, Chad Vanderhoef, who advised that he objects to the requested relief.

Dated: September 29, 2023                    Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
JEFFREY N. NUÑEZ
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
214-880-9779 (Smith)
202-353-1988 (Nuñez)
202-514-4963 (fax)
Mary.E.Smith@usdoj.gov
Jeffrey.N.Nunez@usdoj.gov

Counsel for Plaintiff
United States of America