IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:18–CV–81147–BLOOM–REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**UNITED STATES' MEMORANDUM ON CIVIL CONTEMPT SANCTIONS**

Defendant Isac Schwarzbaum has not complied with this Court's Order on United States' Renewed Motion for Order to Repatriate Foreign Assets ("Renewed Repatriation Order"). ECF No. 176. In light of his non-compliance, the Court found Schwarzbaum in civil contempt and scheduled an in-person hearing on March 1, 2024, to determine the proper sanction. ECF No. 199. The Court ordered Schwarzbaum to respond in writing with what he believes is the appropriate sanction for his ongoing contempt. *Id.* at 3.

Schwarzbaum responded by informing the Court that he will not appear at the hearing on March 1, 2024.[1] ECF No. 202. As for an appropriate sanction, Schwarzbaum claims that no sanction is warranted because he believes he will prevail in his pending appeal. *Id.* at 2-3. This Court already rejected Schwarzbaum's argument that compliance with the Renewed Repatriation Order is not required because of the pending appeal. *See* ECF No. 186 at 3 (noting that

---

[1] Schwarzbaum submitted a declaration, without any supporting medical records or declaration from a medical professional, claiming that his general practitioner instructed him to avoid air travel until August 31, 2024, and to limit ground travel to a duration of four-to-six hours. ECF No. 202-1. Schwarzbaum did not file a motion for permission to appear at the hearing remotely, and he did he offer to make his medical doctors available for questioning.

Schwarzbaum has "failed to make a strong showing that he is likely to succeed on the merits" in his appeal) (quoting authority omitted).

## ARGUMENT

The United States requests that the Court sanction Schwarzbaum to coerce his compliance with the Renewed Repatriation Order by imprisoning him, requiring him to pay a fine, or ordering some combination of sanctions the Court fashions that will reasonably induce him into compliance. The Court has "wide discretion" to craft a remedy for contempt. *United States v. City of Miami*, 195 F.3d 1291, 1298 (11th Cir. 1999); *see also Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) (noting that the district court has "numerous options" in deciding what sanction to impose to ensure compliance with a court order, including "a coercive daily file, a compensatory fine, attorney's fees and expenses to the Receiver, and coercive incarceration") (collecting cases). The Court's civil contempt power is measured solely by "the requirements of full remedial relief." *Id.* (internal quotation marks omitted).

Civil contempt sanctions are remedial and not punitive. Incarceration is remedial if the goal is to get a defendant to perform an affirmative act required by a court's order. *United States v. Bayshore Assocs.*, 934 F.2d 1391, 1400 (6th Cir. 1991) (citing *Hicks v. Feiock*, 485 U.S. 624, 632 (1988)); *Shillitani* v. *United States*, 384 U.S. 364, 370 (1966) ("Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance."). Further, incarceration as a civil contempt sanction is conditional; once the contemnor complies with the terms of the original order, he must be released. *Id.* (citing *Hicks*, 485 U.S. at 635 n.7). Incarceration is an appropriate remedy when a defendant refuses to pay a money judgment despite an ability to do so. *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342,

1356 (S.D. Fla. 2015) (Hurley, J.) (concluding that "incarceration is the appropriate coercive remedy" because the defendant failed to pay a judgment despite an ability to do so) (collecting cases); *see also United States v. Kelly*, No. 21-12570, 2024 WL 37935, at *3 (E.D. Mich. Jan. 3, 2024) (finding defendant in civil contempt for failing to repatriate funds to satisfy judgment related to willful FBAR penalties, ordering that defendant pay a daily fine until he complies with the repatriation orders, issuing an arrest warrant, and ordering that defendant shall be incarcerated until he fully complies with the repatriation orders).

Fines may be paid to the complainant as compensation or to the Court to coerce action when the defendant can avoid the fine simply by performing the affirmative act required by the court's order. *United States v. Two Gen. Elec. Aircraft Engines*, 317 F. Supp. 3d 516, 521-22 (D.D.C. 2018). Additionally, when determining the amount of a contempt fine, courts should "consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). A daily fine that terminates once the contemnor complies with the original order is an appropriate civil fine, while a "flat, unconditional fine" may be considered a criminal contempt sanction "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994).

The United States' proposed sanctions of imprisonment, a monetary fine, or a combination of both, are appropriate given Schwarzbaum's defiant approach to complying with the Renewed Repatriation Order as well as this Court's order that he appear in-person at the forthcoming March 1st hearing. These sanctions would work to coerce Schwarzbaum into complying with the Renewed Repatriation Order, which is a necessary precursor for the United

States to execute its judgment. Imprisonment likely would be a more effective sanction than a daily monetary fine because Schwarzbaum has already flouted the Court's Renewed Repatriation Order to collect a sizeable money judgment, and he is similarly likely to be unmoved by adding a daily fine payable to the Court on top of the judgment. If the Court is inclined to imprison Schwarzbaum to coerce his compliance, Schwarzbaum would be released as soon as he complies with the Renewed Repatriation Order. *See Bagwell*, 512 U.S. at 828 ("[T]he contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket.") (quoting authority omitted).

Additionally, in terms of a monetary fine, the United States requests that the Court impose a fine payable to the Court that would coerce Schwarzbaum to comply with the Renewed Repatriation Order, rather than a compensatory fine based on actual damages. The sanction of a monetary fine is appropriate because Schwarzbaum has sufficient financial resources overseas in his Swiss bank accounts to repatriate funds to satisfy the judgment and pay the fine to the Court for so long as he chooses to remain in contempt.[2] Of course, Schwarzbaum can avoid paying a

---

[2] In his filing at ECF No. 202 p.3, Schwarzbaum misleadingly cites to a prior Court order issued *in 2021* which noted that at that stage of his non-compliance there was no indication that payment of the United States' judgment was in jeopardy because it did not appear that Schwarzbaum was dissipating his assets. To the contrary, *in 2023*, the Court denied Schwarzbaum's motion for a stay pending appeal, based in part on the fact that Schwarzbaum's refusal to pay the judgment left the United States exposed to the possibility that it would not recover its judgment. This finding was based on uncontroverted evidence that Schwarzbaum's bank account balances had decreased by $12 million (or more) since 2019. ECF No. 186, at p.5; *see also* ECF No. 179, at p.8 n.4 (setting out that in addition to selling his house post-trial and fleeing the country with the proceeds Schwarzbaum's self-reported net worth had decreased by $12 million). The Court was not persuaded that this was overwhelming direct evidence of dissipation of assets since Schwarzbaum contended in his reply that the decrease in his net worth was due to trading losses or market positions weakening in the wake of the global pandemic. No matter the reason, the Court recognized that Schwarzbaum's contempt of the Court's repatriation order imperiled the United States' judgment collection efforts and that, as a factual matter, his net worth had decreased. *Id.*

fine and imprisonment if he complies with the Renewed Repatriation Order. *Two Gen. Elec. Aircraft Engines*, 317 F. Supp. 3d at 521-22.

Thus, the United States requests that the Court, having found Schwarzbaum in contempt of the Renewed Repatriation Order, order appropriate sanctions, including a fine, imprisonment, or a combination of both.

Dated: February 23, 2024                                           Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Mary Elizabeth Smith*
MARY ELIZABETH SMITH
JEFFREY N. NUÑEZ
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
214-880-9779 (Smith)
202-353-1988 (Nuñez)
202-514-4963 (fax)
Mary.E.Smith@usdoj.gov
Jeffrey.N.Nunez@usdoj.gov

Counsel for Plaintiff
United States of America