**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**Case No. 9:18–CV–81147–BLOOM–REINHART**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ISAC SCHWARZBAUM, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT ISAC SCHWARZBAUM'S CORRECTED MOTION TO SET ASIDE JUDGMENT AND TO DISMISS CASE**

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

JEFFREY N. NUÑEZ
Trial Attorney
Tax Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
P: (202) 616-5218
F: (202) 514-5238
Jeffrey.N.Nunez@usdoj.gov
*Counsel for Plaintiff*
*United States of America*

i

TABLE OF CONTENTS

**I.   The Rule 60 Motion should be denied under the fugitive disentitlement doctrine because the defendant has been found in contempt for refusing to pay the judgment** ........................................................................................................ 1

**II.  Mr. Schwarzbaum's invocation of the Seventh Amendment is untimely and waived.** ..................................................................................................... 3

   a.   Mr. Schwarzbaum's motion is untimely. ............................................................ 3

   b.   Any Seventh Amendment challenged is waived because *Jarkesy* was decided prior to entry of final judgment in this case. .................................................... 4

**III. Mr. Schwarzbaum's claims for Rule 60(b) relief lack merit because he received due process and because there was no intervening change in controlling law.** ............... 5

   a.   Mr. Schwarzbaum's claim he was not given due process is meritless. ................ 5

   b.   At all events Rule 60 relief fails because *Jarkesy* and *Sagoo* are not intervening changes in controlling law. .............................................................................. 5

**IV. In the alternative, Mr. Schwarzbaum's argument fails because the FBAR assessment and enforcement regime does not violate the Seventh Amendment.** ............ 7

   a.   The assessment of FBAR penalties is not a suit at common law ........................ 8

     1.   The assessment of FBAR penalties is not a "suit." ...................................... 9

     2.   The assessment of FBAR penalties is not the type of remedy that could only be enforced in a court of law. ................................................................... 10

     3.   The assessment of FBAR penalties is not similar to any common law cause of action. .................................................................................................. 12

   b.   Even if the assessment of FBAR penalties were a suit at common law, no jury trial rights attach because the public rights exception applies. .......................... 13

   c.   Even if jury trial rights in connection with FBAR enforcement exists, a jury trial was waived in this case and so there was no Seventh Amendment injury. ...... 17

   d.   Congress assigned FBAR penalty assessment to the Treasury, and so there no Seventh Amendment violation; the Court should respect the separation of powers. ....... 19

**V.   Conclusion** .................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*A&F Bahamas LLC v. World Venture Grp., Inc.*,
 796 F. App'x 657 (11th Cir. 2020) ..................................................................................3

 *Stansell v. Revolutionary Armed Forces of Colombia*,
 771 F.3d 713 (11th Cir. 2014) ....................................................................................3, 5

*Arthur v. Thomas*,
 739 F.3d 611 (11th Cir. 2014) .......................................................................................1

*AT&T, Inc. v. FCC*,
 135 F.4th 230 (5th Cir. 2025) ........................................................................................6

*AT&T, Inc. v. FCC*,
 149 F.4th 491 (5th Cir. 2025) ......................................................................................11

*Atlas Roofing Co., Inc. v. O.S.H.A.*,
 430 U.S. 442 (1977)..................................................................................8, 14, 15, 17

*Ex parte Bakelite Corp.*,
 279 U.S. 438 (1929) (Court of Federal Claims) .......................................................18

*Bakrac, Inc. v. Villager Franchise Sys., Inc.*,
 164 F. App'x. 820 (11th Cir. 2006) .............................................................................18

*Bravo v. Eden Isles Condo. Ass'n, Inc.*,
 2011 WL 13174648 (S.D. Fla. Jul. 11, 2011)..............................................................6

*BUC Intern. Corp. v. Int'l Yacht Council Ltd.*,
 517 F.3d 1271 (11th Cir. 2008) .....................................................................................3

*California Bankers Ass'n v. Shultz*,
 416 U.S. 21 (1974)..........................................................................................13, 14, 16

*In re Clay*,
 35 F.3d 190 (5th Cir. 1994) .........................................................................................18

*Commodity Futures Trading Comm'n v. Schor*,
 478 U.S. 833 (1986)......................................................................................................18

*Coney Island Auto Parts Unlimited, Inc. v. Bruton, Tr. for Vista-Pro Auto., LLC*,
 No. 24-808, 607 U.S. ---, 2026 WL 135998 (Jan. 20, 2026) ......................................3

*Doe v. Rollins Coll.*,
 2020 WL 8408453 (M.D. Fla. Jul. 13, 2020) ...............................................................6

*Empire Blue Cross and Blue Shield v. Finkelstein*,
  111 F. 3d 278 (2d Cir. 1997) ............................................................................2

*FCC v. AT&T, Inc.*,
  No. 25-406, 2026 WL 73092 (S. Ct. Jan. 9, 2026) ..........................................6

*Finnegan v. Comm'r*,
  926 F.3d 1261 (11th Cir. 2019) .........................................................................4

*Flora v. United States*,
  362 U.S. 145 (1960)..........................................................................................20

*Ghahan, LLC v. Palm Steak House, LLC*,
  745 F. App'x 302 (11th Cir. 2018) ...................................................................4

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)..................................................................................9, 11, 14

*Harrell v. The Fla. Bar*,
  608 F.3d 1241 (11th Cir. 2010) ......................................................................18

*HDH Grp., Inc. v. United States*,
  2025 WL 2711877 (W.D. Pa. Sept. 23, 2025)................................................17

*Jenner v. Comm'r*,
  2024 WL 4542905 (T.C. Oct. 22, 2024) ...........................................................9

*Lahey v. State Farm Mut. Auto Ins. Co.*,
  2008 WL 1766764 (M.D. Fla. Apr. 17, 2008) ..................................................6

*LaMarca v. Turner*,
  995 F.2d 1526 (11th Cir. 1993) ......................................................................18

*Law Off. of Rodrigo S. Da Silva, P.A. v. Auckland Holdings, LLC*,
  2025 WL 1191111 (S.D. Fla. Feb. 14, 2025) (Leibowitz, J.)..........................7

*Magluta v. Samples*,
  162 F.3d 662 (11th Cir. 1998) ...........................................................................2

*Mendu v. United States*,
  2021 WL 1291674 (Fed. Cl. Apr. 7, 2021)........................................................9

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) .............................................................................7

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  59 U.S. 272 (1855)............................................................................................15

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC,*
  584 U.S. 325 (2018)........................................................................................19

*Olshausen v. Comm'r,*
  273 F.2d 23 (9th Cir. 1959) (Tax Court) ........................................................18

*Ortega v. Off. of the Comptroller of the Currency,*
  155 F.4th 394 (5th Cir. 2025) ....................................................................6, 15

*Pesin v. Osorio Rodriguez,*
  244 F.3d 1250 (11th Cir. 2001) ........................................................................2

*Pierce v. Kyle,*
  536 F. App'x 783 (11th Cir. 2013) ....................................................................3

*Ponamgi v. Safeguard Servs. LLC.,*
  2013 WL 12080163 (S.D. Fla. May 30, 2013) (Dimitrouleas, J.) ....................6

*Riddle Aggregates, LLC v. Comm'r,*
  165 T.C. No. 12, 2025 WL 3626952 (2025)......................................................7

*Ritter v. Smith,*
  811 F.2d 1398 (11th Cir. 1987) ....................................................................5, 6

*SEC v. Jarkesy,*
  603 U.S. 109 (2024)......................................................................................1, 6

*Sec'y, U.S. Dep't of Labor v. Preston,*
  873 F.3d 877 (11th Cir. 2017) ........................................................................18

*Silver Moss Props., LLC v. Comm'r,*
  165 T.C. No. 3, 2025 WL 2416867 (2025).............................................7, 12, 16

*Sliwa v. Bright House Networks, LLC,*
  2018 WL 1531913 (M.D. Fla. Mar. 29, 2018) ................................................19

