# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
#### Case No.: 9:18-CV-81147-BLOOM-REINHART

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ISAC SCHWARZBAUM,

      Defendant.

---

**DEFENDANT ISAC SCHWARZBAUM'S REPLY TO PLAINTIFF'S RESPONSE
IN OPPOSITION TO CORRECTED MOTION TO SET ASIDE JUDGMENT
AND TO DISMISS CASE**

*///*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   ANALYSIS ............................................................................................................ 2

   A.   The Government Rightly Conceded in *Sagoo* and *AT&T* That Assessment of FBAR Penalties Violate the Seventh Amendment Right to a Jury Trial ......................................... 2

   B.   The Government's Attempts to Disavow Its Concessions in *Sagoo* and *AT&T* Are Misguided ............................................................................................................ 4

      1.   The FBAR Penalty Assessed Against Mr. Schwarzbaum Is a "Suit[ ] at Common Law" ....................................................................................... 4

      2.   The Public Rights Exception to the Seventh Amendment Does Not Apply ............... 5

   C.   The Government's Arguments for Denying Rule 60(b) Relief Notwithstanding the Violation of Mr. Schwarzbaum's Seventh Amendment Right Are Without Merit ............. 7

      1.   The Fugitive Disentitlement Doctrine Is Inapplicable ................................................ 7

      2.   Mr. Schwarzbaum Did Not Waive His Seventh Amendment Challenge .................... 9

      3.   The Judgement Is Void Under Rule 60(b)(4) for Lack of Due Process ...................... 9

      4.   The Judgment Should Be Set Aside Under Rule 60(b)(6) Because of the Clear-Cut Change in Law ......................................................................................... 9

III.  CONCLUSION ................................................................................................... 10

## TABLE OF CITATIONS

**Cases**

*AT&T Corp. v. FCC*, 135 F.4th 230 (5th Cir. 2025) ............................................................. 1

*Atlas Roofing Co. v. Occupational Safety and Health Review Commission*,
    430 U.S. 442 (1977) ................................................................................................... 6, 7

*Degen v. United States*, 517 U.S. 820 (1996)................................................................. 7, 8

*Ener v. Martin*, 987 F.3d 1328 (11th Cir. 2021) ................................................................ 7

*Marbury v. Madison*, 5 U.S. 137 (1803) ............................................................................ 7

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856)............... 6

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)............................ 6

*Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993)................................................... 7

*Ritter v. Smith*, 811 F.2d 1398 (11th Cir. 1987)........................................................... 9, 10

*Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024)............... 1, 4, 5, 6, 7, 9, 10

*Sprint Corp. v. FCC*, 151 F.4th 347 (D.C. Cir. 2025)......................................................... 3

*Stern v. Marshall*, 564 U.S. 462 (2011) ........................................................................... 5

*Tull v. United States*, 481 U.S. 412 (1987)........................................................................ 4

*United States v. Bardakova*, 145 F.4th 231 (2d Cir. 2025) ............................................... 8

*United States v. Barnette*, 129 F.3d 1179 (11th Cir. 1997)............................................. 7, 8

*United States v. Sagoo*, No. 4:24-CV-01159-O, 2025 WL 2689912
    (N.D. Tex. Sept. 19, 2025) ....................................................................................... 1, 2, 3

*United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022) ....................................... 5

*United States v. Schwarzbaum*, 127 F.4th 259 (11th Cir. 2025) ....................................... 4

**Constitution and Statutes**

U.S. CONST. amend. VII............................................................................................... 4

15 U. S. C.:

    § 77h–1(g)(2) ........................................................................................................... 5

    § 78u–2(d)(3)(B) .................................................................................................... 5

    § 80b–3(i)(2) ........................................................................................................ 5

31 U.S.C. § 5321(a)(5) ................................................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 60(b)(4) ................................................................................................ 1, 4, 9

Fed R. Civ. P. 60(b)(6) .............................................................................................. 1, 4, 9, 10

Petition for Writ of Certiorari, *FCC v. AT&T Inc.*, No. 25-406 (U.S. Oct. 2, 2025) ..................... 3

