UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-CV-81147-BB

UNITED STATES OF AMERICA,

                   Plaintiff,

vs.

ISAC SCHWARZBAUM,

                   Defendant.

_____/

## REPORT AND RECOMMENDATION ON  MOTION TO SET ASIDE JUDGMENT  [ECF No. 241]

Isac Schwarzbaum moves to set aside a final judgment holding him liable for approximately $19 million in federal tax penalties and interest. He also moves to dismiss the case with prejudice. ECF No. 241. He says he is entitled to this relief because he was entitled to — and did not receive — a jury trial before the IRS finalized its penalty assessments. ECF No. 241.

Judge Bloom referred Mr. Schwarzbaum's motion to me for a Report and Recommendation. ECF No. 244. I have reviewed the motion, the Government's response, and Mr. Schwarzbaum's Reply. ECF Nos. 241, 247, 248. At the parties' request, I held oral argument on March 4, 2026. ECF No. 259. I am fully advised and this matter is ripe for decision.

It therefore is RECOMMENDED that Mr. Schwarzbaum's motion be DENIED. The final judgment is not void under Federal Rule of Civil Procedure 60(b)(4) because

the Due Process Clause of the Fifth Amendment does not guarantee a right to a jury trial. Mr. Schwarzbaum has not shown extraordinary circumstances that warrant discretionary equitable relief under Federal Rule of Civil Procedure 60(b)(6). There has been no change in controlling law, Mr. Schwarzbaum has unclean hands, and he has not otherwise shown that vacatur is necessary to accomplish justice.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Between 2006 and 2009, Mr. Schwarzbaum failed to tell the IRS he had money in foreign bank accounts — a so-called FBAR violation. He filed amended tax returns in December 2011 that voluntarily disclosed that the foreign accounts existed. ECF No. 1 ¶¶18(c), 19(c), 20(c), 21(c). The IRS began administrative proceedings to assess statutory penalties for the FBAR violations ("FBAR penalties"). Mr. Schwarzbaum and the Government had discussions, which included Mr. Schwarzbaum agreeing to extend the statutes of limitations several times. *Id.* ¶¶27, 36, 45, 54. Eventually, the Government made final assessments. *Id.* ¶¶28, 37, 46, 55. The IRS notified Mr. Schwarzbaum of the assessment and demanded payment. *Id.* ¶¶29, 38, 47, 56. There is no evidence in the record that Mr. Schwarzbaum objected to the assessments based on a right to a jury trial.

Mr. Schwarzbaum did not pay the assessed penalties, so the Government filed a four-count Complaint in August 2018 to reduce the assessments to judgment. ECF No. 1. On October 9, 2018, Mr. Schwarzbaum answered the Complaint. ECF No. 8. He admitted not timely disclosing the foreign bank accounts. *Compare* ECF No. 1 ¶21, *with* ECF No. 8 ¶21. He asserted multiple affirmative defenses, including (1) the

Complaint failed to state a claim upon which relief could be granted because his conduct was not willful, (2) the IRS did not follow its own internal procedures and guidelines in assessing the penalties, and (3) the assessments violated the Eighth Amendment prohibition on excessive fines. ECF No. 8 ¶¶58-60. He "expressly reserve[d] the right to amend and/or raise additional affirmative defenses as they become available or apparent." *Id.* ¶64. He did not demand a jury trial on the allegations in the Complaint. *Id.* He did not assert any defenses based on being denied a jury trial during the assessment process. *Id.*

In March 2020, after a five-day non-jury trial, the Court found that Mr. Schwarzbaum's failure to disclose his foreign bank accounts on his 2006 tax returns was not willful, but that his non-disclosures for tax years 2007-2009 were willful. ECF No. 92. The Court found that the IRS had not properly calculated the FBAR penalties. *Id.* at 25. The Court deferred ruling on Mr. Schwarzbaum's argument that the assessed FBAR penalties violated the Eighth Amendment. *Id.* at 25-26. The Court directed the parties to submit supplemental briefs on the proper amount of FBAR penalties. *Id.* at 26.

On April 24, 2020, Mr. Schwarzbaum filed a supplemental brief arguing that the assessed FBAR penalties should be set aside because the IRS had used the wrong account balances to compute the penalties. ECF No. 94 at 11. He said the correct remedy was to remand the case to the IRS for new calculations which "require factual development and case-specific analysis." *Id.* at 13. He then argued that any new

assessments would be time-barred. *Id.* at 13-16. He did not argue that he would be entitled to a jury trial on remand.

The trial court did not remand the case to the IRS. Instead, it entered an Order Assessing Penalties that recalculated the FBAR penalties based on the trial evidence. ECF No. 98. Having done so, it then rejected Mr. Schwarzbaum's Eighth Amendment argument. *Id.* at 10-16. On May 19, 2020, the Court entered a final judgment for $12,907,952 plus interest and penalties. ECF No. 99.

On June 3, 2020, Mr. Schwarzbaum filed a timely Notice of Appeal from the final judgment. ECF No. 100. While that appeal was pending, the Government moved to alter the judgment to reflect FBAR penalties of $12,555,813 plus late-payment penalties and prejudgment interest. ECF No. 102. Mr. Schwarzbaum opposed the motion to alter the judgment on multiple grounds. ECF No. 103. None of those arguments related to him being denied a jury trial during the IRS assessment process.

The Court granted the motion to alter judgment, ECF No. 104, and entered an Amended Final Judgment on August 27, 2020. ECF No. 105 ("Amended Final Judgment"). Mr. Schwarzbaum timely filed a Notice of Appeal. ECF No. 106. He did not move to stay enforcement of the Amended Final Judgment.

On November 9, 2020, Mr. Schwarzbaum filed his initial brief in the Eleventh Circuit. Initial Br. of Appellant, *United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022) (No. 20-12061) ("*Schwarzbaum I*"), 2020 WL 6591234. The brief made three substantive arguments. First, that the trial court should have remanded the case to

4

the IRS for new assessments rather than the trial court calculating the FBAR penalties itself. *Id.* at 21-31. Second, the trial court applied the wrong legal standard for willfulness. *Id.* at 31-41. Third, the Amended Final Judgment amounts violated the Eighth Amendment. *Id.* at 42-48. Mr. Schwarzbaum did not argue that the Amended Final Judgment should be vacated because the penalties had been assessed without a jury trial or that he would be entitled to a jury trial on remand.

While the appeal was pending, in June 2021, the Government moved for an Order requiring Mr. Schwarzbaum to repatriate his assets. ECF No. 115. Over Mr. Schwarzbaum's objection, on November 5, 2021, the Court ordered him to repatriate his assets to the United States. ECF No. 129 ("Repatriation Order").

While the repatriation motion was pending, the Eleventh Circuit panel heard oral argument on Mr. Schwarzbaum's appeal. Oral Arg., *United States v. Schwarzbaum*, No. 20-12061 (11th Cir. 2020), 11th Cir. ECF No. 57.

On December 1, 2021, Mr. Schwarzbaum moved to stay the Repatriation Order. ECF No. 130. In support of the stay, he argued he was likely to succeed on the merits of his appeal, citing multiple legal arguments that he had made on appeal; none of these arguments related to having been denied a jury trial during the IRS assessment process. On December 30, 2021, the trial court stayed the Repatriation Order. ECF No. 133. Mr. Schwarzbaum had not repatriated any assets during the two-month period between the November 5 Repatriation Order and the December 30 stay.

