**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

**Case No.: 9:18-CV-81147-BLOOM-REINHART**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ISAC SCHWARZBAUM,

      Defendant.

**DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION ON**

**<u>MOTION TO SET ASIDE JUDGMENT</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................i

TABLE OF AUTHORITIES.......................................................................................................ii

INTRODUCTION.......................................................................................................................1

DISCUSSION ............................................................................................................................1

    I.    Mr. Schwarzbaum Is Entitled to Relief From the Judgment Under Rule 60(b)(4) .............1

    II.    Mr. Schwarzbaum Also Warrants Relief From the Judgment Under Rule 60(b)(6)...........6

        A.    The unclean hands doctrine does not preclude Rule 60(b)(6) relief and Mr. Schwarzbaum does not have unclean hands regarding the judgement ........................7

        B.    Mr. Schwarzbaum did not sleep on his Seventh Amendment right............................9

        C.    *Jarkesy* is an intervening change in the law................................................10

        D.    Mr. Schwarzbaum faces hardship ..............................................................11

    III.    Mr. Schwarzbaum Has a Seventh Amendment Right to a Jury Trial Before Any FBAR Penalty is Assessed..................................................................................12

CONCLUSION .....................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ...................................................................6

*AT&T, Inc. v. FCC*, 135 F.4th 230 (5th Cir. 2025) ..............................................10, 14

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*,
    430 U. S. 442 (1977) ...................................................................................9, 10

*Axalta Coating System LLC v. Federal Aviation Administration*,
    144 F.4th 467 (3d Cir. 2025) ................................................................................9

*BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025) ...................................................6

*Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU,
    2015 WL 11233137 (S.D. Fla. June 26, 2015) ...................................................8

*Burke v. Smith*, 252 F.3d 1260 (11th Cir. 2001) ...........................................................1

*Cox v. Horn*, 757 F.3d 113 (3d Cir. 2014) ..................................................................11

*Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208 (S.D.N.Y. 1989).......................8

*Den ex dem. Murray v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1855)................*passim*

*Dimick v. Schiedt*, 293 U.S. 474 (1935) ......................................................................12

*Doe v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015)..................................................11

*Elrod v. Burns*, 427 U.S. 347 (1976)...........................................................................11

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ..........................................................................6

*Gastaldi v. Sunvest Resort Communities, LC*, No. 08–62076–CIV,
    2010 WL 457243 (S.D. Fla. Feb. 3, 2010)...........................................................8

*Galbert v. W. Caribbean Airways*, 715 F.3d 1290 (11th Cir. 2013) .............................11

*Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33 (1989)...............................................13

*Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008)............................................................7

*Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001) ......................8

*In re Edwards*, 962 F.2d 641 (7th Cir.1992) ..................................................................1

*In re Murchinson*, 349 U.S. 133 (1955) .........................................................................4

*International Union, Allied Industrial Workers v. Local Union No. 589*,
    693 F.2d 666 (7th Cir.1982).................................................................................8

*Irvin v. Harris*, 944 F.3d 63 (2d Cir. 2019)...................................................................5

*Jenner v. Commissioner,* 163 T.C. 145 (2024) .............................................................11

*Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383 (1944) ...........................................................7

*Keystone Driller Co. v. General Excavator Co.*, 290 U. S. 240 (1933)........................................8

*Klopfer v. North Carolina*, 386 U.S. 213 (1967) ......................................................................2

*Lloyd Sabaudo Societa Anonima per Azioni v. Elting*, 287 U.S. 329 (1932)...............................10

*Lorillard v. Pons*, 434 U.S. 575 (1978)....................................................................................14

*Moore v. United States*, No. C13-2063RAJ,
   2015 WL 1510007 (W.D. Wash. Apr. 01, 2015) .......................................................10

*Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909) .............................................10

*Ortega v. Office of the Comptroller of the Currency*, 155 F.4th 394 (5th Cir. 2025) ....................9

*Ortega-Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ........................................................11

*Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991) ..............................................2, 3

*Parsons v. Bedford*, 3 Pet. 433 (1830) .....................................................................................12

*Passavant v. United States*, 148 U.S. 214 (1893)......................................................................11

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009)..................................................................6, 7

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)................................................................5

*Ritter v. Smith,* 811 F.2d 1398 (11th Cir. 1987)......................................................................6, 7

*Robertson v. Baldwin*, 165 U.S. 275 (1897)...............................................................................3

*United States v. Sagoo*, No. 4:24-CV-01159-O,
   2025 WL 2689912 (N.D. Tex. Sept. 19, 2025) ............................................6, 10, 14

*Securities & Exchange Comm'n v. Jarkesy*, 603 U.S. 109 (2024) .....................................*passim*

*Securities & Exchange Comm'n v. Lauer*, 445 F. Supp. 2d 1362 (S.D. Fla. 2006) .......................8

*Sessions v. Dimaya*, 584 U.S. 148 (2018) .................................................................................3

*Shondel v. McDermott*, 775 F.2d 859 (7th Cir. 1985)..................................................................8

*Silver Moss Properties., LLC v. Commissioner,* No. 10646-21,
   165 T.C. No. 3 (Aug. 21, 2025) ...............................................................................9

*Sprint Corp.* v. *FCC*, 151 F.4th 347 (D.C. Cir. 2025)................................................................14

*Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713 (11th Cir. 2014) .................1

*Stern v. Marshall*, 564 U.S. 462 (2011) .................................................................................6, 13

*Sun Valley Orchards, LLC v. U.S. Department of Labor*, 148 F.4th 121 (3d Cir. 2025)................9

*Tull v. United States*, 481 U.S. 412 (1987)............................................................................12, 13

*United States v. Bussell*, No. CV 15-02034 SJO (VBKx),

　2015 WL 9957826 (C.D. Cal. Dec. 8, 2015)...................................................................10

*United States v. Hughes Ranch, Inc.*, 33 F. Supp. 2d 1157 (D. Neb. 1999)....................................8

*United States v. Madison*, 812 F. Supp. 3d 1233 (M.D. Fla. 2025) ................................................9

*United States v. Schwarzbaum*, 114 F.4th 1319 (11th Cir. 2024) ................................................13

*United States v. Schwarzbaum*, 127 F.4th 259 (11th Cir. 2025) ..................................................10

*United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022) ..................................................13

*United States v. Toth*, No. 15-cv-13367-ADB,

　2017 WL 1703936 (D. Mass. May 02, 2017) ............................................................10

*United States v. Zwerner*, No. 13-22082,

　2014 WL 11878430 (S.D. Fla. Apr. 29, 2014)...........................................................10

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ...............................................1, 5

*Wulferic, LLC v. U.S. Food and Drug Administration*, 793 F. Supp. 3d 830 (N.D. Tex. 2025) ....9

**U.S. Constitution**

Amend. V ....................................................................................................................................4

Amend. VII................................................................................................................................12

**Statutes**

15 U.S.C. § 77h–1(g)(2) ............................................................................................................13

15 U.S.C. § 80b–3(i)(2) .............................................................................................................13

26 U.S.C. § 6402(d)(1)...............................................................................................................14

31 U.S.C. § 3701(a)(1)...............................................................................................................14

31 U.S.C. § 3711(e)(1)...............................................................................................................14

31 U.S.C. § 3716(a)....................................................................................................................14

31 U.S.C. § 3716(c)....................................................................................................................14

31 U.S.C. § 3718(a)....................................................................................................................14

31 U.S.C. § 3720B......................................................................................................................14

31 U.S.C. § 3720D .....................................................................................................................14

31 U.S.C. § 5321(a)(5)...............................................................................................................13

**Other Authorities**

3 J. STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1783 (1833)..........4

Brief for the Federal Parties, *Federal Communications Comm'n v. AT&T Inc.*,

   Nos. 25-406 and 25-567 (U.S. Mar. 20, 2026).........................................................14

DOBBS, REMEDIES § 2.4 (1973) .....................................................................................8

Federal Rule of Civil Procedure 60(b)(4)..............................................................1, 5, 6

Federal Rule of Civil Procedure 60(b)(6)..............................................................*passim*

SIR EDWARD COKE, 2 INSTITUTES OF THE LAWS OF ENGLAND 50 (5th ed. 1797)...........................3

## INTRODUCTION

Defendant Isac Schwarzbaum, by and through counsel, objects to the Report and Recommendation on Motion to Set Aside Judgment (Doc. 263), and requests that the Court grant his Motion to Set Aside the Judgment.

Mr. Schwarzbaum's motion rests on the violation of his Seventh Amendment right to a jury trial when the Internal Revenue Service ("IRS") assessed FBAR penalties against him that established his penalty liability and allowed the government to immediately collect. The judgment on which these constitutionally infirm assessments is based should be set aside as void under Rule 60(b)(4) and unjust under Rule 60(b)(6) of the Federal Rules of Civil Procedure. The government contends in response that Mr. Schwarzbaum's Rule 60 motion should be barred by the fugitive disentitlement doctrine and that his Seventh Amendment argument should be deemed untimely and waived. On the merits, the government argues that the violation of Mr. Schwarzbaum's Seventh Amendment right to a jury trial does not support relief under Rule 60(b)(4) or (b)(6) and further that the Seventh Amendment does not apply to the assessment of FBAR penalties.

The Magistrate Judge recommends denying Mr. Schwarzbaum's Motion to Set Aside Judgment, assuming he has a Seventh Amendment right to a jury trial prior to the assessment of the FBAR penalties against him, because the violation of his right does not justify Rule 60(b)(4) or (b)(6) relief. As discussed below, Magistrate Judge is incorrect that the violation of Mr. Schwarzbaum's Seventh Amendment right does not qualify for relief from the judgment, and further that the IRS's assessment of the FBAR penalties constituted such a violation.

## DISCUSSION

### I. Mr. Schwarzbaum Is Entitled to Relief From the Judgment Under Rule 60(b)(4)

It is well settled that a "judgment is void" for purposes of Rule 60(b)(4) if it violates due process. *See Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 736 (11th Cir. 2014) ("A judgment can be set aside for voidness where the court lacked jurisdiction or where the movant was denied due process."); *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) ("Generally, a judgment is void under Rule 60(b)(4) 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'") (quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir.1992)); *see also United*

1

*Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) ("[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.").