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016)........................................................................................19

*Sprint Corp. v. FCC,*
  151 F.4th 347 (D.C. Cir. 2025)........................................................................6

*Tull v. United States,*
  481 U.S. 412 (1987)..................................................................................11, 12

*U.S./Fed. Commc'ns Comm'n v. Cuevas,*
  2000 WL 852308 (D. Conn. Mar. 31, 2000) ..................................................19

*United Stated v. Rum*,
  995 F.3d 882 (11th Cir. 2021) ................................................................................................18

*United States v. Barnette*,
  129 F.3d 1179 (11th Cir. 1997) ...........................................................................................2, 3

*United States v. Clemons*,
  2020 WL 7407549 (M.D. Fla. Apr. 15, 2020) .........................................................................17

*United States v. Cohen*,
  2018 WL 6318837 (C.D. Cal. Oct. 23, 2018) ............................................................................9

*United States v. De Canahuati*,
  S.D. Fla. No. 1:22-cv-23411-KMM (ECF No. 16) ...................................................................5

*United States v. Dunifer*,
  997 F. Supp. 1235 (N.D. Cal. 1998), *aff'd on other grounds*, 219 F.3d 1004
  (9th Cir. 2000) .......................................................................................................................19

*United States v. Galletti*,
  541 U.S. 114 (2004) .................................................................................................................9

*United States v. Garrity*,
  2019 WL 1004584 (D. Conn. Feb. 29, 2019) .........................................................................17

*United States v. Harrington*,
  719 F. Supp. 3d 1171 (D. Colo. 2024) ...................................................................................18

*United States v. Kahn*,
  5 F.4th 167 (2d Cir. 2021) ......................................................................................................13

*United States v. Mahmoud*,
  No. 3:24-cv-00039-JES (S.D. Cal. Order entered Jan. 22, 2026, at ECF No.
  49) .....................................................................................................................................1, 19

*United States v. Mahyari*,
  2024 WL 378838 (D. Or. Feb. 1, 2024) ..................................................................................17

*United States v. Mendoza*,
  464 U.S. 154 (1984) .................................................................................................................9

*United States v. Meyer*,
  50 F.4th 23 (11th Cir. 2022) ..................................................................................................10

*United States v. Sagoo*,
  2025 WL 2689912 (N.D. Tex. Sept. 19, 2025) ................................................................1, 6, 9

*United States v. Sagoo*,
    No. 25-11271, Doc. 22-2 (5th Cir. Dec. 23. 2025) ...................................................6

*United States v. Shaloub*,
    2016 WL 8943847 (S.D. Fla. Jan. 25, 2016) (Middlebrooks, J.) ...............................2

*United States v. Toth*,
    33 F.4th 1 (1st Cir. 2022) ......................................................................................16

*Upshur Cnty. v. Rich*,
    135 U.S. 467 (1890).............................................................................................10

*Verizon Commc'ns Inc. v. FCC*,
    156 F.4th 86 (2d Cir. 2025) ...................................................................................6

*Weston v. City Council of Charleston*,
    27 U.S. 449 (1829)..............................................................................................10

*Wickwire v. Reinecke*,
    275 U.S. 101 (1927)............................................................................................20

**Statutes**

18 U.S.C. § 402 ...........................................................................................................3

26 U.S.C. § 6663(a) ..................................................................................................12

26 U.S.C. § 6700 .......................................................................................................17

28 U.S.C. § 1355(a) ..................................................................................................11

31 U.S.C. § 3511 .......................................................................................................13

31 U.S.C. § 3716 .........................................................................................................9

31 U.S.C. § 5314 .......................................................................................................14

31 U.S.C. §§ 5314 and 5321 .....................................................................................19

31 U.S.C. § 5321(b) ....................................................................................................8

33 U.S.C. § 1319 .......................................................................................................11

Bank Secrecy Act.............................................................................................12, 13, 14

Dodd-Frank Act .........................................................................................................11

Occupational Safety and Health Act of 1970 ..........................................................14

PL 91-508, October 26, 1970, 84 Stat. 1114, § 241 .................................................................14

**Other Authorities**

31 C.F.R. § 1010.350 ..................................................................................................................14

31 C.F.R. § 1010.810(g) .........................................................................................................9, 19

Seventh Amendment .............................................................5, 6, 7, 8, 13, 16, 17, 18, 19

Eighth Amendment ......................................................................................................................4

Fed. R. Civ. P. 60(b) ...................................................................................................................1

Fed. R. Civ. P. 60(c)(1) .............................................................................................................3

Federal Rules of Civil Procedure 60(b)(4) ...............................................................................5

Rule 60 ............................................................................................................................3, 4, 20

Rule 60(b)(6) ...............................................................................................................................5

U.S. Const., Amend. VII ........................................................................................................7, 9

**STATEMENT REGARDING ORAL ARGUMENT**

Counsel for the United States respectfully informs this Court that they believe that oral argument may be helpful to the Court because the case involves issues of first impression in this Circuit and a lengthy procedural history.

The defendant, Isac Schwarzbaum, asks this Court to vacate the $19 million judgment it entered against him on remand following a trial and two separate appeals to the Eleventh Circuit. Although the Eleventh Circuit twice largely upheld his liability for the FBAR penalties assessed against him, Mr. Schwarzbaum now contends the Court should vacate the judgment for those assessments as void under Fed. R. Civ. P. 60(b) because, in his view, there has been an intervening change in the law governing the assessment process. He is wrong. The decision of a district court in the Northern District of Texas, *United States v. Sagoo*, 2025 WL 2689912 (N.D. Tex. Sept. 19, 2025), does not represent an intervening change in the law that invalidates the penalty assessment he unsuccessfully challenged here. Indeed, no other court holds that an FBAR defendant like Mr. Schwarzbaum is entitled to a pre-assessment jury trial. The *Sagoo* decision is an outlier that gravely misreads the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), and relies on a Fifth Circuit case now pending before the Supreme Court. *Sagoo*'s approach has already been rejected by another court. *See United States v. Mahmoud*, No. 3:24-cv-00039-JES (S.D. Cal. Order entered Jan. 22, 2026, at ECF No. 49) (rejecting the argument made in Mahmoud's filings at ECF Nos. 39 & 44). *Sagoo* does not represent persuasive precedent, and it certainly does not justify the extraordinary relief Mr. Schwarzbaum seeks.

Ironically, Mr. Schwarzbaum's motion is rooted in an appeal to due process and equity. The history of this case belies his claim of unfairness. Quite the contrary, Mr. Schwarzbaum vigorously opposed the penalty assessment, now reduced to judgment, at every turn, and he had ample opportunity to argue it violated the Seventh Amendment. When he exhausted his appeals, he refused to comply with this Court's order to repatriate assets to satisfy the final judgment and he brazenly ignored an order to appear for a contempt hearing. The Court can deny his motion based on the fugitive disentitlement doctrine, untimeliness, or waiver without reaching the merits of his *Jarkesy* argument. Because the Court can deny his motion on any of those bases alone, we present those threshold issues first. If the Court does reach the merits, it should reject his motion.

I.    **The Rule 60 motion should be denied under the fugitive disentitlement doctrine because the defendant has been held in contempt for refusing to pay the judgment.**

Mr. Schwarzbaum's Rule 60 motion seeks extraordinary equitable relief. *Arthur v. Thomas*, 739 F.3d 611, 627–28 (11th Cir. 2014). As such, the Court must first decide if Mr. Schwarzbaum is eligible for the relief he seeks. Mr. Schwarzbaum cannot meet this burden because he is in contempt of Court. *See* ECF Nos. 196 (recommending Mr. Schwarzbaum be found in civil contempt) & 199 (adopting report and recommendation and setting hearing "to

determine the appropriate sanction for violating this Court's Order to Repatriate Foreign Assets").