# I.      INTRODUCTION

On December 24, 2025, Defendant Isac Schwarzbaum filed a motion to set aside the judgment and dismiss this case pursuant to Fed. R. Civ. P. 60(b)(4) or 60(b)(6) (ECF 241) (the "Rule 60(b) Motion") because the government's assessment of the FBAR penalty, which the government sought to reduce to judgment in this case, violated Mr. Schwarzbaum's Seventh Amendment right to a jury trial based on *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), *United States v. Sagoo*, No. 4:24-CV-01159-O, 2025 WL 2689912 (N.D. Tex. Sept. 19, 2025), and *AT&T Corp. v. FCC*, 135 F.4th 230 (5th Cir. 2025). Indeed, the government concedes in *Sagoo* and *AT&T* that the FBAR penalties are subject to the Seventh Amendment right to a jury trial and do not fit within the public rights exception, and further that the Seventh Amendment requires a right to a jury trial prior to FBAR penalties being assessed and collectable. The Court need look no further to find that Mr. Schwarzbaum's Seventh Amendment right was violated in this case and that the judgement should be set aside.

The government's arguments to the contrary are unavailing. The government makes a misguided attempt to walk back its position in *Sagoo* that the claims for FBAR penalties are "suits at common law" for Seventh Amendment purposes and that such claims do not fit within the public rights exception. In the alternative, the government throws the kitchen sink at the idea that Mr. Schwarzbaum should not get relief from the judgment even if the government violated his Seventh Amendment right. In particular, the government invokes the fugitive disentitlement doctrine though Mr. Schwarzbaum is not a fugitive and applying the doctrine to him would not advance legitimate judicial interests. The government also argues waiver though Mr. Schwarzbaum filed his Rule 60(b) motion within a few months of developments in *Sagoo* and *AT&T* that form the basis of his argument that the assessment of the FBAR penalty against him without a prior right to a jury trial violated the Seventh Amendment. Finally, the government argues that the violation of Mr. Schwarzbaum's Seventh Amendment right does not warrant relief from judgment either on due process or change in law grounds.

Because the government's arguments lack merit, the judgment against Ms. Schwarzbaum should be set aside under Rule 60(b)(4) and/or (b)(6).

## II.      ANALYSIS

### A.  The Government Rightly Conceded in *Sagoo* and *AT&T* That Assessment of FBAR Penalties Violate the Seventh Amendment Right to a Jury Trial

In *Sagoo*, the district court addressed the exact issue now pending in the Rule 60(b) Motion—whether the Internal Revenue Service's ("IRS") assessment of the FBAR penalty violates the Seventh Amendment. *Sagoo* is the only opinion to date addressing this issue on the merits,[1] and the district court correctly held that assessment of the FBAR penalty against the defendant without a prior right to a jury trial violated the Seventh Amendment and therefore dismissed the government's complaint with prejudice. 2025 WL 2689912, at *4. *Sagoo* is not a rogue decision; rather, the government's legal concessions in *Sagoo* (and in *AT&T*) establish that the IRS assessment of the FBAR penalty against Mr. Schwarzbaum violated his Seventh Amendment right to a jury trial.

Specifically, "the Government concede[d] that Ms. Sagoo is entitled to a Seventh Amendment civil jury trial." *Id.* at *3. As the district court in *Sagoo* explained: "That is, the Government does not dispute the Seventh Amendment is implicated when the IRS seeks FBAR penalties. Nor does the Government argue the public-rights exception applies to FBAR actions." *Id.* The government was right on both accounts as discussed in Section II.B below. Thus, there should be no dispute that Mr. Schwarzbaum has a right to a jury trial with respect to the FBAR penalty assessed against him. The only issue in *Sagoo* was the timing of that right and whether a post-assessment right to a jury trial if the government sues to reduce the assessment to judgment is sufficient.