On March 21, 2022, the Eleventh Circuit issued its mandate and opinion in *Schwarbaum I*. ECF No. 139. It vacated the Amended Final Judgment and remanded the case to the IRS to re-assess the FBAR penalties. 24 F.4th at 1367 ("We VACATE the district court's amended judgment and REMAND with instructions to remand to the IRS for recalculation of Schwarzbaum's FBAR penalties."). It affirmed the trial court's finding that Mr. Schwarzbaum acted willfully. *Id*. at 1363. It declined to reach the Eighth Amendment issue. *Id*. at 1358 n.1.

In light of the appellate decision, the trial court vacated the Repatriation Order. ECF No. 143. On May 16, 2022, over Mr. Schwarzbaum's objections, the trial court retained jurisdiction while the matter was on remand to the IRS. ECF No. 146.

The IRS Examinations Division recalculated the FBAR penalties. ECF No. 152-1. The IRS administratively approved the new assessments on September 1, 2022. ECF No. 152-3. The record does not reflect whether Mr. Schwarzbaum appealed the new assessments to the IRS Appeals Division. There is no evidence in the record that he asked the IRS for a jury trial.

On September 15, 2022, the Government moved for entry of a second amended judgment. ECF No. 152. Attached as exhibits to the motion were the IRS's updated calculations. On October 6, 2022, Mr. Schwarzbaum objected to the entry of a new judgment. ECF No. 155. He said the IRS had improperly estimated some of the FBAR penalties despite not having the necessary bank records. *Id*. He also argued the new assessments were time-barred. *Id*. And, he argued that prejudgment interest could not have accrued. *Id*. He did *not* argue that the assessments were invalid because

6

they had not been proven to a jury. The trial court overruled his objections and on November 1, 2022, entered a Final Judgment After Remand. ECF No. 162.

Mr. Schwarzbaum again appealed. ECF No. 164. He filed his initial brief on February 10, 2023. Initial Br. of Appellant, *United States v. Schwarzbaum,* 127 F. 4th 259 (11th Cir. 2025) (No. 22-14058) ("*Schwarzbaum II*"), 11th Cir. ECF No. 12. He argued (1) the judgment violated the FBAR statute, (2) the statute of limitations barred the new assessments, (3) the trial court erred by retaining jurisdiction, and (4) the penalties violated the Eighth Amendment. He did not raise any Seventh Amendment argument or otherwise claim to have been denied a right to a jury trial.

On January 6, 2023, the Government renewed its request for an order requiring Mr. Schwarzbaum to repatriate his assets. ECF No. 169. Mr. Schwarzbaum opposed the motion on multiple grounds, but he did not argue that the Amended Judgment After Remand was unenforceable because he had been denied a jury trial. ECF No. 170. On March 29, 2023, the Court ordered Mr. Schwarzbaum to repatriate his assets. ECF No. 176 ("Second Repatriation Order").

Mr. Schwarzbaum timely appealed from the Second Repatriation Order. ECF No. 181. On April 27, 2023, Mr. Schwarzbaum moved to stay that order while he appealed it. ECF No. 178. He again argued a likelihood of success on appeal, citing the arguments in his appellate brief. *Id.* He did not argue that he had been improperly denied a jury trial. On June 8, 2023, the trial court declined to stay the Second Repatriation Order. ECF No. 186.

On September 29, 2023, the Government moved for an Order to Show Cause why Mr. Schwarzbaum should not be held in civil contempt for not complying with the Second Repatriation Order. ECF No. 189. Mr. Schwarzbaum responded on October 13, 2023. ECF No. 191. He argued that the Government had not satisfied a procedural prerequisite to enforcing the Second Repatriation Order. *Id.* He also argued that he was physically unable to attend a court hearing in the United States. *Id.* He did not argue that the judgment was unenforceable because he had been denied a jury trial.

On November 7, 2023, I recommended to the trial court that Mr. Schwarzbaum be held in civil contempt and that she conduct an in-person hearing to determine the proper sanction. ECF No. 196. Neither party objected to that recommendation. ECF Nos. 197, 198. On December 6, 2023, Mr. Schwarzbaum voluntarily dismissed his appeal of the Second Repatriation Order. ECF No. 200. The next day, the trial court adopted my recommendation, found Mr. Schwarzbaum to be in civil contempt, and set a hearing on March 1, 2024, to determine the proper sanction. ECF No. 199. On February 27, 2024, the trial court cancelled the contempt hearing and held further contempt litigation in abeyance until the Eleventh Circuit ruled on Mr. Schwarzbaum's merits appeal. ECF No. 204.

On March 17, 2025, the Eleventh Circuit issued its mandate and opinion in *Schwarzbaum II*. ECF No. 206. It rejected all of Mr. Schwarzbaum's arguments except for the Eighth Amendment challenge. It noted, "The question of whether FBAR penalties are 'fines' falling within the meaning of the Eighth Amendment's

Excessive Fines Clause is a matter of first impression in this Court." *Schwarzbaum II,* 127 F. 4th at 268. It also noted that one other Court of Appeals — the First Circuit — had ruled on this issue in a 2022 decision, and had declined to apply the Eighth Amendment. *Id.* at 274 (citing *United States v. Toth,* 33 F.4th 1 (1st Cir. 2022)). Based on its finding that the Eighth Amendment applied to Mr. Schwarzbaum, the Eleventh Circuit reduced the penalties by $300,000 and remanded for entry of a final judgment. The decretal language was "We therefore AFFIRM in part and REVERSE in part, and REMAND with instructions to enter a judgment in the amount of $12,255,813, and to calculate the amount of late fees and interest. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED." ECF No. 206 at 58.

On April 9, 2025, the trial court entered the currently-operative final judgment for $19,591,504.69. ECF No. 210 ("April 2025 Final Judgment").

After that the trial court entered judgment, the Government asked the Court to hold the contempt hearing that had been deferred pending the appellate decision. ECF No. 212. The trial court referred that matter to me. ECF No. 213. On June 18, 2025, I set an in-person hearing to be held on August 28, 2025. ECF No. 218. At this point, Mr. Schwarzbaum was representing himself *pro se*. ECF No. 222. Mr. Schwarzbaum failed to appear on August 28. ECF No. 224. I therefore recommended to the trial court that a bench warrant be issued as a civil contempt sanction, ECF No. 227, and that Mr. Schwarzbaum be referred to the United States Attorney's Office for possible prosecution for criminal contempt. ECF No. 228.

Mr. Schwarzbaum is now again represented by counsel. ECF Nos. 232, 233. On December 24, 2025, new counsel filed the pending Motion to Set Aside Judgment and Dismiss Case. ECF No. 241. They also filed objections to both contempt recommendations. ECF Nos. 257, 258. The trial court has not yet ruled on those objections. To this day, Mr. Schwarzbaum has not repatriated any of his assets.