The precise contours of due process have been debated for centuries, but it is clear that due process requires a right to a jury trial when guaranteed by the Seventh Amendment. In *Den ex dem. Murray v. Hoboken Land & Improvement Co.* ("*Murray's Lessee*"), 59 U.S. 272 (1855), the Supreme Court set forth a "twofold" inquiry in matters of due process:

> [1] We must examine the constitution itself, to see whether this process be in conflict with any of its provisions. If not found to be so, [2] we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country.

*Id.* at 277. *Murray's Lessee* involved a distress warrant issued by the Department of the Treasury against a collector of customs following an audit that the collector failed to remit over $1 million. *Id.* at 275. The issue was whether Treasury improperly exercised judicial power reserved to Article III courts, which the Court stated "can best be considered under another inquiry . . . that the effect of the proceedings authorized by the act in question is to deprive the party, against whom the warrant issues, of his liberty and property, 'without due process of law'" in conflict with the Fifth Amendment. *Id.* The Court concluded that the distress warrant did not offend due process as "[t]ested by the common and statute law of England prior to the emigration of our ancestors, and by the laws of many of the States at the time of the adoption of this amendment." *Id.* at 280.

By comparison, the due process issue in this case is straightforward because the process of assessment of the FBAR penalties against Mr. Schwarzbaum conflicts with "the constitution itself," *id.* at 277—the first prong of the Court's twofold inquiry. As the Court recognized in *Murray's Lessee*, the Founders understood "due process of law" to have the same meaning as "by the Law of the Land" in the Magna Charta. *Id.* at 276. Sir Edward Coke wrote in his legal commentaries that the phrases were equivalent in English law, and his views were highly influential on the Colonists and the Founders. *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 28 (1991) (Scalia, J., concurring); *Murray's Lessee*, 59 U.S. at 276; *see Klopfer v. North Carolina*, 386 U.S. 213, 225 (1967) (quoting Thomas Jefferson that "*Coke Lyttleton* [the first

2

instalment of Coke's commentaries] was the universal elementary book of law students"). According to Coke, "due process of law" means "the customary procedures to which freemen were entitled by 'the old law of England.'" *Pacific Mutual*, 499 U.S. at 28 (Scalia, J., concurring) (quoting SIR EDWARD COKE, 2 INSTITUTES OF THE LAWS OF ENGLAND 50 (5th ed. 1797). *available at* https://upload.wikimedia.org/wikipedia/commons/3/31/Edward_Coke%2C_ The_Second_Part_of_the_Institutes_of_the_Laws_of_England_%281797%29.pdf)).

As adopted in the Fifth Amendment and later in the Fourteenth Amendment, the Supreme Court has consistently interpreted "due process of law" in view of the protections afforded by the Constitution and traditional common law from which many of the protections in the Bill of Rights originate. *See, e.g., Murray's Lessee*, 59 U.S. at 276; *Pacific Mutual*, 499 U.S. at 28–35 (Scalia, J., concurring); *see also Robertson v. Baldwin*, 165 U.S. 275, 281 (1897) ("The law is perfectly well settled that the first ten amendments to the Constitution, commonly known as the Bill of Rights, were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors."). Thus, the IRS's assessment of FBAR penalties, denying Mr. Schwarzbaum his Seventh Amendment right to a jury trial, violates due process.

This conclusion that the IRS's assessment of FBAR penalties against Mr. Schwarzbaum violates due process holds even under a more limited view of due process espoused by Justice Thomas alone among the Justices. Justice Thomas contends that due process "requires only that our Government proceed according to written constitutional and statutory provisions before depriving someone of life, liberty, or property." *Sessions v. Dimaya*, 584 U.S. 148, 207 (2018) (Thomas, J., dissenting) (alterations and citation omitted). *But see id.* at 176 (Gorsuch, J., concurring) (rejecting Justice Thomas's contention that void for vagueness doctrine lacks foundation on the view that it "serves as a faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under our Constitution"). In other words, according to Justice Thomas, due process requires simply that the government follow the laws on the books. That includes following the Seventh Amendment.

Further confirming the conclusion that due process encompasses the right to a jury trial guaranteed by the Seventh Amendment is Justice Gorsuch's concurrence in *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024). Justice Gorsuch explained that Article III, the Fifth Amendment, and the Seventh Amendment "together . . . vindicate the Constitution's

3

promise of a 'fair trial in a fair tribunal.'" *Id.* at 141 (quoting *In re Murchinson*, 349 U.S. 133, 136 (1955)). Just as Article III implicates due process, which the Supreme Court recognized in *Murray's Lessee*, so it is that the Seventh Amendment right to a jury trial implicates due process. Thus, the fraud penalty imposed administratively in *Jarkesy* violated both the defendants' right to a jury trial and right to due process: "Because the penalty the SEC seeks would 'depriv[e]' Mr. Jarkesy of 'property,' due process demands nothing less than 'the process and proceedings of the common law.' That means the regular course of trial proceedings with their usual protections . . . ." *Id.* at 151 (quoting U.S. CONST. amend. V and 3 J. STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1783, p. 661 (1833)). The same is true in this case. The IRS's assessment of FBAR penalties against Mr. Schwarzbaum seeks to deprive him of property without a right to a jury trial guaranteed by the Seventh Amendment. Accordingly, the assessments violated Mr. Schwarzbaum's right to due process and the judgment in this government action to collect the assessments is void under Rule 60(b)(4).