The Eleventh Circuit has adopted the fugitive disentitlement doctrine: a civil litigant is ineligible for Rule 60(b) relief when they have been held in contempt, have fled the country, and have moved assets to avoid collection. *See United States v. Barnette*, 129 F.3d 1179, 1184–86 (11th Cir. 1997); *accord Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F. 3d 278, 281–82 (2d Cir. 1997). The doctrine "is an equitable one and rests upon the power of the Courts to administer the federal courts system." *Pesin v. Osorio Rodriguez*, 244 F.3d 1250, 1252 (11th Cir. 2001); *see also United States v. Shaloub*, 2016 WL 8943847, at *2 (S.D. Fla. Jan. 25, 2016) (Middlebrooks, J.). The doctrine limits access to courts by those parties who are fugitives and have fled the jurisdiction, and can be applied by the appeals court or a district court, and in civil or criminal cases. *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998). "The rationales for this doctrine include the difficulty of enforcement against one not willing to subject himself to the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him; and the need to avoid prejudice to the nonfugitive party." *Id.*

The requirements for application of the fugitive disentitlement doctrine are that (1) the party is a fugitive, (2) his fugitive status has a connection to the civil action, and (3) the sanction employed by the district court is necessary to effectuate the concerns underlying the doctrine. *Id.* As applicable to civil matters, a party is considered a fugitive ineligible for relief if he fled to avoid paying a large judgment and has refused to obey court orders. *Barnette*, 129 F.3d at 1183. A party is held to be in constructive flight if he refuses to subject himself to a court's jurisdiction by leaving the jurisdiction legally, then deciding not to return. *See id.* at 1184.

The Court should apply the fugitive disentitlement doctrine and deny Mr. Schwarzbaum's Rule 60 motion because, like the defendant in *Barnette*, he has refused to comply with the Court's post-judgment orders. First, Mr. Schwarzbaum is a fugitive. He left the United States for Switzerland shortly after the first trial judgment was entered, taking his assets with him. ECF No. 169, pp.2–3. The Court ordered him to repatriate assets to pay the judgment. ECF No. 176. He refused. ECF No. 189, pp.2–3. Judge Reinhart therefore recommended that he be found in contempt. ECF No. 196. The Court agreed, ECF No. 199, and after his appeal concluded ordered Mr. Schwarzbaum to make a filing to inform the Court about his representation, ECF No. 222, and appear in person for a hearing. ECF No. 218. Mr. Schwarzbaum refused to return

to the United States for said hearing, and Judge Reinhart recommended a civil bench warrant be issued for failure to obey the Court's orders, as well as a referral to the United States Attorney's Office pursuant to 18 U.S.C. § 402.  *See* ECF Nos. 227 & 228.  His conduct evinces a clear intent to frustrate the Court's jurisdiction and the United States' efforts to collect on its judgment by keeping himself and his assets overseas.

Second, his fugitive status is clearly related to the instant civil action and his Rule 60 motions.  To wit, he has been found in contempt, based in part on his actions to flee the jurisdiction and to make himself judgment proof; his Rule 60 motion concerns an equitable request for the Court to relieve him from the judgment he has refused to pay.

Third, denying his Rule 60 motion vindicates the concerns underlying the doctrine.  Mr. Schwarzbaum has thumbed his nose at the Court and refused to pay the judgment or obey court orders.  Yet, now that it suits him, he wishes to avail himself of the Court's time, as well as the government's time, to move for extraordinary equitable relief.  Schwarzbaum has done nothing to inspire confidence that, if the Court rules against him on the merits of his Rule 60 motion, he will comply with the repatriation order or otherwise pay the judgment against him.  *See Barnette*, 129 F.3d at 1185.  The Court should deny his Rule 60 motion on the equitable motivations that underlie the fugitive disentitlement doctrine, so that he does not benefit from his misconduct, and lest any other litigants before the Court are encouraged by his antics to do the same.

## II.    Mr. Schwarzbaum's invocation of the Seventh Amendment is untimely and waived.
### a.   Mr. Schwarzbaum's motion is untimely.

Any motion filed under Rule 60(b), including one challenging a judgment as void, must be filed within a reasonable time. Fed. R. Civ. P. 60(c)(1); *Coney Island Auto Parts Unlimited, Inc. v. Bruton, Tr. for Vista-Pro Auto., LLC*, No. 24-808, 607 U.S. ---, 2026 WL 135998, at *3-5 (Jan. 20, 2026)  Given that *Jarkesy* was decided in June 2024, *see* 603 U.S. 109, and Mr. Schwarzbaum did not seek relief until about 18 months later, while the parties were litigating his contempt of court, his motion is untimely.  *Compare BUC Intern. Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275–76 (11th Cir. 2008) (finding six-to-seven month delay reasonable), *with Pierce v. Kyle*, 536 F. App'x 783, 785 (11th Cir. 2013) (finding delay of over a year unreasonable), *and Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 737 (11th Cir. 2014) (finding nine month delay unreasonable), *and A&F Bahamas LLC v. World*

3

*Venture Grp., Inc.*, 796 F. App'x 657, 661–62 (11th Cir. 2020) (finding 11 month delay unreasonable).

**b. Any Seventh Amendment challenged is waived because *Jarkesy* was decided prior to entry of final judgment in this case.**

Another gatekeeping inquiry the Court should conduct, as with any post-judgment motion, is to examine whether Mr. Schwarzbaum could have made a Seventh Amendment argument prior to judgment, but instead waited until now and so waived the argument along the way. *See generally Finnegan v. Comm'r*, 926 F.3d 1261, 1268–69 (11th Cir. 2019) (finding that the party waived an argument premised on a change in controlling law because it could have been made prior to judgment being entered as the alleged change in law already had occurred prior to the Tax Court entering judgment); *Ghahan, LLC v. Palm Steak House, LLC*, 745 F. App'x 302, 308 (11th Cir. 2018) (finding arguments waived when the party failed to raise them prior to entry of judgment and no exception applied such as a fundamental miscarriage of justice or fundamental error that counsels for post-judgment review in the first instance). Mr. Schwarzbaum's Rule 60 motion also cannot meet this bar, and the Court should find that he waived any Seventh Amendment challenge to the judgment in this case.

As relevant to the waiver inquiry, the Eleventh Circuit had appellate jurisdiction over the case to consider Mr. Schwarzbaum's Eighth Amendment challenge from December 2, 2022, when the Notice of Appeal (ECF No. 164) was filed, until March 17, 2025, when its mandate (ECF No. 206) returned the case to this Court. Thus, by the spring of 2025, the Eleventh Circuit had entered its judgment and so all that was left for this Court was to enter a new money judgment in conformance with the mandate from the Court of Appeals. At that point, the Supreme Court had already decided *Jarkesy*. And even before *Jarkesy* was decided, there was no barrier to Mr. Schwarzbaum arguing at any stage of this case that the Seventh Amendment applied—*Jarkesy* did not overturn Eleventh Circuit precedent on FBAR cases or otherwise unlock an argument that he was previously prevented from making.

At no time prior to entry of judgment did Mr. Schwarzbaum raise the Seventh Amendment violation as he now claims, nor did he provide any indication that he would move for Rule 60(b) relief based on a case he alleges controls the result here that had been decided almost a year prior. After the Eleventh Circuit's mandate, this Court directed the parties to submit a proposed judgment, ECF No. 207, and on April 2, 2025—almost a year after *Jarkesy*

4

was decided—Mr. Schwarzbaum jointly filed a proposed judgment with the United States, which the Court promptly entered.  *See* ECF Nos. 209 & 210.

All of the arguments that Mr. Schwarzbaum makes in his Rule 60 motion were available for him to make prior to when he agreed to a judgment in this case in the Spring of 2025, if not earlier.  (Indeed, no binding precedent stopped Schwarzbaum from raising a Seventh Amendment argument from the very beginning of this case.)  This constitutes a waiver.[1]

## III.  Mr. Schwarzbaum's claims for Rule 60(b) relief lack merit because he received due process and because there was no intervening change in controlling law.