The district court in *Sagoo* resolved the timing issue against the government, explaining that "an 'after-the-fact jury trial' does not protect an individual's Seventh Amendment right because the agency already adjudicated liability without the benefit of a neutral factfinder," "because the [agency] adjudication and civil penalties come with 'real world impacts,'" and because an individual is deprived of the right to a jury trial unless and until the individual refuses to pay the

---

[1] In the Opposition, Plaintiff cites to *United States v. Mahmood*, No. 3:24-cv-00039-JES (S.D. Cal. Order entered Jan. 22, 2026, at ECF No. 49). In *Mahmood*, the defendant filed a bare-bones motion for leave to amend its answer and for judgment on the pleadings, raising *Sagoo*. *See id.* (ECF Nos. 39, 44). The district court in *Mahmood* denied the defendant's motions, stating "For the reasons stated on the record, both motions are DENIED." *Id.* (ECF No. 49). The district court did not provide a written analysis, did not address the Seventh Amendment issue, and could have rejected the motions on procedural grounds without considering the Seventh Amendment issue.

penalty and the government brings suit to reduce the penalty to judgment. *Id.* at *3-4 (quoting *AT&T*, 135 F.4th at 241-42).

Even more telling than the government's loss in *Sagoo* is its petition for writ of certiorari in *AT&T*, where the government concedes that the Seventh Amendment requires a right to a jury trial before a penalty is collectable. The government argues in its petition that "the statutory review scheme here satisfies the Seventh Amendment and Article III because Section 504(a) [authorizing suits to enforce FCC forfeiture orders] entitled respondent to a de novo jury trial in district court *before the monetary penalty could be collected*." Petition for Writ of Certiorari at 7, *FCC v. AT&T Inc.*, No. 25-406 (U.S. Oct. 2, 2025) (emphasis added); *see id.* at 11 (stating that AT&T's Seventh Amendment right was not violated because "the statutory scheme *entitled* respondent to a de novo trial by jury before the monetary forfeiture could be collected"). According to the government, FCC forfeiture orders are not collectable, and therefore, it is sufficient that AT&T has a right to a jury trial in the government's collection action:

> Under Section 503(b)(4) of the Act, the FCC may issue an initial decision that finds a regulated party liable for a forfeiture penalty. But under Section 504, the regulated party need not pay the penalty unless the United States files a suit to collect it. Because the defendant in a Section 504 proceeding may demand a jury trial, "the constitutional right of trial by jury in civil actions is not infringed."

*Id.* at 10 (quoting *Cap. Traction Co. v. Hof*, 174 U.S. 1, 23 (1899)); *see also Sprint Corp.* v. *FCC*, 151 F.4th 347, 361 (D.C. Cir. 2025) ("The Seventh Amendment right to a jury trial is a procedural protection that must be honored before 'legal rights are determined' and 'legal relief' is awarded. But no legal rights are determined and no legal relief is awarded if the Commission declines to enforce [a forfeiture order].") (quoting *Lorillard v. Pons*, 434 U.S. 575, 583 (1978)).

In contrast to FCC forfeiture orders, the government recognizes here that, upon assessment, "FBAR penalties become a 'nontax debt to the United States'" and "the Secretary may take appropriate collection action." ECF 247 at 9 (quoting *Jenner v. Commissioner*, 2024 WL 4542905, at *2-3 (T.C. Oct. 22, 2024)); *see* Rule 60(b) ECF 241 at 9-10 (describing various actions the government can take to collect an assessed FBAR penalty under 31 U.S.C. § 3711(g)(9) without filing a suit that includes the right to a jury trial). The FBAR penalty assessed against Mr. Schwarzbaum therefore is collectable without the government bringing this suit.

In sum, the government's concessions in *Sagoo* and *AT&T* demonstrate that the assessment of the FBAR penalty against Mr. Schwarzbaum violated his Seventh Amendment right to a jury trial. There should be no dispute based on those cases that the government's claim of a willful

FBAR penalty against Mr. Schwarzbaum is a "Suit[ ] at common law" within the meaning of the Seventh Amendment, that the public-rights exception does not apply, and finally that the Seventh Amendment guarantees the right to jury trial before the FBAR penalty is assessed and collectable against Mr. Schwarzbaum. U.S. CONST. amend. VII. Mr. Schwarzbaum was denied that right, and accordingly the judgment against him in this case should be set aside for two reasons. First, the judgment is void under Rule 60(b)(4) because the underlying assessment in violation of the Seventh Amendment is contrary to due process. Second, the judgment is invalid based on *Jarkesy*, *Sagoo*, and *AT&T,* which warrants relief under Rule 60(b)(6).