## II.   RULE 60(b)

Rule 60(b) allows the Court, in extremely limited circumstances, to set aside a final judgment "[o]n motion and just terms." Rules 60(b)(1)-(5) list specific reasons why a Court can set aside a final judgment. One of those reasons is that the judgment is void. Fed. R. Civ. P. 60(b)(4). Another is Rule 60(b)(6)'s catch-all provision that allows the Court to set aside a final judgment for "any other reason that justifies relief." *A&F Bahamas, LLC v. World Venture Grp., Inc.,* No. 15-60019-CIV, 2019 WL 1979427, at *2 (S.D. Fla. May 3, 2019) (quoting Fed. R. Civ. P. 60(b)). The party seeking to set aside the judgment bears the burden of proof. *See Horton v. Hand,* 785 F. App'x 704, 706 (11th Cir. 2019); *Foley v. Orange Cnty.,* No. 24-14143, 2025 WL 3022821, at *2 (11th Cir. Oct. 29, 2025). Whether to grant relief under Rule 60 is "a matter for the district court's sound discretion." *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006).

Procedurally, a Rule 60(b) motion must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1); *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC,* No. 24-808, 2026 WL 135998, at *4 (U.S. Jan. 20, 2026). "[A] determination of what constitutes a reasonable time depends on the facts in any given

case, and in making the determination, courts should consider whether the movant had a good reason for the delay in filing and whether the non-movant would be prejudiced by the delay." *Kerruish v. Essex Holdings, Inc.,* 839 F. App'x 428, 432 (11th Cir. 2021) (citations omitted). "This is a fact-intensive inquiry." *Id.* at 432 n.6.

A.  *Rule 60(b)(4)*

Rule 60(b)(4) lets a Court set aside a void final judgment. Fed. R. Civ. P. 60(b)(4). "Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute." *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 276 (2010). Whether a judgment is void under Rule 60(b)(4) is an issue of law subject to *de novo* appellate review. *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001). "Unlike most motions for relief from judgment under Rule 60(b), which are 'addressed to the discretion of the court,' a motion under Rule 60(b)(4) does *not* present a 'question of discretion.'" 11 Charles A. Wright et al., *Fed. Prac. & Proc. Civ.* §§ 2857, 2862 (3d ed. 2019). A district court's failure to vacate a void judgment under Rule 60(b)(4) constitutes '*per se* abuse of discretion.'" *A & F Bahamas LLC v. World Venture Grp., Inc.,* 796 F. App'x 657, 661 (11th Cir. 2020).

The kinds of judgments that are considered void is an "exceedingly short" list. *Espinosa*, 559 U.S. at 270. A judgment is not void "simply because it is or may have been erroneous." *Id.* at 270 (citations omitted). "Similarly, a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *Id.* at 270-71 (citations omitted). "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Id.* at 275. "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either

11

on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271; *accord Webster v. Sec'y, Fla. Dep't of Corr.,* No. 21-11124-G, 2021 WL 8015837, at *1 (11th Cir. Dec. 20, 2021) (Jordan J. order denying COA) ("Webster was afforded due process during his § 2254 proceedings because no court "deprive[d] [him] of notice or the opportunity to be heard.") (citing *Espinosa*, 559 U.S. at 271).

### B.   *Rule 60(b)(6)*

Rule 60(b)(6) is an "extraordinary remedy" that requires "extraordinary circumstances." *BLOM Bank SAL v. Honickman,* 605 U.S. 204, 210 (2025); *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (citations omitted). It can be invoked "only when Rules 60(b)(1) through (b)(5) do not apply. *Kemp v. United States,* 596 U.S. 528, 533 (2022) (citation omitted). Rule 60(b)(6) does not "particularize the factors that justify relief, but . . . it provides courts with authority 'adequate to enable them to vacate judgments [in those extraordinary circumstances when] such action is appropriate to accomplish justice.'" *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 864 (1988) (quoting *Klapprott v. United States,* 335 U.S. 601, 614–15 (1949)). The movant must show "that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Doe v. Drummond Co.,* 782 F.3d 576, 612 (11th Cir. 2015) (citation omitted). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Liljeberg,* 486 U.S. at 873.

Rule 60(b)(6) does not apply when the situation is the movant's fault. *Id*. at 212. "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States,* 340 U.S. 193, 198

(1950) *quoted in BLOM,* 605 U.S. at 212. "In a vast majority of the cases finding that extraordinary circumstances do exist ..., the movant is completely without fault for his or her predicament." 12 J. Moore, D. Coquillette, G. Joseph, G. Vairo, & C. Varner, Moore's Federal Practice § 60.48[3][b], p. 60–188 (3d ed. 2024) *cited in BLOM,* 605 U.S. at 212 (brackets in original).

An intervening clear-cut change in law can sometimes be a basis for Rule 60(b)(6) relief. *Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir. 1987) (Rule 60(b)(6) could be invoked "where there has been a clear-cut change in the law [but] a change in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case.") (emphasis in original). A "core tenet" of Rule 60(b) is that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." BLOM, 605 U.S. at 216 (quoting *Agostini v. Felton,* 521 U.S. 203, 239 (1997)). There must be a "clear and authoritative change in governing law." *Polites v. United States,* 364 US 426, 433 (1960) (also referencing "controlling change in governing law"); *see also Kemp v. United States*, 596 U.S. 528, 540 (2022) (Sotomayor, J. concurring) (Rule 60(b)(6) remains available "to reopen a judgment in extraordinary circumstances, including a change in controlling law.").

A movant's lack of diligence in pursuing a legal issue can preclude a finding of extraordinary circumstances. *Gonzalez v. Crosby,* 545 U.S. 524, 537-38 (2005). And, even where an intervening change in the law *might* justify Rule 60(b)(6) relief, the decision whether to grant that relief is "a matter for the district court's 'sound

discretion.' Plaintiffs 'must demonstrate a justification so compelling that the [district] court was *required* to vacate its order.'" *Aldana v. Del Monte Fresh Produce N.A., Inc.,* 741 F.3d 1349, 1355 (11th Cir. 2014) (cleaned up) (emphasis added) (bracket in original).

## C.  Right to a Jury Trial

The Seventh Amendment grants a right to a jury trial "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." The right to a jury trial can be forfeited if not timely asserted. Fed. R. Civ. P. 38(d).[1] That forfeiture can be excused, however. *See* Fed. R. Civ. P. 39(b); *see also United States v. Campbell,* 26 F.4th 860, 872-73 (11th Cir. 2022) (excusing forfeiture of Fourth Amendment good-faith exception).

## D.  Fugitive Disentitlement Doctrine

First applied in 1986, "[t]he United States Supreme Court has long recognized an appellate court's ability to exercise its discretion by refusing to hear or to decide the appeal of a fugitive from justice." *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1999) (citing *Molinaro v. New Jersey,* 396 U.S. 365 (1970)); *Pesin v. Rodriguez*, 244 F.3d 1250, 1252 (11th Cir. 2001). "Although the doctrine has traditionally been applied by the courts of appeal to dismiss the appeals of fugitives, district courts 'may sanction or enter judgment against parties on the basis of their

---

[1]Waiver and forfeiture are related but distinct concepts. "[F]orfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *United States v. Campbell,* 26 F.4th 860, 872 (11th Cir. 2022).

fugitive status.'" *Ener v. Martin,* 379 F. Supp. 3d 1377, 1381 (S.D. Fla. 2019) (quoting *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998)).