The Magistrate Judge disagrees that the judgment is void even if the IRS's assessment of FBAR penalties violated Mr. Schwarzbaum's Seventh Amendment right to a jury trial. He is mistaken.

The Magistrate Judge misreads *Murray's Lessee* as determining that "due process of law" in the Fifth Amendment upholds foundational elements of judicial proceedings including a judge, pleadings, and a trial based on settled rules, but "not . . . a right to a trial *by jury*." Doc. 263 at 21. That reading contradicts the Supreme Court's twofold inquiry regarding due process beginning with "examin[ing] the constitution itself, to see whether [a] process be in conflict with any of its provisions." *Murray's Lessee*, 59 U.S. at 277. The Court makes no exception for the Seventh Amendment nor is there any logic to support such an exception. Due process requires compliance with the constitutionally protected right to a jury trial no different than the protections in Article III at issue in *Murray's Lessee*.

The Magistrate Judge incorrectly suggests that this understanding of due process would render the Seventh Amendment superfluous. The Magistrate Judge points to the discussion in *Murray's Lessee* regarding the words "due process of law" in the Fifth Amendment instead of "but by the judgment of his peers, or the law of the land" in the Magna Charta and several state constitutions adopted before the Founding. *Id.* at 276; *see* Doc. 263 at 20-21. The Supreme Court stated that the words "but by the judgment of his peers, or the law of the land" "would have been

4

in part superfluous and inappropriate" in light of the Sixth and Seventh Amendments, protecting the right to a jury trial in criminal and civil cases. *Murray's Lessee*, 59 U.S. at 276. To be sure, the role of the Fifth Amendment was not to enshrine an affirmative right to a jury trial. But *Murray's Lessee* is clear that "due process of law" is informed by "examin[ing] the Constitution itself," including the rights to a jury trial under the Sixth and Seventh Amendments. *Id.* at 277. The Magistrate Judge overlooks the interplay between due process and the other constitutional provisions.

The Magistrate Judge also improperly recommends denying Rule 60(b)(4) relief because "a judgment is void for purposes of Rule 60(b)(4) if it resulted from 'a violation of due process *that deprives a party of notice or the opportunity to be heard*,'" and not from a violation of the Seventh Amendment right to a jury trial. Doc. 263 at 21 (quoting *Espinosa*, 559 U.S. at 270). As an initial matter, *Espinosa* does not "cabin[ ]" Rule 60(b)(4) to a subset of due process violations as the Magistrate Judge contends. *Id.* at 22. *Espinosa* addressed whether an order confirming a plan to discharge student loan debt that was not served on the creditor, but the creditor was aware of, is void absent a finding of undue hardship on the part of the debtor or an adversarial proceeding as required by the bankruptcy law and rules of procedure. 559 U.S. at 263. The Ninth Circuit held that "the Bankruptcy Court at most committed a legal error," which is not sufficient to void a judgment, and the Supreme Court agreed. *Id.* at 267, 270–71. In response to the fact that the creditor was not formally served, the Court stated that the creditor "could have timely objected to this deprivation" and "*actual* notice . . . more than satisfied [its] due process rights." *Id.* at 272. In short, the judgment was not void for want of any due process violation.

Following *Espinosa*, the Eleventh Circuit continues to interpret Rule 60(b)(4) as applying "where the court lacked jurisdiction or where the movant was denied due process." *Stansell*, 771 F.3d at 736. Moreover, in *Irvin v. Harris*, 944 F.3d 63 (2d Cir. 2019), the Second Circuit found a judgment void based on a violation of the due process requirement "that the named plaintiff at all times adequately represent the interests of the absent class members." *Id.* at 71 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). *Irvin* belies the view that Rule 60(b)(4) relief is available only when a due process violation deprives a party of notice or an opportunity to be heard.

Regardless, a limitation of Rule 60(b)(4) relief for due process violations, based on the deprivation of notice or an opportunity to be heard, only begs the question in this case whether

5

the violation of Mr. Schwarzbaum's right to a jury trial deprived him of a constitutionally sufficient opportunity to be heard. It did. The right to notice and an opportunity to be heard "'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Where, as here, the government's claims of penalties require judicial power to impose, "an Article III court must decide [such claims], with a jury if the Seventh Amendment applies." *Jarkesy*, 603 U.S. at 127; *see Stern v. Marshall*, 564 U.S. 462, 484 (2011) ("Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'") (quoting *Murray's Lessee*, 59 U.S. at 284)). Due process in this context requires an opportunity to be heard in an Article III court and by a jury. The IRS deprived Mr. Schwarzbaum of that opportunity by imposing the FBAR penalties administratively without any judicial process.

## II. Mr. Schwarzbaum Also Warrants Relief From the Judgment Under Rule 60(b)(6)

Rule 60(b)(6) provides that a court may relieve a party from a final judgment for "any other reason that justifies relief." "[A] central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard." *Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009). Rule 60(b)(6) is the catchall provision to ensure this purpose is met, available in "extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025).

Mr. Schwarzbaum is entitled to relief under Rule 60(b)(6), because an intervening change in law now establishes that the IRS's assessment of multi-million-dollar FBAR penalties against him violated his Seventh Amendment right to a jury trial and therefore are invalid. The Supreme Court's landmark Seventh Amendment decision in *Jarkesy* and the subsequent invalidation of the FBAR penalty in *United States v. Sagoo*, No. 4:24-CV-01159-O, 2025 WL 2689912 (N.D. Tex. Sept. 19, 2025), justify relief.