### a.  Mr. Schwarzbaum's claim he was not given due process is meritless.

Mr. Schwarzbaum claims the judgment against him is "void" under Federal Rules of Civil Procedure 60(b)(4), citing a purported deprivation of due process.  ECF No. 241 at 4-8.  Notably, he fails to cite any case in which a judgment was vacated as void under Rule 60(b)(4) because a defendant had a bench trial instead of a jury trial, much less any such case where the defendant failed even to ask for a jury trial.  The bar for voidness under Rule 60(b)(4) is much higher than that.  "Voidness for purposes of a 60(b)(4) motion contemplates lack of jurisdiction or defects in due process that deprive a party of notice or an opportunity to be heard."  *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 737 (11th Cir. 2014) (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)).

Mr. Schwarzbaum had a vigorously contested bench trial and two separate appeals to the Eleventh Circuit.  He had notice and an opportunity to be heard.  His claim that he was not afforded due process is meritless.

### b.  At all events Rule 60 relief fails because *Jarkesy* and *Sagoo* are not intervening changes in controlling law.

Mr. Schwarzbaum also moves for reconsideration under Rule 60(b)(6) ("any other reason that justifies relief"), and correctly cites *Ritter v. Smith*, 811 F.2d 1398 (11th Cir. 1987) for the applicable standard.  Under *Ritter*, "a change in the law will not *always* provide the truly

---

[1] This district court confronted a similar issue in *United States v. De Canahuati*, S.D. Fla. No. 1:22-cv-23411-KMM (ECF No. 16) (Moore, J.), where, after the defendant agreed to a judgment for non-willful FBAR penalties as part of a settlement agreement, the Supreme Court decided *Bittner v. United States*, which invalidated the prior non-willful FBAR penalty "per account" assessment rule.  598 U.S. 85.  The Court rejected Ms. De Canahuati's request to apply *Bittner* retroactively because she was aware that there was a circuit split on the non-willful FBAR penalty calculation regime, was aware that *certiorari* had been granted, and could have pressed the same arguments as in *Bittner*.

extraordinary circumstances necessary to reopen a case," and courts consider several factors to evaluate whether relief is appropriate. *Ritter*, 811 F.2d at 1401. Here, however, the Court need not even address the *Ritter* factors because there has not been an intervening change in the controlling law.

Mr. Schwarzbaum cites to a district court opinion from the Northern District of Texas, *Sagoo*, which held that an "FBAR penalty assessment did not comply with the Seventh Amendment." *Sagoo*, 2025 WL 2689912 at *3. But an unreported outlier case from a single district court outside the Eleventh Circuit[2] is not a change in this Court's *controlling* law, and Mr. Schwarzbaum cites no caselaw to support his argument that it is. *See, e.g., Bravo v. Eden Isles Condo. Ass'n, Inc.*, 2011 WL 13174648, at *1 (S.D. Fla. Jul. 11, 2011) (holding that opinions from other circuit courts of appeals are not changes in controlling law meriting reconsideration); *Doe v. Rollins Coll.*, 2020 WL 8408453, at *2 n.2 (M.D. Fla. Jul. 13, 2020) (noting that opinions from district courts in other circuits are not controlling law justifying reconsideration); *Lahey v. State Farm Mut. Auto Ins. Co.*, 2008 WL 1766764, at *2 (M.D. Fla. Apr. 17, 2008) (same for district courts even within the same circuit or another judge of the same district court); *Ponamgi v. Safeguard Servs. LLC.*, 2013 WL 12080163, at *1 (S.D. Fla. May 30, 2013) (Dimitrouleas, J.) (holding that an unpublished Eleventh Circuit memorandum is not a change in controlling law).

Mr. Schwarzbaum also points to *SEC v. Jarkesy*, 603 U.S. 109 (2024), in support of his argument that there has been an intervening change in controlling law. *Jarkesy* is neither

---

[2] Particularly relevant on this point is that the district court in *Sagoo* relied almost exclusively on a Fifth Circuit opinion for its holding, *AT&T, Inc. v. FCC*, 135 F.4th 230 (5th Cir. 2025). The Supreme Court recently granted the government's petition for certiorari in *AT&T*. *See FCC v. AT&T, Inc.*, No. 25-406, 2026 WL 73092 (S. Ct. Jan. 9, 2026). *AT&T* is in conflict with opinions from other circuits, such as *Sprint Corp. v. FCC*, 151 F.4th 347 (D.C. Cir. 2025) and *Verizon Commc'ns Inc. v. FCC*, 156 F.4th 86 (2d Cir. 2025), which held that even assuming there was a Seventh Amendment right to a jury trial there was no constitutional violation because plaintiffs had a jury trial available to them in the district court proceeding. The grant of certiorari, combined with the fact that the Fifth Circuit subsequently declined to apply the holding of *AT&T* in a challenge to other government enforcement efforts, demonstrate the shaky ground upon which *Sagoo* sits. *See Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 409 (5th Cir. 2025) (declining to apply *AT&T* and *Jarkesy* because the Seventh Amendment is not implicated in the government's regulation of the banking sector in contrast to the SEC's regulation of private securities transactions). The United States appealed the *Sagoo* decision, and the Fifth Circuit has stayed the appeal pending resolution of *AT&T*. *See United States v. Sagoo*, No. 25-11271, Doc. 22-2 (5th Cir. Dec. 23. 2025) (staying appeal).

intervening nor a change in the controlling law.  First, *Jarkesy* cannot be intervening because, as explained above, the Supreme Court issued that opinion before this Court entered judgment against Mr. Schwarzbaum.

Moreover, *Jarkesy* did not change the controlling law because it did not alter the jury trial analysis for FBAR penalties.  *Jarkesy* dealt with whether the SEC could simultaneously serve the roles of "prosecutor, judge, and jury" for civil penalties for securities fraud.  The Supreme Court's holding that the SEC violated the Seventh Amendment does not necessarily decide whether a jury trial is required before the IRS can make FBAR penalty assessments.  603 U.S. at 140.  Although "the issues decided by the higher court need not be identical in order to be controlling," the higher court must have "undercut the theory or reasoning underlying [existing precedent] in such a way that the cases are clearly irreconcilable."  *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003); *Law Off. of Rodrigo S. Da Silva, P.A. v. Auckland Holdings, LLC*, 2025 WL 1191111, at *3 (S.D. Fla. Feb. 14, 2025) (Leibowitz, J.) (finding the change in law does not have to be an overruling of a prior case but just a change that creates a significant shift in analysis).  As discussed below, *Jarkesy* did not change or even address the longstanding judicial understanding that the IRS can assess FBAR penalties without first providing for a jury trial, let alone in such a way that would make that historical understanding "clearly irreconcilable" with *Jarkesy*.[3]

But even if Mr. Schwarzbaum somehow could show that *Sagoo* or *Jarkesy* were changes in the law, he is wrong that jury trial is required before the IRS can assess FBAR penalties.

## IV.      In the alternative, Mr. Schwarzbaum's argument fails because the FBAR assessment and enforcement regime does not violate the Seventh Amendment.

The Seventh Amendment provides in relevant part: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" U.S. Const., Amend. VII.  Mr. Schwarzbaum could have requested a jury trial in this enforcement proceeding, but he failed to do so, since he did not make a demand at the pleadings stage.  That should end the matter.  However, following *Sagoo*, Mr. Schwarzbaum is arguing that not only are those assessed with FBAR penalties ("FBAR assessees") entitled to a jury trial in an enforcement proceeding such as this one, but that they are also entitled to a jury trial before the IRS could even

---

[3] As recently reaffirmed by the full United States Tax Court, the IRS can assess Title 26 tax penalties without a jury, notwithstanding *Jarkesy*, even those made for fraud or negligence.  *See Silver Moss Props., LLC v. Comm'r*, 165 T.C. No. 3, 2025 WL 2416867 (2025); *Riddle Aggregates, LLC v. Comm'r*, 165 T.C. No. 12, 2025 WL 3626952 (2025).

take the initial step of formally asserting that FBAR assessees owe penalties in a certain amount, *i.e.*, make an assessment.  But this argument defies Supreme Court precedent and should be rejected.  This is especially so in a case where the defendant never bothered to request a jury trial.