**B. The Government's Attempts to Disavow Its Concessions in *Sagoo* and *AT&T* Are Misguided**

**1. The FBAR Penalty Assessed Against Mr. Schwarzbaum Is a "Suit[ ] at Common Law"**

In general, "'[a]ctions by the Government to recover civil penalties under statutory provisions . . . historically ha[d] been viewed as [a] type of action in debt requiring trial by jury.'" *Jarkesy*, 603 U.S. at 122 (alterations in original) (quoting *Tull v. United States*, 481 U.S. 412, 418-19 (1987)). The suit-at-common-law inquiry turns on whether an action would have been heard at law or in equity when the Seventh Amendment was ratified. *Id.* ("[T]he Framers used the term 'common law' in the Amendment 'in contradistinction to equity, and admiralty, and maritime jurisprudence.'") (quoting *Parsons v. Bedford*, 3 Pet. 433, 446 (1830)). This depends on both the nature of the remedy and the degree of similarity to a recognized suit at common law, with the remedy being "the 'more important' consideration" because "money damages are the prototypical common law remedy." *Id.* at 123 (quoting *Tull*, 481 U.S. at 421).

Civil penalties that are designed to punish and deter (not to compensate) are "a type of remedy at common law that could only be enforced in courts of law." *Tull*, 481 U.S. at 422. As in *Jarkesy*, the "remedy is all but dispositive" in this case. *Id.* The Eleventh Circuit in this case recognized the inherent punitive and deterrent nature of FBAR penalties:

> Whether we look at the text and structure of the [FBAR] statute—which inflicts substantial penalties unconnected to the government's costs and expenses—or at the deterrent reasons Congress has articulated for creating the penalty scheme, by every reasonable measure, the FBAR penalty has a powerful punitive purpose.

*United States v. Schwarzbaum*, 127 F.4th 259, 274 (11th Cir. 2025).

Further, as in *Jarkesy*, willful FBAR penalties "target the same basic conduct" as traditional suits at common law: "misrepresenting or concealing material facts." *Jarkesy*, 603 U.S. at 125. Just as the SEC penalties in *Jarkesy* increase based on actions involving "fraud, deceit, manipulation,

or deliberate or reckless disregard of a regulatory requirement," 15 U. S. C. §§ 77h–1(g)(2), 78u–2(d)(3)(B), 80b–3(i)(2), FBAR penalties increase based on willfulness including deliberate or reckless non-compliance. 31 U.S.C. § 5321(a)(5); *United States v. Schwarzbaum*, 24 F.4th 1355, 1359 (11th Cir. 2022). There is no requirement that FBAR penalties (including non-willful FBAR penalties that may be excused for reasonable cause) be "identical" to common law negligence, recklessness, and fraud; it is sufficient to show that FBAR penalties and common law claims bear a "close relationship." *Jarkesy*, 603 U.S. at 126.

There is no merit to the government's argument that an FBAR penalty is not a "suit." ECF 247 at 9-10. The Seventh Amendment applies to a civil claim "if the claim is 'legal in nature.'" *Jarkesy*, 603 U.S. at 122 (quoting *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)); *see Stern v. Marshall*, 564 U.S. 462, 484 (2011) ("Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the *subject of* a suit at common law, or in equity, or admiralty.'") (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1856)) (emphasis added). The government's suggestion that penalties legal in nature are immune from the Seventh Amendment if they are unilaterally imposed, depriving individuals of any adversarial process, is absurd. It defies the fundamental principles behind Article III and the Seventh Amendment that rests judicial power in the judicial branch and guarantees the right to a jury trial to decide claims that are legal in nature.

There is also no merit to the government's argument that only an enforcement action following assessment of an FBAR penalty qualifies as a suit at common law for Seventh Amendment purposes. ECF 247 at 10-12. The government ignores the undisputed points that it may pursue collection once an FBAR penalty is assessed, and the Seventh Amendment requires a right to a jury trial before, not after, a legal claim has been established. Even assuming that the government is correct in its position that FBAR penalties are "primarily" enforced through a suit to reduce to judgment—there is no evidence to support this contention—this point is irrelevant because, as the government concedes, FBAR penalties can be collected without suit (and therefore the government can deny the right to a jury trial by choosing not to file suit). ECF 247 at 9.