Invocation of the doctrine requires: "(1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court, dismissal, is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine." *Magluta*, 162 F.3d 662, 664 (11th Cir. 1998).

"A fugitive from justice has been defined as '[a] person who, having committed a crime, flees from [the] jurisdiction of [the] court where [a] crime was committed or departs from his usual place of abode and conceals himself within the district.'" *Barnette*, 129 F.3d at 1183 (citation omitted). "Expanding this definition as it applies to the fugitive disentitlement doctrine, it has been held that 'a fugitive from justice need not be a fugitive in a criminal matter.'" *Id.* "[T]he doctrine has also been applied where the fugitive was . . . a civil litigant who continued to ignore court orders and evade arrest." *Pesin*, 244 F.3d at 1253; *see also Barnette*, 129 F.3d at 1183 ("Under certain circumstances the disentitlement doctrine may be even more applicable to civil than criminal cases").

"[T]he doctrine is an equitable one and rests upon the power of the courts to administer the federal courts system." *Pesin*, 244 F.3d at 1252-53. The "court's power to dismiss a cause on fugitive-driven grounds is an inherent aspect of its authority to enforce its orders and [e]nsure prompt disposition of lawsuits." *Ener*, 379 F. Supp. 3d at 1381. "The primary rationale underlying the fugitive disentitlement doctrine is to avoid issuing what would, in essence, be an advisory opinion." *Ofer v. Millan*, No. 24-

CV-20888, 2024 WL 3373473, at *3 (S.D. Fla. July 11, 2024); *see Pesin*, 244 F.3d at 1253; *see also Barnette*, 129 F.3d at 1183. "Aside from the difficulty of enforcing a judgment against a fugitive, other rationales underlying the doctrine include promoting the efficient operation of the courts, discouraging flights from justice, and avoiding prejudice to the other side caused by the [party]'s fugitive status." *Pesin*, 244 F.3d at 1252; *see also Barnette*, 129 F.3d at 1183 (Rationales include "the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing that 'fugitive' to use the resources of the courts only if the outcome is an aid to him, the need to avoid prejudice to the nonfugitive party, and the discouragement of flights from justice.").

## III.    THE PLEADINGS

### A.  *Mr. Schwarzbaum's Motion*

Mr. Schwarzbaum makes three arguments. First, he says the failure to give him a jury trial before making the FBAR assessments violated the Due Process Clause of the Fifth Amendment, which makes the April 2025 Final Judgment void and subject to dismissal under Federal Rule of Civil Procedure 60(b)(4). ECF No. 241. In the alternative, he says recent Seventh Amendment cases represent a change of law that is grounds to set aside the April 2025 Final Judgment under Federal Rule of Civil Procedure 60(b)(6). *Id.* Finally, he says the proper remedy is to dismiss the case with prejudice. *Id.*

B. *Government's Response*

The Government argues (1) the Fugitive Disentitlement Doctrine bars Mr. Schwarzbaum from getting Rule 60(b) relief, (2) Mr. Schwarzbaum's motion is untimely, (3) Mr. Schwarzbaum forfeited his right to raise a Seventh Amendment argument because he failed to make it earlier in the litigation, (4) the judgment is not void, (5) the controlling law has not changed, and (6) the Seventh Amendment right to jury trial does not apply to FBAR assessment process. ECF No. 247.

C. *Mr. Schwarzbaum's Reply*

Mr. Schwarzbaum says the Government conceded in other litigation that the Seventh Amendment applied to FBAR penalties. ECF No. 248 at 5-11. He next says that the Fugitive Disentitlement Doctrine does not apply because he does not meet the definition of a "fugitive." *Id*. at 11-12. Finally, he says that there was not a sufficient basis to make the Seventh Amendment argument until after the Supreme Court decided *SEC v. Jarkesy,* 603 U.S. 109 (2024), the District Judge in Texas decided *United States v. Sagoo,* No. 24-CV-01159, 2025 WL 2689912 (N.D. Tex. Sept. 19, 2025), and the Government filed a petition for writ of certiorari in *AT&T, Inc. v. FTC* on October 2, 2025. ECF No. 248 at 13.

## IV.    DISCUSSION

A. *Procedural Bars*

The Government asserts three procedural bars: (1) the motion is untimely under Rule 60(c)(1), (2) the Fugitive Disentitlement Doctrine applies, and (3) the Seventh Amendment argument was forfeited because it was not raised sooner. ECF

No. 247 at 10-14. Because I conclude that Mr. Schwarzbaum is not entitled to Rule 60(b) relief for other reasons, I do not resolve these procedural bar arguments.

B.   *Rule 60(b)(4)*

The currently-operative judgment — and the only one that can be set aside under Rule 60 — is the April 2025 Final Judgment.[2] It is not void.

Mr. Schwarzbaum says the April 2025 Final Judgment is void because the IRS administrative procedures that led to the FBAR assessments violated his rights under the Due Process Clause of the Fifth Amendment. ECF No. 241 at 11-15. He reaches this conclusion through the following syllogism. First, he cites *Burke v. Smith,* 252 F.3d at 1263 for the principle, "[a] judgment is 'void' under Rule 60(b)(4) if the parties "acted in a manner inconsistent with due process of law." *Id*. at 11. He next asserts, "Due Process in this context refers to the Due Process Clause of the Fifth Amendment to the U.S. Constitution." *Id*. He then says, "The Seventh Amendment right to a jury trial is an indispensable element of the right to due process." *Id*. at 12. He then concludes that because he was denied a jury trial before the IRS finalized the assessments, the later April 2025 Final Judgment is void.

---

[2] In *Schwarzbaum I,* the Eleventh Circuit vacated the Amended Final Judgment, which means it is void and has no continuing legal effect. *See United States v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002). In *Schwarzbaum II,* the Eleventh Circuit affirmed the Amended Final Judgment After Remand in part, reversed it in part, and remanded for entry of an amended judgment that modified the monetary judgment. This Court then entered the April 2025 Final Judgment, which vacated the Amended Judgment After Remand. *See Suite 225, Inc., v. Lantan Ins. Ltd.,* 625 F. App'x. 502, 507 (11th Cir. 2015).

Mr. Schwarzbaum takes an over-expansive view of when a judgment can be voided because the movant was denied "due process." First, he ties his arguments to the Due Process Clause of the Fifth Amendment but ignores that the original meaning of the Due Process Clause does not incorporate a right to a jury trial. Second, he ignores that the Supreme Court in *Espinosa* limited Rule 60(b)(4) to situations when a party was denied notice and/or the opportunity to be heard. Third, the cases he cites do not support his argument and/or his arguments are forfeited because they are not adequately developed.

1.  Original Meaning of the Fifth Amendment

The Due Process Clause derives from the "law of the land" clause of the Magna Carta. *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. 272, 276 (1855). That clause said:

> No free man shall be seized or imprisoned, or stripped of his rights or possessions, or outlawed or exiled, or deprived of his standing in any way, nor will we proceed with force against him, or send others to do so, except by the lawful judgment of his equals or by the law of the land.