While "a change in law will not always provide the truly extraordinary circumstances necessary to reopen a case," *Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir. 1987), the relevant *Ritter* factors that guide the inquiry in this circuit counsel in favor of relief in this case. First, the judgment against Mr. Schwarzbaum has not yet been executed by the government. *See id.* at 1401–02 ("[T]he fact that the previous judgment of this court, though final, was unexecuted is a

6

significant factor in the extraordinary circumstances favoring relief from the judgment in this case."); *Phelps*, 569 F.3d at 1138 (characterizing this factor as embodying the principle "that Rule 60(b)(6) relief is less warranted when the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment"). Second, Mr. Schwarzbaum acted promptly in pursuing Rule 60(b)(6) relief approximately 8 months after entry of the final judgment and 3 months after *Sagoo*. Third, there is a close relationship between this case and both *Jarkesy* and *Sagoo*, the latter "insofar as they concern the constitutionality of the exact same statute." *Ritter*, 811 F.3d at 1403.[1]

The Magistrate Judge recommends denying Mr. Schwarzbaum's request for Rule 60(b)(6) relief for four reasons: (1) the unclean hands doctrine bars relief; (2) Mr. Schwarzbaum slept on his Seventh Amendment right; (3) there was no intervening change in controlling law justifying relief; and (4) Mr. Schwarzbaum has not shown extreme and unexpected hardship. We address each in turn.

### A.   The unclean hands doctrine does not preclude Rule 60(b)(6) relief and Mr. Schwarzbaum does not have unclean hands regarding the judgement

The Magistrate Judge *sua sponte* formulates a new bright-line rule that "the unclean hands doctrine *precludes* Mr. Schwarzbaum from receiving Rule 60(b)(6) equitable relief." Doc. 263 at 31 (emphasis added). The Magistrate Judge reaches this conclusion without the benefit of party presentation on the issue: the government did not raise unclean hands in its opposition to Mr. Schwarzbaum's Rule 60 motion. More to the point, Magistrate Judge's application of the unclean hands doctrine lacks foundation.

The unclean hands doctrine denies equitable relief to a party "tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944). While courts sometimes describe Rule 60(b)(6) relief as equitable, *see, e.g.*, *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008), we could find no authority—let alone controlling precedent in this circuit—invoking the unclean hands doctrine to justify denying a meritorious Rule 60(b)(6) motion. To the contrary, in general, the unclean hands doctrine "is not a rigid formula which 'trammels the free and just exercise of discretion.'" *Yellow*

---

[1] The fourth *Ritter* factor—which addresses the importance of comity between federal and state courts—is not at issue here.

7

*Cab Transit Co.*, 321 U.S. at 387 (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U. S. 240, 245–46 (1933)).

Further, the unclean hands doctrine is inapplicable here where there is no nexus between the relief sought and the misconduct of the moving party. The doctrine requires more than just a party with dirty hands, "but that he dirties them in acquiring the right he now asserts." *Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208, 1219 (S.D.N.Y. 1989) (quoting DOBBS, REMEDIES § 2.4 at 46 (1973)); *see Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) ("The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation."); *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985) (stating that "'ordinarily, the clean hands doctrine only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined'") (quoting *International Union, Allied Industrial Workers v. Local Union No. 589*, 693 F.2d 666, 672 (7th Cir.1982)); *Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 11233137, at *3 (S.D. Fla. June 26, 2015) ("'[T]he connection between the unclean-hands conduct and the matter in litigation [must] be very close.'") (quoting *Gastaldi v. Sunvest Resort Communities, LC*, No. 08–62076–CIV, 2010 WL 457243, at *9 (S.D. Fla. Feb. 3, 2010)). Thus, Mr. Schwarzbaum's non-compliance with the Court's order to repatriate assets in execution of the judgment should not preclude relief from the judgment itself based on the government's deprivation of his Seventh Amendment right to a jury trial.

The Magistrate Judge relies on *SEC v. Lauer*, 445 F. Supp. 2d 1362 (S.D. Fla. 2006), Doc. 263 at 30, but that case underscores the nexus requirement of the unclean hands doctrine that is absent in this case. In *Lauer*, the defendant sought relief from an injunction freezing his assets that he violated. 445 F. Supp. 2d at 1366–67. This Court concluded that the defendant's failure to comply with the order "closed the door on any attempt" to seek relief from the very same order. *Id.* at 1366.

Precluding a defendant from raising a good faith objection to a judgment is an extraordinary sanction—and not one justified by noncompliance with a post-judgment collection order. *See United States v. Hughes Ranch, Inc.*, 33 F. Supp. 2d 1157, 1171 (D. Neb. 1999) (declining to apply unclean hands doctrine where party's "improper behavior" with respect to a potential damages claim "was insufficiently related to the equitable relief" sought). The

8

government argued for the same sanction based on the fugitive disentitlement doctrine, which the Magistrate Judge rightly declines to apply but reaches the same result based on the unclean hands doctrine. The Magistrate Judge's application of the unclean hands doctrine to deny Rule 60(b)(6) relief is improper.