Congress gave the Secretary of the Treasury both the power to assess a civil FBAR penalty and the power to bring a suit to recover it.  *See* 31 U.S.C. § 5321(b).  There are two ways to view these powers: as distinct acts or as a single imposition of the penalty.  If FBAR penalties are viewed as involving bifurcated acts of assessment and enforcement, the applicability of the Seventh Amendment's jury trial requirement should be determined at each stage.  When viewed this way, as seen below, it is clear that there is no jury trial right for the *assessment* of these penalties.  First, the assessment of an FBAR penalty is not a "suit at common law," and so the Seventh Amendment is not offended.  Second, even if such assessment were a "suit at common law," the "public rights" exception would apply, and a jury trial would not be required.

The other possible approach is to view the entire regime for the assessment and enforcement of FBAR penalties holistically and simply determine whether FBAR assessees are entitled within that regime to challenge those penalties in a jury trial.  This is the approach that is favored by the Supreme Court in decisions like *Jarkesy* and *Atlas Roofing Co., Inc. v. O.S.H.A.*, 430 U.S. 442 (1977), where the Supreme Court considered the entire administrative and adjudicative regimes behind the civil penalties at issue to determine whether the Seventh Amendment was violated because no jury trial was available anywhere in those regimes.  Under that approach, there is also no Seventh Amendment violation, because the public rights exception still applies, and because Mr. Schwarzbaum had the opportunity to challenge the penalties before a neutral arbiter in this case, even if he did not specifically request a jury.

Regardless of which approach is adopted, there is no Seventh Amendment violation, as shown below.  Moreover, overturning the administrative and adjudicative regime for FBAR penalties by demanding that Article III courts insert themselves into the initial stages of FBAR assessment would upend established FBAR penalty administration and disrupt the Constitution's separation of powers.  Thus, the Court should find that there is no right to a jury trial before the IRS can assess FBAR penalties.

**a.  The assessment of FBAR penalties is not a suit at common law.**

The threshold question under the first, bifurcated, approach is whether the assessment of

FBAR penalties is one of those "suits at common law" for which a jury trial is required.[4]  U.S. Const., Amend. VII.  A suit at common law is one that is "'legal in nature,'" as opposed to a suit "of equity or admiralty jurisdiction." *Jarkesy*, 603 U.S. at 122 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)).  "To determine whether a suit is legal in nature, [courts must] consider the cause of action and the remedy it provides." *Jarkesy*, 603 U.S. at 122-23.  But first, the Court must determine whether the act of assessing FBAR penalties is even a "suit."

### 1.   The assessment of FBAR penalties is not a "suit."

Section 5321(a) of Title 31 provides for civil penalties for violations of the reporting requirements of section 5314, and section 5321(b)(1) provides that the Secretary of the Treasury may assess those penalties.  The Secretary's authority to assess civil FBAR penalties has been delegated to the IRS.  31 C.F.R. § 1010.810(g).  But unlike assessments of tax or penalty made by the IRS under Title 26, the IRS cannot collect on these assessments using liens or levies. *Jenner v. Comm'r*, 2024 WL 4542905, at *2-3 (T.C. Oct. 22, 2024).  Rather, the FBAR penalties become a "nontax debt to the United States" and, once that debt has been delinquent for more than 180 days, the Secretary may take appropriate collection action. *Id.*  Although, as Mr. Schwarzbaum points out, permissible collection includes limited administrative offsets (*see* 31 U.S.C. § 3716), it is more often the case that "FBAR penalties are enforced primarily through a 'civil action to recover a civil penalty.'" *Mendu v. United States*, 2021 WL 1291674, at *7 (Fed. Cl. Apr. 7, 2021).

The term "'assessment' refers to little more than the calculation or recording of a tax liability," or, in this case, a liability for FBAR penalties. *United States v. Galletti*, 541 U.S. 114, 122 (2004).  Even though, "[t]o be sure, the assessment of a tax triggers certain consequences," "the fact that the act of assessment has consequences does not change the function of the assessment: to calculate and record a tax liability." *Id.* at 122-23; *see also United States v. Cohen*,

---

[4] The district court in *Sagoo* never considered this threshold question because it mistakenly held that the "Government does not dispute the Seventh Amendment is implicated when the IRS seeks FBAR penalties." *Sagoo*, 2025 WL 2689912, at *1.  In reality, the government never conceded that the assessment of FBAR penalties implicated the Seventh Amendment right to a jury trial—it merely stated that Sagoo had the right to a jury trial in that case, *i.e.*, in the district court suit brought by the government. *See* U.S. Brief on Sagoo's Motion to Dismiss, 4:24-cv-01159-O (N.D. Texas), ECF No. 17, pp. 2-6.  But even if the government had mistakenly conceded in *Sagoo* that the Seventh Amendment was implicated, that is not its position here and the United States is not bound to it. *United States v. Mendoza*, 464 U.S. 154, 160–63 (1984) (offensive non-mutual collateral estoppel is not allowed against the government).

2018 WL 6318837, at *7 (C.D. Cal. Oct. 23, 2018) (FBAR "'assessment'" is essentially a bookkeeping notation used to record the liability of a taxpayer").  Although the assessment and collection of FBAR penalties differs in some respects from that of taxes and penalties under Title 26, such assessment essentially reflects the government's contention that an individual or entity is liable for the FBAR penalty in a certain amount, not an adjudicative determination that the government is correct.

　　　　To treat the government's contention that an individual is liable for an FBAR penalty as a "suit" would be nonsensical.  A suit, by its very nature, is adversarial, and can only be commenced by or against the government once the government has made that initial contention, or assessment. Indeed, the Supreme Court has specifically held as much: "a proceeding, not in a court of justice, but carried on by executive officers in the exercise of their proper functions, as in the valuation of property for the just distribution of taxes or assessments, is purely administrative in its character, and cannot, in any just sense, be called a 'suit;'…." *Upshur Cnty. v. Rich*, 135 U.S. 467, 477 (1890).  An assessment involves only one party, the government, and it marks the beginning of a process that may lead to a suit.  But it is not a suit in and of itself.  *Weston v. City Council of Charleston*, 27 U.S. 449, 464 (1829) (a "suit" is a proceeding in which "a right is litigated between parties in a court of justice"); *see also United States v. Meyer*, 50 F.4th 23, 27-31 (11th Cir. 2022) (discussing ordinary meaning of the term "suit," and concluding that it is a "judicial proceeding or action initiated for the purpose of enforcing a right or ensuring compliance with the law").  As such, the IRS's administrative determination and computation of a civil FBAR penalty, while it may include input from the FBAR assessee during the investigation (as income tax examinations often do), it is not an adversarial process that can be characterized as a "suit."

　　　　But even if the government's unilateral initiating act of assessing FBAR penalties could somehow be considered a "suit," it would not be a "suit at common law," as evidenced by its: (1) nature as a remedy that can be enforced outside a court of law; and (2) dissimilarity from any common law cause of action.