## 2. The Public Rights Exception to the Seventh Amendment Does Not Apply

While the Supreme Court has long recognized an exception to the Seventh Amendment for suits at common law that qualify as public rights, it has equally long warned against "withdraw[ing] from judicial cognizance any matter, which from its nature, is the subject of a suit at common law." *Murray's Lessee*, 59 U.S. (18 How.) at 284. The public rights exception has no textual basis in the

Constitution and instead rests on history and how history informs the intended scope of the Seventh Amendment. Accordingly, the public rights exception is reserved for such matters that "'historically could have been determined exclusively by the [executive and legislative] branches.'" *Jarkesy*, 603 U.S. at 112 (alteration in original) (quoting *Stern*, 564 U.S. 493); *see id.* at 152 (Gorsuch, J., concurring) (stating that public rights are a "narrow class defined and limited by history"). "[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Art. III courts." *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 69 n.23 (1982) (plurality opinion). The FBAR penalty is not a recognized public right, and indeed, the government in *Sagoo* conceded that the public rights exception does not apply. Furthermore, the government makes no effort to show that penalties akin to the FBAR penalty historically could have been determined by the executive and legislative branches. Thus, there is no basis to conclude that the FBAR penalty assessed against Mr. Schwarzbaum fits within the public rights exception.

The government incorrectly argues for broadening the public rights exception to claims that "intersect" (*i.e.,* relate to) a recognized public right. ECF 247 at 13. This approach cuts against more than 150 years of public rights exception jurisprudence that scrupulously guards against the ahistoric expansion of the exception. Starting with *Murray's Lessee*, where the Supreme Court first recognized the public rights exception in a case involving tax collection, it "took pains to justify the application of the exception in that particular instance by explaining that it flowed from centuries-old rules concerning revenue collection by a sovereign." *Jarkesy*, 603 U.S. at 131; *see Murray's Lessee*, 59 U.S. (18 How.) at 281-85. Accordingly, the public rights exception does not attach to any act of Congress conceivably related to a recognized public right. In that event, as the Supreme Court warned, "the exception would swallow the rule." *Jarkesy*, 603 U.S. at 131.

The government also contends that "[t]he civil FBAR penalties here are in the vein of those at issue in *Atlas Roofing*." ECF 247 at 14. But the comparison is unfounded. *Atlas Roofing Co. v. Occupational Safety and Health Review Commission,* 430 U.S. 442 (1977), concerned statutory penalties imposed on employers for maintaining unsafe work conditions. *Id.* at 445. The Supreme Court held that the Seventh Amendment was no impediment to Congress protecting workers where the common law proved inadequate by "creat[ing] a new cause of action, and remedies therefor, unknown to the common law, and plac[ing] their enforcement in a tribunal supplying speedy and expert resolutions of the issues involved." *Id.* at 461. In contrast, as previously discussed, FBAR penalties are not "unknown to the common law," but resemble common law negligence,

recklessness, and fraud as applied to the FBAR reporting requirement. "'[T]raditional legal claims'" such as these, "must be decided by courts" and include a right to a jury trial. *Jarkesy*, 603 U.S. at 133 (alteration in original) (quoting *Granfinanciera*, 492 U.S. at 52).

Finally, the government defends the denial of Mr. Schwarzbaum's Seventh Amendment right to a jury trial based on separation of powers, namely, that this Court should respect "Congress assign[ing] the authority for the assessment of FBAR penalties to the Secretary of the Treasury." ECF 247 at 19-20. The government's argument violates the first principle that the acts of Congress must comply with the U.S. Constitution, which is the "supreme law of the land." *See Marbury v. Madison*, 5 U.S. 137, 180 (1803). An act of Congress that conflicts with the Constitution is "void." *Id.* at 177. Thus, regardless of the statutory scheme for imposing FBAR penalties, the assessment of the FBAR penalty against Mr. Schwarzbaum in violation of the Seventh Amendment cannot stand.