Magna Carta, Ch. 39 (1215).[3] "Lord Coke, in his commentary on [the words "law of the land"] says they mean due process of law." *Id.* Many state constitutions that

---

[3] A slightly different "law of the land" clause was included when the Magna Carta was reissued in 1225. Chapter 29 of the reissued Magna Carta said:

> No free man shall in future be arrested or imprisoned or disseised of his freehold, liberties or free customs, or outlawed or exiled or victimised in any other way, neither will we attack him or send anyone to attack him, except by the lawful judgment of his peers or by the law of the land. To no one will we sell, to no one will we refuse or delay right or justice.

Magna Carta, Ch. 29 (1225).

predated the United States Constitution, as well as the Northwest Ordinance of 1789 that preceded the Bill of Rights, included similar clauses that prohibited taking life, liberty, or property "but by the judgment of his peers or the law of the land." *Id.* at 276; *see* Hon. Maurice Portley, *The Due Process Clause of the Fifth Amendment*, Ariz. Att'y, December 1991, at 13 (discussing law of the land clauses in constitutions of Massachusetts, New Hampshire, Maryland, North Carolina, South Carolina, Virginia, and Delaware).

So, when the Fifth Amendment was ratified in 1791, it was understood that "law of the land" clauses guaranteed a citizen two separate things: (1) "lawful judgment of his peers," that is, a jury trial, and (2) compliance with "the law of the land," that is, due process. *See Fuld v. Palestine Liberation Org.,* 606 U.S. 1, 34, 145 S. Ct. 2090, 2115, 222 L. Ed. 2d 296 (2025) (Thomas, J. concurring) (*Murray's Lessee* acknowledged that the original meaning of the Fifth Amendment was "[t]he words, 'due process of law,' were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in *Magna Charta,*"). But, Article III, Section 2, of the Constitution already guaranteed a right to a jury trial in criminal cases. *Murray's Lessee* at 276. And, the proposed Seventh Amendment separately provided for civil jury trials.

As the Supreme Court explained in *Murray's Lessee,* to have included a full "law of the land" clause in the Fifth Amendment, "and declared that no person shall be deprived of his life, liberty, or property but by the judgment of his peers or the law of the land, would have been in part superfluous and inappropriate." *Id*. In other

words, because the constitution separately provided for jury trials, there was no need to include a right to jury trial in the Fifth Amendment. But, to use the phrase "law of the land" in the Fifth Amendment without reference to "the judgment of his peers" "might possibly have given rise to doubts." *Id.* Using the phrase "due process of law" avoided that confusion. *Id.* And, as understood at the time, "'due process of law' generally implie[d] and include[d] *judex* [a judge], regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings." *Jarkesy,* 603 U.S. at 150 (quoting *Murray's Lessee,* 59 U.S. at 280) (brackets in original). It did not include a right to trial *by jury. Murray's Lessee,* 59 U.S. at 276.

    1. <u>Espinosa</u>

Mr. Schwarzbaum tries to apply a broad interpretation of Rule 60(b)(4) by citing *Burke* for the principle, "[a] judgment is 'void' under Rule 60(b)(4) if the parties "acted in a manner inconsistent with due process of law." ECF No. 241 at 11. This argument ignores the clear language of the Supreme Court's 2010 post-*Burke* decision in *Espinosa.* That decision took a narrower view of Rule 60(b)(4); it said a judgment is void for purposes of Rule 60(b)(4) if it resulted from "a violation of due process *that deprives a party of notice or the opportunity to be heard." Espinosa,* 559 U.S. at 270 (emphasis added).

Mr. Schwarzbaum does not, as he cannot, contend that he was denied notice or an opportunity to be heard in either the IRS proceedings or at trial before this Court. In particular, after the remand from the Eleventh Circuit in *Schwarzbaum I*, he had notice of the IRS recalculation process and was given the chance to be heard and to appeal the assessments before they became final.

Mr. Schwarzbaum has cited no case where the movant had notice and an opportunity to be heard but a judgment nevertheless was found to be void under Rule 60(b)(4) because it offended due process. The two cases he cites do not support his argument. In *Burke* the court approved the settlement of a lawsuit that extinguished a minor's interests but did not hold a fairness hearing that was required by state law — in other words, the minor had been denied an opportunity to be heard.[4] In *Bainbridge v. Governor of Fla.,* 75 F.4th 1326 (11th Cir. 2023) — cited on page 11 of Mr. Schwarzbaum's Motion — the movant did not assert a violation of due process. *Id*. at 1335.

*Espinosa* did not tie Rule 60(b)(4) relief to the broader concept of due process that Mr. Schwarzbaum asserts. Rather, it cabined it to identifiable acts that violate the procedural component of the Fifth Amendment Due Process Clause – notice and opportunity to be heard. Mr. Schwarzbaum does not argue that he was denied notice or an opportunity to be heard. For that independent reason, the April 25 Final Judgment is not void.

2. *Jarkesy* Concurrence

Mr. Schwarzbaum cites Justice Gorsuch's concurrence in *Jarkesy* as support for his Rule 60(b)(4) argument, but that case does not support his position.

---

[4] *Burke* relied on *In re Edwards,* 962 F.2d 641 (7th Cir. 1992). In that case, Judge Posner noted, "The standard formulas, such as, a judgment is void 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law,' are not helpful." *Id*. at 644 (internal citations omitted). In contrast, *Espinosa's* requirement that the movant show he was denied notice or an opportunity to be heard is a bounded, enforceable limitation that is consistent with the principle that Rule 60(b)(4) relief should rarely be granted.

Mr. Schwarzbaum says Justice Gorsuch's *Jarkesy* concurrence stands for the proposition, "[t]he Seventh Amendment right to a jury trial is an indispensable element of the right to due process." *Id*. at 12. That is not what Justice Gorsuch said. He said the constitution includes three separate components working together to generate a fair system of adjudication: an independent judiciary (guaranteed by Article III), trials by jury (guaranteed by the Seventh Amendment), and fair procedures during the adjudicative process (guaranteed by the Due Process Clause of the Fifth Amendment). *Jarkesy,* 603 U.S. at 148-150. The *Jarkesy* concurrence accurately reflects the history and original meaning of the Fifth Amendment Due Process Clause discussed above. The Fifth Amendment Due Process Clause and the Seventh Amendment are independent constitutional guarantees. Only the former can be the basis for Rule 60(b)(4) relief.

    3.  <u>Other Cases Cited</u>

Mr. Schwarzbaum cites *Bowman v. Middleton,* an 18th Century state common pleas court decision from South Carolina, which says that, at common law, a person could not be deprived of their real property without a jury trial:

> It was against common right, as well as against Magna Charta, to take away the freehold of one man, and vest it in another; and that too, to the prejudice of third persons, without any compensation, or even a trial by a jury of the country, to decide the right in question.

1 S.C.L. 252, 250 (1792), 1792 WL 207. This statement is simultaneously correct and irrelevant. It is undisputed that the common law, through "law of the land" clauses, guaranteed both due process and a right to a jury trial. But, as explained above, the Fifth Amendment Due Process Clause did not incorporate the jury trial right.

Mr. Schwarzbaum also cites *Wynehamer v. People,* 13 N.Y. 378 (1856). In that case, two defendants were convicted after jury trials for illegally selling intoxicating liquor in violation of a temperance statute that also authorized seizure and forfeiture of liquor possessed in violation of the statute. The statute authorized non-jury trials or trials by a jury of six men. *Id*. at 427. On appeal, the defendants challenged the constitutionality of the statute. The judges of the New York Court of Appeals issued *seriatim* opinions that gave differing reasons why the temperance statute was (or was not) constitutional. Six held that the convictions must be overturned because the New York constitution required 12 person juries.