**B.      Mr. Schwarzbaum did not sleep on his Seventh Amendment right**

The Magistrate Judge concludes that Rule 60(b)(6) relief is unavailable because "no controlling case law prevented Mr. Schwarzbaum from making a Seventh Amendment argument from the outset of this case." Doc. 263 at 31. The Magistrate Judge ignores the significance of the Supreme Court's decision in *Jarkesy* overturning the "'settled judicial construction'" that the Seventh Amendment "does not require . . . civil-penalty claims belonging to the Government to be tried before a jury in federal district court." 603 U.S. at 167 (Sotomayor, J., dissenting) (citing *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U. S. 442, 460 (1977)).

Prior to *Jarkesy*, the prevailing view of the Seventh Amendment set forth in *Atlas Roofing* was that "cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible." 430 U.S. at 450. "[F]or the very first time" in *Jarkesy*, the Supreme Court held that "Congress violated the Constitution by authorizing a federal agency to adjudicate a statutory right that inheres in the Government in its sovereign capacity." 603 U.S. at 168 (Sotomayor, J., dissenting). *Jarkesy* provides a basis for challenging civil penalties that did not exist previously. The volume of cases in a wide range of areas raising Seventh Amendment arguments in the wake of *Jarkesy* is a testament to this change in the law. *See, e.g.*, *Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 402 (5th Cir. 2025); *Sun Valley Orchards, LLC v. U.S. Dept. of Lab.*, 148 F.4th 121, 124 (3d Cir. 2025); *Axalta Coating Sys. LLC v. Fed. Aviation Administration*, 144 F.4th 467, 471 (3d Cir. 2025); *United States v. Madison*, 812 F. Supp. 3d 1233, 1238 (M.D. Fla. 2025); *Wulferic, LLC v. U.S. Food and Drug Administration*, 793 F. Supp. 3d 830, 836 (N.D. Tex. 2025); *Silver Moss Props., LLC v. Commissioner,* No. 10646-21, 165 T.C. No. 3, slip op. at 2 (Aug. 21, 2025).

Notably, this Court entered its initial judgment in this case well before the Supreme Court issued *Jarkesy* on June 27, 2024. At the time, this case was on appeal for a second time, and the

decision of the Eleventh Circuit left nothing to be done on remand but the entry of a judgment in the amount the Eleventh Circuit determined. *See United States v. Schwarzbaum*, 127 F.4th 259, 265 (11th Cir. 2025) ("We . . . remand this case to the district court for the entry of a judgment in the amount of $12,255,813, plus the calculation of late fees and interest."). Further, *Jarkesy* left open when the Seventh Amendment, where applicable, requires a party to have a right to a jury trial. Cases following *Jarkesy*, including *AT&T v. FCC*, 135 F.4th 230 (5th Cir. 2025), and *Sagoo*, addressed that issue. Mr. Schwarzbaum had no opportunity to raise a Seventh Amendment argument post-*Jarkesy* before the third and final judgment in the case, much less before the first judgment.

The Magistrate Judge is mistaken that Mr. Schwarzbaum could have raised the Seventh Amendment in his complaint just as he raised the Eighth Amendment though "no appellate court had held that the Eighth Amendment applied to FBAR penalties." Doc. 263 at 32. The difference is the change in the law affected by *Jarkesy*. Many FBAR defendants raised the Eighth Amendment before Mr. Schwarzbaum. *See, e.g.*, *United States v. Toth*, No. 15-cv-13367-ADB, 2017 WL 1703936, at *5 (D. Mass. May 02, 2017); *United States v. Bussell*, No. CV 15-02034 SJO (VBKx), 2015 WL 9957826, at *7–9 (C.D. Cal. Dec. 8, 2015); *Moore v. United States*, No. C13-2063RAJ, 2015 WL 1510007, at *12–13 (W.D. Wash. Apr. 01, 2015); *United States v. Zwerner*, No. 13-22082, 2014 WL 11878430, at *2 (S.D. Fla. Apr. 29, 2014). But until *Sagoo*, no FBAR defendants raised the Seventh Amendment because there was no basis for doing so.

### C. *Jarkesy* is an intervening change in the law

As discussed, *Jarkesy* marked a change in controlling law regarding the applicability of the Seventh Amendment to civil-penalty claims belonging to the government. The Magistrate Judge disagrees on the bases that "*Jarkesy* is not a controlling or authoritative statement of the law as applied to FBARs" and "did not change prior precedent." Doc. 263 at 33-34. This formalistic view is misguided.

In *Jarkesy*, the Supreme Court held "for the very first time . . . that Congress violated the Constitution by authorizing a federal agency to adjudicate a statutory right that inheres in the Government in its sovereign capacity." 603 U.S. at 168 (Sotomayor, J., dissenting). The list of Supreme Court decisions going the other way span over a century. *See, e.g., Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U. S. 442 (1977); *Lloyd Sabaudo Societa Anonima per Azioni v. Elting*, 287 U.S. 329 (1932); *Oceanic Steam Navigation Co. v. Stranahan*,

214 U.S. 320 (1909); *Passavant v. United States*, 148 U.S. 214 (1893); *Murray's Lessee*, 59 U.S. at 272. The result in *Jarkesy* followed from the Supreme Court's narrow construction of the public rights exception compared with *Atlas Roofing* that changes the applicability of the Seventh Amendment to a broad range of civil-penalty claims and, in particular, to FBAR penalties as discussed below. A change in law that is not tailored to a judgment nonetheless justifies relief when it encompasses the judgment.