> **2. The assessment of FBAR penalties is not the type of remedy that could only be enforced in a court of law.**

　　　　Typically, remedy is the more important consideration of the two factors courts consider in determining whether an action is a suit at common law.  *Jarkesy*, 603 U.S. at 123.  The remedy provided by FBAR penalties is "monetary relief," which "can be legal or equitable."  *Id.*  However, just as the mere assessment of FBAR penalties is conceptually not even a "suit," it is also not much

of a remedy, and certainly not one that can only be enforced in courts at common law (as discussed below in the public rights exception section). Rather, the act of assessment is an initiating step in the process by which the government contends the FBAR assessee is liable for a penalty in a certain amount. Both the adversarial determination of whether that contention is correct (which would constitute a suit), and the monetary relief (in which the government actually collects money) come later in the process, in the "enforcement" stage.[5]

Indeed, the "enforcement" of civil penalties that could implicate the Seventh Amendment requires an act of determining liability by an adjudicative body, and not just an initial decision by a federal agency (*i.e.*, the assessment of the penalty). *See, e.g.*, *Jarkesy*, 603 U.S. at 137 (describing "enforcement actions" as exercises of "adjudicatory authority"), at 139 (quoting *Atlas Roofing*, 430 U.S. at 458 and referring to enforcement as when the "Government sues in its sovereign capacity to enforce public rights created by statutes"); *Granfinanciera*, 492 U.S. at 42 (referring to "actions brought [before an adjudicative body] to enforce statutory rights" as being the actions to which the Seventh Amendment might potentially apply); *Tull v. United States*, 481 U.S. 412, 422-23 (1987) (relevant enforcement action was suit brought in district court by the government under 33 U.S.C. § 1319); *see also* 28 U.S.C. § 1355(a) referring to an "action or proceeding for the … enforcement of any fine, penalty…"). This is most starkly shown by the fact that in *Jarkesy*, the "enforcement action" could previously only be brought in federal court, but that this had been changed by the Dodd-Frank Act, which now allowed the SEC to "adjudicate the matter itself" before an administrative law judge. 603 U.S. at 116–19. It was the lack of jury trial availability in this "in-house" adjudication and enforcement action that the Supreme Court found violated the Seventh Amendment.[6] Particularly significant to the *Jarkesy* court was that the agency could choose how to impose penalties in a way that ensured the party would never get into a district court where a jury was available—a dynamic not present in this case. *Id.*

Nothing in the above Supreme Court precedents indicates that the mere assessment of penalties, as opposed to the enforcement of such an assessment, is a remedy that could only be

---

[5] While some administrative offset of FBAR debts is permissible, as discussed above, the primary way FBAR penalties are enforced is through a civil suit.

[6] Similarly, in the Fifth Circuit case relied upon by the district court in *Sagoo*, it was the "enforcement proceeding" that was at issue, in which the FCC "adjudicates alleged violations … either by assigning a case to an administrative law judge ('ALJ') or by investigating and adjudicating the case itself." *AT&T, Inc. v. FCC*, 149 F.4th 491, 494, 497 (5th Cir. 2025).

imposed by a suit at common law.  In fact, the Supreme Court has explicitly held that the "assessment of civil penalties thus cannot be said to involve the 'substance of a common-law right to a trial by jury,' nor a 'fundamental element of a jury trial.'"  *Tull*, 481 U.S. at 426 (also noting that "[s]ince Congress itself may fix the civil penalties, it may delegate that determination" (in that case to trial judges)).[7]  Thus, the *assessment* of FBAR penalties, as opposed to the enforcement, would not have traditionally needed to be determined in a court of law before a jury.  Indeed, that would be a radical departure from the traditional understanding of who can assess civil penalties, as well as a radical departure from what is considered a suit and a remedy.

### 3. The assessment of FBAR penalties is not similar to any common law cause of action.

In *Jarkesy*, the Supreme Court found that there was a "close relationship between the [SEC enforcement action] and common law fraud," and that this second factor thus "confirm[ed]" that a defendant of that action would be entitled to a jury.  603 U.S. at 125.  Here, however, there is no common law cause of action that serves as an analog for the assessment of FBAR penalties.  It involves a purely statutory obligation, originating from federal banking regulation under the Bank Secrecy Act, to provide information about foreign financial accounts to the government, and the statutory authority to assess penalties when that obligation is not met, creating an entirely new cause of action that had been previously unknown to the common law.

In a fully reviewed opinion, the Tax Court recently unanimously held that there was no right to a jury for the adjudication of a civil fraud penalty under 26 U.S.C. § 6663(a).  *Silver Moss Props., LLC v. Comm'r*, 165 T.C. No. 3, 2025 WL 2416867 (2025).  In doing so, the Tax Court considered the question of whether this civil fraud penalty resembled a cause of action at common law, concluding that it did not because, unlike the civil action in *Jarkesy*, which "involved purported fraud upon private individuals," the section 6663(a) penalty "contemplates fraud upon the federal government."  *Id.* at 9-10.  The same rationale applies here.  Not only is the FBAR penalty not analogous to something like common law fraud, it also involves an offense purely against the federal government—the failure to report to it foreign bank account information.

---

[7] While the assessment of civil penalties at issue in *Tull* differs from FBAR penalties in that there assessment was performed by a trial judge after adjudication of liability in a proceeding in which there was a constitutional right to a jury trial, the principle is the same—the act of assessment and enforcement can be bifurcated, with the right to a jury trial inhering in the enforcement proceeding where liability is determined, but not in the assessment proceeding.

Because the mere assessment of FBAR penalties is not the type of remedy that could only be imposed by a suit at common law and is not similar to any common law cause of action, FBAR assessees are not entitled to a jury trial before the IRS can assess these penalties.

**b.   Even if the assessment of FBAR penalties were a suit at common law, no jury trial rights attach because the public rights exception applies.**

Even if the assessment and enforcement of FBAR imposed by the Bank Secrecy Act penalties implicated the Seventh Amendment, they fall squarely within the "public rights" exception to the Seventh Amendment jury trial requirement, which applies to matters that "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them." *Jarkesy*, 603 U.S. at 128 (cleaned up).  Such matters have included taxes, immigration, foreign commerce, the assessment of tariffs, relations with Indian tribes, the administration of public lands, and the granting of public benefits.  *Id.* at 126-30.  In such cases "no involvement by an Article III court in the initial adjudication is necessary…." *Id.* at 128.

FBAR penalties intersect with several areas—foreign commerce, tax revenue, law enforcement, and federal banking regulation—that have long been considered to be covered by the public rights exception.  These penalties stem from an act of Congress in 1970, the Bank Secrecy Act (BSA), which imposed certain reporting requirements for foreign financial information.  The purpose of these requirements is stated in 31 U.S.C. § 3511: to "require certain reports or records that are highly useful" in "criminal, tax, or regulatory investigations…" or in "intelligence or counterintelligence activities, including analysis, to protect against terrorism…," among other purposes.  *See also California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) (discussing the legislative history of the BSA, and noting that "Congress was concerned about a serious and widespread use of foreign financial institutions, located in jurisdictions with strict laws of secrecy as to bank activity, for the purpose of violating or evading domestic criminal, tax, and regulatory enactments"); *United States v. Kahn*, 5 F.4th 167, 170 (2d Cir. 2021) (noting that in "1986, focusing on money-laundering-related violations of the BSA, Congress added a civil money penalty that could be levied against private individuals for their willful failures to file FBARs").

As devices created by Congress to combat problems like use of the banking system for tax evasion, money laundering, and terrorism, FBAR penalties do not bring with them the "common law soil" brought by the causes of action the Supreme Court has found do not meet the public rights exception.  This appears to be the most important consideration for the Supreme Court's

holding in *Jarkesy* that the public rights exception did not apply to the penalty there, as it used the
"common law soil" analysis to contrast that penalty and the one in *Granfinanciera* with the penalty
in *Atlas Roofing*, where the Supreme Court found that the public rights exception did apply.  In
*Atlas Roofing*, the penalty arose from a violation of the Occupational Safety and Health Act of
1970 (OSH Act), which authorized the Secretary of Labor to issue safety regulations, adjudicate
alleged violations, and impose civil penalties.  430 U.S. at 444–46.  The "OSH Act did not borrow
its cause of action from common law," or "reiterate common law terms of art," but instead
promulgated "innovative," "novel" "occupational health and safety standards" that created "new
statutory 'public rights.'"  *Jarkesy*, 603 U.S. at 136–37.  Thus, the "statutory claims" in *Atlas
Roofing* were not "in the nature of a common law suit," unlike the claims in *Jarkesy* that "replicate
common law fraud."  *Id.* at 120, 138 (internal quotations omitted).