## C. The Government's Arguments for Denying Rule 60(b) Relief Notwithstanding the Violation of Mr. Schwarzbaum's Seventh Amendment Right Are Without Merit

### 1. The Fugitive Disentitlement Doctrine Is Inapplicable

The fugitive disentitlement doctrine provides that "federal courts . . . have authority to dismiss an appeal or writ of certiorari if the party seeking relief is a fugitive while the matter is pending." *Degen v. United States*, 517 U.S. 820, 824 (1996); *accord United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997). The doctrine is traditionally applied in criminal cases when a defendant is convicted at the trial level, files an appeal, and flees. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). The Eleventh Circuit recognized that the doctrine extends to civil cases derived from related criminal cases, *see, e.g.*, *Barnette*, 129 F.3d at 1183-84, and to trial court proceedings, *see, e.g., Ener v. Martin*, 987 F.3d 1328, 1332 (11th Cir. 2021). Regardless, the fugitive disentitlement doctrine is inapplicable under the present circumstances.

First, the fugitive disentitlement doctrine is a "most severe" sanction, *Degen*, 517 U.S. at 828, wholly unjustified by the government's allegation that "Mr. Schwarzbaum has thumbed his nose at the Court," ECF 247 at 3. In *Degen*, a U.S.-Swiss citizen living in Switzerland did not return to the United States to face criminal drug charges but did assert defenses in the government's civil forfeiture action. 517 U.S. at 821-22. While acknowledging the district court's dignity interests and need to deter criminal defendants from fleeing prosecution, the Supreme Court held that the district court abused its discretion by "striking Degen's claims and entering summary judgment against him as a sanction," calling the district court's exercise of judicial authority "an arbitrary response

to the conduct it is supposed to redress or discourage." *Id.* at 828. Likewise, there is no principled reason to impose the highly unusual and severe sanction of refusing to consider Mr. Schwarzbaum's Rule 60(b) Motion.

Second, and as further emphasis that application of the doctrine would be misplaced, Mr. Schwarzbaum is not by any measure a "fugitive." Two types of fugitives have been recognized at common law. A "traditional fugitive is a person who, after committing a crime, flees the jurisdiction of the court where the crime was committed or goes into hiding within the jurisdiction." *United States v. Bardakova*, 145 F.4th 231, 242 (2d Cir. 2025). A "constructive-flight fugitive is a person '[(1)] who allegedly committed crimes while in the United States but [(2)] who was outside the country—for whatever reason—when she learned that her arrest was sought and [(3)] who then refused to return to the United States in order to avoid prosecution.'" *Id.* (alterations in original) (quoting *Collazos v. United States*, 368 F.3d 190, 199 (2d Cir. 2004)). Mr. Schwarzbaum has not committed a crime or fled prosecution, no indictment has been issued against him, no criminal warrant exists for his arrest, and he has not refused to return to the United States to avoid prosecution. The government's argument for applying the fugitive disentitlement doctrine when Mr. Schwarzbaum meets none of the element of fugitive status is unfounded.

The government primarily relies upon *United States v. Barnette*, 129 F.3d 1179 (11th Cir. 1997). The government contends that *Barnette*—which involved alleged noncompliance and obstruction of a criminal forfeiture judgment—stands for the proposition that a civil litigant becomes a fugitive if he fled or stayed outside a court's jurisdiction "to avoid paying a large judgment and has refused to obey court orders." ECF 247 at 2. But the defendant's husband in *Barnette* was a traditional fugitive based on a criminal forfeiture judgment entered against him, and the defendant wife was determined to have "'aided and abetted, or acted in concert with, Mr. Barnette in his scheme to evade the criminal forfeiture judgment.'" *Barnette*, 129 F.3d at 1185 (quoting *United States v. Barnette*, 902 F. Supp. 1522, 1542 (M.D. Fla. 1995)).

The circumstances here are distinguishable in important respects and preclude drawing the inferences used to justify applying the fugitive disentitlement doctrine in *Barnette*. It bears repeating that Mr. Schwarzbaum is not a fugitive. This case is unrelated to any criminal proceeding. Mr. Schwarzbaum's Rule 60(b) Motion requests relief from the civil judgment against him and not from a contempt order, as was the case in *Burnette*. Further, Mr. Schwarzbaum has not hidden his assets or designed to insulate his assets or himself from these proceedings. To the contrary, he has been engaged throughout.

### 2. Mr. Schwarzbaum Did Not Waive His Seventh Amendment Challenge

The government cites no authority to support its argument that Mr. Schwarzbaum waived his argument in the Rule 60(b) Motion under these circumstances. And there is no merit to the government's contention that this Court should find waiver because, "even before *Jarkesy* was decided, there was no barrier to Mr. Schwarzbaum arguing at any stage of this case that the Seventh Amendment applied." ECF 247 at 4. By that logic, Rule 60 would be a dead letter because theoretically a party always could have raised an argument earlier.