Mr. Schwarzbaum cites one of those opinions (by A.S. Johnson, J.) which discussed in dictum the relationship between the right to trial by jury and the right to due process. Each of these rights was guaranteed under the 1846 New York constitution. Article I, Section 2 said in relevant part, "The trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever." Article I, Section 6 said in relevant part, "No person shall . . . be deprived of life, liberty, or property, without due process of law." NY Constitution of 1846, https://history.nycourts.gov/wp-content/uploads/2019/01/Publications_1846-NY-Constitution-compressed.pdf   (last visited March 5, 2026).

Contrary to what Mr. Schwarzbaum argues here, Judge A.S. Johnson suggested — without formally deciding — that the right to a jury was not incorporated into the New York constitution's due process clause; just like the federal constitution, the right to a jury trial arose from a separate, more specific, constitutional provision:

24

> *I doubt much whether the clause of the [New York] bill of rights, that no person shall be deprived of life, liberty or property without due process of law, necessarily imports a jury trial as part of all due process. . . . The right to jury trial is secured by other sections of the bill of rights. If this portion gives it in all cases, then the others can hardly stand with it.* For, on looking at them, it is apparent that jury trials were intended to be continued where they had existed, and that cases were contemplated in which jury trials did not and would not exist. I incline to the construction which Chancellor Kent gives in his Commentaries, that "the better and larger definition of due process of law is, that it means law in its regular administration through courts of justice." (2 Kent, 13.) But it is not necessary, in my opinion, to pronounce upon this question, because the first part of art. 1, § 2 of the constitution, viz: "The trial by jury in all cases in which it has heretofore been used shall remain inviolate forever," is broad enough and efficacious enough to secure it.

*Wynehamer v. People,* 13 N.Y. 378, 425–26 (1856) (emphasis added).

Mr. Schwarzbaum's motion also cites *Mathews v. Eldridge,* 424 U.S. 319 (1976). In that case, Mr. Eldridge was receiving Social Security disability benefits. After conducting a periodic review of whether Mr. Eldridge was still disabled, and after giving Mr. Eldridge a chance to submit evidence and arguments, the Social Security Administration concluded that the disability benefits should be terminated. They notified Mr. Eldridge that the benefits were being terminated within 30 days, but that he could seek reconsideration, including an evidentiary hearing before an Administrative Law Judge.

The issue presented to the Supreme Court was whether the Fifth Amendment's Due Process Clause prevented the Social Security Administration from terminating Mr. Eldridge's benefits before the evidentiary hearing. *Id*. at 323-33 ("The issue in this case is whether the Due Process Clause of the Fifth Amendment requires that prior to the termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing."). The answer was, "No." *Id*.

at 349. The Supreme Court held that the Due Process Clause was satisfied by a post-deprivation hearing before an Administrative Law Judge, with the possibility of further administrative appeals and ultimate judicial review.

Mr. Schwarzbaum cites the Supreme Court's statement in *Mathews*, "This Court consistently has held that [under the Fifth Amendment's Due Process Clause] some form of hearing is required before an individual is finally deprived of a property interest." ECF No. 241 at 12. The motion does not further develop this argument, but at oral argument Mr. Schwarzbaum's counsel asserted that *Mathews* requires a pre-taking hearing before an impartial decisionmaker. That is not what *Mathews* held.

*Mathews* said due process was a flexible concept such that the amount of constitutionally required procedural protections varied based on the situation presented. *Mathews,* 424 U.S. at 335. It then said a court confronted with a due process challenge to a property deprivation should consider three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 334-35.

Mr. Schwarzbaum's motion does not develop the *Mathews* argument beyond a cursory citation and a parenthetical. It does not analyze the three factors that the Supreme Court identified as relevant. Procedurally, the fact that the argument is not

developed is an independent basis to reject it. "It is axiomatic that arguments not supported and properly developed are deemed waived." *W. Sur. Co. v. Steuerwald*, No. 16-cv-61815, 2017 WL 5248499, at *3 (S.D. Fla. Jan. 17, 2017), *aff'd*, 760 F. App'x 810 (11th Cir. 2019) "When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased." *Id.* (citing *Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-cv-21258, 2012 WL 4795766, at *2 (S.D. Fla. Oct. 9, 2012)). "Thus, '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Id.* (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)).

On the merits, because the motion does not address the *Mathews* factors, it fails to meet Mr. Schwarzbaum's burden of justifying Rule 60 relief. It ignores that Mr. Schwarzbaum received a *de novo* trial before an Article III judge and further appellate review after that trial. He got what *Mathews* said was enough in the Social Security disability context. Mr. Schwarzbaum has not shown why the same amount of process was not enough in the FBAR context.

Mr. Schwarzbaum also misleadingly cites the pre-*Mathews* decision in *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) for the principle, "[T]he Court has traditionally insisted that . . . opportunity for [a] hearing must be provided before the deprivation at issue takes effect." *Id.* at 82 (brackets and ellipses in original). The full statement by the Supreme Court was that it "has traditionally insisted that, *whatever its form*, opportunity for that hearing must be provided before the deprivation at issue takes

effect." *Id.* (emphasis added). Immediately before this statement, the Supreme Court had acknowledged it "has held that due process tolerates variances in the form of a hearing 'appropriate to the nature of the case' and 'depending upon the importance of the interests involved, and the nature of the subsequent proceedings [if any].'" *Id.* (internal citations omitted and brackets in original).

Here again, Mr. Schwarzbaum does not develop his argument beyond a citation and a parenthetical. In particular, he does not explain why the IRS FBAR procedures are not "appropriate to the nature of the case," does not discuss "the importance of the interests involved," nor why "the nature of the subsequent proceedings" before the Article III courts were insufficient.

For all these reasons, I reject Mr. Schwarzbaum's argument that being deprived of a jury trial before the IRS finalized its FBAR assessments voids the April 2025 Final Judgment.

## C.   *Rule 60(b)(6)*

Mr. Schwarzbaum's case does not present an extraordinary circumstance where vacating the April 2025 Final Judgment is appropriate to accomplish justice. *Liljeberg, supra.*

### 1.   The Interests of Justice Do Not Warrant Relief

At bottom, Rule 60(b)(6) is an equitable remedy that should be granted only when vacating a judgment is "appropriate to accomplish justice." *Klapprott,* 335 U.S. at 614–15; *Cano v. Baker,* 435 F.3d 1337, 1339 (11th Cir. 2006); *see also Martin v. Lens.com, Inc.,* No. 0:24-CV-60489, 2025 WL 1191212, at *4 (S.D. Fla. Jan. 23, 2025). "He who comes into equity must come with clean hands." *Keystone Driller Co. v. Gen.*

*Excavator Co.*, 290 U.S. 240, 241 (1933). A party has unclean hands when (1) he has committed an "unconscionable act" that is (2) directly related to his claim for relief, and (3) the opposing party has been injured by the wrongdoing. *Id.*; *Bailey v. TitleMax of Ga., Inc.,* 776 F.3d 797, 801 (11th Cir. 2015); *see also Ramirez v. Collier,* 595 U.S. 411, 434 (2022) (When a party seeking equitable relief "has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him.") (cleaned up); *Keystone Driller,* 290 U.S. at 245 (unclean hands doctrine applies to "such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.").