Similarly, broader legal principles precluded Mr. Schwarzbaum from raising the Seventh Amendment prior to *Jarkesy* even though there was no precedent denying a Seventh Amendment right to a jury trial in the FBAR context. *Jarkesy* changed the law by displacing the well-established legal understanding that the Seventh Amendment is inapplicable to statutory claims brought by the government in a sovereign capacity.

### D.    Mr. Schwarzbaum faces hardship

A party seeking relief under Rule 60(b)(6) must show "that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Doe v. Drummond Co.*, 782 F.3d 576, 612 (11th Cir. 2015) (quoting *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294–95 (11th Cir. 2013)). The Magistrate Judge dismisses the possibility that the government's FBAR penalty claims would have ended any differently for Mr. Schwarzbaum had he been afforded a right to a jury trial before the assessments establishing his liability and the government's ability to collect. The violation of Mr. Schwarzbaum's Seventh Amendment right to a jury trial renders such speculation unnecessary.

A constitutional violation is itself a hardship. *See Ortega-Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, it is sufficient that Mr. Schwarzbaum had a right to a jury trial under the Seventh Amendment prior to the IRS's assessment of the FBAR penalties and was denied that right.

It is of no moment that, as the Magistrate Judge contends, "[t]o date the Government has not taken any of Mr. Schwarzbaum's property." Doc. 263, at 38. Mr. Schwarzbaum has lived with the prospect of administrative collection actions outside of this suit since the IRS assessed the FBAR penalty, at which point the amount assessed, and accrued interest and penalties, became immediately collectible. *Cf. Jenner v. Commissioner*, 163 T.C. 145, 147 (2024) (discussing FBAR collection procedures). No doubt, the government will pursue post-judgment

11

collection against Mr. Schwarzbaum, absent Rule 60 relief. Future deprivation of Mr. Schwarzbaum's property by the government based on a constitutionally infirm judgment would be an extreme and unexpected hardship.

III.     **Mr. Schwarzbaum Has a Seventh Amendment Right to a Jury Trial Before Any FBAR Penalty is Assessed**

The IRS's assessment of the FBAR penalties against Mr. Schwarzbaum violated his Seventh Amendment right to a jury trial. The Seventh Amendment states that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. CONST. amend. VII. The right to a jury trial is "'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 603 U.S. at 121 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). The applicability of the Seventh Amendment in this case is determined by answering two questions, first, whether the government's claims of FBAR penalties constitute a "Suit[ ] at common law," and second, whether the claims fit within the "public rights" exception to Article III jurisdiction. *Id.* at 120. Because the government's claims constitute a suit at common law not covered by the public rights exception, Mr. Schwarzbaum was entitled to a jury trial before his liability was established by the IRS's assessments.

The suit-at-common-law inquiry turns on whether an action would have been heard at law or in equity when the Seventh Amendment was ratified. *Id.* ("[T]he Framers used the term 'common law' in the Amendment 'in contradistinction to equity, and admiralty, and maritime jurisprudence.'") (quoting *Parsons v. Bedford*, 3 Pet. 433, 446 (1830)). This depends on both the nature of the remedy and the degree of similarity to a recognized suit at common law, with the remedy being "the 'more important' consideration" because "money damages are the prototypical common law remedy." *Id.* at 123 (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)).

Civil penalties that are designed to punish and deter (not to compensate) are "a type of remedy at common law that could only be enforced in courts of law." *Tull*, 481 U.S. at 422. As in *Jarkesy*, the "remedy is all but dispositive" in this case. *Id.* The Eleventh Circuit in this case recognized the inherent punitive and deterrent nature of FBAR penalties:

> Whether we look at the text and structure of the statute—which inflicts substantial penalties on those with a criminal *mens rea*,

12

> unconnected to the government's costs and expenses—or at the deterrent reasons Congress has articulated for creating the penalty scheme, by every reasonable measure, the FBAR penalty has a powerful punitive purpose.

*United States v. Schwarzbaum*, 114 F.4th 1319, 1334 (11th Cir. 2024), *vacated and superseded on reh'g,* 127 F.4th 259 (11th Cir. 2025). In general, "'[a]ctions by the Government to recover civil penalties under statutory provisions . . . historically ha[d] been viewed as [a] type of action in debt requiring trial by jury.'" *Jarkesy*, 603 U.S. at 122 (alterations in original) (quoting *Tull*, 481 U.S. at 418–19).

Further, as in *Jarkesy*, willful FBAR penalties "target the same basic conduct" as traditional suits at common law: "misrepresenting or concealing material facts." *Jarkesy*, 603 U.S. at 125. Just as the SEC penalties in *Jarkesy* increase based on actions involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," 15 U.S.C. §§ 77h–1(g)(2), 80b–3(i)(2), the Eleventh Circuit has held that FBAR penalties increase based on willfulness, including deliberate or reckless non-compliance. 31 U.S.C. § 5321(a)(5); *United States v. Schwarzbaum*, 24 F.4th 1355, 1359 (11th Cir. 2022). There is no requirement that FBAR penalties (including non-willful FBAR penalties that may be excused for reasonable cause) be "identical" to common law negligence, recklessness, and fraud; it is sufficient to show that FBAR penalties and common law claims bear a "close relationship." *Jarkesy*, 603 U.S. at 126.

Turning to the public rights exception, setting aside the express protections afforded by Article III and the Seventh Amendment is reserved for matters that "'historically could have been determined exclusively by the [executive and legislative] branches.'" *Id.* at 112 (alteration in original) (quoting *Stern v. Marshall*, 564 U.S. 462, 493 (2011)). History shows that "'[t]raditional legal claims' must be decided by courts, 'whether they originate in a newly fashioned regulatory scheme or possess a long line of common law forebears.'" *Id.* at 133 (quoting *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 52 (1989)). As discussed, FBAR penalties descend from traditional legal claims, which makes short work of the public-rights-exception analysis. Moreover, there is no evidence that FBAR-type penalties were historically handled by the executive or legislative branches.

In *Sagoo*, the district court addressed whether the IRS's assessment of an FBAR penalty violates the Seventh Amendment and correctly held that it does and accordingly dismissed the

13

government's complaint with prejudice. 2025 WL 2689912, *4. Notably, "the Government concede[d] that Ms. Sagoo is entitled to a Seventh Amendment civil jury trial." *Id.* at *3. As the district court in *Sagoo* explained: "That is, the Government does not dispute the Seventh Amendment is implicated when the IRS seeks FBAR penalties. Nor does the Government argue the public-rights exception applies to FBAR actions." *Id.* Thus, there should be no dispute that Mr. Schwarzbaum has a right to a jury trial with respect to the FBAR penalties assessed against him.

The only issue the government disputed in *Sagoo* was the timing of that right and whether a post-assessment right to a jury trial if the government sues to reduce the assessment to judgment is sufficient. The district court resolved the timing issue against the government, explaining that "an 'after-the-fact jury trial' does not protect an individual's Seventh Amendment right because the agency already adjudicated liability without the benefit of a neutral factfinder," "because the [agency] adjudication and civil penalties come with 'real world impacts,'" and because an individual is deprived of the right to a jury trial unless and until the individual refuses to pay the penalty and the government brings suit to reduce the penalty to judgment. *Id.* at *3-4 (quoting *AT&T, Inc. v. FCC*, 135 F.4th 230, 241-42 (5th Cir. 2025)).

Simply put, "[t]he Seventh Amendment right to a jury trial is a procedural protection that must be honored before 'legal rights are determined' and 'legal relief' is awarded." *Sprint Corp. v. FCC*, 151 F.4th 347, 361 (D.C. Cir. 2025) (quoting *Lorillard v. Pons*, 434 U.S. 575, 583 (1978)). Assessments of FBAR penalties are collectable by (i) offset of any payment owed by the government including Social Security, federal benefits or tax refunds, 31 U.S.C. §§ 3701(a)(1), 3716(a) & (c); 26 U.S.C. § 6402(d)(1); (ii) wage garnishment, 31 U.S.C. § 3720D; and (iii) private debt collection, 31 U.S.C. § 3718(a). Assessments of FBAR penalties also (iv) are reportable to credit reporting agencies, 31 U.S.C. § 3711(e)(1); and (v) can disqualify individuals from receiving a government loan or federal assistance, 31 U.S.C. § 3720B. They are enforceable administrative judgments without the government having to bring suit.

The government concedes in *AT&T*, pending before the Supreme Court, that "the Seventh Amendment . . . generally preserves a defendant's right to obtain a jury trial *before* being compelled to pay more than $20 in damages or penalties." Brief for the Federal Parties at 2, *FCC v. AT&T Inc.*, Nos. 25-406 and 25-567 (U.S. Mar. 20, 2026) (emphasis added). At issue in *AT&T* are FCC penalty orders that common carriers are not compelled to pay unless the government

14

files suit that entities carriers to a *de novo* trial by jury. Accordingly, the government contends that carriers' right to a jury trial in suits to collect the penalties satisfies the Seventh Amendment. In contrast to FCC penalty orders, the IRS's assessment of FBAR penalties against Mr. Schwarzbaum are immediately collectable upon assessment, and therefore the absence of a prior right to a jury trial violated his Seventh Amendment by the government's own view.

## CONCLUSION

For the foregoing reasons, Mr. Schwarzbaum respectfully requests that the Court decline to adopt the Report and Recommendation and grant Defendant's Motion to Set Aside the Judgment.

Respectfully submitted this 3rd day of April 2026.

| | |
|---|---|
| */s/ Evelyn Baltodano Sheehan* | */s/ Andrew Weiner* |
| EVELYN BALTODANO SHEEHAN | ANDREW WEINER |
| Florida Bar ID # 944351 | D.C. Bar # 498633 (Pro Hac Vice) |
| Kobre & Kim, LLP | Kostelanetz LLP |
| 201 South Biscayne Boulevard | 601 New Jersey Avenue, NW |
| Suite 1900 | Suite 260 |
| Miami, Florida 33131-4329 | Washington, DC 20001 |
| (305) 967-6100 | (202) 790-6999 |
| Evelyn.Sheehan@kobrekim.com | aweiner@kostelanetz.com |

*Counsel for Defendant Isac Schwarzbaum*

15