The civil FBAR penalties here are in the vein of those at issue in *Atlas Roofing*, not
*Jarkesy*.  They also stem from an act of Congress in 1970, the BSA, which directed the Secretary
of the Treasury to promulgate implementing regulations.  *California Bankers*, 416 U.S. at 26.  And
like in *Atlas Roofing*, and unlike in *Jarkesy*, these regulations' purpose was not to "adjudicate
claims that traced their ancestry to the common law."  *Jarkesy*, 603 U.S. at 137.  Rather, Congress
stated that the purpose was to impose a novel obligation: to "require" a certain defined U.S. person
"who engages in any transaction or maintains any relationship … with a foreign financial agency
to maintain records or to file reports … as the Secretary may require…."  PL 91-508, October 26,
1970, 84 Stat. 1114, § 241; *see also* 31 U.S.C. § 5314 (current revised version).

The statute and regulations do not simply "reiterate common law terms of art," like in *Atlas
Roofing* and unlike in *Jarkesy*.  *Jarkesy*, 603 U.S. at 137.  Rather, the BSA requires entirely new
"records and reports" that "shall contain" certain specific and technical data.  31 U.S.C. § 5314.
Accordingly, the implementing regulations provide novel and technical definitions for terms like
"[t]ypes of reportable accounts," "financial interest," "[s]ignature or other authority," and other
"[s]pecial rules" about items like "consolidated reports," "retirement plans," and "trust
beneficiaries."  31 C.F.R. § 1010.350.

In other words, the FBAR regime more resembles a "detailed building code" for when
foreign financial information must be reported to the government than a regime that replicates
common law terms of art and causes of action.  *Jarkesy*, 603 U.S. at 137 (describing the OSH Act
and implementing regulations in *Atlas Roofing*).  Moreover, as in *Atlas Roofing*, the "novel claims

14

[created by the FBAR regime beginning in 1970] had never been brought in an Article III court," and certainly never been "dealt with" by "law courts … since before the founding," like the claims in *Jarkesy* sourced from common law fraud.  603 U.S. at 139.  Thus, just as in *Atlas Roofing*, the public rights exception applies, and there is no right to a jury trial for the assessment of FBAR penalties.

In fact, the case for the public rights exception is even greater for FBAR penalties than for the penalties stemming from the regulations at issue in *Atlas Roofing*.  As opposed to imposing safety regulations that govern the relationships among private entities in the workplace, the BSA imposes a requirement of reporting foreign financial information directly to the sovereign.  There is simply no historical analog for such suits at common law, and courts have long held that the public rights exception applies in the areas which intersect with FBAR penalties.  An example of one such area is federal banking regulation, of which the BSA and its intendant FBAR penalties, are derived.  *See, e.g., Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 409 (5th Cir. 2025) (distinguishing *AT&T*, crediting the contention that (like the FBAR penalty regime) the "federal banking system is entirely a creature of federal law, crafted from whole cloth by Congress," noting the "[f]ederal banking enforcement's centuries-long history of exclusive determination by non-Article III branches," and holding "that the public-rights exception applies to federal banking enforcement actions").  Tariffs on foreign goods and the regulation of foreign commerce is another such example, as "the political branches had traditionally held exclusive power over this field."  *Jarkesy,* 603 U.S. at 130.  Indeed, one of the driving concerns underlying *Jarkesy* was the fact that the SEC action at issue sought to "regulate transactions between private individuals interacting in a pre-existing market."  *Id.* at 135.  That is decidedly not the case where the BSA does not regulate the transactions of private parties where the government is floating above it as regulator.  Rather, the BSA imposes an affirmative duty, just like the Internal Revenue Code, for individuals to report information to the IRS regarding their foreign bank account ownership.

Finally, the collection of revenue is another area related to FBAR penalties that has long been covered by the public rights exception.  In fact, the first Supreme Court case to recognize this exception was *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1855), where the exception was justified "by explaining that it flowed from centuries-old rules concerning revenue collection by a sovereign."  *Jarkesy*, 603 U.S. at 131.  Although the function of the FBAR

penalty is not solely the collection of revenue, it is a significant basis for the penalty, one that was specifically identified by Congress as a principal reason for enacting the statutes underlying the FBAR regime. *California Bankers*, 416 U.S. at 27 ("Congress was concerned about a serious and widespread use of foreign financial institutions … for the purpose of … evading … tax…"); *United States v. Toth*, 33 F.4th 1, 17 (1st Cir. 2022) ("Indeed, Congress authorized the imposition of a [FBAR] penalty of this size for willfully failing to comply with the Act's reporting requirements to address the fact that '[i]t has been estimated that hundreds of millions in tax revenues [were] lost' due to the secret use of foreign financial accounts—which Congress characterized as the 'largest single tax loophole permitted by American law….'" (quoting H.R. Rep. No. 91-975, at 4397-98 (1970)).  The legislative history further confirms this revenue-based purpose, as do the facts of this specific case: "One of the most damaging effects of an American's use of secret foreign financial facilities is its undermining of the fairness of our tax laws….. [A] secret Swiss account … offers a convenient means of evading U.S. taxes…. [I]t is grossly unfair to leave the secret foreign bank account open as a convenient avenue of tax evasion." *Id.*; *see also*, ECF No. 83, Schwarzbaum's *Closing Argument, Proposed Findings of Fact and Conclusions of Law*, p. 44 (admitting that Mr. Schwarzbaum used his Swiss accounts to avoid reporting hundreds of thousands of dollars in income and that he also incurred civil tax penalties by hiding this income from the IRS)).

The fact that the FBAR penalties were created, in part, to thwart tax evasion, *i.e.*, for revenue collection purposes, further confirms the public rights exception applies to the FBAR penalty. *See Silver Moss,* 2025 WL 2416867, at *9 (finding that the public rights exception applied to a statutory civil fraud penalty (§ 6663(a) and noting that the "Supreme Court has repeatedly recognized the collection of revenue *and related penalties* as a public right") (emphasis added)).

In sum, FBAR penalties are distinguished from "[s]tatutory claims like those at issue in *Jarkesy* [which] are modeled after causes of action traditionally available to private parties at common law." *Id.* at 10.  Such claims "simply are not comparable to" the FBAR penalty, "which contemplates" an offense against "the federal government."  *Id.*  A "private litigant cannot pursue a statutory [FBAR] penalty on behalf of the federal government; therefore, imposition and collection of this penalty falls squarely within the public rights exception" to the Seventh Amendment.  *Id.*

### c. Even if jury trial rights in connection with FBAR enforcement exists, a jury trial was waived in this case and so there was no Seventh Amendment injury.

In the second, holistic, approach, the Court must determine whether FBAR assessees are entitled to challenge those penalties in a jury trial, and if so, whether they are afforded that opportunity at some point in the FBAR regime. This is the approach that follows most logically from the Supreme Court's opinion in *Jarkesy*, where the Supreme Court analyzed the entire administrative and adjudicative regime, with the event that triggered the Seventh Amendment violation being Dodd-Frank, which changed the penalty regime there from having a jury trial right at the enforcement stage to no longer having that right at all. Nowhere did the Supreme Court state or even hint that there must be an *additional* right to a jury trial at the assessment stage. On the contrary, the Supreme Court simply held that a "defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator," and that the Executive Branch could not play the role of "prosecutor, judge, and jury." *Jarkesy*, 603 U.S. at 140.