The Supreme Court in *Jarkesy* reset the treatment of government penalties under the Seventh Amendment, but how the Court's analysis in *Jarkesy* translated to FBAR penalties presented an open question that was answered by *Sagoo* in a decision entered on September 19, 2025, the government's petition for writ of certiorari in *AT&T* filed on October 2, 2025, and other post-*Jarkesy* developments. Mr. Schwarzbaum acted as soon as there was sufficient basis for Rule 60(b) relief from judgment.

### 3. The Judgement Is Void Under Rule 60(b)(4) for Lack of Due Process

The government insists that Mr. Schwarzbaum had ample notice and opportunity to be heard during the long history of this case and therefore cannot demonstrate a lack of due process. But the government misses the point that the right to a jury trial before the government takes an individual's property is a cornerstone of due process. As Justice Gorsuch explained in *Jarkesy*:

> Because the penalty the SEC seeks would "depriv[e]" Mr. Jarkesy of "property," Amdt. 5, due process demands nothing less than "the process and proceedings of the common law," 3 [J. Story, Commentaries on the Constitution of the United States] § 1783, at 661 [(1833)]. That means the regular course of trial proceedings with their usual protections, see *Murray's Lessee*, 18 How., at 280, not the use of ad hoc adjudication procedures before the same agency responsible for prosecuting the law, subject only to hands-off judicial review . . . .

*Jarkesy*, 603 U.S. at 151 (Gorsuch, J., concurring) (first alteration in original). Indispensable to due process is the opportunity to be heard in a neutral forum before a jury before liability is established.

### 4. The Judgment Should Be Set Aside Under Rule 60(b)(6) Because of the Clear-Cut Change in Law

As discussed, *Jarkesy*, *Sagoo*, *AT&T*, and the government's concessions therein, demonstrate "a clear-cut change in the law" that Mr. Schwarzbaum had a Seventh Amendment right to a jury trial prior to the assessment of the FBAR penalty against him. *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987). Grasping for straws, the government argues that *Jarkesy* did not make a relevant change to the applicability of the Seventh Amendment and that *Sagoo* and *AT&T*, viewed

9

in isolation, are not controlling. ECF 247 at 5-7. Neither point is convincing.

Justice Sotomayor's dissent in *Jarkesy* details the Supreme Court's profound change to the settled judicial construction of the Seventh Amendment in that case, 603 U.S. at 167-68, and *Sagoo* and *AT&T* are the direct consequence. They involve a single change in the law, originating from controlling Supreme Court precedent and addressing the implications, directly and indirectly, regarding FBAR penalties. Mr. Schwarzbaum's Rule 60(b) Motion rests on this clear-cut change in the law.

Moreover, the government does not dispute that the change in law satisfies the *Ritter* factors used to determine whether relief from judgment is justified, including (1) the previous, erroneous judgment of this court had not been executed, (2) there was a minimal delay between the finality of the judgment and the Rule 60(b)(6) motion, (3) there is a close relationship between the case that caused the change in law and the current case, and (4) considerations of comity. *Ritter*, 811 F.2d at 1401-03. Each of these factors support granting relief from the judgment in this case.

### III.   CONCLUSION

Based on the arguments set forth in the pending Rule 60(b) Motion and the foregoing reply, Mr. Schwarzbaum respectfully requests that the Court (1) set aside the Judgment, and (2) issue an order dismissing this case with prejudice.

Respectfully submitted this 6th day of February, 2026.

DAVID J. WARNER
California Bar # 261718 (Pro Hac Vice)
Holtz, Slavett, Drabkin & Warner, APLC
10940 Wilshire Boulevard, Suite 2000
Los Angeles, California 90024
(310) 550-6200
dwarner@hsdwtaxlaw.com

*Counsel for Defendant Isac Schwarzbaum*

EVELYN BALTODANO SHEEHAN
Florida Bar ID # 944351
Kobre & Kim, LLP
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131-4329
(305) 967-6100
Evelyn.Sheehan@kobrekim.com

*Counsel for Defendant Isac Schwarzbaum*