"[C]ourts require the connection between the unclean-hands conduct and the matter in litigation to be very close." *Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 11233137, at *3 (S.D. Fla. June 26, 2015).

> This maxim ["he who comes in equity must come with clean hands"] necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.' *Keystone Driller Co. v. General Excavator Co., supra,* 290 U.S. 245, 246, 54 S.Ct. 147, 148, 78 L.Ed. 293. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.
>
> Moreover, where a suit in equity concerns the public interest as well as the private interests of the litigants this doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public. The determination of when the maxim should be

applied to bar this type of suit thus becomes of vital significance. *See Morton Salt Co. v. G. S. Suppiger Co.,* 314 U.S. 488, 492-494, 788, 62 S.Ct. 402, 405, 406, 86 L.Ed. 363.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 815 (1945).

This Court's decision in *SEC v. Lauer,* 445 F. Supp. 2d 1362, 1366–67 (S.D. Fla. 2006), is instructive. In that case, the defendant moved in equity for relief from a pretrial asset freeze order. *Id.* at 1363. This Court denied relief based on unclean hands. *Id.* at 1366-67. It noted that the defendant was in contempt of court, had "'knowingly, wilfully, intentionally and repeatedly violated' multiple Court Orders [and had] failed to disclose numerous assets and diverted assets from the freeze in violation of the very same order of which he now seeks an equitable modification for his own benefit." *Id.* at 1366. It said:

> A cardinal rule of equity is 'he who comes into equity must come with clean hands [i]t is a self-imposed ordinance that closes the door ... to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'  Under this cardinal rule of equity, Lauer's unclean hands have closed the door on any attempt by Lauer to seek relief from the Court's equitable asset freeze order, an order to which he agreed.

*Id.* at 1366-67 (bracket in original) (internal citation omitted).

Mr. Schwarzbaum has contemptuously refused to comply with the Second Repatriation Order for three years. That Order was entered to further the execution of the April 2025 Final Judgment. By refusing to comply, Mr. Schwarzbaum has directly obstructed this Court's enforcement of its own Order.[5]

---

[5] Because the trial court has not adopted my Report and Recommendation on criminal contempt, I draw no adverse inference from the fact that Mr. Schwarzbaum did not appear at the contempt hearing. And, because I do not reach the question whether the Fugitive Disentitlement Doctrine applies, I also do not draw an adverse inference

This conduct satisfies all the elements of unclean hands. Contemptuous non-compliance with court orders is an unconscionable act. The Second Repatriation Order is directly related to the judgment that Mr. Schwarzbaum is trying to set aside. The Government has been harmed by Mr. Schwarzbaum's lengthy disobedience. The Government's collection of statutory penalties is a matter of public interest. For these reasons, the unclean hands doctrine precludes Mr. Schwarzbaum from receiving Rule 60(b)(6) equitable relief.

Another equitable factor strongly cut against granting relief. As discussed next, nothing prevented Mr. Schwarzbaum from making his jury trial argument at multiple stages of these proceedings. Having slept on his rights, he cannot now complain or seek equitable relief.

### 2. Mr. Schwarzbaum's Situation Is His Own Fault

As discussed below, no controlling case law prevented Mr. Schwarzbaum from making a Seventh Amendment argument from the outset of this case. Yet, it is undisputed that he did not make this argument before the judgment was entered. The Government says his Rule 60 motion should be denied because he did not raise this issue before.[6]

_____

from the fact that Mr. Schwarzbaum has remained outside the United States.

[6] At oral argument, the Government said that the failure to timely raise the Seventh Amendment issues forfeits that argument and creates a corresponding procedural bar to setting aside the judgment on Seventh Amendment grounds. On direct appeal, a party forfeits an argument that was not timely raised below, although that forfeiture can be excused in some situations. *Campbell,* 26 F.4th at 872. The Government does not cite a case where this kind of procedural bar was applied in the Rule 60 context. I do not need to resolve this issue, however. Even if I assume without

This argument overlaps with whether there has been an intervening change in the law. If the law changed after judgment was entered, the litigant could not raise the issue; the only question is whether they raised it soon enough after the law changed. If the law has not changed, the issue could have been raised before, so the movant is responsible for their own predicament, and there is no basis for Rule 60(b)(6) relief on the merits.

Mr. Schwarzbaum responds that the Government's argument goes too far: "By that logic, Rule 60 would be a dead letter because theoretically a party always could have raised an argument earlier." ECF No. 248 at 13. He is incorrect. There are limited categories of cases that a party cannot raise earlier. For example, an argument that is precluded by prior binding precedent (*see Buck* and *Ritter, supra*). A party also could not make an argument that did not exist; for example, if Congress created a new right or defense after a judgment was entered. Narrowly interpreting Rule 60 in this way is consistent with the principle that post-judgment relief is for extraordinary situations that are beyond a party's control.

A striking contrast is Mr. Schwarzbaum's handling of the Eighth Amendment excessive fines argument. When this case was filed, no appellate court had held that the Eighth Amendment applied to FBAR penalties, but Mr. Schwarzbaum made that argument in his Answer and repeatedly throughout the litigation. While this case

---

deciding that there is no procedural bar, Mr. Schwarzbaum's failure to raise this issue sooner is an equitable factor that can be considered in the Rule 60(b)(6) analysis. And, for the multiple reasons discussed in this Report and Recommendation, Mr. Schwarzbaum is not entitled to equitable relief.

was proceeding, the First Circuit held that the Eighth Amendment did *not* apply to FBARs, but Mr. Schwarzbaum persisted in his argument. Ultimately, he won in *Schwarzbaum II.*

He could have taken the same approach to his Seventh Amendment argument. Perhaps he did not think of it soon enough. But, his failure to raise an available argument cuts against setting aside the judgment.

### 3. There Was No Intervening Change in Controlling Law

Mr. Schwarzbaum says the Supreme Court's decision in *Jarkesy* and the Southern District of Texas decision in *Sagoo* are intervening changes in the law that warrant Rule 60(b)(6) relief. They are not. They do not represent an authoritative change in controlling authority.

First, to state the obvious, *Sagoo,* a single decision from a sister District Court outside the Eleventh Circuit, is not controlling on this Court.

Second, *Jarkesy* is not a controlling or authoritative statement of the law as applied to FBARs. *Jarkesy* held that the Seventh Amendment applied to SEC fraud enforcement actions that sought monetary damages for fraud. The *Jarkesy* Court held that the "public rights" exception to the Seventh Amendment did not apply to the SEC proceedings. It noted, "The object of this SEC action is to regulate transactions between private individuals interacting in a pre-existing market." 603 U.S. at 135. The *Jarkesy* Court explicitly recognized that the public rights exception had been applied to revenue collection in *Murray's Lessee,* as well as to immigration, tariffs, relations with Native American tribes, public lands, public benefits, pensions, and

patent rights. *Id*. at 128-30. It acknowledged continuing uncertainty about how the exception would apply in other contexts:

> Our opinions governing the public rights exception have not always spoken in precise terms. This is an "area of frequently arcane distinctions and confusing precedents." The Court "has not 'definitively explained' the distinction between public and private rights," and we do not claim to do so today."