This holistic approach is also the approach taken by the only district court to have considered this issue for IRS assessments, *HDH Grp., Inc. v. United States*, 2025 WL 2711877, at *13 (W.D. Pa. Sept. 23, 2025). There the court recently considered whether the assessment of a tax penalty imposed under 26 U.S.C. § 6700 before any opportunity for a jury trial violated the Seventh Amendment. The court did not bifurcate the acts of assessment and enforcement and consider whether a jury trial was necessary for each, as Mr. Schwarzbaum urges applies here at the assessment stage, but instead considered the entire penalty regime together, consistent with the approach in *Jarkesy*. It found that there was no Seventh Amendment violation because, in "stark contrast to the situations encountered in *Atlas Roofing*, *Jarkesy*," etc., where there was no "de novo review in a district court," once HDH "initiated a refund action, it began with a clean slate," and the burden was "placed on the IRS to prove HDH's liability…." *Id.* [8]

Here, Mr. Schwarzbaum was similarly situated—like the *HDH* plaintiff he had no pre-assessment opportunity for a jury trial and, as in *HDH*, he had a clean slate in this case, with the burden on the United States to prove liability. Like any other civil litigant faced with a government suit for a money judgment for civil FBAR penalties, Mr. Schwarzbaum could have requested a jury trial by pleading it in his answer or separate written demand. Other litigants have.

---

[8] Because of this holding the *HDH* court found it unnecessary to consider whether the penalty at issue there "falls under the public rights exception." *HDH*, 2025 WL 2711877 at *13.

*See, e.g.*, *United States v. Garrity*, 2019 WL 1004584, at *1 (D. Conn. Feb. 29, 2019) (six-day jury trial in an FBAR suit); *United States v. Clemons*, 2020 WL 7407549, at *1 (M.D. Fla. Apr. 15, 2020) (noting the jury trial that found defendant liable for willful FBAR penalties); *United States v. Mahyari*, 2024 WL 378838, at *1 (D. Or. Feb. 1, 2024) (discussing the IRS's penalty recalculation after a jury trial found the defendant liable for willful FBAR penalties); *United States v. Harrington*, 719 F. Supp. 3d 1171 (D. Colo. 2024) (resolving in part a case on summary judgment were there was a jury demand made in the answer); *see also United Stated v. Rum*, 995 F.3d 882, 887 n.2 (11th Cir. 2021) (affirming summary judgment in the government's favor in a willful FBAR case and stating in *dicta* that FBAR suits might be akin to other types of government suits that provide jury trial rights in the district court).  To date, the United States has never sought to strike an accountholder's jury-trial demand in an affirmative FBAR suit.  And yet, Schwarzbaum never made a jury demand—timely or otherwise—and consented to proceeding to a bench trial.[9] Accordingly, whether or not the public rights exception applies, there was no Seventh Amendment violation for Mr. Schwarzbaum when one analyzes the FBAR regime in its entirety.  This is especially so at the assessment stage: no jury rights were required.  Mr. Schwarzbaum should not be heard to complain, six years and change after trial, that he wants the very rights that he waived in this Court and then refused to raise at all during the multiple trips to the Eleventh Circuit.

To be clear, the public rights exception could theoretically apply to the entire FBAR regime for the reasons discussed above, and a plausible position for the government to take would be that there is no *right* to a jury in FBAR suits generally, even if we acquiesced in the past.  But because the fact remains that jury trials were and are actually available to FBAR defendants in this and other Circuits, Mr. Schwarzbaum lacks the necessary injury in this proceeding to challenge whether FBAR assessees are entitled to challenge those penalties in a jury trial at some point in the

---

[9] The authorities are clear that even where the right to a jury trial exists under the Seventh Amendment, a litigant is free to waive that right.  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986); *Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 886 (11th Cir. 2017).  A litigant's waiver can take many forms, including failing to timely request a jury trial in a forum where one is available, *LaMarca v. Turner*, 995 F.2d 1526, 1545 (11th Cir. 1993), agreeing to arbitration, *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x. 820, 823-24 (11th Cir. 2006), or choosing to settle or not bring suit at all, *In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994).  A litigant can also waive his right to a jury trial by choosing to proceed in a forum where none is available.  *Ex parte Bakelite Corp.*, 279 U.S. 438, 453-54 (1929) (Court of Federal Claims); *Olshausen v. Comm'r*, 273 F.2d 23, 27 (9th Cir. 1959) (Tax Court).

FBAR regime. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (standing requires an injury to be "concrete," *i.e.*, it "must actually exist," and "particularized," *i.e.*, it "must affect the plaintiff in a personal and individual way") (internal quotations omitted); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1253–54 (11th Cir. 2010) (litigants bear the burden to show standing where they assert a claim or an affirmative defense that particular law or rule is unconstitutional); *Sliwa v. Bright House Networks, LLC*, 2018 WL 1531913, at *3–*4 (M.D. Fla. Mar. 29, 2018) (collecting cases on the application of standing and other Article III requirements to affirmative defenses); *U.S./Fed. Commc'ns Comm'n v. Cuevas*, 2000 WL 852308, at *5 (D. Conn. Mar. 31, 2000) (same citing *United States v. Hugs*, 109 F.3d 1375 (9th Cir. 1997)); *United States v. Dunifer*, 997 F. Supp. 1235, 1239 (N.D. Cal. 1998), *aff'd on other grounds*, 219 F.3d 1004 (9th Cir. 2000) ("Where the defendant asserts an affirmative defense requiring the litigation of issues not encompassed in the plaintiff's case-in-chief, the defendant is in a similar situation on those issues to a plaintiff who is invoking the jurisdiction of the court.). Here, Mr. Schwarzbaum had the benefit of a neutral Article III arbiter to determine whether he was liable for willful FBAR penalties and never urged that a jury was required. He thus suffered no injury that would give him standing to challenge his entitlement to a jury trial in the FBAR penalty regime writ large.

### d. Congress assigned FBAR penalty assessment to the Treasury, and so there no Seventh Amendment violation; the Court should respect the separation of powers.

Congress assigned the authority for the assessment of FBAR penalties to the Secretary of the Treasury (31 U.S.C. §§ 5314 and 5321), who in turn delegated this authority to the IRS (31 C.F.R. § 1010.810(g)). Thus, because the assessment occurs in a non-Article III forum, "the relevant question becomes whether 'Congress properly assign[ed the] matter' for decision to that forum consistent with Article III and the separation of powers." *Jarkesy*, 603 U.S. at 172 (Sotomayor, J., dissenting) (quoting *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 345 (2018)). If so, then there is no Seventh Amendment violation because the Supreme "Court's precedents establish that, when Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" *Oil States Energy*, 584 U.S. at 345 (quoting *Granfinanciera*, 492 U.S. at 53–54).

Mr. Schwarzbaum seeks to upend decades of FBAR penalty administration and disrupt the Constitution's separation of powers by demanding that Article III courts override the will of Congress, on a matter within its plenary authority, and insert themselves into the initial stages of

FBAR assessment.  The Court should, as the Southern District of California recently did in *Mahmoud*, decline the invitation.  Congress's delegation of the power to assess FBAR penalties to the Secretary of the Treasury does not violate the Constitution.  On the contrary, the basic framework underlying tax and FBAR penalty assessment and enforcement (no jury trial pre-assessment, but Article III review and a potential jury trial available post-assessment) has been repeatedly blessed by the Supreme Court in challenges brought by those who seek to undermine that framework in the tax context.  *See*, *e.g.*, *Wickwire v. Reinecke*, 275 U.S. 101, 105-06 (1927) ("It is within the undoubted power of Congress to provide any reasonable system for the collection of taxes and the recovery of them when illegal, without a jury trial…."); *Flora v. United States*, 362 U.S. 145, 176-77 (1960) ("if we were to accept [Defendant's] argument, we would sacrifice the harmony of our carefully structured twentieth century system of tax litigation").

The FBAR penalty assessment framework set up by Congress is constitutional.  It fits within the larger tax penalty assessment structure that the IRS and Article III courts have administered for decades.  The Court should respect the separation of powers and not tear down that longstanding framework by requiring a jury trial before FBAR penalties can even be assessed.

## V.    Conclusion

For the above reasons, the Court should deny defendant Isac Schwarzbaum's motion for relief from judgment under Rule 60.

<div style="margin-left: 50%;">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Jeffrey N. Nuñez*
JEFFREY N. NUÑEZ
Trial Attorney
Tax Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044-0055
P: (202) 616-5218
F: (202) 514-5238
Jeffrey.N.Nunez@usdoj.gov

</div>