*Id*. at 130-31 (citations omitted). So, *Jarkesy* does not definitively resolve whether (as the Government claims) the public rights exception applies to FBARs.

Third, even if *Jarkesy* were now a definitive statement of the controlling law, it did not change prior precedent. Both sides argue that cases like *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n,* 430 U.S. 442 (1977), and *Tull v. United States,* 481 U.S. 412 (1987) and their progeny can be extrapolated to decide whether the Seventh Amendment applies to FBARs. *Compare* ECF No. 241 at 15, *with* ECF No. 247 at 16-25.[7] None of these cases involved FBARs. It is undisputed that before *Jarkesy* neither the Eleventh Circuit nor the Supreme Court had ever said there was *not* a right to a jury trial in FBAR proceedings. Because the prior controlling law never precluded Mr. Schwarzbaum's jury trial argument, *Jarkesy* does not represent a change in controlling law, even if it said (which it did not) that there is a right to a jury trial in FBAR proceedings.

---

[7] Even assuming these cases are precedent for deciding in future cases whether the Seventh Amendment applied to FBARs, that forward-looking question is not what matters in this post-judgment proceeding. What matters is whether Mr. Schwarzbaum was prohibited in the past from making this argument. He was not. So even if current law says he is entitled to a jury trial, the controlling law has not changed. It has evolved.

Fourth, Mr. Schwarzbaum has not shown that the so-called *Ritter* factors justify relief. *Ritter* sets the paradigm for evaluating whether there has been a change in controlling law. In that case, the Eleventh Circuit held that Alabama's death penalty statute was unconstitutional. *Ritter v. Smith*, 726 F.2d 1505, 1510 (11th Cir. 1984). The Supreme Court denied certiorari. *Ritter*, 811 F.2d at 1400. After the mandate issued, the trial court entered a judgment that incorporated the mandate and did not impose a death sentence. *Id.* Shortly thereafter, in a different case, the Alabama Supreme Court held the death penalty statute constitutional. *Ex parte Baldwin*, 456 So. 2d 129, 140 (Ala. 1974), aff'd, 472 U.S. 372 (1985). On certiorari, the United States Supreme Court also held that the Alabama death penalty was constitutional and overruled the Eleventh Circuit's holding in *Ritter*. *Baldwin*, 472 U.S. at 374, 390.

The State of Alabama filed a Rule 60(b)(6) motion to set aside the judgment against Mr. Ritter; the district court granted the motion. On appeal, the Eleventh Circuit affirmed. The change in law could not have been more stark — before, Mr. Ritter could not be executed; after, he could.

Mr. Schwarzbaum also cites *Buck v. Davis,* 580 U.S. 100 (2017) as an example of Rule 60(b)(6) relief being granted based on an intervening change in law. In that case, the criminal defendant's lawyer called an expert witness who opined that Mr. Buck was "statistically more likely to act violently because he is black." *Id.* at 104. In his state collateral attack, Mr. Buck's lawyer did not argue that this testimony was ineffective assistance of trial counsel. Mr. Buck later filed a federal habeas petition

and tried to raise the ineffective assistance claim. Applying the then-governing law, the federal District Court said the ineffective assistance claim was procedurally defaulted because it had not been raised in the state habeas litigation. *Id.*

Mr. Buck filed a Rule 60(b)(6) motion to set aside his judgment of conviction. By that point, the law had changed and his claim would not have been procedurally defaulted.[8] As in *Ritter,* the change of controlling law was obvious. Before, Mr. Buck's ineffective assistance claim was procedurally barred; after, it was not.

Mr. Schwarzbaum does not present the same stark situation. From the outset of this case through the April 2025 Final Judgment, nothing prevented him from arguing that the Seventh Amendment applied to FBARs. Since the judgment, no court has said definitively that the Seventh Amendment applies to FBARs. The controlling law has not changed.

In *Ritter,* the Eleventh Circuit identified four factors that, "in addition to the fact of the change in the law, persuade us that the circumstances are sufficiently extraordinary to warrant relief under Rule 60(b)(6)." *Ritter*, 811 F.2d at 1401. These factors were (1) whether the judgment has been executed, (2) the length of the delay between the final judgment and the Rule 60(b)(6) motion, (3) the closeness of the relationship between the two cases, and (4) considerations of comity. *Id.* at 1402-03. Mr. Schwarzbaum's motion does not discuss why the *Ritter* factors justify Rule 60(b)(6) relief, so he has forfeited that argument. Even if that argument is not

---

[8] The Supreme Court held that the State of Texas had waived the argument that the intervening cases did not apply retroactively to Mr. Buck. 580 U.S. at 127-28.

forfeited and even if a change in law had occurred, the *Ritter* factors do not support granting Mr. Schwarzbaum's motion.

The first *Ritter* factor does not cut in Mr. Schwarzbaum's favor even though the judgment has not been executed. The only reason the judgment has not been executed is because Mr. Schwarzbaum has not complied with the Court's repatriation order. As discussed below, Mr. Schwarzbaum should not benefit from this behavior.

The second *Ritter* factor is neutral. The Rule 60(b)(6) motion was filed approximately eight months after the final judgment and more than a year after *Jarkesy* was decided, but only three months after *Sagoo*.

The third *Ritter* factor cuts against Mr. Schwarzbaum. As discussed above, there is little relationship between this case and *Jarkesy,* other than both arise from internal agency adjudications. They involve different parties (unlike *Ritter) and* different statutory schemes (unlike *Buck* and *Ritter*). For example, one case (FBAR enforcement) arguably has a public purpose and allows for *de novo* review by an Article III court. The other case (SEC fraud enforcement) has a private purpose and involves an Article III appellate court applying deferential review to an agency decision.

Finally, the fourth *Ritter* factor does not support Mr. Schwarzbaum. There are no issues of comity that suggest a need to set aside the judgment. Both cases involve the federal government.

4. <u>Mr. Schwarzbaum Has Not Shown Extreme and Unexpected Hardship</u>

Finally, Mr. Schwarzbaum has not met his burden of showing that extreme and unexpected hardship will result if the judgment is not vacated. He received a full

*de novo* trial before an Article III judge, where he was able to present evidence that his conduct was not willful and that the assessment amounts were inaccurate. The Eleventh Circuit held there was sufficient evidence to support the trial court's willfulness finding. Mr. Schwarzbaum does not point to other evidence he would have presented to a jury that would have affected the sufficiency of the evidence, nor does he point to evidence that would have affected the IRS's calculation of his FBAR penalties, which are based on bank balances on a fixed day. To date, the Government has not taken any of Mr. Schwarzbaum's property, so there is nothing to refund if the judgment were set aside.

### D. Seventh Amendment

Because Mr. Schwarzbaum's Rule 60 motion fails for the multiple reasons discussed above, it is unnecessary for me to address whether the Seventh Amendment applies to IRS FBAR proceedings.

## V.    CONCLUSIOIN

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Motion to Set Aside Judgment.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file

objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

      **DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 16th day of March 2026.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE